**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

**DEBTOR'S OBJECTION TO OMNIBUS MOTION TO RECONSIDER
THE SCOPE OF *EX PARTE* ORDERS APPROVING EMPLOYMENT
OF:  (I) KING & SPALDING LLP AND (II) SCHACHTER HARRIS LLP**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby files

this Objection to the *Omnibus Motion to Reconsider the Scope of Ex Parte Orders Approving*

*Employment of Each of:  (I) King & Spalding LLP and (II) Schachter Harris LLP as Debtor's*

*Special Counsel Pursuant to Section 327(e) of the Bankruptcy Code Effective as of the Petition*

*Date* [Docket No. 192] (the "Motion") filed by the Official Committee of Asbestos Claimants

(the "ACC").  In support of this Objection, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.       By its Motion, the ACC requests that the Court reconsider (a) its *ex parte*

order approving the retention of King & Spalding LLP ("K&S") as special counsel to the Debtor

[Docket No. 36] (the "K&S Order") and (b) its *ex parte* order approving the retention of

Schachter Harris LLP ("Schachter" and, together with K&S, the "Professionals") as special

litigation counsel to the Debtor [Docket No. 38] (the "Schachter Order" and, together with

the K&S Order, the "Retention Orders").

---

[1]       The last four digits of the Debtor's taxpayer identification number are 5815.  The Debtor's address is
100 Peachtree Street, N.W., Atlanta, Georgia 30303.

2.      More specifically, with respect to the K&S retention, the ACC seeks to: (a) dramatically limit its scope so that K&S may assist only with matters unrelated to a possible estimation proceeding and (b) condition K&S's retention on "the understanding and expectation that its lawyers are likely to be examined and called as witnesses with respect to K&S' pre-petition services."[2]  With respect to Schachter's retention, the Motion requests that the Court: (a) deny Schachter's retention outright; or (b) in the alternative, (i) limit Schachter's retention to matters other than medical and science issues or issues as to which they could be fact witnesses and (ii) condition Schachter's retention on the "understanding and expectation" that its lawyers would be called to testify with respect to Schachter's prepetition services.[3]

3.      Denying the Debtor access to representation of its choice, including by curtailing the role of such counsel, requires compelling justification.  Here, the ACC has offered no valid factual or legal justification for that relief, much less a compelling one.  Notably, the ACC provides no fact-based challenges to the qualifications of K&S and Schachter, and does not identify any adverse interest created by the Professionals' retention.  Further, despite the ACC's focus on the possible future testimony of the Professionals in connection with an estimation trial, the Motion does not demonstrate that testimony by lawyers at K&S or Schachter would be necessary under applicable law or rules, nor that any such speculative future testimony, if somehow needed, would create a conflict or legitimate concern.  In fact, the ACC's arguments either are without legal merit or are premised on misstatements or misunderstandings of the facts.

---

[2]      Motion, ¶ 6.

[3]      Motion, ¶¶ 11, 12.  The form of order attached to the Motion as Exhibit B expresses no preference for the form of relief, but merely states that the parties will work to prepare "a form of order consistent with the Court's rulings made at the Hearing."  Id. at Ex. B, ¶ 2.

4.       Far from seeking to remedy any actual and identified risks associated with the Professionals' retention by the Debtor, the Motion instead is a transparent attempt to hamstring the Debtor's ability to pursue an estimation proceeding in the event that one is needed. Indeed, the Motion is part of an attack on the entire legal team of the Debtor.[4]  Although the Debtor is committed to pursuing a prompt and consensual resolution of this chapter 11 case, and is working with the ACC to that end, it remains unclear whether a consensual resolution will be possible.  If it is not, the Debtor will pursue an estimation of its asbestos liabilities, as is typical in asbestos bankruptcy cases.  In the event of an estimation trial, the services of experienced counsel with relevant background and expertise will be paramount.  The Court should not permit the ACC—the likely primary adversary in any estimation proceeding—to undermine the Debtor's ability to prepare and present its estimation case before it even begins.

5.       The requests in the Motion rest on two primary arguments:  first, that the Professionals' historical roles make them critical fact witnesses in any estimation trial, and this justifies limiting their roles as Debtor's counsel; and second, that the medical and science evidence that the Debtor would present in an estimation hearing by and with the assistance of Schachter is wholly irrelevant to estimation of its asbestos liability and, therefore, Schachter's retention is not in the best interest of the Debtor's estate.  Both of these arguments fail.

6.       As described in further detail below, even if K&S and Schachter attorneys were required to serve as fact witnesses in a potential estimation trial, the participation of individual lawyers as witnesses would not raise issues regarding the firms' retention under section 327 of title 11 of the United States Code (the "Bankruptcy Code").  The relevant rules

---

[4]       In addition to the Motion, the ACC filed a motion [Docket No. 193] that similarly seeks to modify the orders approving the retention of (a) Jones Day, the Debtor's chapter 11 counsel, and (b) Robinson, Bradshaw & Hinson, P.A. ("Robinson Bradshaw"), special counsel to the Debtor for asbestos claims estimation matters and local bankruptcy counsel.

NAI-1503427926

also would not preclude the testifying lawyers from assisting the Debtor with preparations for the estimation trial or otherwise participating in such a trial.

7.      In any event, the Debtor has no reason to believe that the Professionals' attorneys will be called as witnesses in the Debtor's chapter 11 case.  Their testimony is not necessary under applicable legal standards.  Importantly, the Professionals did *not* serve in the historical roles that the ACC mistakenly alleges would require their testimony (i.e., they never served as national coordinating counsel nor developed or implemented settlement protocols).  Therefore, the Professionals' attorneys are not qualified to testify to the matters identified in the Motion, and any testimony they could provide would be redundant of testimony of other, more appropriate potential witnesses.  Further, much of the testimony that the ACC would seek from the Professionals, as previewed in the Motion, would be protected by attorney-client privilege.  Most importantly, these purely speculative concerns about possible future testimony are not sufficient to require any limitations on the Professionals' retentions today and can be addressed when and if needed in the future based on the facts and circumstances at the time.

8.      The ACC's contention that medical and science evidence is irrelevant to estimation also is unfounded both under state law and in bankruptcy estimation cases.  Medical and science evidence is an element of every state court case and has been integral to estimation proceedings in similar chapter 11 cases.  The ACC misconstrues the bankruptcy court's holding in In re Garlock Sealing Technologies, LLC[5] when it suggests otherwise, and cites that holding out of context.  Regardless, the ACC will have an opportunity to argue whether and to what extent medical and science evidence is relevant to an estimation trial if, in fact, one is held in this case.  Until that time, it is premature to limit the Debtor's right and ability to develop and present

---

[5]      In re Garlock Sealing Techs., LLC, 504 B.R. 71 (Bankr. W.D.N.C. 2013) (hereinafter, "Garlock").

the case that it wishes to present by limiting its representation by counsel knowledgeable in these issues.[6]

## RELEVANT BACKGROUND

*Background Regarding the Debtor*

9.    As of the commencement of this chapter 11 case on November 2, 2017 (the "Petition Date"), the Debtor was a defendant in tens of thousands of asbestos-related lawsuits pending in the courts of nearly every state and certain territories of the United States. On the Petition Date, the Debtor filed the *Informational Brief of Bestwall LLC* [Docket No. 12] (the "Informational Brief") to provide additional information about its asbestos-related liabilities and litigation, as well as the Debtor's plans to address these matters in this chapter 11 case.  In addition, the Debtor provided a comprehensive description of the Debtor, its history, its assets and liabilities and the events leading to the commencement of this chapter 11 case in the declaration of Tyler L. Woolson [Docket No. 2] (the "First Day Declaration"), also filed on the Petition Date.

10.    As further described in the First Day Declaration, prior to the Petition Date, on July 31, 2017, the Debtor's predecessor, Georgia-Pacific LLC ("Old GP"), underwent a corporate restructuring (the "2017 Corporate Restructuring") in which Old GP ceased to exist and two new entities were formed—(a) the Debtor and (b) its non-debtor affiliate, Georgia-Pacific LLC, a Delaware limited liability company ("New GP").  As part of the 2017 Corporate Restructuring, the Debtor succeeded to certain assets of Old GP and became solely

---

[6]    In addition to these two primary lines of argument, the ACC vaguely suggests that the Court should reconsider the Retention Orders on account of a possible conflict of interest with the Debtor, although it has no basis to believe that any conflict of interest exists. Motion, ¶¶ 32, 62.  This allegation of a conflict is speculative, unsupported and wholly insufficient to impose limitations on the Debtor's access to its chosen counsel.

NAI-1503427926

responsible for Old GP's asbestos-related liabilities (with the exception of certain claims covered

by workers' compensation statutes and other similar laws).  Despite the ACC's characterization

of the Debtor as an entity "with limited assets,"[7] the assets that Old GP assigned to the Debtor

(including a funding agreement with New GP) ensure that the Debtor has the same financial

resources and ability to satisfy asbestos claims as Old GP had prior to the restructuring.

***The Retention Applications***

11.     On the Petition Date, the Debtor filed *ex parte* applications seeking to

retain (a) K&S as special counsel to the Debtor [Docket No. 27] (the "K&S Application") and

(b) Schachter as special litigation counsel to the Debtor [Docket No. 28] (the "Schachter

Application" and, together with the K&S Application, the "Retention Applications").

The Professionals' retention is necessary and appropriate to provide assistance to the Debtor on

asbestos claim-related matters, including a possible future estimation trial.  The Professionals are

particularly well qualified for this role due to their relevant prepetition work for the Debtor and

related institutional knowledge.  The Court approved the Retention Applications by entering the

Retention Orders on the Petition Date.

12.     As Exhibit A to the K&S Application, the Debtor filed the *Declaration of

Richard A. Schneider* (the "Schneider Declaration") that describes:  (a) K&S's qualifications,

including as developed through the firm's prepetition representation of the Debtor and its

predecessor; (b) the matters with which K&S may assist the Debtor in this chapter 11 case; and

(c) K&S's disclosures demonstrating that the firm does not represent or hold any interest adverse

to the Debtor or its estate with respect to the matters for which it is being employed.  As set forth

in the K&S Application, K&S's primary prepetition roles were to "serve[] as lead counsel on

---

[7]      Motion, ¶ 2.

- 6 -

various discovery issues that arose in multiple jurisdictions with respect to the defense of asbestos litigation" and to "serv[e] as lead counsel for preparing and defending company witnesses addressing scientific issues." K&S Application, ¶ 9. Neither of these roles regularly involved engaging in settlement negotiations or advising Old GP on the settlement of individual asbestos cases. During the period from July 31, 2017 to November 1, 2017, K&S also assisted the Debtor in a limited number of settlement discussions on a handful of cases.

13.     Similarly, the Debtor filed, as Exhibit B to the Schachter Application, the *Declaration of Raymond P. Harris, Jr.* (the "Harris Declaration" and, together with the Schachter Declaration, the "Retention Declarations"), which similarly sets forth: (a) Schachter's qualifications; (b) the matters with which Schachter may assist the Debtor in this chapter 11 case; and (c) Schachter's disclosures demonstrating that the firm does not represent or hold any interest adverse to the Debtor or its estate with respect to the matters for which it is being employed. The Harris Declaration also describes Schachter's prepetition services to the Debtor and Old GP, which "included assisting in the coordination of science experts engaged by Debtor, conducting discovery of experts employed by plaintiffs and assisting in briefings and other pleadings regarding the merits of plaintiffs' claims and Debtor's defenses." Harris Declaration, ¶ 3.

14.     Despite these disclosures, the ACC's Motion relies on certain incorrect facts and assumptions regarding the scope and nature of prepetition services provided by the Professionals. For example, the Motion incorrectly states that Schachter served as national coordinating counsel[8] for Old GP's asbestos-related litigation. Schachter never served in that

---

[8]     Motion, ¶ 10 ("Further, in any estimation proceeding, Schachter lawyers will be important fact witnesses as concerns its services as National Coordinating Counsel for Georgia-Pacific Asbestos Liabilities in the three years before this case.")

NAI-1503427926

role and neither the Harris Declaration nor the Schachter Application indicate that it did.[9]

Similarly, the Motion presumes that K&S had a role in "establishing settlement protocols and

values."[10]   K&S, however, was not involved in developing settlement protocols and procedures

regarding Old GP's and the Debtor's asbestos-related cases.

## ARGUMENT

### *Retention of the Professionals Under Section 327(e)*

15.     It is a long-standing rule that a party's choice of counsel is entitled to great

deference, and in a bankruptcy "the choice of the trustee should be confirmed unless good

reasons appear to the contrary." Kantar v. Robertson, 102 F.2d 92, 93-94 (4th Cir. 1939); see

also In re Universal Enters. of W. Va., LLC, No. 09-2862, 2010 WL 2403354, at *1 (Bankr.

N.D. W. Va., June 9, 2010) ("Absent a disqualifying interest, a court should not deprive a

Chapter 11 debtor of its chosen counsel inasmuch as the attorney-client relationship is 'highly

confidential, demanding personal faith and confidence' and the relationship requires the estate

and its attorney 'work harmoniously.'") (citing In re Mandell, 69 F.2d 830, 831 (2d Cir. 1934)).

For these reasons, "motions to disqualify a lawyer … are generally viewed with disfavor in

deference to a party's right to choose her own counsel." Metro. P'ship, Ltd. v. Harris,

No. 3:06CV522-W, 2007 WL 2733707, at *2 (W.D.N.C. Sept. 17, 2007).

16.     Here, the Retention Applications seek the retention of K&S and Schachter

pursuant to section 327(e) of the Bankruptcy Code.  The relevant factors for retention under

---

[9]     Typically, national coordinating counsel's role in asbestos litigation is to oversee and coordinate the defense of all asbestos cases nationwide with responsibility to, among other things, supervise, direct and coordinate (a) the factual investigation and workup of cases, (b) the management and coordination of discovery, (c) the preparation of witnesses for deposition and trial, (d) the retention and workup of experts in all relevant areas, (e) the overall preparation of cases for trial and (f) the negotiation and settlement of cases. As noted, Schachter's role in the Debtor's asbestos litigation was much more limited, focusing only on the science evidence offered by plaintiffs and by the Debtor and Old GP.

[10]     Motion, ¶ 28.

NAI-1503427926

section 327(e) of the Bankruptcy Code are:  (a) that the "special purpose" of retained counsel is

defined; (b) that the special purpose role is outside the scope of generally "conducting the case;"

(c) that retention is in the best interest of the estate; and (d) that counsel does not hold an interest

that is adverse to the debtor or its estate in the matters for which it is to be employed.

11 U.S.C. § 327(e); see also In re Sea Trail Corp., No. 11-007370-8-SWH, 2011 WL 6140514,

at *1 (Bankr. E.D.N.C. Dec. 9, 2011).

> 17.     The Professionals meet all of the standards to be retained under

section 327(e) in this case, and the Motion does not raise any legitimate issues to the contrary.[11]

### The Professionals' Retention Is in the Best Interests of the Estate

> A.     The Professionals Possess Important Knowledge
> and Experience Regarding Asbestos-Related Litigation

> 18.     Retention of counsel under section 327(e) of the Bankruptcy Code is

generally "appropriate in situations where the debtor was involved in complex litigation prior to

the bankruptcy filing and replacing the prepetition attorney would be disruptive and inefficient."

In re Land, No. 13-11309, 2014 WL 7330481, at *3 (Bankr. M.D.N.C. Dec. 18, 2014) (citing

In re J.S. II, LLC, 371 B.R. 311, 321 (Bankr. N.D. Ill. 2007) (authorizing retention of attorney

who was "familiar with the [relevant] facts and issues" where "[h]iring new counsel would cause

the estate to incur expenses to bring new counsel up to date…."); In re Cockings, 195 B.R. 735,

737 (Bankr. E.D. Ark. 1996) ("Hiring an attorney who is already familiar with the litigation ...

clearly is in the best interest of the estate.")).

> 19.     For example, in In re Land, the Bankruptcy Court for the Middle District

of North Carolina found that retention of an attorney as special counsel to appeal a ruling on

---

[11]     The Motion does not challenge that a special purpose for the Professionals has been identified or assert that these firms will be serving as bankruptcy counsel or otherwise conducting the case.  The issues raised by the Motion relate to the retentions being in the best interests of the estate and alleged potential conflicts.

NAI-1503427926

prepetition litigation was in the best interest of the estates because the attorney's experience

representing the debtors in prior appeals made him "uniquely qualified" for the job.  Id. at *4.

In particular, due to his "advantage of already being familiar with the record" on appeal, he could

"pinpoint any possible issues more expeditiously" than another lawyer without the same

experience.  Id.

        20.    Retention of the Professionals to assist with asbestos-related matters is

similarly in the best interest of the Debtor here.  The institutional knowledge that

the Professionals have developed over years of representing the Debtor and its predecessor is

integral to the Debtor's chapter 11 case, including in any future estimation proceeding.  Through

their prepetition representation of the Debtor and Old GP, K&S and Schachter have developed

in-depth knowledge of the complex factual and legal history of the Debtor's and Old GP's

asbestos litigation, related expert testimony and the product history of the Debtor's predecessors.

Schachter also has become intimately knowledgeable about the key science issues that arise in

the context of the Debtor's asbestos litigation, having become familiar with the voluminous and

complex science literature and key documents after years of effort.  On account of their

experience and knowledge, the Professionals will be able to identify and analyze key issues more

effectively and efficiently than any replacement counsel.

        21.    The ACC's suggestion that the retention of Robinson Bradshaw makes

retention of the Professionals for estimation matters unnecessary ignores the key facts that

(a) Robinson Bradshaw's proposed services related to potential estimation proceedings do not

overlap with the services to be provided by the Professionals; and (b) Robinson Bradshaw does

not have the same depth of knowledge or experience as the Professionals with respect to

the Debtor's historic litigation and related medical and science issues.

NAI-1503427926

22.    If the Professionals' retention is denied or limited as requested in the

Motion, the Debtor would need replacement counsel to assist with historic asbestos litigation and

science matters.  It would be extremely time consuming and expensive to bring new counsel up

to speed on such matters prior to a potential estimation trial.  Such an effort would waste estate

resources, achieve no valid purpose under the law and only serve to place the Debtor at a tactical

disadvantage compared to the ACC.  The ACC's claim that the Debtor would not be prejudiced

by limiting or denying representation by the uniquely qualified counsel of its choosing[12] is

simply incorrect.

B.    Schachter's Knowledge of Medical and Science Issues
      Will Be Integral to Any Estimation Proceedings

23.    The ACC's claim that Schachter need not be retained because medical and

science evidence relating to asbestos claims is irrelevant to an estimation trial is incorrect and

misconstrues cited precedent.[13]  In fact, medical and science evidence is relevant in state law

actions and has been central to recent estimation trials in this and other districts.[14]  The Debtor

believes that medical and science evidence would be an important part of any estimation

proceedings in its chapter 11 case, as well.  Consequently, the retention of experienced and

knowledgeable medical and science counsel clearly is in the estate's best interest.

24.    The ACC suggests that science and medical evidence is irrelevant for

three main reasons.  First, the ACC argues that evidence of the science underlying the Debtor's

---

[12]    Motion, ¶ 67.

[13]    See Motion, p. 12 ("Schachter's Experience with regard to the Medical Science Relating to Chrysotile is
        Irrelevant for Purposes of an Aggregate Estimation of the Georgia-Pacific Asbestos Liability").

[14]    See, e.g., Garlock, 504 B.R. at 75-82 (summarizing the large body of evidence presented to, and considered
        by, the bankruptcy court in the debtors' asbestos liability estimation trial, including evidence from experts
        in epidemiology, medicine, industrial hygiene and economics, among other sciences); see also In re USG
        Corp., 290 B.R. 223, 227 (Bankr. D. Del. 2003) (stating that, subject to the claimants' constitutional and
        legal rights, the debtors may "attack certain medical evidence under Federal Rule of Evidence 702 and
        [Daubert]").

NAI-1503427926

case is not necessary because asbestos liabilities should be estimated based on the Debtor's

settlement history.[15]  However, if a consensual settlement is not feasible, the Debtor intends to

seek an estimation of *actual legal liability* and not an estimate of its likely settlements if it were

to remain in the tort system, where settlements have often been driven by other factors, such as

incomplete information and avoidance of burdensome litigation costs.  To pursue such an

estimation, the Debtor expects that it will offer evidence on medical and science issues, including

as described in the Informational Brief with respect to the potency and exposure levels of

chrysotile asbestos associated with its predecessor's products.[16]  As further described in

the Informational Brief, the Debtor anticipates that the evidence presented in any estimation

proceedings would demonstrate the propriety of calculating estimated asbestos liability based on

the legal liability of the Debtor, which is the analysis employed and accepted by the Court in

Garlock, rather than based on historical settlement amounts.

      25.    Regardless, the Debtor respectfully submits that consideration of

estimation methodologies is not necessary at this preliminary stage—before any estimation

proceeding has even been commenced—in connection with the retention of counsel.  The Court

will, of course, evaluate the proposed methodologies based on appropriate briefing, arguments

and evidence presented, if and when any estimation proceedings commence.[17]  By requesting

that Schachter's retention be denied because science evidence is allegedly irrelevant, the ACC

---

[15]    Motion, ¶ 55 (noting that the Specialty Products court "based its estimation on the debtor's settlement history").

[16]    Informational Br., § III.

[17]    See Order for Estimation of Mesothelioma Claims at 8, In re Garlock Sealing Techs. LLC, et al., Case No. 10-31607 (Apr. 13, 2012) [Docket No. 2102] (explaining that the court will hear evidence on competing estimation methodologies and "make its decision based upon which is the more persuasive").

NAI-1503427926

effectively seeks a premature ruling supporting its theory of estimation that is not properly before
the Court and not ripe for adjudication.

26.    <u>Second</u>, the Motion suggests that the Court must apply state law in
estimation proceedings and, therefore, the introduction of medical and science evidence is not
necessary because "[s]tate tort law is well developed" on issues of chrysotile asbestos.[18]
The ACC has not even attempted to demonstrate that state law is settled as to each medical and
science issue relevant to estimation.  To determine legal liability, the Court must "tak[e] into
consideration causation."[19]  Causation is an element of tort liability under the laws of every
jurisdiction in the United States; therefore, evidence about causation is relevant no matter what
law applies.  Without addressing the details here, the Debtor submits that the presentation of
science and medical evidence is expected to be integral to the Debtor's case regarding causation
(as it was in <u>Garlock</u>).  To the extent the ACC disagrees with this approach, it will have the right
and opportunity to address the relevance and merits of any evidence presented in any future
estimation proceedings.  For now, the Debtor should be permitted to pursue the approach to
estimation that it believes is appropriate (consistent with substantial precedent) with
the assistance of the qualified and disinterested counsel of its choosing.

27.    <u>Third</u>, to support its position that medical and science evidence is
irrelevant to an estimation proceeding, the ACC relies on a quote from Judge Hodges' decision in
<u>Garlock</u> that has been taken out of context.  <u>Garlock</u> in no way stands for the proposition that
medical and science evidence is irrelevant to estimation—to the contrary, the decision
underscores the importance of such evidence when determining liability.  According to the

---

[18]    Motion, ¶ 48.

[19]    <u>Garlock</u>, 504 B.R. at 73.

- 13 -

Court, the parties to <u>Garlock</u>'s estimation proceeding "made an extensive offering of scientific evidence on a number of topics," including:  "(a) the nature of asbestos, its different types and their relative toxicity; (b) the medical evidence of the operation of asbestos in the lungs; (c) uses of asbestos in Garlock and other third-parties' products in naval and industrial applications; (d) industrial hygiene and epidemiology evidence of exposure caused by Garlock and third-parties' products; and (e) safety and regulatory pronouncements regarding asbestos exposure." <u>Garlock</u>, 504 B.R. at 75.  As Judge Hodges explained, medical and science evidence was relevant to the estimation of Garlock's present and future asbestos-related liabilities because "[t]he best evidence of Garlock's aggregate responsibility is the projection of its legal liability that takes into consideration causation, limited exposure and the contribution of exposures to other products."  <u>Id.</u> at 73.

28.     The quotation cited in the Motion is merely a snippet from <u>Garlock</u>'s lengthy discussion of the medical and scientific evidence, and that snippet was quoted without proper context.[20]  The quoted portion touches on only one of the many medical and scientific issues that were relevant to Garlock's estimation:  whether low dose chrysotile can *ever* cause mesothelioma.  The court declined to decide that specific issue, but did not decline to consider the medical and science evidence.  The entire paragraph including the ACC's quoted language reads as follows:

> In, conclusion:  The court does not believe that it is necessary for it to determine — one way or the other — whether low dose exposure to chrysotile in Garlock gaskets could cause mesothelioma.  Because the court is estimating Garlock's aggregate asbestos liability across all cases, it is sufficient to conclude that Garlock has demonstrated that its products resulted in relatively low exposure of a relatively

---

[20]     Motion, ¶ 52 ("…in determining an estimation of liability,] the [<u>Garlock</u>] Court concluded that it was unnecessary to make a determination on the toxicity of chrysotile.  Specifically, the Court stated that 'it is [not] necessary for it to determine—one way or the other—whether low dose exposure to chrysotile in Garlock gaskets could cause mesothelioma.'").

NAI-1503427926

> lower potency asbestos to a limited population and that the
> population exposed to Garlock's products was necessarily exposed
> to far greater quantities of higher potency asbestos from the products
> of others.

Garlock, 504 B.R. at 82.

29.    When viewed in context, it is apparent that Judge Hodge's conclusion is

not a holding that science and medicine were irrelevant to the estimation.  It is quite the opposite,

as Garlock relies on significant amounts of medical and scientific evidence regarding product

exposure levels and the relative potency of various types of asbestos to estimate the debtor's

aggregate liability for mesothelioma claims.

***The Professionals Do Not Hold Interests Adverse
to the Estate in the Matters for Which They Are Being Retained***

30.    In the context of section 327(e) of the Bankruptcy Code, an "adverse

interest" that could result in denial of a retention refers to "either an actual or a reasonably

probable conflict of interest." J.S. II, L.L.C., 371 B.R. at 321 (citing In re AroChem Corp.,

176 F.3d 610, 700 (2d Cir. 1999)).  As a result, "conflicts based purely on conjecture or mere

speculation do not necessarily warrant an attorney's disqualification," in particular because other

sections of the Bankruptcy Code can protect debtors' estates in the event that "potential conflicts

ripen into actual adverse interests."  Id.; accord Universal Enters. of W. Va., LLC, 2010 WL

2403354, at *3 (authorizing retention and applying a "wait and see" approach to an alleged

potential conflict); Daly v. Konover Constr. Corp. (In re Homesteads Cmty. at Newtown, LLC),

390 B.R. 32, 47 (Bankr. D. Conn. 2008) ("The disqualifying adverse interest addressed in § 327

is either an actual or a reasonably probable conflict of interest.").[21]

---

[21]    It also is notable that section 327(e) of the Bankruptcy Code sets a "more relaxed conflict-of-interest
standard than is found in section 327(a)" of the Bankruptcy Code in that section 327(e) requires only that
counsel not have an interest adverse to the estate "with respect to the matter on which such attorney is to be
employed."  DeVlieg-Bullard, Inc. v. Natale (In re DeVlieg, Inc.), 174 B.R. 497, 503 (N.D. Ill. 1994).

NAI-1503427926

31.    The Professionals have amply demonstrated in the Retention Applications and the Retention Declarations that they are disinterested and do not hold interests adverse to the Debtor or its estate.  Indeed, the ACC alleges no conflict of interest here.  Despite the ACC's claim to the contrary,[22] the Motion does not present the Court with any new "facts and circumstances" that were not included in the Debtor's filings on the Petition Date, and does not present any information to suggest an undisclosed conflict.

32.    All the ACC offers to suggest a potential future conflict are arguments based on fundamental misunderstandings of the roles of the Professionals and the state of the law.  In particular, the ACC appears to suggest that a potential conflict of interest could arise in the future on account of:  (a) the possibility that certain unspecified attorneys at K&S or Schachter could be called as fact witnesses in an estimation trial;[23] or (b) some other basis that the ACC did not identify or explain further.[24]  As addressed in detail below, the ACC's claim that certain individual K&S or Schachter attorneys could serve as fact witnesses is factually flawed and does not constitute grounds to deny the Professionals' retention as qualified law firms under section 327(e).  With respect to the other as-yet-undefined potential conflict alluded to by the ACC, it is far too speculative to constitute an adverse interest under section 327(e) of the Bankruptcy Code or to merit further response.

---

[22]    See Motion, ¶ 72 (claiming that "reconsideration of the K&S Retention Order and the Schachter Retention Order should be granted because when presented with the K&S Retention Application and the Schachter Retention Application, the Court did not have the benefit of certain facts and circumstances which the [ACC] has detailed [in the Motion]").

[23]    Motion, ¶¶ 5, 10.

[24]    Motion, ¶ 32 ("it is possible that K&S' interests and the interest of the Debtor's estate could conflict"), ¶ 62 (the "possibility of a conflict of interest … could arise").

### *Even if Certain of the Professionals' Attorneys Were to Serve as Witnesses, There Is No Basis to Deny the Professionals' Retentions*

33.     The Motion ultimately seeks to bar the firms of K&S and Schachter from assisting with a possible estimation proceeding on account of potential testimony by certain unspecified individual attorneys from those firms.  As detailed below, the arguments about individual lawyers at the Professionals' firms serving as witnesses is speculative and based on faulty assumptions.  But, as a threshold matter, even *if* certain individual attorneys were to testify as fact witnesses, any such testimony would not limit the retention of the Professionals as law firms under section 327(e) of the Bankruptcy Code.

34.     Applicable law is clear that the testimony of *select lawyers* does not, in itself, create a conflict of interest that disqualifies the *entire law firm* from representing the client and thus would not create an adversity for the firms under section 327(e) of the Bankruptcy Code.  In fact, the ethical rules (and relevant case law) are explicit on this point.  <u>See</u> Rule 3.7(b) of the North Carolina Revised Rules of Professional Conduct (the "<u>Professional Rules</u>") ("A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so" by Professional Rules 1.7 and 1.9 regarding conflicts of interest with respect to current and former clients); <u>accord</u> <u>Metro. P'ship, Ltd.</u>, 2007 WL 2733707, at *2 (finding no basis to disqualify an attorney's firm despite plaintiff's request to call attorney as potential witness); <u>Duke Invs., Ltd. v. Amegy Bank (In re Duke Invs., Ltd.)</u>, 454 B.R. 414, 422-27 (Bankr. S.D. Tex. 2011) ("[E]ven if [the lawyer who is called to testify] should be disqualified . . . the disqualification should not extend to [the entire firm]"); <u>Am. Home Assurance Co. v. Ryan (In re Raytech Corp.)</u>, 319 B.R. 342, 345 (Bankr. D. Conn. 2005) (overruling an objection to a firm's continued representation of plaintiffs despite likely witness testimony from an attorney in that firm).  Thus, absent an actual disabling conflict, there

- 17 -

would be no reason that the Professionals could not continue their representations of the Debtor even if certain individuals from their firms were called as fact witnesses.

35.     Although the arguments about future disqualification of individual lawyers are largely irrelevant to the retention of their law firms under section 327(e) of the Bankruptcy Code, because those arguments are central to the Motion and raise unfounded concerns about future conflicts, they are addressed below.

***The Professionals' Lawyers Are Not Anticipated to Be Fact Witnesses
and Any Potential Testimony Would Not Justify Denial of Retention***

36.     The Motion leans heavily on (a) the suggestion that certain of the Professionals' attorneys may serve as fact witnesses in a possible estimation trial and (b) the ACC's conclusion that this possibility should preclude the retention of the Professionals for estimation-related matters, presumably due to an adverse interest.

37.     The relief requested in the Motion constitutes, in essence, a request to disqualify the Professionals from representing the Debtor either altogether or with respect to any estimation trial.  See DeVlieg, Inc., 174 B.R. at 504 (analyzing an objection to debtor's retention of counsel under section 327(e) of the Bankruptcy Code on the basis that counsel may be required to testify about its prior work for the debtor as tantamount to a disqualification request).  Because motions to disqualify counsel are disfavored, "the moving party has a very high standard of proof in moving to disqualify an opposing party's counsel.  It follows that a court should not disqualify a party's chosen counsel on imagined scenarios of conflict." Danzig Ltd., v. Inception Mining Inc., No. 5:17-CV-00018-RLV-DSC, 2017 WL 2569739, at *1 (W.D.N.C. June 13, 2017) (quoting Capacchione v. Charlotte-Mecklenburg Bd. of Educ., 9 F. Supp. 2d 572, 579 (W.D.N.C. 1998)).

- 18 -

38.     Under Professional Rule 3.7, a lawyer may not be an advocate at trial if that lawyer is a "necessary witness," unless "(1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." N.C.R. Prof'l Conduct 3.7(a).  In the Western District of North Carolina, "an attorney should only be disqualified as a 'necessary witness' if (1) the attorney will give evidence material to the issues to be determined, (2) the evidence cannot be obtained elsewhere, and (3) the testimony is prejudicial or may be prejudicial to the testifying attorney's client." Metro. P'ship, Ltd., 2007 WL 2733707, at *2 (citing Cunningham v. Sams, 161 N.C. App. 295, 298 (2003)); accord Danzig Ltd., 2017 WL 2569739, at *2; see also Ohio Cas. Ins. Co. v. Firemen's Ins. Co., 2008 LEXIS 12360, at *6 (E.D.N.C. 2008, Feb. 13, 2008) ("A necessary witness is one whose evidence is material to issues in litigation, and which cannot be obtained elsewhere.").  If an attorney is deemed a "necessary witness," the Court then must determine whether any of the exceptions established under Professional Rule 3.7 apply.  Metro. P'ship, Ltd., 2007 WL 2733707, at *2.

A.      Any Effort to Seek Disqualification Is Premature

39.     Whether any lawyer should be disqualified "is a matter best determined within the context of the [trial] itself" when the existence of an actual conflict may be evaluated. DeVlieg, Inc., 174 B.R. at 504 (noting that "[a]ttorney disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary") (citing Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)).  At this juncture, it is unclear if an estimation proceeding will be needed in this case.  Even if so, the nature of any estimation and the related disputes have yet to be framed.  Thus, denying the Debtor's retention of its chosen Professionals on account of potential testimony at a trial that may not occur (and relating to issues that may not arise even if there is a trial) is premature and inappropriate.

- 19 -

B.      Testimony From the Professionals Is Not Necessary to the Debtor's Case

40.     Similarly, premature disqualification of counsel is particularly inappropriate where it has not been (and cannot be) demonstrated that such counsel's testimony would be necessary even in the event of a future estimation trial.  See, e.g., Fed. Deposit Ins. Corp. v. Kerr, 111 F.R.D. 476, 479 (W.D.N.C. 1986) ("the withdrawal of [counsel] from further representation of the [client] at this point is inappropriate because the [client] has not yet determined if [counsel's] testimony would be necessary at trial."); DeVlieg, Inc., 174 B.R. at 504 (noting that failure to refute claims that testimony may not be needed "is itself a failure to sustain [the] burden of demonstrating that disqualification is necessary").[25]

41.     Here, the ACC argues that the Professionals' attorneys must testify at a future estimation trial based solely on a fundamental misunderstanding of the firms' historical roles.  The ACC focuses on the need for testimony regarding how the defense and settlement of asbestos cases were managed and coordinated nationally[26] and on settlement protocols and decisions.[27]  Contrary to the ACC's arguments in the Motion, neither K&S nor Schachter served as national coordinating counsel (or performed the typical services of that role, like preparing case evaluations or supervising the settlement of cases), and the Professionals were not involved

---

[25]     See also Bacote v. Riverbay Corp., 2017 U.S. Dist. LEXIS 35098, at *19, (S.D.N.Y 2017, Mar. 10, 2017) ("[N]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary because disqualification is highly prejudicial to the non-movant.") (internal citations omitted); Metro. P'ship, Ltd., 2007 WL 2733707, at *2 (denying a motion to disqualify counsel, in part because counsel "may or may not be called as a witness"); Moore v. Kumer (In re Adam Furniture Indus., Inc.), 191 B.R. 249, 261 (Bankr. S.D. Ga. 1996) (denying defendants' request to disqualify counsel where the defendants did not "provid[e] any evidence that [counsel] will have to take the witness stand").

[26]     See Motion, ¶ 10 (relating to testimony of Schachter about its services as national coordinating counsel), ¶ 29 (stating K&S should be a witness with respect to "the management of the defense and settlement" of asbestos matters, similar to testimony provided by national coordinating counsel in Specialty Products), ¶ 60 (same for Schachter).

[27]     See Motion, ¶ 28 (stating that "K&S' role in establishing settlement protocols and values" will be "at issue"), ¶ 59 (stating that testimony may be sought from Schachter regarding "information sought and considered in connection with settlement").

NAI-1503427926

in establishing or implementing settlement protocols.[28]  Thus, lawyers at K&S and Schachter are

not proper witnesses on those matters, and the entire premise of the ACC's objection based on

this argument fails.

42.    It also is well settled that it is improper to disqualify counsel on the basis

that they must provide testimony if their testimony simply would be cumulative or redundant of

testimony available from other sources.  See, e.g., Metro. P'ship, Ltd., 2007 WL 2733707, at *2

(denying a motion to disqualify counsel because counsel's testimony "is available from at least

three other sources"); Chantilly Constr. Corp. v. John Driggs Co., Inc. (In re Chantilly Constr.

Corp.), 39 B.R. 466, 473 (Bankr. E.D. Va. 1984) ("The debtor's 'need' to call members of

[counsel's firm] to testify is alleviated by the fact that the attorney's testimony will be cumulative

and in some instances redundant.").  Therefore, even to the extent that K&S and Schachter

attorneys may have relevant information about the issues identified in the Motion, and even if

those topics required testimony in a future estimation proceeding (all of which is speculative),

their testimony is not necessary because any such testimony, at best, would be redundant of

testimony available from other, more appropriate sources (particularly since their testimony

would be subject to and limited by attorney-client privilege).[29]  The ACC does not explain why it

could not seek such testimony from witnesses other than the Debtor's outside counsel, including

---

[28]    Those services were performed by Old GP's and the Debtor's in-house legal teams since 2005 and, before
that, by other firms.  As noted, K&S had a limited role assisting with a handful of settlements of
the Debtor's asbestos cases after the 2017 Corporate Restructuring, but had no historical role in establishing
or implementing settlement protocols or strategies.

[29]    The ACC's claim that the Debtor put certain information "at issue," thus waiving such attorney-client
privilege, is misplaced.  The Motion states that the Debtor waived privilege by putting "at issue" the
"evidence sought, received, and considered" with respect to settlement decisions when the Debtor stated in
its Informational Brief that certain relevant exposure evidence was "hidden away in the bankruptcy trust
system."  Motion, ¶ 26.  The Debtor in no way waived the bedrock protections of attorney-client privilege
by observing that certain relevant information was unavailable due to the confidentiality restrictions
established by bankruptcy trusts and did not comment on, nor put at issue, the Debtor's discovery process.

- 21 -

the individuals at the Debtor and Old GP who were directly involved in the management of the Debtor's asbestos liabilities.

43. The intent to call the Debtor's counsel as a witness or the need for counsel to testify, on their own, are not sufficient to establish a disqualifying conflict of interest. The Court "cannot disqualify plaintiff's counsel merely because an adverse party intends to call them as witnesses" because "[s]uch a rule, taken to its logical conclusion, would allow any party to deprive his adversary of the counsel of his choice simply by announcing an intention to question the adversary's attorney in open court." Stanwood Corp. v. Barnum, 575 F. Supp. 1250, 1251 (W.D.N.C. 1983). To disqualify counsel, courts in this District and others require "proof that the substance of counsel's testimony (if offered) will compromise [the client's] case." Id.; see also Adam Furniture Indus., Inc., 191 B.R. at 261 (denying disqualification for lack of evidence that counsel will provide testimony adverse to its client's interests). The Motion has not demonstrated, and cannot demonstrate at this premature stage, that any testimony required from the Professionals' attorneys would create an interest adverse to the Debtor.

44. Last, even where a lawyer *is* a necessary witness, the lawyer will not be disqualified from retention if disqualification would "work substantial hardship on the client." N.C.R. Prof'l Conduct 3.7(a)(3). Disqualification causes clients substantial hardship where (a) the client's attorney has a longstanding representation of the client or (b) the case is factually complex such that it would be time consuming and difficult to bring new counsel up to speed.[30] As

---

[30]    See, e.g., United States v. Perry, 30 F. Supp.3d 514, 544 n.15 (E.D. Va. 2014) (denying disqualification request where counsel worked with the defendant for a year and a half and the case involved "hundreds of thousands of documents [and] a fact-intensive defense"); Raytech Corp., 319 B.R. at 344 (denying disqualification where the attorney had "extensive knowledge" of the underlying cases at issue, the attorney had represented the client for four years and it would take "a substantial amount of time for a substitute counsel to gain that same familiarity with the cases"); Chantilly Constr. Corp., 39 B.R. at 473 (denying disqualification where counsel performed approximately 1,000 hours of services for the client and the client "would have the very heavy burden of educating replacement counsel on all the activity which has transpired previously").

NAI-1503427926

described above, disqualification of the Professionals almost certainly would cause considerable

hardship on the Debtor and its estate.

      C.      K&S's Role in Defending Old GP in Prepetition Discovery
Disputes Concerning Work Product Research Funded by
<u>Old GP Provides No Basis for Limiting K&S's Representation</u>

      45.      As its final argument with respect to K&S's retention, the ACC argues that

K&S lawyers may be fact witnesses at an estimation trial, or that their interests may conflict with

the estate, on issues concerning certain scientific research and articles funded by Old GP

(collectively, the "<u>Science Articles</u>").  Historically, plaintiffs in asbestos cases have called into

question Old GP's role in commissioning the Science Articles, yet even the ACC concedes that

the relevance of those events in this proceeding is "unclear."[31]  Nevertheless, the ACC asserts that

K&S lawyers are potential witnesses by incorrectly assuming that K&S was involved in

the underlying events that could be relevant to a speculative future dispute about the Science

Articles.  The ACC's argument is factually unfounded, as well as premature in addressing events

that may never become relevant here.  As such, this argument provides no basis for limiting

K&S's representation of the Debtor in this chapter 11 case.

      46.      After the Science Articles were published, K&S defended Old GP in

various discovery disputes about these articles.  Those disputes arose because various asbestos

plaintiff firms sought to force the production of Old GP's privileged and work product documents

by arguing that Old GP had engaged in improper conduct in connection with funding the

scientific work and the publication of the related articles.  K&S's role was strictly as defense

counsel in these matters as disputes arose in various jurisdictions.  K&S played no role

whatsoever in the underlying events – it did not commission the research, it was not involved in

---

[31]      Motion, ¶ 36.

NAI-1503427926

the underlying research itself and it had no involvement in writing and publishing the articles that reported the results of the research. These facts simply do not make K&S a potential witness in any proceeding and do not create any conflict, actual or potential, between K&S and the estate.

47. This is neither the time nor the place to engage in a detailed response to the ACC's mischaracterizations of Old GP's conduct regarding the Scientific Articles because they are irrelevant to the issue of the K&S's retention. Nevertheless, the Debtor takes exception to the allegation that Old GP engaged in any improper conduct by funding the underlying research and calling on one of its in-house scientists to participate as a co-author in many of the Science Articles.[32] Although the ACC cites an opinion from a New York intermediate appellate court, the ACC does not mention that, based on the same factual record and legal arguments before the court in New York, at least four other courts denied copycat motions, finding that the movants did not make even the threshold showing needed to obtain *in camera* review, much less production, of Old GP's privileged and work product materials. See, e.g., Pitman v. Crane Co., No. 2012-10060 (Civ. Dist. Ct., Parish of Orleans, Louisiana, Aug. 14, 2013) (denying *in camera* review of Old GP's privileged information); see also In re All Shrader & Assocs., LLP Asbestos Personal Injury Cases v. Georgia-Pacific Corp., No. 95ASALLLIT (Ill. Cir. Ct., 3d Jud. Cir., Dec. 31, 2014) (same); Hale v. Trane U.S., Inc., No. C20133499 (Ariz. Super. Ct., Pima Cnty., Sept. 5, 2014) (same); Diaz v. Georgia-Pacific LLC, No. 15-CA-7291( Fl. Cir. Ct. 13th Jud. Cir., April 21, 2016) (plaintiffs' motion denied in chambers).

---

[32]   Stewart Holm was an in-house scientist at Old GP and was a co-author of nine of the Science Articles. Every article he co-authored listed him by name and disclosed his affiliation with Old GP. Thus, any reader was or should have been aware of Holm's connection to Old GP and, thus, Old GP's connection to the articles (each one of which disclosed the source of its funding).

NAI-1503427926

D.      Even a Testifying Lawyer May Continue to Represent the Debtor

48.      Finally, even if a testifying lawyer from K&S or Schachter ultimately

cannot "act as advocate at a trial" for the Debtor under Professional Rule 3.7(a), that attorney

nonetheless may be able to provide support to the Debtor with respect to that trial in other ways.

This is particularly the case in chapter 11 proceedings, where there is little or no risk that

the factfinder would be confused or prejudiced by the attorney's dual role as advocate and

witness.  See N.C.R. Prof'l Conduct 3.7, Cmt. 1, 5 (describing the need for Professional Rule 3.7

to eliminate this prejudice created for factfinders).  This further demonstrates the flaws in

the ACC's arguments to seek advance disqualification of the lawyers and their firms.

## RESERVATION OF RIGHTS

49.      In this Objection, the Debtor has responded to various arguments in

the Motion based on the ACC's speculation about what may occur in a future estimation

proceeding.  In responding, the Debtor has attempted to clarify certain issues for the Court and

provide appropriate context.  However, nothing herein should be construed as limiting, waiving or

prejudicing any rights or arguments that the Debtor ultimately may assert in connection with any

estimation proceeding or otherwise.  All such matters are fully reserved by the Debtor.

NAI-1503427926

## **CONCLUSION**

50.     For the foregoing reasons, the Debtor respectfully requests that the Court

deny the Motion and the relief requested therein.

Dated:  February 15, 2018                    Respectfully submitted,
            Charlotte, North Carolina

    _/s/_   _Garland S. Cassada_
Garland S. Cassada (NC Bar No. 12352)
David M. Schilli (NC Bar No. 17989)
Andrew W.J. Tarr (NC Bar No. 31827)
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000
E-mail:      gcassada@robinsonbradshaw.com
                 dschilli@robinsonbradshaw.com
                 atarr@robinsonbradshaw.com

Gregory M. Gordon (TX Bar No. 08435300)
Daniel B. Prieto (TX Bar No. 24048744)
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:      gmgordon@jonesday.com
                 dbprieto@ jonesday.com
(Admitted _pro hac vice_)

Jeffrey B. Ellman (GA Bar No. 141828)
Brad B. Erens (IL Bar No. 06206864)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia  30309
Telephone:  (404) 581-3939
Facsimile:  (404) 581-8330
E-mail:      jbellman@jonesday.com
                 bberens@ jonesday.com
(Admitted _pro hac vice_)

ATTORNEYS FOR DEBTOR AND
DEBTOR IN POSSESSION

NAI-1503427926