

FILED & JUDGMENT ENTERED
Steven T. Salata

July 29 2019

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re                          :    Chapter 11
                               :
BESTWALL LLC,[1]               :    Case No. 17-31795
                               :
       Debtor.                 :
                               :

## MEMORANDUM OPINION AND ORDER DENYING
## THE OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS'
## MOTION FOR DISMISSAL, OR ALTERNATIVELY, VENUE TRANSFER

On November 9, 2018 and January 24, 2019, the Court convened hearings on the *Motion of the Official Committee of Asbestos Claimants to (I) Dismiss the Debtor's Chapter 11 Case for Cause as a Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b), or Alternatively, (II) Transfer Venue in the Interest of Justice and for the Convenience of the Parties Pursuant to 28 U.S.C. § 1412* [Docket No. 495] (the "Motion").  For the reasons set forth below, the Court denies the Motion.

### PROCEDURAL HISTORY

On November 2, 2017 (the "Petition Date"), Bestwall LLC ("Bestwall") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this district, initiating the above-captioned case to resolve mass asbestos claims through a section 524(g) trust.  Shortly after the Petition Date, this Court approved the appointment of the Official Committee of Asbestos Claimants (the "Committee") to represent the asbestos claimants in the Chapter 11 case, and thereafter has approved modifications to the Committee [Docket Nos. 97, 335, 348, 666, 690].

---
[1] The last four digits of the Debtor's taxpayer identification number are 5815.  The Debtor's address is 133 Peachtree Street, N.E., Atlanta, GA 30303.

On August 15, 2018, the Committee filed the Motion requesting that the Court dismiss Bestwall's bankruptcy case as a bad faith filing pursuant to section 1112(b) of the Bankruptcy Code. Alternatively, the Committee requested that the Court transfer venue of this case in the interests of justice or for the convenience of the parties, pursuant to 28 U.S.C. § 1412.

In connection with the Court's consideration of the Motion, Bestwall, the Committee, the Future Claimants' Representative, and Bestwall's non-debtor affiliate, Georgia-Pacific LLC ("New GP"), stipulated to the admission into evidence of the *Debtor's Submission in Lieu of Live Testimony* [Docket No. 651] (the "Submission"). See Submission, pp. 2, 26; see also *Transcript of Proceedings Before the Honorable Laura Turner Beyer, United States Bankruptcy Judge* (November 9, 2018) (the "November Transcript"), p. 42. Bestwall also submitted the *Declaration of Gregory M. Gordon* [Docket No. 641] (the "Gordon Declaration") into evidence, and no objections were made to its admission. See November Transcript, p. 42. Bestwall and the Committee fully briefed this matter[2] and presented oral arguments with respect to the Motion at the November 9, 2018 hearing.

## JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT FACTS

The former Georgia-Pacific LLC ("Old GP"), the predecessor to Bestwall, had a decades-long history of asbestos litigation that derived from its acquisition of Bestwall Gypsum Co. ("Old Bestwall"). Submission at ¶¶ 22-23. Old Bestwall manufactured and sold certain asbestos-containing products, principally joint compound, and Old GP continued to manufacture and sell those products following the acquisition. Id. The magnitude and projected continuation of that litigation through at least 2050 ultimately led Old GP to undertake a corporate restructuring on July 31, 2017 (the "2017 Corporate Restructuring"). Id. at ¶ 13.

---

[2] The parties filed the following briefs in support of or in objection to the Motion:

- *The Debtor's Objection to Motion of the Official Committee of Asbestos Claimants to Dismiss the Chapter 11 Case, or Alternatively, Transfer Venue* [Docket No. 640] ("Bestwall's Objection");

- *The Official Committee of Asbestos Claimants' Omnibus Reply in Support of Its Motion to (I) Dismiss the Debtor's Chapter 11 Case for Cause as a Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b), or Alternatively, (II) Transfer Venue in the Interest of Justice and for the Convenience of the Parties Pursuant to 28 U.S.C. § 1412* [Docket No. 653] (the "Committee's Reply"); and

- *The Debtor's Sur-Reply in Support of Its Objection to Motion of the Official Committee of Asbestos Claimants to Dismiss the Chapter 11 Case, or Alternatively, Transfer Venue* [Docket No. 659] ("Bestwall's Sur-Reply").

2

The 2017 Corporate Restructuring was effectuated through a Texas divisional merger.[3] As a result of that divisional merger, Old GP ceased to exist and two new companies were formed:[4]

a) Bestwall (the debtor in this case), which received certain assets and liabilities of Old GP, including (i) Old GP's asbestos liabilities (with the exception of claims made under a workers' compensation statute or similar laws) and (ii) certain assets related to the historical Old Bestwall business; and

b) New GP, which received the other businesses, assets, and liabilities of Old GP, most of which are unrelated to Old Bestwall's historical business.

Id. at ¶ 14.

As of the Petition Date, approximately 64,000 asbestos claims were pending against Bestwall, and Bestwall projected that tens of thousands of additional claims would continue to be filed or asserted against it every year through at least 2050. Submission at ¶¶ 23, 29.

Through the 2017 Corporate Restructuring, Bestwall received, among others, the following tangible assets:

a) three bank accounts with approximately $32 million in cash at the time of the transaction;

b) all contracts of Old GP related to its asbestos-related litigation;

c) certain real estate in Mt. Holly, North Carolina; and

d) all equity interests in non-debtor GP Industrial Plasters LLC, a North Carolina limited liability company ("PlasterCo"), which owns certain assets of Old Bestwall's historical business, is projected to generate annual cash flow (EBITDA) of $18 million starting in 2019, and whose equity was valued at approximately $145 million prior to the Petition Date.

Id. at ¶ 15.

As part of the 2017 Corporate Restructuring, Bestwall also became party to a funding agreement with New GP (the "Funding Agreement"). Id.; see Gordon Declaration at ¶ 7, Ex. A. Without any corresponding repayment obligation by Bestwall, the Funding Agreement requires New GP to provide funding to pay for all costs and expenses of the Debtor incurred in the normal course of its business during the pendency of its Chapter 11 case, including the costs of administering the Chapter 11 case, to the extent that any cash distributions received by Bestwall from its subsidiaries are insufficient to pay such costs and expenses. In addition, and again in the

---

[3] See Tex. Bus. Orgs. Code § 1.002(55)(A).

[4] See Gordon Declaration at ¶ 28, Ex. Z.

3

absence of any corresponding repayment obligation by Bestwall, the Funding Agreement requires New GP to provide the funding for a section 524(g) asbestos trust in the amount required by a confirmed plan of reorganization for Bestwall to the extent that Bestwall's assets are insufficient to provide the requisite trust funding.  Submission at ¶ 17.  In light of the Funding Agreement, which allows the Debtor to draw from New GP the amount of money necessary to pay the costs of this Chapter 11 case and to fund a section 524(g) trust, to the extent the Debtor's assets are insufficient to do so, there is no reason for the Court to conclude, at this point, that the Debtor does not have the ability to fully fund a section 524(g) trust, as well as the administrative costs of its Chapter 11 case.

## DISCUSSION

### I. Dismissal Is Not Appropriate.

#### A. Legal Standard

In the Fourth Circuit, a court may dismiss a Chapter 11 filing as a bad faith filing only when the bankruptcy reorganization is both (i) objectively futile *and* (ii) filed in subjective bad faith.  Carolin Corp. v. Miller, 886 F.2d 693, 700-01 (4th Cir. 1989).

"Th[is] Fourth Circuit standard for dismissal of a Chapter 11 case as a bad faith filing is one of the most stringent articulated by the federal courts."  In re Dunes Hotel Assocs., 188 B.R. 162, 168 (Bankr. D.S.C. 1995).  As the Fourth Circuit stated in Carolin, this two-prong test:

> contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation.  Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold.

886 F.2d at 701.

The moving party "has the burden of proof to establish cause for dismissal."  In re Woodend, LLC, No. 11-31672, 2011 WL 3741071, at *3 (Bankr. W.D.N.C. Aug. 24, 2011) (citing In re Landmark Atl. Hess Farm, LLC, 448 B.R. 707 (Bankr. Md. 2011)); see also In re SUD Props., Inc., 462 B.R. 547, 551 (Bankr. E.D.N.C. 2011) ("First Bank [the movant] bears the burden of demonstrating both objective futility and subjective bad faith by a preponderance of the evidence."); In re Surf City Invs., LLC, No. 11-01398-8-RDD, 2011 WL 5909489, at *4 (Bankr. E.D.N.C. May 6, 2011) (same).

"The Carolin court made clear that the burden of establishing this two-pronged requirement is very high."  Dunes Hotel, 188 B.R. at 168.  The power to dismiss a bankruptcy petition at the outset of a case "is obviously one to be exercised with great care and caution.

Decisions denying access at the very portals of bankruptcy, before an ongoing proceeding has even begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made." Carolin, 886 F.2d at 700.

B. Analysis

1. Objective Futility

Per Carolin, the "objective futility inquiry" should "concentrate on assessing whether there is no going concern to preserve … and … no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" Carolin, 886 F.2d at 701-02 (citation omitted); see also In re Woodend, LLC, 2011 WL 3741071, at *3 (Bankr. W.D.N.C. Aug. 24, 2011) (objective futility prong "focuses on the debtor's financial stability, whether there exists a going concern to preserve, and whether there exists any realistic hope of rehabilitation") (citing Carolin, 886 F.2d at 701).

Attempting to resolve asbestos claims through 11 U.S.C. § 524(g) is a valid reorganizational purpose, and filing for Chapter 11, especially in the context of an asbestos or mass tort case, need not be due to insolvency. The Committee agrees. Committee's Reply at p. 11 ("agree[ing] that section 524(g) may provide a sufficient business purpose for an otherwise solvent debtor to seek Chapter 11 relief"). The volume of current asbestos claims that Bestwall faced as of the Petition Date, coupled with the projected number of claims to be filed through 2050 and beyond, is sufficient financial distress for Bestwall to seek resolution under section 524(g) of the Bankruptcy Code. See Submission at ¶ 23.

Bestwall has the ability to reorganize and establish a trust that meets each of the statutory requirements of section 524(g) of the Bankruptcy Code. Bestwall has substantial assets, owns ongoing active businesses, and receives substantial cash flow. Id. at ¶¶ 15-16. Most importantly, Bestwall has the full ability to meet all of its obligations (whatever they may be) through its assets and New GP's assets, which are available through the Funding Agreement, (id. at ¶ 17), and to continue as a going concern.

The Committee argues that the Court should disregard the Funding Agreement and other support agreements between Bestwall and New GP and that without the Funding Agreement, Bestwall would be unable to reorganize. But the Funding Agreement exists and is enforceable; it cannot be disregarded.

Further, there is no requirement that Bestwall fund the entirety of a section 524(g) trust with its own assets or securities. Section 524(g)(2)(B)(i)(II) contemplates funding through non-debtor sources and requires that a trust be funded "in whole *or in part* by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments" (emphasis added). Indeed, there are multiple section 524(g) cases where trust funding was provided by non-debtors. E.g., In re Mid-Valley, 305 B.R. 425 (Bankr. W.D. Pa. 2004); In re N. Am. Refractories Co., 2007 WL 7645287 (Bankr. W.D. Pa. Nov. 13, 2007); W.R. Grace, Case No. 01-1139 (Bankr. D. Del. 2001).

5

Alternatively, the Committee contends that the Funding Agreement's protections are illusory and insufficient. However, the terms of the Funding Agreement and the evidence of record demonstrate the opposite. The Funding Agreement is a binding and enforceable contractual obligation. New GP has performed all of its obligations under the Funding Agreement to date and New GP repeatedly has reaffirmed its commitment to honor those obligations going forward. And contrary to the Committee's assertion that New GP has refused to provide information about its finances, Bestwall has worked with New GP to provide both the Committee and the Future Claimants' Representative with New GP's 2017 audited financial statement and certain other requested financial information for New GP, including balance sheets, income statements, cash flow statements, and financial projections. See Gordon Declaration at ¶ 3.

The Committee has not pointed to any evidence that either party to the Funding Agreement has acted other than in full compliance with its terms. Rather, the Committee presents scenarios to suggest that, were it so motivated, New GP might seek to evade its performance obligations. While the Court may share some of those concerns, they are unsubstantiated and insufficient for dismissal. Any issues and concerns about the Funding Agreement can be addressed in the plan confirmation process.

Even outside of the Funding Agreement, Bestwall owns substantial assets and operating businesses that produce cash flow. These include bank accounts that contain approximately $20 million in cash, real estate that generates monthly lease revenue, and, most materially, the equity interest in non-debtor PlasterCo, which is projected to generate $18 million in annual EBITDA in 2019 and beyond and whose equity is valued at approximately $145 million. Submission at ¶¶ 15-16. Unlike the debtor in In re W. Asbestos Co., 313 B.R. 832 (Bankr. N.D. Cal. 2003), relied upon by the Committee, Bestwall is not a "defunct company." Id. at 852. Bestwall owns a substantial operating business that generates cash flow; it has the ability to make future payments as required by section 524(g)(2)(B)(i)(II) of the Bankruptcy Code.

For those same reasons (i.e., Bestwall owns assets and businesses that generate revenue), Bestwall satisfies any applicable "ongoing business requirement" in sections 524(g) and 1141(d)(3) of the Bankruptcy Code. The Committee argues that Bestwall cannot satisfy the ongoing business requirement because it is a holding company. The Court disagrees. Bestwall owns substantial operations through its non-debtor subsidiaries, and there is nothing novel about a holding company filing for Chapter 11 relief. Numerous Chapter 11 debtors, including those who have successfully established section 524(g) trusts, were holding companies with non-debtor operating subsidiaries. See, e.g., In re Gulfmark Offshore, Inc., Case No. 17-11125 (Bankr. D. Del. 2017); In re Specialty Prods. Holding Corp., Case No. 10-11780 (Bankr. D. Del. 2010); In re DDI Corp., Case No. 03-15261 (Bankr. S.D.N.Y. 2003); In re XO Commc'ns, Inc., Case No. 02-12947 (Bankr. S.D.N.Y. 2002); In re Williams Commc'ns Grp., Inc., Case No. 02-11957 (Bankr. S.D.N.Y. 2002); In re NII Holdings, Inc., Case No. 02-11505 (Bankr. D. Del. 2002); In re Mercury Finance Co., Case No. 98-20763 (Bankr. N.D. Ill. 1998).

In addition to holding subsidiary stock worth approximately $145 million, Bestwall has millions of dollars in cash of its own. It also has the Funding Agreement—which permits Bestwall to draw from New GP an uncapped amount of money to pay the costs of this Chapter

11 case and fund Bestwall's liabilities to the extent that its assets are insufficient to do so. Because Bestwall has the resources with which to reorganize, this case is not objectively futile and dismissal is not appropriate.

Finally, the Committee raises concerns about the delay caused by this case and the claimants' inability to proceed with litigation in state court. But the claimants represented by the Committee are not necessarily worse off with this Chapter 11 case. Their claims can be sufficiently addressed and fairly adjudicated through a section 524(g) trust.

### 2. Subjective Bad Faith

Because the Court concludes that this case is not objectively futile, it need not (and does not) reach the issue of whether this case was filed in subjective bad faith. The Court will ultimately have to rule on Bestwall's good faith, albeit in a different context, at confirmation.

## II. Venue Transfer Is Not Appropriate.

Alternatively, the Committee requests, pursuant to 28 U.S.C. § 1412, that the Court transfer venue of this case to Delaware or another appropriate venue either (a) in the interests of justice or (b) for the convenience of the parties.

As an initial matter, venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Bestwall formed as a Texas limited liability company on July 31, 2017 and then transferred its domicile to North Carolina 94 days prior to the Petition Date – i.e., for a longer portion of the 180-day period required by 28 U.S.C. § 1408. See Submission at ¶ 14. The Committee has acknowledged that the Debtor has, technically, complied with the statutory venue provisions. Motion, at ¶ 47.

Where, as here, the venue of a Chapter 11 case is valid, the "debtor's [] choice of forum [is to] be accorded substantial weight and deference." In re PWS Holding Corp., Case Nos. 98-212-SLR through 98-223-SLR, 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998); see also In re Enron Corp., 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) (same). "[W]here the existing venue is entirely appropriate, this Court exercises its power to transfer cases cautiously." In re Land Stewards, L.C., 293 B.R. 364, 369 (Bankr. E.D. Va. 2002).

A debtor's choice of forum is presumed to be "a proper district for venue purposes and the party challenging a debtor's choice must show by a *preponderance of the evidence* that the venue is improper." In re Honeycutt, No. 12-06921-8-JRL, 2012 Bankr. LEXIS 5857, at *6-7 (Bankr. E.D.N.C. Dec. 21, 2012) (citations omitted) (emphasis added); see also In re Baltimore Food Sys., Inc., 71 B.R. 795, 798 (Bankr. D.S.C. 1986).

The Committee has failed to carry its burden: Neither the interests of justice nor the convenience of the parties warrants transferring venue of this case.

7

A. Interests of Justice

The interests of justice standard "is applied based on the facts and circumstances of each case." Enron Corp., 284 B.R. at 403 (citation omitted). Courts consider a variety of factors, such as: (1) whether transfer promotes the economic and efficient administration of the bankruptcy estate; (2) whether transfer facilitates judicial economy; (3) the parties' ability to receive a fair trial in either venue; (4) whether either forum has an interest in deciding controversies within its jurisdictional borders; (5) whether transfer would affect the enforceability of any judgment rendered; and (6) whether the debtor's original choice of forum should be disturbed. See Brown v. Wells Fargo, NA, 463 B.R. 332, 338 (M.D.N.C. 2011).

Ultimately, the key consideration is "whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness." In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990); see also Yolo Capital, Inc. v. Normand, No. 1:17-CV-00180-MR DLH, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018) ("Not all of these [interest of justice] factors are weighed equally, however, as the most important of these factors is the economic and efficient administration of the estate.") (citing Hilton Worldwide, Inc. v. Global Benefits Admin. Comm. v. Caesars Entm't Corp., 532 B.R. 259, 274 (E.D. Va. 2015)).

Of all the factors that apply, they all weigh against transferring venue. Bestwall is neither organized in Delaware, nor does it have its principal place of business or assets there. Bestwall is domiciled in the Western District of North Carolina, and many of its assets are here. Most importantly, retaining the case in this district best promotes the efficient administration of Bestwall's estate because, among other things, it avoids the superfluous administrative expenses and delay associated with transferring a case that has been pending in this district for over a year (by the time of the hearing on the Motion) to a court in another district. See In re Pavilion Place Assocs., 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) (explaining that "transfer is a cumbersome disruption of the [C]hapter 11 process") (citations omitted).

In support of its Motion, the Committee cites the Patriot Coal case from the Southern District of New York. See 482 B.R. 718 (Bankr. S.D.N.Y. 2012). Patriot Coal, however, is distinguishable and does not support a transfer of venue in this case. In Patriot Coal, the debtors created, on the eve of bankruptcy, two New York domiciled shell entities with essentially no assets to take advantage of the "affiliate filing rule" to permit the entire corporate family to file in New York. The New York entities were not the relevant entities for the Chapter 11 restructuring (i.e., they were not the entities with the operations and debt in need of restructuring); they were just a tool to allow affiliates with businesses outside of New York to file in the preferred court.

Here, Bestwall did not take advantage of the status of any of its affiliates to manufacture venue. In fact, no affiliates filed at all, and Bestwall is the only debtor. Further, Bestwall is not a shell company, as were the entities created in Patriot Coal. Instead, Bestwall has substantial assets. As a result, there were important legal consequences to the selection of a state to govern Bestwall's formation. Among other things, the decision to organize Bestwall in North Carolina (1) subjected it to the laws of North Carolina, (2) impacted its fiduciary obligations and the

8

standards that govern indemnification and exculpation of its officers and directors, (3) required the payment of franchise taxes to North Carolina, and (4) created oversight of Bestwall by North Carolina governmental authorities. As a result, Bestwall accepted not just the potential benefits of organizing in North Carolina, but any legal burdens as well. This was not the case in Patriot Coal, where the newly created entities had no true assets.

Further, Bestwall is not itself an operating company like the primary debtors in Patriot Coal. As a result, where Bestwall's Chapter 11 case should be venued "in the interest of justice" is a less relevant question than when a debtor files in a jurisdiction that is separate from where it actually conducts its operations. A court in this district expressly recognized as much in its decision denying a transfer of venue of another pending asbestos case, In re Kaiser Gypsum Co., Inc., No. 16-31602 (Bankr. W.D.N.C. Jan. 30, 2017). See *Order Denying Motion of Certain Kaiser Gypsum Claimants to Transfer Chapter 11 Cases to the United States District Court for the Western District of Washington* [Docket No. 348] (Decl. Ex. Y).

As in Kaiser Gypsum, there is no compelling basis to transfer venue in the interests of justice because Bestwall is not operating a business with numerous employees, vendors, customers, and tangible assets in a separate location, which was the concern leading to a venue transfer in Patriot Coal.

The Committee has not shown by a preponderance of the evidence that Bestwall's case should be transferred to Delaware or any other venue in the interests of justice.

B. Convenience of the Parties

The Committee also argues that this case should be transferred to the District of Delaware or any other appropriate jurisdiction for the convenience of the parties.

Courts evaluate six factors in determining convenience of the parties: "(1) the proximity of creditors of every kind to the court; (2) the proximity of the Debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur." In re Lakota Canyon Ranch Dev., LLC, Case No. 11-03739-8, 2011 WL 5909630, at *3 (Bankr. E.D.N.C. 2011). "The consideration given the most weight is the economic and efficient administration of the estate." In re Dunmore Homes, Inc., 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008). Courts have also considered the learning curve of a case if transferred and the ability of interested parties to participate in the proceedings and the additional costs that might be incurred in doing so. Id.

Here, the factors do not support a transfer of venue. Bestwall's creditors are not located in, or clustered around, Delaware. They are spread throughout the country. Thus, Delaware is no more convenient to asbestos claimants than North Carolina or any other state. None of Bestwall's representatives are located in Delaware. In fact, Bestwall's headquarters in Atlanta is closer to Charlotte than to Delaware. None of the known potential witnesses in this case, including any representatives of Bestwall or New GP, are located in Delaware. Similarly, none

9

of Bestwall's tangible assets are located in Delaware; they, instead, are located in North Carolina.

The Committee argues that convenience of the parties is supported by the location of its own counsel and counsel to the Future Claimants' Representative in Delaware. But location of counsel to a party in interest selected by that party after the filing of the Chapter 11 case has no bearing on venue. See In re Great Am. Res., Inc., 85 B.R. 444, 446 (Bankr. N.D. Ohio 1988) ("venue decisions should not merely shift the inconvenience from one party to another") (citations omitted).

The Committee also argues that "economic and efficient administration of the estate" supports transfer to the District of Delaware. The Committee's position is that the case should be transferred to Delaware because courts within the Third Circuit have significant experience with, and a comprehensive body of case law governing, asbestos bankruptcies. But nowhere does the Committee cite any case law that stands for the proposition that the existence of case law in another jurisdiction justifies the transfer of a properly venued Chapter 11 case "for the convenience of the parties." Moreover, courts in this jurisdiction have experience with asbestos-related Chapter 11 cases, including the Garlock and Kaiser Gypsum Chapter 11 cases, as well as the body of law that exists from the Fourth Circuit on mass tort cases. See In re Garlock Sealing Tech., LLC, 504 B.R. 71 (Bankr. W.D.N.C. 2014); In re Kaiser Gypsum Co., Inc., Case No. 16-31602 (Bankr. W.D.N.C. 2016); Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir. 1988); In re A.H. Robins Co., Inc., 880 F.2d 694 (4th Cir. 1989).

The Committee has not shown by a preponderance of the evidence that Bestwall's case should be transferred to Delaware or any other jurisdiction for the convenience of the parties.

## CONCLUSION

For reasons presented in this Memorandum Opinion and Order, and for the reasons stated in the Court's oral ruling on the record at the January hearing:

1. The Committee's Motion is **DENIED**.

2. This Memorandum Opinion and Order shall be immediately effective and enforceable upon its entry.

3. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, or enforcement of this Memorandum Opinion and Order.

**SO ORDERED.**

This Order has been signed electronically.    United States Bankruptcy Court
The judge's signature and court's seal appear
at the top of the Order.