**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BESTWALL LLC[1] | : | Case No. 17-31795 (LTB) |
| | : | |
| Debtor. | : | |
| | : | |

**THE DEBTOR'S OBJECTION TO MOTION OF THE OFFICIAL
COMMITTEE OF ASBESTOS CLAIMANTS TO (I) DISMISS
THE CHAPTER 11 CASE FOR CAUSE, OR ALTERNATIVELY,
(II) TO SET A DEADLINE (A) BY WHICH THE DEBTOR MUST
CONFIRM A CHAPTER 11 PLAN OR (B) LIFT THE PRELIMINARY
INJUNCTION IN FAVOR OF NEW GP AND THE PROTECTED PARTIES**

The above-captioned debtor and debtor in possession (the "Debtor" or "Bestwall") files this Objection to the *Motion of the Official Committee of Asbestos Claimants to (I) Dismiss the Chapter 11 Case for Cause Pursuant to 11 U.S.C. § 1112(b), or Alternatively, (II) to Set a Deadline (A) by Which the Debtor Must Confirm a Chapter 11 Plan or (B) Lift the Preliminary Injunction in Favor of New GP and the Protected Parties* [Docket No. 938] (the "Second Motion to Dismiss") filed by the Official Committee of Asbestos Claimants (the "ACC").

**INTRODUCTION**

The Second Motion to Dismiss should be denied because this Court already has rejected the primary arguments it presents, and the new argument — that Bestwall has failed to prosecute this case — is groundless. The ACC, in the main, recycles the same complaints that the Court considered and rejected as a basis for dismissal in its order [Docket No. 891] (the "Dismissal Order") denying the ACC's first motion to dismiss [Docket No. 495] (the "First Motion to

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, GA 30303.

Dismiss"). This attempt by the ACC to re-litigate issues already decided (and over which the ACC now is pursuing an appeal) should be denied.[2]

The only new argument in the Second Motion to Dismiss is the unfounded assertion that Bestwall has failed to timely prosecute this case and has accomplished nothing in its reorganization to date. This charge is belied by the record, which demonstrates that Bestwall has prosecuted this case expeditiously. This case bears no similarity to the cases cited by the ACC in which dismissal for delay was appropriate due to the egregious conduct of a debtor shirking its responsibilities as a debtor in possession. In numerous status updates provided to this Court — both in writing and on the record at hearings — Bestwall has kept the Court informed of its ongoing efforts to advance this case and to pursue a consensual resolution with the ACC and the FCR. Not once over the last 22 months has the ACC or any other party suggested that Bestwall has failed to prosecute this case.

From the outset, Bestwall has worked to achieve a swift, consensual resolution of this case. Bestwall moved this case forward by: (1) first, engaging the ACC and the FCR in early efforts to negotiate a global settlement, including by providing substantial informal discovery; and (2) then, after the Court's denial of the ACC's First Motion to Dismiss and the granting of the Debtor's motion for a preliminary injunction prohibiting and enjoining the filing or prosecution of asbestos-related claims against affiliates of the Debtor [Adv. Docket No. 2] (the "PI Motion"), pursuing an aggregate estimation of its asbestos liabilities, which estimation the ACC and the FCR initially agreed was the next productive step in this case but now oppose

---

[2] The Second Motion to Dismiss also includes complaints about Bestwall's request for an estimation proceeding pursuant to section 502(c) of the Bankruptcy Code [Docket No. 875] (the "Estimation Motion"). Those complaints are not addressed herein. Instead, concurrently with this Objection, Bestwall is filing a reply in support of the Estimation Motion (the "Estimation Reply"), which responds to objections to the Estimation Motion made by the ACC and the Future Claimants' Representative appointed in this case (the "FCR").

NAI-1508784260                                     2

without offering any other alternative. The Debtor, at the same time, has fulfilled all of its obligations as a debtor in possession.

If this case has not proceeded as quickly as the ACC might prefer, that is only because the ACC sought to dismiss the case and opposes Bestwall's efforts to move forward with an estimation proceeding of the kind conducted in other asbestos chapter 11 cases. Delay caused by the ACC's own approach to this case cannot be used to establish cause for the dismissal it desires.

## BACKGROUND

From the first day of this case, Bestwall has stated that its goal is to negotiate and confirm a consensual section 524(g) plan of reorganization. *See Decl. of Tyler Woolson in Support of First Day Pleadings* [Docket No. 2] ¶ 15. And Bestwall has made substantial progress in advancing this case towards that ultimate goal.

### A.     Transition to Chapter 11 and Case Administration

First, Bestwall successfully transitioned into chapter 11 and has fulfilled its duties as a debtor in possession throughout this case. Among other things, Bestwall:

    a.    worked cooperatively with the Bankruptcy Administrator to obtain the appointment of the ACC and, thereafter, worked with the ACC to identify and obtain the appointment of the FCR;

    b.    obtained "first day" relief to establish procedures for the efficient administration of this case and to promote Bestwall's reorganization efforts;

    c.    obtained "second day" relief to promote the efficiency of Bestwall's operations;

    d.    completed and filed its schedules of assets and liabilities [Docket No. 156] and statement of financial affairs [Docket No. 155] and participated in the meeting of creditors under section 341 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

   e.  completed its required reporting obligations in this case;[3] and

   f.  established non-asbestos claims bar dates [Docket No. 661].

**B. Effort at Early Settlement**

Once the ACC and the FCR were appointed and retained counsel, Bestwall engaged with these parties to explore the opportunity for a prompt and consensual resolution of its asbestos liabilities consistent with section 524(g) of the Bankruptcy Code. This initial effort to negotiate a settlement was pursued with the express agreement of both the ACC and the FCR. Bestwall has documented its efforts in that regard in numerous pleadings and in reports provided during regular hearings before the Court.

Agreements were reached with the ACC and the FCR to maintain the *status quo* and provide time to conduct settlement talks, including (1) a series of agreed orders to extend the preliminary injunction until the PI Motion could be briefed and decided [Adv. Pro. Docket Nos. 32, 33, 36, 41, 91, 125, 136, 141, 152, 157, 160, 162] and (2) agreed orders and related agreements extending the time for the ACC or the FCR to file a dismissal motion (or other "Challenge Motion") and permitting any such motion, nonetheless, to be deemed timely [Docket Nos. 135, 186, 314, 419, 457, 552].

Bestwall's efforts at pursuing an early settlement included extensive informal discovery with the ACC and the FCR. In total, as of September 28, 2018, Bestwall had produced 53,451 documents, totaling 195,052 pages, of historic corporate records, transactional documents, financial statements, certain non-privileged documents from Bestwall's litigation files and other documents, and 4,995,583 documents, totaling 7,152,525 pages, in a sales records database. *See,*

---

[3] This includes four reports under Rule 2015.3 of the Federal Rules of Bankruptcy Procedure [Docket Nos. 116, 418, 698, 870] and 21 monthly status reports. *See* Docket Nos. 163, 197, 295, 359, 397, 420, 433, 474, 617, 643, 663, 712, 743, 770, 783, 807, 858, 871, 882, 908, 969 (collectively, the "Monthly Status Reports").

*e.g., Decl. of Gregory M. Gordon in Support of Debtor's Obj. to First Mot. to Dismiss* [Docket No. 641] (the "Gordon Declaration") ¶ 3. Bestwall also provided the ACC and the FCR with access to Bestwall's asbestos claims database *Id.*[4] Along with its non-debtor affiliate Georgia-Pacific LLC ("New GP"), Bestwall also conducted three in-person settlement meetings and numerous other settlement discussions with the ACC and the FCR in the first nine months of this case until the time the ACC filed the First Motion to Dismiss. Id. ¶ 5.[5]

Despite months of good faith effort, the parties were not able to achieve an early resolution of this case. Having failed to achieve a settlement acceptable to it by August 2018, the ACC filed the First Motion to Dismiss in an effort to end the case. At the same time, the ACC and the FCR objected to the PI Motion. That objection sought essentially the same result as the First Motion to Dismiss — the practical end of the case. To eliminate the preliminary injunction would allow claimants to circumvent the chapter 11 process by pursuing against New GP the same claims that are the subject of the Bestwall bankruptcy case.

### C. Litigation of the First Motion to Dismiss and the PI Motion

Bestwall spent months litigating whether this case should be dismissed or transferred to a different venue, as requested by the ACC, and whether the filing or prosecution of asbestos-related claims against affiliates of the Debtor should be prohibited and enjoined to support the prosecution of this case. After the Court announced its rulings in the Debtor's favor on January 24, 2019, Bestwall prepared proposed orders reflecting those rulings and spent substantial time engaging in discussions with the ACC, the FCR and New GP regarding those

---

[4] Bestwall has continued to provide documents to the ACC and the FCR since the date of the Gordon Declaration.

[5] Settlement discussions continued even after the hearing on the First Motion to Dismiss and the PI Motion in November 2018 until just before the Court issued its oral rulings on the First Motion to Dismiss and the PI Motion on January 24, 2019.

draft orders.  Bestwall's efforts resulted in the orders being submitted to the Court on May 8, 2019, on an agreed basis.

On July 29, 2019, the Court entered the Dismissal Order and a memorandum opinion and order granting the PI Motion and overruling the ACC's and the FCR's objections [Adv. Docket No. 164] (the "PI Order").  Through these efforts, Bestwall advanced this case by securing judicial determinations of two hotly contested issues.

### D.     Estimation

As set forth in Bestwall's Informational Brief [Docket No. 12], filed at the commencement of this case, it has always been Bestwall's intention to request that the Court estimate the aggregate amount of current and future asbestos liability for plan purposes in the event that a prompt consensual resolution could not be reached.  Following the Court's January 24, 2019 oral ruling and in advance of the entry of the Dismissal Order and the PI Order, Bestwall immediately focused its attention on preparations for the next phase of the case.  Bestwall promptly reached out to the ACC and the FCR to engage in discussions regarding the details of the estimation process, leading to an in-person meet-and-confer session in New York on February 25, 2019 (the "February Meeting").

At the February Meeting, the ACC's and the FCR's counsel agreed that estimation should proceed.  In March 2019, the ACC confirmed that position on the record, stating that "we are comfortable with at least proceeding down the road of estimation."  Mar. 21, 2019 Hr'g Tr. at 14.  Three months later, counsel again confirmed that the ACC did not intend to oppose estimation, stating it "would be the next logical step in the case."  June 20, 2019 Hr'g Tr. at 17-18.  The parties also agreed that estimation would focus on mesothelioma claims and that a 93% / 7% mesothelioma/non-mesothelioma-percentage split would be used to estimate non-mesothelioma claims.  *See* Apr. 25, 2019 Hr'g Tr. at 11-13; June 20, 2019 Hr'g Tr. at 7-8.

Further, the parties began discussions regarding the products manufactured and sold by Bestwall's predecessors that should be included in the estimation.  As early as the February Meeting, counsel for the ACC indicated that an estimation that covered all products might be too complicated and expressed an interest in considering a joint compound-only estimation.  In later discussions, all parties indicated a preference to limit the estimation to joint compound products.  From Bestwall's perspective, this makes sense because the overwhelming majority of claims litigated in the decades leading up to the bankruptcy filing involved joint compound products.  And this was the case even though the plaintiffs' bar has long known about non-joint compound products, including those that used talc as an ingredient, manufactured and sold by Bestwall's predecessors as a result of 40 years of tort litigation discovery.[6]  The primary open issue in discussions among the parties related not to the products that would be subject to estimation, but the scope of discovery.

In an effort to minimize disputes on estimation-related issues that would have to be brought to the Court, Bestwall delayed filing its Estimation Motion for several months as negotiations continued with the ACC and the FCR.  During this time, Bestwall provided regular updates on the progress of these negotiations to the Court.[7]  When it appeared that the parties had reached agreement on as many issues as possible, Bestwall filed the Estimation Motion on June 19, 2019.  Consistent with the parties' discussions, after the filing of the Estimation Motion, the ACC's counsel remarked on the record that "it may make sense to do a joint compound trial first because all the parties sort of understand what that looks like."  June 20, 2019 Hr'g Tr. at 19.

---

[6]   *See* Estimation Reply at 1 n.3, 6 n.6, 6-7.

[7]   *See* Mar. 21, 2019 Hr'g Tr. at 10-12; Apr. 25, 2019 Hr'g Tr. at 11-14; *see also Monthly Status Report for the Month of February 2019* [Docket No. 807], at 2-3; *Monthly Status Report for the Month of March 2019* [Docket No. 858], at 3; *Monthly Status Report for the Month of April 2019* [Docket No. 871], at 3.

The parties agreed to defer disputes over estimation-related discovery until after a ruling on the Estimation Motion and reserved their respective rights to seek further estimation, as necessary, regarding other products. *See id.* at 8-9, 12-13, 18-19. At the ACC's request, Bestwall delayed filing motions seeking estimation-related discovery. Finally, the parties agreed to and announced to the Court a briefing and hearing schedule that would permit the Court to expeditiously resolve remaining issues regarding the scope of estimation and estimation-related discovery.

But only a week after the June 20 hearing, and despite more than four months of negotiations over the parameters of estimation, the ACC and the FCR advised Bestwall that they now intended to oppose any estimation at all. The parties advised the Court of the ACC's and the FCR's changed positions at a telephonic status conference conducted on July 11, 2019.[8]

A litany of challenges ensued, as the ACC adopted a posture of general opposition to further efforts to advance this case. On August 12, 2019, the ACC filed a notice of appeal from the Dismissal Order, as well as (1) a motion for leave to appeal the Dismissal Order together with a memorandum of law in support [Docket Nos. 918, 919], (2) a motion for certification of a direct appeal to the Fourth Circuit Court of Appeals [Docket No. 920] and (3) a motion for reconsideration of the PI Order [Adv. Docket No. 166].

On August 16, 2019, the ACC filed the Second Motion to Dismiss. On that same date, the ACC and the FCR filed objections to the Estimation Motion [Docket Nos. 936, 937], arguing that no estimation should be conducted, but offering no alternative to move this case forward to a confirmed plan of reorganization. These objections largely re-urge the ACC's rejected dismissal arguments and effectively seek the same relief the Court has already denied: an end to this bankruptcy case. Irrespective of the ACC's and the FCR's abrupt change of position, this case

---

[8] July 11, 2019 Hr'g Tr. at 15.

should not be dismissed and estimation remains an important step towards confirmation of a section 524(g) plan of reorganization.

## ARGUMENT

I. **THE SECOND MOTION TO DISMISS INAPPROPRIATELY SEEKS DISMISSAL BASED ON THE SAME COMPLAINTS THE COURT ALREADY REJECTED.**

The Second Motion to Dismiss raises many of the same complaints as the First Motion to Dismiss. At its core, the ACC's argument is that the structure of this bankruptcy case is unfair, and as a result, this case should be dismissed and the asbestos claimants should be allowed to return to the tort system. As it did in the First Motion to Dismiss, the ACC also makes a number of inflammatory statements about Bestwall's intentions and motives. The arguments remain baseless, and the statements are still untrue. In fact, this Court already found, among other things, that (a) this case was filed for a proper reorganizational purpose (Dismissal Order at 5), (b) the supporting funding agreement from the prepetition restructuring should be respected and cannot be ignored (Dismissal Order at 5) and (c) the asbestos claimants "are not necessarily worse off with this Chapter 11 case" because "[t]heir claims can be sufficiently addressed and fairly adjudicated through a section 524(g) trust." Dismissal Order at 7.[9]

Comparing text from the two dismissal motions reveals that the complaints underlying each motion are fundamentally the same:

| **First Motion to Dismiss** | **Second Motion to Dismiss** |
|---|---|
| "The Debtor's bankruptcy proceeding is little more than a litigation tactic." First Mot. to Dismiss at 1. | "A trial seeking the estimation of joint compound that the Debtor is now proposing is a litigation tactic that will serve only to delay recovery to claimants and prolong resolution of this case." Second Mot. to Dismiss ¶ 4. |

---

[9] As a result, in the Dismissal Order, the Court held that the case is not objectively futile and thus, under the Fourth Circuit standard set forth in *Carolin v. Miller*, 886 F.2d 693 (4th Cir. 1989), not subject to a dismissal as a bad faith filing. The Second Motion to Dismiss does not challenge this conclusion.

| **First Motion to Dismiss** | **Second Motion to Dismiss** |
|---|---|
| "Bestwall's bankruptcy filing is a bad faith litigation tactic by Old GP (and its successor in interest, New GP) to avoid the tort system through the extension of the automatic stay, to reduce its asbestos liability by having that liability revalued in a bankruptcy case while intending to threaten and criticize the asbestos victims and lawyers in the hope of negotiating leverage, and use the court's estimation process solely to take advantage of the Bankruptcy Code's distribution scheme." *Id.* ¶ 37. | "Bestwall's true purpose in filing this chapter 11 case [is] to use the chapter 11 process as a litigation tactic against thousands of asbestos claimants by disavowing its historical settlement decisions, and seeking a contrived, fanciful value for its 'legal liability,' a made-up term for a made-up concept." *Id.* ¶ 15.<br><br>"It seeks to accomplish this [alleged bankruptcy discount] by making disparaging allegations against its victims and their tort counsel — similar to those made in *Garlock* — designed not to achieve a fair settlement, but to instead intimidate the plaintiffs' representatives and to use this case to improperly provide it with leverage that does not exist outside of bankruptcy." *Id.* ¶ 5. |
| "Old GP contrived the Corporate Restructuring and Bestwall's bankruptcy filing as a tactic to hinder, delay and defraud its creditors in order to shield Old GP and New GP from Georgia-Pacific Asbestos Liabilities and shift the true value of Old GP's equity to its insiders without technically running afoul of fraudulent transfer laws." *Id.* at 4. | "The Corporate Restructuring, carefully planned and carried out in anticipation of the bankruptcy filing, was designed to provide the other successor of the Corporate Restructuring, New GP, with the benefits of bankruptcy protection without requiring it to submit to bankruptcy jurisdiction." *Id.* ¶ 22. |
| "The Debtor's bankruptcy case was not filed in order to maximize the recoveries of the asbestos creditors; in fact, the exact opposite is patently obvious." *Id.* | "Languishing in chapter 11 for years simply to permit the Debtor time to attempt to force its asbestos victims into submission for the benefit of New GP, GP holdings, and KI — the real parties who hold the purse strings here — is not maximizing property available to creditors." *Id.* ¶ 46. |
| "With no viable business to reorganize, and no need to seek bankruptcy protection except to avail itself of the automatic stay, the Committee has demonstrated objective bad faith." *Id.* ¶ 46. | "[T]here is no preservation of a going concern at issue here. The Debtor is a holding company; it has no business operations, no employees, no debt, no insurance, and no creditors — other than asbestos claimants. There is no 'going concern' to salvage, no jobs to preserve, and no traditional trade creditors hoping to continue to do business with a reorganized entity in this Chapter 11 Case." *Id.* ¶ 44. |

Although the Second Motion to Dismiss does not expressly seek dismissal on the ground that Bestwall's case was a bad faith filing, it is a repackaging of the same charges made in

the First Motion to Dismiss, *i.e.*, that this case was filed in bad faith, for an improper motive, based on an inappropriate prepetition restructuring and therefore should be dismissed to allow asbestos claimants to return to the tort system. These issues have been considered and rejected by the Court.

The ACC's remedy to address its dissatisfaction with the Dismissal Order is to pursue an appeal, which it has lodged. Its attempt to use the Second Motion to Dismiss as a means to re-litigate issues already decided should be rejected.

## II.   THERE HAS BEEN NO FAILURE TO TIMELY PROSECUTE THIS CASE.

The ACC identifies only a single putative new basis for dismissal — the failure to timely prosecute this case.[10] This allegation is entirely belied by the record.

### A.   Bestwall Has Not Delayed This Case.

Substantial progress has been made in this case, as described in detail above. The Debtor has pursued a consensual resolution of this case as it indicated it would from the outset and progress has been clearly documented on the record. Until the filing of the Second Motion to Dismiss, the ACC never once complained about the Debtor's failure to prosecute this case, nor could it. All of the Debtor's activities in this case have been done in collaboration and coordination with the ACC and the FCR with the goal of pursuing a consensual plan of reorganization.

---

[10]   The ACC cites two cases, neither of which is from this jurisdiction, in support of the proposition that cause exists to dismiss for failure to timely prosecute this case. The circumstances warranting dismissal or conversion in those cases, however, were egregious and clearly distinguishable from the present case. In *In re Bacon*, 52 B.R. 52 (Bankr. N.D. Iowa 1985), the debtor had failed, for 16 months, to file the monthly reports required by the applicable local rules and also failed to amend a "patently inadequate" disclosure statement for six months, although the court had ordered the debtor to amend it in ten days. In *In re Integrated Pet Foods, Inc.*, No. 03-33362 DWS, 2004 WL 2252119, at *5-7 (Bankr. E.D. Pa. Sept. 17, 2004), the debtor had filed <u>five</u> materially deficient disclosure statements "with substantial guidance at each juncture," did not "play it straight with the court," and appeared to be unable to satisfy administrative expenses. There is no such evidence in this record.

With the agreement of the ACC and the FCR, Bestwall dedicated its efforts in the initial phase of the case to seeking a prompt, consensual resolution of Bestwall's asbestos-related liabilities without the need for an estimation trial, including both informal discovery and multiple settlement discussions and meetings. This exemplifies working collaboratively towards a prompt settlement, consistent with the goals of chapter 11.

Further, in the interest of quickly implementing any settlement achieved, Bestwall prepared a draft plan of reorganization modeled after consensual plans used in other asbestos bankruptcy cases. Bestwall provided the draft to the ACC and the FCR on August 13, 2018, and invited the parties to provide comments or engage in a dialog about plan terms. Bestwall never received formal comments on the plan from the ACC or the FCR and filed the plan on May 2, 2019 [Docket No. 860] (the "Plan").[11] In the Second Motion to Dismiss, the ACC argues that the plan is a "shell plan that is unconfirmable on its face" (Second Mot. to Dismiss ¶ 2) and that "key operative provisions . . . namely the terms for compensation for asbestos victims" are missing from the plan. Second Mot. to Dismiss ¶ 19. As Bestwall has reported a number of times, its goal in filing the draft plan was to provide a means for the parties to quickly implement any settlement achieved. The "missing" terms are simply terms that Bestwall hoped (and still hopes) would be completed following the achievement of a settlement.

Once the initial settlement discussions proved unsuccessful, and without a settlement to their liking, the ACC pursued a litigation strategy to end the case, filing the First Motion to Dismiss and an objection to the PI Motion. The parties spent months briefing and then arguing

---

[11] In the Second Motion to Dismiss, the ACC argues that Bestwall, through its solvency and careful planning, has in some way created an infinite *de facto* extension of exclusivity. Second Mot. to Dismiss ¶ 40. This argument makes little sense, and its conclusion is simply untrue. Bestwall extended exclusivity to the maximum permitted by the Bankruptcy Code, and the extended period of exclusivity has ended. Bestwall no longer has the exclusive right to file or solicit a plan of reorganization and does not assert such a right. Any party, including the ACC, is free to file a plan of reorganization, if it so desires.

their respective positions, all in accordance with a schedule agreed to by the ACC and the FCR. The parties, however, also continued settlement discussions through January 2019, just before the Court ruled on the First Motion to Dismiss and the PI Motion.

Since the Court announced its rulings, Bestwall has pursued the next logical step of the case — obtaining an estimation of its asbestos liabilities to promote a settlement of this case and the confirmation of a section 524(g) plan. Indeed, Bestwall expended significant time and effort attempting to reach consensus with the ACC and the FCR with respect to an estimation process, and, until recently, understood that the ACC supported estimation. Unfortunately, as reported at the July 11, 2019 status conference, the ACC ultimately changed course and determined that it would oppose estimation.[12]

The record clearly demonstrates that Bestwall conscientiously has pushed this case forward, progress has been made and dismissal, accordingly, is not warranted.

**B.    The ACC's Own Activities Have Impacted the Pace of This Case.**

The ACC makes a number of untrue (and caustic) statements about Bestwall's motives and conduct in this case, including that Bestwall's "true purpose in filing this chapter 11 case [is] to use the chapter 11 process as a litigation tactic against thousands of asbestos claimants" (Second Mot. to Dismiss ¶ 15), that Bestwall intends to "intimidate or starve" claimants into a lower settlement (Second Mot. to Dismiss ¶ 21) and has spent "the last 1½ years . . . devising ways to hold claimants hostage in bankruptcy hoping they will cave into submission to [Bestwall's] demands" (*id.* ¶ 20), and that "we are no closer to resolving this case than when it was filed in November 2017." Second Mot. to Dismiss ¶ 2. Each of these statements is baseless.

---

[12]    July 11, 2019 Hr'g Tr. at 15.

Complex asbestos cases are unique and, as a result, can be protracted.[13] Bestwall has done everything reasonably in its power (aside from simply capitulating to the ACC's demands) to pursue a consensual resolution of this case. Nevertheless, reaching consensus often takes time. Early on, the ACC was happy to engage in extensive informal discovery to obtain information from Bestwall and seek a settlement to its liking. But having failed so far to obtain a settlement acceptable to it, the ACC has sought to end this case in favor of returning the asbestos claims to the tort system for litigation.[14]

Having lost the First Motion to Dismiss and its objections to the PI Motion, the ACC now appears to be committed to thwarting progress by any means. The ACC has determined to (1) fight estimation without offering any alternative to advance this case, and (2) re-litigate dismissal by filing the Second Motion to Dismiss less than three weeks after the entry of the Dismissal Order. The ACC cannot create roadblocks and obstacles and then argue that the resulting delay requires dismissal.

Despite the ACC's accusation that estimation is merely a "litigation tactic" that will in no way advance the case (Second Mot. to Dismiss ¶¶ 4, 15), absent an agreement of the parties, estimation is called for both to formulate a plan and provide the Court with information it will need to determine whether a proposed plan is confirmable. In asbestos-driven bankruptcies, the estimation process itself often can encourage negotiation and consensus building. The ACC's contention that estimation "will provide absolutely no benefit" (Second Mot. to Dismiss ¶ 39), is

---

[13]     *See, e.g.*, *In re Garlock Sealing Techs., LLC*, Case No. 10-31607 (Bankr. W.D.N.C.) (seven years); *In re Specialty Prods. Holding Corp.*, Case No. 10-11780 (Bankr. D. Del.) (four years); *In re W.R. Grace & Co.*, Case No. 01-1139 (Bankr. D. Del.) (thirteen years); *In re G–I Holdings, Inc.*, Case No. 01-30135 (Bankr. D. N.J.) (eight years); *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del.) (six years); *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del.) (six years); *In re USG Corp.*, Case No. 01-2094 (Bankr. D. Del.) (five years); *In re Eagle–Picher Indus., Inc.*, Case No. 91-0100 (Bankr. S.D. Ohio) (six years).

[14]     Indeed, the ACC argues that "[t]he most appropriate plan would be a full pass-through of asbestos liability, which is tantamount to a case dismissal." Second Mot. to Dismiss at 15 n.22.

at odds with the indisputable fact that estimation has led to settlements and confirmed plans in numerous asbestos bankruptcy cases, including *In re Garlock Sealing Technologies* in this jurisdiction.[15]

### III. THERE IS NO BASIS TO SET A PREMATURE AND ARBITRARY DEADLINE FOR BESTWALL TO CONFIRM A PLAN.

As an apparent alternative to immediate dismissal or proceeding with estimation, the ACC has proposed that the Court set a deadline of March 31, 2020, by which Bestwall must confirm a consensual plan or face dismissal or the dissolution of the preliminary injunction. The ACC, however, provides no basis or authority in support of its entirely arbitrary deadline. The ACC simply states that the deadline "represents more than a reasonable amount of time to conclude this Chapter 11 Case." Second Mot. to Dismiss at 18 (paragraph mis-numbered as paragraph 38). This deadline is far from reasonable and is a clear effort to end this case unless the Debtor accedes to the ACC's settlement demands. The deadline itself would not even provide time to begin an estimation proceeding under the current schedule, much less account for the outcome of such estimation or engage in good faith negotiations following such a proceeding.

Although Bestwall has been pursuing a consensual plan since the filing of this case, it cannot achieve that goal alone. The Debtor requests estimation because it is needed at this juncture to advance the case. In estimation, the Debtor, New GP, the ACC and the FCR can all

---

[15] *See, e.g., In re Garlock Sealing Techs., LLC*, Case No. 10-31607 (Bankr. W.D.N.C.); *In re Specialty Prods. Holding Corp.*, Case No. 10-11780 (Bankr. D. Del.); *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del.) (property damage committee reaching settlement following estimation); *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del.); *In re Eagle–Picher Indus., Inc.*, Case No. 91-0100 (Bankr. S.D. Ohio); *see also In re W.R. Grace & Co.*, Case No. 01-1139 (Bankr. D. Del.) (reaching a settlement after the court determined it would conduct an estimation but prior to the court reaching a determination with respect to the appropriate estimated amount); *In re G–I Holdings, Inc.*, Case No. 01-30135 (Bankr. D. N.J.) (same); *In re USG Corp.*, Case No. 01-2094 (Bankr. D. Del.) (same).

present, for the Court's consideration, their assessments concerning, and estimations of, the liabilities at the center of this case. The ACC, by contrast, asks for a deadline for a consensual plan to be confirmed before any estimation process can be started, and the ACC controls whether consensus is achieved. If no settlement with the ACC is achieved, the ACC proposes that the case be dismissed or the preliminary injunction be lifted — the exact relief the ACC has already sought and this Court has denied. The Court should not countenance this transparent attempt to upend the process and allow the ACC to unilaterally control the outcome of this case.

## CONCLUSION

For the foregoing reasons, the Court should deny the Second Motion to Dismiss.

Dated:  September 12, 2019
Charlotte, North Carolina

Respectfully submitted,

*/s / Garland S. Cassada*
Garland S. Cassada (N.C. Bar No. 12352)
Jonathan C. Krisko (N.C. Bar No. 28625)
Richard C. Worf, Jr. (N.C. Bar No. 37143)
Robinson, Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
E-mail:  gcassada@robinsonbradshaw.com
         jkrisko@robinsonbradshaw.com
         rworf@robinsonbradshaw.com

-and-

Gregory M. Gordon (TX 08435300)
Amanda Rush (TX 24079422)
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  gmgordon@jonesday.com
         asrush@jonesday.com

-and-

Jeffrey B. Ellman (GA 141828)
Brad B. Erens (IL 620664)
JONES DAY
Suite 800
1420 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
E-mail:  jbellman@jonesday.com
         bberens@jonesday.com

-and-

James M. Jones (NY 5522115)
David S. Torborg (DC 475598)
C. Kevin Marshall (DC 476266)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
E-mail: jmjones@jonesday.com
         dstorborg@jonesday.com
         ckmarshall@jonesday.com

ATTORNEYS FOR THE DEBTOR
AND DEBTOR IN POSSESSION