UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

　　　　　　Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS

Bestwall LLC ("**Bestwall**" or the "**Debtor**"), the debtor and debtor in possession in the above-captioned chapter 11 case, brings this motion (the "**Motion**") under Bankruptcy Rule 2004 for examination of (a) the Delaware Claims Processing Facility ("**DCPF**") with respect to the ten asbestos personal injury trusts it manages (collectively, the "**DCPF Trusts**") and (b) the Manville Personal Injury Settlement Trust (the "**Manville Trust**" and, together with the DCPF Trusts, the "**Trusts**"), to obtain limited data concerning Trust filings by the approximately 15,000 individuals whose mesothelioma claims the Debtor or the former Georgia-Pacific LLC ("**Old GP**") resolved through settlement or verdict before the commencement of this case (collectively, the "**Bestwall Claimants**").[2]

Bestwall filed this case to confirm a consensual plan of reorganization that fully, fairly, and equitably resolves current and future asbestos claims by establishing a section 524(g)

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2] Pursuant to Local Bankruptcy Rule 2004-1(b), the Debtor hereby certifies that on July 27, 2020, the Debtor provided a copy of a draft proposed order on this Motion to counsel for the Official Committee of Asbestos Personal Injury Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**"), as well as counsel whom DCPF and the Manville Trust have engaged with respect to similar discovery matters in the past. The Debtor offered to meet and confer regarding the date for the examination, as required by the Rule, as well as regarding the general scope and form of the discovery. A conference took place between counsel for the Debtor and counsel for the ACC, the FCR, and the Manville Trust on July 29, 2020 (DCPF is in the process of retaining counsel with respect to this matter as its previous counsel has a conflict). No agreement was reached regarding the date of the production (the proposed order does not yet contain a date) or the other relief requested herein, but the parties shared views and information and agreed to continue conferring in an attempt to narrow the issues in dispute prior to the hearing.

asbestos trust. Despite Judge Hodges's ruling in the <u>Garlock</u> case regarding the impropriety of using settlement amounts to measure liability, the ACC and the FCR contend that trust funding and payments to asbestos claimants should be measured by Bestwall's historical settlements in mesothelioma cases.[3] Counsel for the ACC has theorized that all of the issues pertaining to the value of claims against the estate are "baked into [Bestwall and Old GP's] tort history," and its settlements "reflect a determination by both sides of how those issues might play out in the litigation."[4] Based on this position, the ACC and the FCR have now filed an amended plan of reorganization in which the "524(g) Alternative" proposes to use Bestwall's historical settlements to set the amount of offers that will be extended to mesothelioma claimants.[5]

But if the ACC and the FCR intend to argue that Bestwall's past settlements "baked in" all the factors that govern the value of mesothelioma claims against the estate, it is essential to know whether the ingredients that went into those settlements were tainted. Bestwall has evidence that it and Old GP were subject to a widespread pattern in which certain plaintiff firms failed to disclose material evidence of their clients' exposures to other companies' products, which the firms or their clients then secretly used to support claims against section 524(g) trusts or in bankruptcy cases. The evidence Bestwall currently possesses, however, is limited. Trust filings are confidential, and the information available to Bestwall comes largely from the public record of the <u>Garlock</u> estimation proceeding, which contains trust claim information only with

---

[3] <u>See, e.g.</u>, *Informational Brief of the Official Committee of Asbestos Claimants of Bestwall LLC* at 3 (Dkt. 939) ("**ACC Info. Br.**"); *Future Claimants' Representative's Objection to Motion of the Debtor for Estimation of Current and Future Mesothelioma Claims* at 12-13 (Dkt. 936) ("**FCR Obj.**").

[4] 9/19/19 Hearing Tr. at 57.

[5] <u>See</u> *Amended Plan of Reorganization of Bestwall LLC Proposed by the Official Committee of Asbestos Claimants and the Future Claimants' Representative Pursuant to Chapter 11 of the Bankruptcy Code* (Dkt. 1219) (the "**ACC/FCR Plan**") at 1-3; Bestwall LLC Asbestos Personal Injury Trust Distribution Procedures (Dkt. 1219 Ex. C) (the "**ACC/FCR TDP**") at 10-11, 25-26.

respect to claims filed against Garlock before its June 5, 2010 petition date, and is far from complete or current.

Bestwall therefore brings this Motion, as its only means to obtain the information that will answer the important question of whether Bestwall was subject to practices of evidence manipulation in its historical mesothelioma cases. Bestwall has crafted a limited request to only a subset of the most prominent trusts, in a way that will be easy to implement and will minimize burden. And, Bestwall will reimburse the trusts for their costs. For these reasons, the Debtor respectfully submits that the discovery should be ordered under Bankruptcy Rule 2004.

## **Jurisdiction**

1.      The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Relief Requested**

2.      By this Motion, Bestwall seeks a Bankruptcy Rule 2004 examination in which it will issue subpoenas requesting limited database fields pertaining to any claims filed against the Trusts by the approximately 15,000 Bestwall Claimants. Bestwall possesses Social Security numbers for virtually all of these claimants, which will ensure the Trusts can conduct a quick and error-free matching process. The proposed order is attached as **Exhibit 1**.

3.      The request focuses on mesothelioma claims because, for many years, those claims have generated the vast majority of both defense costs and settlement payments made.[6]

---

[6] The vast majority of the Debtor's asbestos liability relates to mesothelioma claims and not claims based on other diseases. As previously described in the Debtor's estimation motion (Dkt. 875) (the "**Estimation Motion**"), the parties agreed that mesothelioma claims represent 93% of the Debtor's overall asbestos liability and that determining the mesothelioma liability would be sufficient to estimate the total liability for all claims. See Estimation Motion ¶¶ 4-5.

Bestwall's liability for mesothelioma claims is the key question that must be answered to

negotiate and confirm a fair, confirmable plan of reorganization under section 524(g).

4.   The data sought from the Trusts are the following:

    a.  Claimant identifying information;[7]
    b.  Date claim filed;
    c.  Date claim approved, if approved;
    d.  Date claim paid, if paid;
    e.  If not approved or paid, status of the claim;
    f.  All exposure-related fields, including:
        i.  Date(s) exposure(s) began;
        ii.  Date(s) exposure(s) ended;
        iii.  Manner of exposure;
        iv.  Occupation and industry when exposed; and
        v.  Products to which exposed;
    g.  Mode of review selected; and
    h.  Mode of review under which claim was approved and paid.

5.   Bestwall seeks authority to issue subpoenas requesting the data described above

with respect to any Bestwall Claimant matching the records of the Manville Trust and the

following DCPF Trusts:[8]

    a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
    b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
    c.  Celotex Asbestos Settlement Trust
    d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
    e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Fel-Pro, Vellumoid, Flexitallic Subfunds)
    f.  Flintkote Asbestos Trust
    g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
    h.  Pittsburgh Corning Corporation Asbestos PI Trust
    i.  United States Gypsum Asbestos Personal Injury Settlement Trust
    j.  WRG Asbestos PI Trust

---

[7] Claimant identifying information is comprised of the full name of the injured party; the injured party's Social Security number, gender, date of birth, date of death, state of residency, date of diagnosis, and body site (if available); the full name of any claimant who is not the injured party and his or her Social Security number; and claimant's law firm, jurisdiction of tort claim filing, and date of tort claim filing.

[8] Bestwall also seeks authority to issue subpoenas to the Trusts themselves, in the event DCPF asserts that such subpoenas are necessary to secure production.

6.      The DCPF Trusts are the same section 524(g) trusts that were subject to similar

discovery in the <u>Garlock</u> case, as discussed in more detail below, plus several that were not yet

operational at that time.[9] The Manville Trust succeeded to the liabilities of the most prominent

former asbestos defendant, and also produced a substantial amount of data in the <u>Garlock</u> case

(indeed, as described below, far more than the data sought by this Motion).

**<u>The Proposed Bankruptcy Rule 2004 Examination Is Necessary and Appropriate</u>**

7.      Bankruptcy Rule 2004 is the "basic discovery device used [in] bankruptcy cases,

permitting the examination of any party without the requirement of a pending adversary

proceeding or contested matter." <u>In re Symington</u>, 209 B.R. 678, 683-84 (Bankr. D. Md. 1997)

(quotation omitted). The Rule provides that the Court may order the examination of "any entity"

on motion of a party in interest (including the debtor). Fed. R. Bankr. P. 2004(a). A party may

seek discovery related to, among other topics, the "liabilities . . . of the debtor," "any matter

which may affect the administration of the debtor's estate," and, in a chapter 11 case, "any other

matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

8.      "The scope of discovery afforded under Bankruptcy Rule 2004 is unfettered and

broad." <u>In re Public Service Co. of New Hampshire</u>, 91 B.R. 198, 199 (Bankr. D.N.H. 1988)

(quotation omitted); <u>see also</u> <u>In re Sheetz</u>, 452 B.R. 746, 748 (Bankr. N.D. Ill. 2011)

(examination may relate "to just about anything that deals with the debtor's . . . liabilities . . . or

any matter affecting the administration of the bankruptcy estate"). Discovery under Rule 2004 is

as broad or broader than under the Federal Rules of Civil Procedure. <u>See</u> <u>In re Ecam</u>

<u>Publications, Inc.</u>, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); <u>Sheetz</u>, 452 B.R. at 748;

<u>Sweetland v. Szadkowski (In re Szadkowski)</u>, 198 B.R. 140, 141 (Bankr. D. Md. 1996);

---

[9] In addition, Garlock omitted the Celotex Asbestos Settlement Trust because most of its records were not digitized at that time. Bestwall is willing to limit its request to the electronic records of the Celotex Asbestos Settlement Trust.

Symington, 209 B.R. at 684. Thus, a Rule 2004 examination "is subject to fewer objections on grounds of relevance than would burden discovery filed in a lawsuit or contested motion." Id.

9.      Third parties with relevant information concerning the debtor's liabilities are proper subjects of examination under Rule 2004. Ecam Publications, 131 B.R. at 559 ("Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs."); see also In re Platinum Partners Value Arbitrage Fund L.P., 583 B.R. 803, 810-11 (Bankr. S.D.N.Y. 2018); In re EZ Pay Services, Inc., 389 B.R. 776, 779-80 (Bankr. M.D. Fla. 2008). One major purpose of Rule 2004 is to permit investigation of fraud and other misconduct relevant to administration of the estate. See Symington, 209 B.R. at 683-84 (an "obvious purpose[]" of Rule 2004 is "exposure of fraudulent conduct"); In re Orion Healthcorp., Inc., 596 B.R. 228, 235 (Bankr. E.D.N.Y. 2019) ("unearthing of frauds" one purpose of Rule 2004). Production of documents from third parties in a Rule 2004 examination may be compelled by subpoena, via Bankruptcy Rule 9016. See Fed. R. Bankr. P. 2004(c).

10.      A proposed Rule 2004 examination "must be both relevant and reasonable" and "may not be used to annoy, embarrass or oppress the party being examined." Symington, 209 B.R. at 684-85. Some courts require "good cause" before they will authorize a Rule 2004 examination. See, e.g., In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992). But, consistent with the breadth of the rule, courts will find good cause if the movant shows the examination "is reasonably necessary for the protection of its legitimate interests," id. at 201, or if denial of examination would cause the movant "undue hardship or injustice," Orion Healthcorp, 596 B.R. at 235; see also DeWitt, 608 B.R. at 798-800 (same, and also calling for weighing "relevance of the discovery against the burden it will impose on the producing party").

*A. The Discovery Sought Will Show the Extent to Which Exposure Evidence Was Not Disclosed in Historical Cases Against Old GP and Bestwall and the Impact of Any Such Practice*

11.    The examination proposed in this Motion falls squarely within the scope of

Bankruptcy Rule 2004 because it will provide information of core relevance to "the liabilities . . .

of the debtor," "formulation of a plan," and "administration of the debtor's estate." Fed. R.

Bankr. P. 2004(b). The ACC and the FCR have repeatedly insisted in filings and statements in

this Court that Old GP's and Bestwall's settlement history should be used to measure Bestwall's

liability for current and future mesothelioma claims. Now, they have proposed a plan of

reorganization that, in its 524(g) Alternative, would set offers to claimants allegedly based on

those historical settlements.[10]

12.    The data requested through the proposed examination will show the extent to

which claimants in resolved cases against Old GP or Bestwall failed to disclose relevant

evidence of exposure to the products of bankrupt defendants that they used in asserting

confidential Trust claims. If the practice was prevalent, then, as in Garlock, Old GP's historical

settlements would be "useless" in assessing Bestwall's liability for current and future

mesothelioma claims because they would be "infected by the manipulation of exposure

evidence." Garlock Sealing Techs. LLC, 504 B.R. at 82, 94.

13.    The discovery goes directly to matters the ACC and the FCR have put at issue in

this case. The ACC contests the findings in the Garlock opinion, as well as their applicability to

Bestwall. ACC Info. Br. at 4; *Objection of the Official Committee of Asbestos Claimants to*

*Motion of the Debtor for Estimation of Current and Future Mesothelioma Claims* at 23 n.35

(Dkt. 937). In addition, the ACC faults Bestwall for not having enough evidence of the practice it

---

[10] The attempt to equate settlements with expected liability is misguided for many reasons in addition to the one that animates this Motion. It violates the prohibition in Federal Rule of Evidence 408 on using settlements to "prove or disprove the validity or amount of a disputed claim." And it ignores that Old GP and Bestwall settled the vast majority of claims not because they posed a material liability risk, but because it was far cheaper than trying cases to verdict. See In re Garlock Sealing Techs. LLC, 504 B.R. 71, 73 (Bankr. W.D.N.C. 2014) (rejecting use of settlements in estimation in part because they were "inflated by the cost of defense").

believes occurred, arguing that the cases presented in Bestwall's Informational Brief are not representative of its experience in the tort system, and are "nothing more than five mistakes out of **thousands** of claims." ACC Info. Br. at 88 (emphasis in original). The ACC also speculates that after the Garlock estimation decision, the evidence concealment practices ceased, which it claims is proved by the "consistency in number and value of settlements [against Bestwall] reached both before and after the *Garlock* decision." Id. at 88 n.212.

14.     Whether any of this is true has become especially important because the ACC and FCR are proposing a plan of reorganization with a 524(g) Alternative that would extend settlement offers to mesothelioma claimants allegedly based on Old GP's historical settlements.[11] As stated in the ACC/FCR TDP, the TDP "provid[es] claimants an opportunity to resolve their claims based on values the Debtor historically paid for substantially similar claims in the tort system." Id. at 10.[12]

15.     The discovery requested in this Motion will show whether the settlement offers the ACC/FCR Plan would make under the 524(g) Alternative, allegedly based on Old GP's settlements, are inflated beyond the allowed amount of those claims under applicable state law, violate the overpayment principle of 11 U.S.C. § 1129(b), and are not likely to form the basis for achieving the consent of New GP and GP Holdings necessary to make that option feasible.[13]

---

[11] The 524(g) Alternative involves the establishment of a section 524(g) trust to pay claimants, but by its express terms, this option requires the consent of GP Holdings and New GP. ACC/FCR Plan at 1-3. Because no such consent was even sought prior to the filing of the ACC/FCR Plan, the 524(g) Alternative is tantamount to a settlement offer. In the absence of such consent, the ACC/FCR Plan would toggle to a so-called "unimpaired" structure where no creditor is impaired, no discharge or channeling injunction is issued, no section 524(g) trust is established, and creditors (including asbestos plaintiffs) are paid by the Debtor in the normal course as if no bankruptcy had occurred (the "**Unimpaired Plan Alternative**"). In short, the Unimpaired Plan Alternative is effectively a dismissal of the case that would serve no reorganizational purpose.

[12] See also ACC/FCR TDP at 11, 25-26 (likewise indicating settlement offers would be based on Bestwall's and Old GP's historical settlements).

[13] Just yesterday, the ACC and the FCR filed an adversary complaint that seeks to force a "reformation" of the Funding Agreement. Accordingly, it appears that the ACC and the FCR continue to pursue a potential cramdown of

16.    To test the contentions the ACC and the FCR have made about the propriety of

Old GP's historical settlements, it is necessary for Bestwall to obtain the exposure evidence the

Bestwall Claimants confidentially provided to Trusts. Was that evidence disclosed to Bestwall or

Old GP? Does it demonstrate a widespread practice of manipulating exposure evidence in cases

against Bestwall or Old GP? Did the practice cease after the Garlock decision (significant

evidence that it did not is discussed below)? In short, are the historical settlements a reliable

guide to Bestwall's liability for current and future mesothelioma claims? Can they be relied upon

by this Court, as it considers plans of reorganization and progress in this case? See Symington,

209 B.R. at 683-84 ("exposure of fraudulent conduct" a proper purpose of Rule 2004). Denying

Bestwall discovery related to such a central issue in this case would cause it substantial "undue

hardship or injustice." Orion Healthcorp, 596 B.R. at 235.

17.    The discovery will permit exploration not only of inconsistencies and failures of

disclosure in individual cases, but also important aggregate-level issues, such as the extent to

which claimants delayed filing their Trust claims while they litigated against Bestwall, and

whether claimants who did so received higher settlement payments. See Garlock Sealing Techs.,

504 B.R. at 84 ("It was a regular practice by many plaintiffs' firms to delay filing Trust claims

for their clients so that remaining tort system defendants would not have that information.");

Garlock Estimation Trial Transcript at 2896:10-20 (excerpts attached as **Ex. 2**) (testimony by Dr.

Charles Bates that claimants who filed their Trust claims before resolving their claims against

Garlock settled for approximately half as much as claimants who delayed their Trust claims);

Declaration of Charles E. Bates, PhD dated July 30, 2020 ("**Bates Decl.**") ¶¶ 13, 22-23 (attached

as **Ex. 3**).

---

the 524(g) Alternative, which was the intent and goal of the initial plan they filed. The filing of the complaint further
confirms the need for the information requested by this Motion.

18.     All of this information will be important to the parties in negotiating and

formulating the terms of a confirmable chapter 11 plan of reorganization, whether in a form

similar to the Debtor's plan, the 524(g) Alternative described in the ACC/FCR Plan, or

something else entirely. The requested information will test the fundamental assumption at the

heart of the ACC's and the FCR's approach to settlement discussions and the formulation of

their plan. The discovery thus goes to the core of the issues in dispute in this chapter 11 case, is

far more than "relevant and reasonable," and easily meets the standards for a Rule 2004

examination. Symington, 209 B.R. at 683-85.

19.     The requested discovery is targeted and appropriate. It includes only a small

number of the scores of section 524(g) trusts that have been established for former asbestos

defendants, and has been designed to explore the relevant question with a minimum of burden on

included Trusts, all while protecting claimants' information. The Trusts have unique knowledge

relevant to the Debtor's liabilities and this case—the evidence of the Trust filings made by

persons who previously sued Old GP or Bestwall and whose resolutions the ACC and the FCR

are attempting to use as the measure of the appropriate funding for a trust here. Examination of

the Trusts is thus proper under Rule 2004. See Ecam Publications, 131 B.R. at 559.

20.     The DCPF Trusts are responsible for the liabilities of many of the most prominent

defendants before the Bankruptcy Wave that began in approximately 2000-2001, including

Armstrong World Industries, Owens Corning, Fibreboard, Pittsburgh Corning, and W.R. Grace.

Johns-Manville, meanwhile, was the most prominent asbestos defendant in the tort system, and

the Manville Trust has been in operation since the 1980s. Its data thus provide a source of trust

filings through the entire period when Old GP and Bestwall were targeted in the litigation, and

before many of the DCPF Trusts were operational. The Debtor's expert has a copy of the

Manville Trust database, but only as of 2002. As such, the Manville Trust data will be an

important supplement to update the 18-year-old information that is available to the expert.

*B. Discovery From the Trusts Is Appropriate and Necessary to Determine the Extent to Which Material Exposure Evidence Was Not Disclosed*

21.     Courts have recognized that discovery from section 524(g) trusts is necessary and

appropriate to determine the extent to which exposure evidence was not disclosed in tort

litigation and to evaluate its impact. In Garlock, Judge Hodges ordered the trusts and trust sub-

funds then handled by DCPF to produce data concerning claims made by approximately 11,000

mesothelioma claimants who had settled with Garlock between 1999 and 2010. See *Order*

*Granting in Part and Overruling in Part Objections to Subpoena by Delaware Claims*

*Processing Facility, LLC and Associated Trusts, Establishing Claimant Objection Procedures,*

*and Governing the Confidentiality of Information Provided in Response to the Subpoena*, In re

Garlock Sealing Techs., No. 10-31607 (Bankr. W.D.N.C. Aug. 7, 2012) (Dkt. 2430) ("**Garlock**

**DCPF Order**," and discovery thereunder the "**DCPF Trust Discovery**") (attached as **Ex. 4**).

22.     The Court ultimately relied on the data obtained through the DCPF Trust

Discovery in finding a "startling pattern of misrepresentation" in cases Garlock had settled

before its petition. Garlock Sealing Techs., 504 B.R. at 86. In part for this reason, the Court

rejected the claimant experts' reliance on Garlock's past settlements, concluding that the

"settlement history data does not accurately reflect fair settlements because exposure evidence

was withheld." Id. at 94. These findings were not based only on evidence from 15 of Garlock's

most significant cases. To be sure, in those 15 cases, the court granted wide-ranging discovery

(including depositions of plaintiff law firms), which revealed that "exposure evidence was

withheld in *each and every one* of them." Id. at 84 (emphasis in original). But the Court also

used the broad-based data from the DCPF Trust Discovery, ordered with respect to all of

Garlock's approximately 11,000 mesothelioma settlements after 1999, to conclude that in *hundreds* of Garlock's high-value settlements, "the plaintiff's discovery responses conflicted with one of the Trust claim processing facilities or balloting in bankruptcy cases." Id. at 85-86; see also GST Est. Trial Ex. 8001, "Omissions in RFA-1 Cases Based on DCPF and Ballot Data Only" (estimation trial exhibit summarizing hundreds of cases where exposure evidence was not disclosed, attached as **Ex. 5**). This and other evidence was so overwhelming, the court concluded "[i]t appears certain that more extensive discovery would show more extensive abuse." Garlock Sealing Techs., 504 B.R. at 86.

23.     Other courts likewise have recognized that discovery from section 524(g) trusts is necessary and appropriate to determine the extent to which exposure evidence was not disclosed in tort litigation. See, e.g., Memorandum Opinion at 2-3, 14, Congoleum Corp. v. ACE Am. Ins. Co., Misc. No. 09M-01-084 (Del. Super. Ct. Aug. 4, 2009) (attached as **Ex. 6**) (ordering trust discovery with respect to approximately 70,000 claimants to determine whether those claimants had submitted evidence inconsistent with their claims against the insured); Memorandum at 2-3, 4, 7, 9, Nat'l Union Fire Ins. Co. v. Porter Hayden Co., No. 1:03-cv-3408-CCB (D. Md. Feb. 24, 2012) (Dkt. 313) (attached as **Ex. 7**) (ordering discovery from trusts in part to determine whether claimants had submitted inconsistent exposure evidence to insured).

*C. Bestwall Has Reason to Believe Material Exposure Evidence Was Not Disclosed in Significant Resolved Cases*

24.     Like Garlock and the insurers in Congoleum and National Union cited above, Bestwall needs discovery to test the ACC's and the FCR's repeated contention that historical settlements should be relied upon as a measure of its current and future asbestos liability. Bestwall has good reason to believe it was subjected to the same pattern and practice of evidence manipulation that the court found in Garlock. In fact, based on a preliminary analysis, over three-

fourths of the Bestwall mesothelioma claims filed from 2002 to Garlock's petition date in 2010

also were filed against Garlock, and three-fourths of Bestwall's payments to Bestwall

mesothelioma claimants filed from 2002 to Garlock's petition date were to claimants who also

had claims against Garlock. Bates Decl. ¶ 20.

25.    Using the <u>Garlock</u> public record, Bestwall has discovered that evidence

manipulation took place in cases against Old GP, with the involvement of many different law

firms across many different jurisdictions. To take one particularly striking example discussed in

the Debtor's Informational Brief, a plaintiff's expert named James Dahlgren published in 2012

an article claiming to identify "three cases of mesothelioma in which the only known exposure to

asbestos was from joint compound."[14] The Dahlgren Article has been used against Old GP and

Bestwall in countless cases since 2012 as a basis to claim Old GP's joint compound products

were hazardous. The <u>Garlock</u> record permitted Bestwall not only to discover the three heretofore

unidentified individuals, but to find out that all three were plaintiffs against Old GP who failed to

disclose material exposure evidence in their tort cases showing they had been exposed to many

products other than joint compound, directly contrary to the claims made in the Dahlgren Article.

26.    Dahlgren Case 1 asserted in the case against Old GP that his only asbestos

exposures were to six joint compounds manufactured by then-non-bankrupt defendants,

including Old GP, which he allegedly used in the course of installing kitchen cabinets.[15] In his

---

[14] James Dahlgren & Trevor Peckham, <u>Mesothelioma Associated with Use of Drywall Joint Compound: A Case Series and Review of Literature,</u> 18 Int'l J. of Occ. and Env. Health 337 (2012) (attached as **Ex. 8**).

[15] Plaintiff's Responses to General Order, Standard Interrogatories (attached as **Ex. 9**) at Ex. A; Plaintiff's Dep. (Aug. 2, 2006) (excerpts attached as **Ex. 10**) at 28-29. "Case 1" in the Dahlgren Article had the same birth date as this plaintiff, the same diagnosis year, the same medical details, the same alleged year of first exposure and the same occupations (Bestwall does not attach documents showing this, but they have been produced to the ACC and FCR). In addition, Dahlgren was a plaintiff's expert in the plaintiff's case. <u>See</u> Plaintiff's Designation of Expert Witness Declaration (excerpts attached as **Ex. 11**) at 9-11. Bestwall produced documents concerning this plaintiff and the other four plaintiffs highlighted in Debtor's Informational Brief (Dkt. 12) to the ACC and FCR and designated them "confidential" under the Agreed Protective Order because many of the documents included sensitive information such as full Social Security numbers, birthdates, and financial account information. Debtor has redacted any such

deposition and interrogatory answers, the plaintiff identified no other asbestos exposures.[16] Old

GP settled the case in 2007. Despite his testimony in the tort case, the plaintiff's attorneys filed a

ballot for him in the Pittsburgh Corning bankruptcy case in 2009, certifying under penalty of

perjury that he was exposed to Unibestos or another product for which Pittsburgh Corning was

responsible.[17] Unibestos was a notoriously dangerous amphibole-containing insulation product.

A different law firm cast a ballot for Dahlgren Case 1 in the Flintkote case, certifying under

penalty of perjury that he was exposed to products for which that debtor was responsible.[18] The

exposures evidenced by these ballots were never disclosed in his tort case, and they show that,

contrary to the statements in the Dahlgren Article, Dahlgren Case 1 *was* exposed to products

other than joint compound, including amphibole-containing products. Discovery is necessary to

determine whether this plaintiff filed trust claims based on exposures not disclosed in his tort

case, as he did not sue Garlock and thus was not captured by any of the trust claim discovery in

that case.[19]

27.    Dahlgren Case 2 similarly claimed in his case against Old GP that he was exposed

to joint compound brands manufactured by then-non-bankrupt companies during his work as a

maintenance man for approximately two decades.[20] He denied any exposure to asbestos during

---

information from the documents filed with this Motion consistent with Bankruptcy Rule 9037, and the filed versions
should not be considered "confidential" under the Agreed Protective Order. Bestwall uses pseudonyms to refer to
the plaintiffs discussed in this section (and has redacted identifying information about the plaintiffs and law firms)
because their identities are not immediately relevant to this Motion, but denies that the identities of persons who
sued Bestwall or their law firms are confidential and reserves all rights to disclose the identities of such claimants
publicly should they become relevant in this case.

[16] Plaintiff's Dep. (Aug. 2, 2006) (Ex. 10) at 23-24; Plaintiff's Dep. (Aug. 3, 2006) (excerpts attached as **Ex. 12**) at
191-92; Plaintiff's Responses to General Order, Standard Interrogatories (Ex. 9) at Ex. A.

[17] Pittsburgh Corning Ballot (attached as **Ex. 13**).

[18] Flintkote Ballot (attached as **Ex. 14**).

[19] Garlock received discovery concerning all ballots cast in over 20 bankruptcy cases, which is why Dahlgren Case 1
appears in the public record of the Garlock estimation proceeding even though he did not sue Garlock.

[20] Plaintiff's Case Report (attached as **Ex. 15**) at Att. A. "Case 2" in the Dahlgren Article matched this plaintiff's
birth date, diagnosis year, occupation, exposure history, and exposure years. Debtor can provide the non-exposure
details under seal if the ACC or FCR dispute the identification.

his service in the Navy.[21] Bestwall settled the case in 2003. Joint compound co-defendant Kaiser Gypsum went to verdict and prevailed on the ground that his exposure to asbestos from joint compound was not a substantial factor in causing his disease, offering evidence that he was likely exposed to amphibole asbestos during his Navy service, despite adamant statements by this plaintiff's attorneys to the contrary.[22] Attorneys for Dahlgren Case 2 filed ballots for him in five bankruptcy cases based on exposures he never disclosed in litigation with Bestwall: Pittsburgh Corning, Federal Mogul, U.S. Minerals, Owens Corning, and Fibreboard, again certifying under penalty of perjury that he was exposed to products for which those debtors were responsible.[23] These companies did not manufacture joint compound, but several were responsible for amphibole insulation. Once again, the ballots contradict the representations made in this plaintiff's tort case, as well as the statements made in the Dahlgren Article.[24]

28.      Dahlgren Case 3 likewise alleged his disease was caused by exposure to Old GP joint compound and other joint compounds manufactured by non-bankrupt defendants, which he experienced through dust brought home on his father's clothes and as a bystander to home remodeling projects.[25] Old GP settled this case in 2003. Once again, after the settlement, attorneys for the plaintiff filed ballots on his behalf in numerous bankruptcy cases of companies that did not manufacture joint compound but that, in many cases, manufactured amphibole

---

[21] Plaintiff's Dep. (Sep. 21, 2001) (excerpts attached as **Ex. 16**) at 15-16.

[22] Judgment on Special Verdict, (Cal. Super. Ct. May 9, 2003) (attached as **Ex. 17**); Kelso, et al., Special Report: Verdicts in Asbestos Personal Injury Cases Reported in Mealey's Litigation Report: Asbestos in 2003, Mealey's Litig. Rep.: Asbestos (March 2004) (attached as **Ex. 18**). Before trial, Dahlgren Case 2's attorneys sought to exclude evidence of alternative exposures to products for which non-defendants were responsible. See Plaintiffs' Supplemental Trial Brief Re Defendants' Burden of Proving Plaintiffs' Exposure to Other Sources of Asbestos (Apr. 11, 2003) (attached as **Ex. 19**).

[23] Dahlgren Case 2 Ballots (attached as **Ex. 20**).

[24] Once again, discovery will be necessary to determine whether Dahlgren Case 2 filed any trust claims. He sued Garlock (but never identifying exposure to a Garlock product, to Bestwall's knowledge), but he dismissed the claim against Garlock and thus was not part of any of the trust claim discovery in the Garlock case.

[25] Plaintiff's Case Report (attached as **Ex. 21**) at Att. A. "Case 3" in the Dahlgren article also exactly matches this plaintiff's birth date, diagnosis year, occupation, exposure history, and exposure years. Debtor can provide the non-exposure details under seal if the ACC or FCR dispute the identification.

insulation, again certifying under penalty of perjury that he was exposed to their products.[26] These included the AC&S, Pittsburgh Corning, Babcock & Wilcox, Congoleum, THAN, Owens Corning, and Fibreboard cases. None of these companies were disclosed in his tort case. It again shows the statements about exclusive exposure to joint compound made in the Dahlgren Article, used so many times against Old GP before this bankruptcy case, were false.[27]

29.     This evidence shows the fallacy of assuming that the impact of the conduct exposed in Garlock somehow ended on the day Garlock filed its petition in 2010, or the estimation opinion was rendered in 2014. The Dahlgren Article, with its false implications about the ability of joint compound to cause mesothelioma, and its false statements about the three cases' exposures, was used against Bestwall *up to the day it filed its bankruptcy petition* in November 2017. Claims resolved as a result of these false allegations are among the claim resolutions that the ACC and the FCR would (improperly) use as the standard for appropriate payments to claimants in this bankruptcy case.

30.     One of the recent cases where the Dahlgren Article was used against Old GP took place in one of Old GP's few trial defeats, in Florida in 2015, more than a year after the Garlock decision. This case was one of only eight unreversed plaintiff verdicts in mesothelioma cases in Old GP's entire decades-long litigation history. Plaintiff A claimed he was exposed to GP Ready-Mix joint compound in 1977-78 in Saudi Arabia, where he worked as a painting supervisor.[28] At trial, the plaintiff denied all other alternative exposures.[29] In opening statements,

---

[26] Dahlgren Case 3 Ballots (attached as **Ex. 22**).

[27] Dahlgren Case 3 did not sue Garlock, so he was not included in any of the trust claim discovery in that case, and discovery in this case will be necessary to determine whether he filed trust claims.

[28] Trial Tr. Vol. 10 (Aug. 7, 2015) (excerpts attached as **Ex. 23**) at 1341-47; Plaintiff's Updates to Answers to Union Carbide's Original Interrogatories (excerpts attached as **Ex. 24**) at 14.

[29] See, e.g., Trial Tr. Vol. 10 (Aug. 7, 2015) (**Ex. 23**) at 1303, 1305-06, 1309-10 (Plaintiff A's denials of working in dusty conditions at sugar refinery, churches, and at railyard).

his attorney stated that he had "no known asbestos exposures anywhere" but in Saudi Arabia.[30]

The plaintiff's medical expert repeated this story in his testimony.[31] The plaintiff then used the

Dahlgren Article to cross-examine Old GP's industrial hygienist at trial, to convey to the jury

that the expert unreasonably failed to consider joint compound exposure as a cause of

mesothelioma.[32] To cap things off, Plaintiff A's attorney admonished Old GP during closing

arguments for failing to "introduce[] a single bit of evidence about some product that they say

caused" the plaintiff's injuries.[33] Ultimately, the plaintiff secured a $17 million jury verdict and

Old GP was assigned 55% of the liability for his damages.[34] The plaintiff and his employer were

assigned the remaining liability.[35]

31.     Bestwall now knows that in December 2014—eight months before arguing at trial

that GP Ready-Mix was the plaintiff's only known exposure and criticizing Old GP for not

identifying alternative exposures—his attorneys filed a ballot for the plaintiff in the <u>Bondex</u>

bankruptcy, certifying under penalty of perjury that he was exposed to a product for which

Bondex was responsible.[36] Further, his attorneys filed a ballot for the plaintiff in <u>Garlock</u>, in this

court, in October 2015, only two months after the plaintiff's trial ended, as well as another ballot

during the 2016 solicitation in <u>Garlock</u>, in each of which the attorney certified under penalty of

perjury that the plaintiff was exposed to Garlock gaskets or packing (products wholly unrelated

to joint compound).[37] These ballots show that the plaintiff's law firm portrayed his exposure

history far differently at trial than in his bankruptcy filings. The Bondex ballot casts doubt on the

---

[30] Trial Tr. Vol. 4 (Aug. 4, 2015) (excerpts attached as **Ex. 25**) at 445-47.

[31] Trial Tr. Vol. 8 (Aug. 6, 2015) (excerpts attached as **Ex. 26**) at 967.

[32] Trial Tr. Vol 15 (Aug. 11, 2015) (excerpts attached as **Ex. 27**) at 2194-99.

[33] Trial Tr. Vol. 16 (Aug. 12, 2015) (excerpts attached as **Ex. 28**) at 2364.

[34] Trial Tr. Vol. 18 (Aug. 13, 2015) (excerpts attached as **Ex. 29**) at 2514-25.

[35] <u>Id.</u> at 2516-20.

[36] Bondex Ballot (attached as **Ex. 30**).

[37] Garlock Ballots (attached as **Ex. 31**).

plaintiff's identification of Old GP's product. And because Garlock's products were often used

in the vicinity of amphibole-containing asbestos insulation, the Garlock ballots provide evidence

that the plaintiff had industrial exposures to asbestos that he never acknowledged at trial and that

alone could have caused the plaintiff's mesothelioma.[38] This is yet another plaintiff whose

attorneys portrayed him as exposed solely to joint compound, using the Dahlgren Article before

the jury, never disclosing to the jury that the plaintiff had exposures beyond joint compound.

32.     Plaintiff B was another California plaintiff who claimed her only exposures were

to joint compound manufactured by then-non-bankrupt defendants, in her case brought home on

her husband's clothes.[39] Yet just a few months after Old GP settled her case, she filed a second

lawsuit in Madison County, Illinois against over two dozen defendants never mentioned in the

California suit.[40] Most of these companies manufactured products that were used in industrial

applications, usually around amphibole insulation. In discovery responses in that case, she

admitted filing trust claims as well—and although Bestwall does not yet know where the trust

claims were filed, they necessarily conflicted with her story in the Old GP suit, where she

claimed her only exposures were to joint compound manufactured by non-bankrupt companies.[41]

Her attorneys also cast ballots for her in the ASARCO, Flintkote, Pittsburgh Corning, Quigley,

and W.R. Grace bankruptcy cases.[42] All of these exposures were undisclosed, in many cases

evidenced amphibole exposures that alone could have caused her mesothelioma, and would have

---

[38] See, e.g., In re Garlock Sealing Techs. LLC, 504 B.R. at 77.

[39] Plaintiff's Response to Standard Interrogatories (Set One) (excerpts attached as **Ex. 32**) at 10-13, 34-37, Ex. A; Plaintiffs' Supplemental Points and Authorities in Support of Motion in Limine 1: To Exclude Evidence or Reference to Other Alleged Exposures to Unsubstantiated Sources of Asbestos (Cal. Super. Ct. Jan. 3, 2007) (attached as **Ex. 33**).

[40] Complaint (Ill. Cir. Ct., Madison Cty Apr. 5, 2007) (attached as **Ex. 34**).

[41] Plaintiff's Answers to Interrogatories (Ill. Cir. Ct., Madison Cty) (excerpts attached as **Ex. 35**) at 7.

[42] Plaintiff B Ballots (attached as **Ex. 36**).

been highly relevant under California apportionment law, which has several liability for non-economic damages. See DaFonte v. Up-Right, Inc., 828 P.2d 140, 146 (Cal. 1992).

33.    Three other plaintiffs referenced in the Debtor's Informational Brief also failed to disclose extraordinary amounts of exposure evidence in their tort cases upon which they later relied to make trust claims: a Philadelphia plaintiff who filed *17* trust claims, *two* bankruptcy ballots, and a Garlock PIQ based on exposures not disclosed in his tort case against Old GP (which Old GP settled);[43] a Madison County, Illinois plaintiff who filed *21* trust claims, *nine* bankruptcy ballots, and a Garlock PIQ based on exposures not disclosed in his tort case against Old GP (which Old GP settled);[44] and a California plaintiff who filed *12* trust claims based on undisclosed exposures as well as a Garlock PIQ based on undisclosed exposure.[45]

34.    Although Bestwall knows of these examples, they are insufficient alone to demonstrate the scope of the non-disclosure problem, particularly in light of objections from the ACC and the FCR contesting these matters. Bestwall does not have the ability to study this issue on a systematic basis, or have its experts assess its impact on Bestwall's resolution history. As long as the ACC and the FCR contend that the examples uncovered to date are isolated and not typical, Bestwall needs broad-based discovery to determine the extent to which this behavior occurred in its historical cases, and prove to voting claimants and this Court that Bestwall's historical settlements cannot be an appropriate measure of its liability.

---

[43] Plaintiff's Videotaped Dep. (Jul. 7, 2010) (excerpts attached as **Ex. 37**) at 20 (denying occupational asbestos exposure and testifying that only known asbestos exposure was through home repair); Plaintiff's Answers to Asbestos Claims Facility Defendants' General Interrogatories – Sets I and II (excerpts attached as **Ex. 38**) at 14 (denying knowledge of exposures to asbestos-containing materials for which any non-defendant was responsible); Garlock PIQ Ex. B (attached as **Ex. 39**); Plaintiff's Ballots (attached as **Ex. 40**). The part of this claimant's Garlock PIQ evidencing his Garlock exposure is evidenced in a spreadsheet containing data submitted by Garlock PIQ claimants in GST Est. Trial Ex. 8002, which is publicly available.

[44] Plaintiff's Answers to Madison County Interrogatories (excerpts attached as **Ex. 41**) at 6-7 & Ex. A ; Garlock PIQ (attached as **Ex. 42**) at 6, Table B, attached trust claim forms; Plaintiff's Ballots (attached as **Ex. 43**).

[45] Plaintiffs Second Supplemental Answers to Standard Interrogatories Propounded by Defendants (Personal Injury) Set 1 (attached as **Ex. 44**) at 7-11; Garlock PIQ Table B (attached as **Ex. 45**).

35.    Simply put, this discovery is needed to remove a major stumbling block in plan

formulation, negotiation, solicitation, and ultimately confirmation. There is no way to obtain this

information other than through discovery because Trusts keep this information confidential.[46]

Discovery that will help determine the appropriate measure of Bestwall's liability—a role that

similar discovery performed in Garlock—could not be more related to "the liabilities . . . of the

debtor" as well as to "formulation of a plan," and thus justified under Bankruptcy Rule 2004.

**The Requested Discovery Will Pose Minimal Burdens on DCPF and the Trusts and Will
Protect Claimant Privacy**

36.    In weighing "the relevance of the discovery against the burden it will impose on

the producing party," DeWitt, 608 B.R. at 800, the relevance of the information and the Debtor's

need for it are high for the reasons described above.

37.    In contrast, the burden on DCPF and the Trusts will be quite low. Bestwall has

crafted the request narrowly, to obtain information directly relevant to the extent of any evidence

manipulation against Old GP and Bestwall and its impact. And although there are currently over

70 asbestos bankruptcy trusts, Bestwall seeks discovery from only 11 of them, all but one of

which are managed by the same claims processing facility. This Motion seeks discovery from the

same facilities that were subject to the trust discovery orders in the Garlock case. Even though

broader discovery from more of the dozens of trusts that have been established to pay the

liabilities of formerly prominent debtors would be relevant and would permit discovery of the

full scope of this practice, Bestwall believes that, as in Garlock, this targeted discovery will

---

[46] See, e.g., Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures § 6.5, available at
http://www.ocfbasbestostrust.com/wp-content/uploads/2015/12/OC-FB.-Amended-TDP.12.2.2015-
C0463534x9DB18.pdf (last visited July 10, 2020).

sufficiently show how widespread evidence manipulation was in historical cases against Bestwall, and its impact.[47]

38.    In addition, the request is restricted to non-sensitive, database information such as exposure- and claims-related data fields, and does not include medical data beyond the disease claimed (including body site) and diagnosis date, neither of which is sensitive. Moreover, all of the information requested is maintained by DCPF and the Trusts in database form and can be retrieved and produced using simple electronic searches, with minimal expense for DCPF and the Trusts. See Bates Decl. ¶ 24. DCPF has access to software that can quickly and easily compile the requested data fields after being provided with a list of Bestwall Claimants. DCPF and the Trusts routinely respond to such discovery requests and have the technology to respond quickly and at relatively modest expense. Moreover, Bestwall will reimburse DCPF's and the Manville Trust's reasonable and documented out-of-pocket costs in complying with the subpoenas, which from past experience should not be substantial.

39.    Showing the ease with which the Trusts can produce data of this nature and the lack of sensitivity, the Manville Trust routinely provides data of this nature in discovery. The Manville Trust has a published practice of providing exposure-related information as a matter of course, to requesting tort defendants with respect to any person who asserts a claim against such defendant. See Frequently Asked Questions Related to Third Party Discovery of Information and Documents Pursuant to the 2002 Manville Trust TDP (attached as **Ex. 46**) ("**Manville FAQ**").[48] The Manville Trust provides the information in response to a subpoena (even an out-of-state subpoena), without objection (although it will stay production pending resolution of a timely

---

[47] Bestwall reserves all rights to seek further discovery from other claims processing facilities and trusts, with respect to some or all of the claims at issue in this Motion, to the extent it becomes necessary in this case.

[48] Such a request would of course be unavailing if the claimant had not yet filed an eventual Manville Trust claim—and determining the extent to which this occurred in Bestwall's historical cases is one of the reasons the discovery requested herein is necessary.

filed objection by an individual claimant). Id. at 2-3. The Manville Trust for many years

provided complete copies of its entire database to experts for a fee (which is how Bates White

obtained its copy of the database from 2002), and until 2007 licensed copies to members of the

public (including Bates White) for a fee. The expert for the ACC in this case has recognized that

data from the Manville Trust is regularly used in assessing other companies' liabilities, stating

that "Manville data are universally regarded as the most comprehensive data on asbestos claims

filing and have been used repeatedly by analysts in forecasting liabilities for other defendants."

Mark A. Peterson, USG Corporation Projected Liabilities for Asbestos Personal Injury Claims

(May 2006), at 30 (excerpt attached as **Ex. 47**).

40.    In Garlock, DCPF produced the requested data (of a scope similar to what is

requested here) less than a month after the order overruling its objections was entered.[49] Also in

the Garlock case, during discovery relating to plan confirmation and estimation of non-

mesothelioma claims, the court ordered the Manville Trust to produce asbestos exposure and

medical data fields pertaining to more than 100,000 non-mesothelioma claimants against

Garlock, as well as copies of the medical and exposure records those claimants had submitted.

See Order Granting in Part and Denying in Part Debtors' Motion for Leave to Serve Subpoena

on Manville Trust ¶ 5, In re Garlock Sealing Techs. LLC, No. 10-31607 (Bankr. W.D.N.C. July

24, 2015) (Dkt. 4721) (attached as **Ex. 49**). The Manville Trust produced tens of thousands of

records pertaining to non-mesothelioma claimants against Garlock a little more than a month

after the order on that discovery was entered, despite a more complicated matching exercise due

to the fact that Garlock lacked SSNs for most such claimants. Id.

---

[49] Compare Ex. D with GST-1601, Letter from Stephen M. Juris to Garland S. Cassada dated Sept. 5, 2012 (attached
as **Ex. 48**). DCPF made a supplemental production two months later.

41.     Bestwall has further limited any burden here by restricting the request to Bestwall

Claimants for whom Bestwall has Social Security numbers. This will permit a simple matching

protocol under which the Trusts would produce those records matching (a) any Bestwall

Claimant's full Social Security number, or (b) the last four digits of any Bestwall Claimant's

Social Security number as well as the Bestwall Claimant's last name. This procedure will

minimize the risk of false positive matches. Bates Decl. ¶ 24.

42.     Finally, Bestwall proposes an order to govern this discovery, providing that the

data will be used only in connection with this bankruptcy case, and will be kept confidential

unless used in proceedings in this case, and then only upon redacting personally sensitive

information such as full Social Security numbers. See **Ex. 1**. The discovery here has been crafted

to minimize burden and cannot be characterized as "annoy[ing], embarrass[ing] or oppress[ing]

the party being examined." Symington, 209 B.R. at 684-85.

43.     Many courts in addition to those referenced above have recognized that discovery

from trusts is proper when they possess evidence relevant to a pending bankruptcy case,

including in In re W.R. Grace & Co. (involving over 70,000 claimants),[50] In re Motors

Liquidation Company case;[51] and In re Specialty Products Holding Corporation.[52]

---

[50] See Transcript of Aug. 29, 2007 Hearing at 49-55, 74, 83, In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. 2007) (Dkt. 16747) (attached as **Ex. 50**); *Order Regarding W.R. Grace & Company's Motions to Compel Discovery Materials from the Celotex Asbestos Settlement Trust* at 1, In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. Oct. 3, 2007) (Dkt. 16979) (attached as **Ex. 51**); see also *Order Regarding W.R. Grace & Company's Motion to Compel Discovery Materials from the DII Industries, LLC Asbestos PI Trust*, In re W.R. Grace & Co., No. 01-01139 (Bankr. D. Del. Oct. 9, 2007) (Dkt. 17024) (attached as **Ex. 52**).

[51] See *Order Pursuant to Bankruptcy Rule 2004 Authorizing the Official Committee of Unsecured Creditors of Motors Liquidation Company to Obtain Discovery from (I) the Claims Processing Facilities for Certain Trusts Created Pursuant to Bankruptcy Code Section 524(g), (II) the Trusts, and (III) General Motors LLC and the Debtors*, Case No. 09-50026 (Bankr. S.D.N.Y. Aug. 24, 2010) (Dkt. 6749) (attached as **Ex. 53**); see also Transcript of Hearing at 8, In re Motors Liquidation Co., No. 09-50026 (Bankr. S.D.N.Y. Aug. 9, 2010) (Dkt. 6641) (attached as **Ex. 54**) (Judge Gerber stating that the request for trust claim data is plainly relevant and that Bankruptcy Rule 2004 is appropriately invoked). The need for the discovery in the Motors Liquidation case was obviated after the asbestos claimants' committee stipulated that the asbestos claimants had asserted claims against and recovered from all the trusts subject to the discovery. Stipulation and Order, In re Motors Liquidation Co., No. 09-50026 (Bankr. S.D.N.Y. Dec. 6, 2010) (Dkt. 8002) (attached as **Ex. 55**).

44.    The proposed discovery here is far less extensive than requests courts have approved—limited data for approximately 15,000 claimants instead of the 70,000 claimants at issue in W.R. Grace, or the over 100,000 in the Garlock Manville Trust discovery. The discovery is measured and does not impose undue burdens or costs on the Trusts, all while generating information needed to determine a key issue in this case: the extent to which Bestwall's historical resolutions were tainted by evidence manipulation. This Court cannot rely on those historical resolutions, allow the ACC and the FCR to rely on them, or allow the ACC and the FCR to invite voting claimants to rely on them, without understanding the extent to which this problem of evidence manipulation existed.

## Notice

45.    Consistent with the *Order Establishing Certain Notice, Case Management and Administrative Procedures* (Dkt. 27) (the "Case Management Order"), notice of this Motion has been provided to: (a) the Office of the United States Bankruptcy Administrator for the Western District of North Carolina; (b) counsel to the ACC; (c) counsel to the FCR; (d) counsel to Debtor's non-debtor affiliate, New GP; (e) counsel for DCPF and the Manville Trust; and (f) the other parties on the Service List established by the Case Management Order. Bestwall submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## No Prior Request

46.    No prior request for the relief sought herein has been made to this Court or any other court.

---

[52] See *Debtor's Objection to T H Agriculture & Nutrition Asbestos Personal Injury Trust and Verus Claims Services, LLC's Joint Motion to Quash and, Alternatively, for Issuance of a Protective Order* at 2, In re Spec. Prods. Holding Corp., Misc. No. 12-108 (Bankr. D.N.J. Nov. 12, 2012) (Dkt. 5) (attached as **Ex. 56**); *Order Denying T H Agriculture & Nutrition Asbestos Personal Injury Trust & Verus Claims Services, LLC's Joint Motion to Quash and, Alternatively, for Issuance of a Protective Order*, In re Spec. Prods. Holding Corp., Misc. No. 12-108 (Bankr. D.N.J. Dec. 14, 2012) (Dkt. 28) (attached as **Ex. 57**).

Dated: July 30, 2020
Charlotte, North Carolina

Respectfully submitted,

/s/ Garland S. Cassada
Garland S. Cassada (NC Bar No. 12352)
Richard C. Worf, Jr. (NC Bar No. 37143)
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
E-mail:      gcassada@robinsonbradshaw.com
             rworf@robinsonbradshaw.com

Gregory M. Gordon (TX Bar No. 08435300)
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail:      gmgordon@jonesday.com
(Admitted *pro hac vice*)

Jeffrey B. Ellman (GA Bar No. 141828)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
E-mail:      jbellman@jonesday.com
(Admitted *pro hac vice*)

Cary Ira Schachter (TX 17719900)
Raymond P. Harris, Jr. (TX 09088050)
Erin A. Therrian (TX 24072524)
SCHACHTER HARRIS, LLP
909 Lake Carolyn Parkway, Suite 1775
Irving, Texas 75039
Telephone: (214) 999-5700
E-mail:      cschachter@shtriallaw.com
             rharris@shtriallaw.com
             etherrian@shtriallaw.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTOR AND DEBTOR
IN POSSESSION