# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

## MOTION OF THE DEBTOR FOR AN ORDER
## AUTHORIZING ESTABLISHMENT OF A QUALIFIED
## SETTLEMENT FUND FOR PAYMENT OF ASBESTOS CLAIMS

Bestwall LLC, the debtor and debtor in possession in the above-captioned

chapter 11 case (the "Debtor" or "Bestwall"), moves this Court for entry of an order, pursuant to

sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"),

approving the establishment and funding of a North Carolina trust (the "QSF Trust") that will

constitute a "qualified settlement fund" to resolve or satisfy current and future asbestos-related

claims asserted against or related to the Debtor (collectively, the "Bestwall Asbestos Claims")

upon substantially the terms set forth in the term sheet attached hereto as Exhibit A (the "Term

Sheet"). In support of this Motion, the Debtor respectfully states as follows:

## Background

1.    On November 2, 2017 (the "Petition Date"), the Debtor commenced this

reorganization case (the "Chapter 11 Case") by filing a voluntary petition for relief under

chapter 11 of the Bankruptcy Code.

2.    On November 16, 2017, the Court entered an order [Dkt. 97] appointing

an official committee of asbestos claimants (the "Asbestos Committee") in the Chapter 11 Case,

---

[1]    The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is
133 Peachtree Street, N.E., Atlanta, Georgia 30303.

as modified by subsequent orders of the Court [Dkt. 335, 348, 666, 690].  On February 23, 2018,

the Court entered an order [Dkt. 278] appointing Sander L. Esserman as the legal representative

for future asbestos claimants in the Chapter 11 Case (the "Future Claimants' Representative"

and, together with the Asbestos Committee, the "Claimant Representatives").

> 3.     During the course of the Chapter 11 Case, the Debtor has engaged in

settlement discussions with the Claimant Representatives in an effort to reach agreement on

the terms of, and funding for, a section 524(g) trust, which would form the basis of a consensual

chapter 11 plan.  Despite months of effort at the outset of this case, no agreement was reached.

> 4.     At a hearing on October 23, 2019 and in a subsequent court order dated

December 18, 2019 [Dkt. 1082], the Court directed the Debtor; its non-debtor affiliate, Georgia-

Pacific LLC ("New GP"); the Asbestos Committee; and the Future Claimants' Representative to

participate in a mediation in an effort to resolve these issues.  Although the mediation was

extended through May 14, 2020 by agreement of the parties and Court order [Dkt. 1117], it

ultimately concluded with an impasse on April 28, 2020, as reflected in the report of

the mediator filed with the Court [Dkt. 1165].

> 5.     Since that time, the Claimant Representatives have commenced an

aggressive litigation campaign against the Debtor.  This effort appears to be designed to pressure

the Debtor and New GP into abandoning any consensual resolution of the case and permitting

the Claimant Representatives to effectively dismiss the case through a misguided plan that serves

no reorganizational purpose.  Notwithstanding these multiple litigation attacks, all of which seek

to deprive the Court of any meaningful opportunity to evaluate the true extent of Bestwall's

liability for asbestos claims, the Debtor continues to believe that the Court should authorize an

estimation process.  Such a process would enable the parties and the Court to focus on and

consider the issue central to a resolution of this case (*i.e.*, the extent of Bestwall's liability for present and future asbestos claims). This would materially advance the Chapter 11 Case by promoting settlement and assisting the parties in formulating, soliciting and confirming a consensual plan, just as estimation has in other asbestos bankruptcies. A further Court hearing to consider the Debtor's request for estimation is set for August 19, 2020.

6.      In the meantime, to advance this case towards resolution, the Debtor has taken two important steps.[2] <u>First</u>, concurrently with the filing of this Motion, the Debtor has filed the *Amended Plan of Reorganization of Bestwall LLC* (the "<u>Amended Plan</u>"), providing for $1 billion in funding for a section 524(g) trust to satisfy Bestwall Asbestos Claims. In its initial *Plan of Reorganization of Bestwall LLC* [Dkt. 860] (the "<u>Initial Plan</u>"), the Debtor did not include a funding amount for a section 524(g) trust, intending to negotiate the amount and then present a consensual plan for confirmation.[3] Given the current status of the case, the Debtor believes it is important at this time to include a specific funding proposal in its plan.

7.      <u>Second</u>, to further move this case forward and attempt to put to rest the ongoing professed worries by the Claimant Representatives that funds ultimately will not be

---

[2]      These steps (a) further demonstrate Bestwall's good faith, (b) address what it believes are unfounded concerns by the Claimant Representatives about the viability of the Funding Agreement (as defined below) and (c) respond to the Claimant Representatives' ongoing false innuendo suggesting that Bestwall and New GP have failed to make any reasonable settlement offers. *See, e.g., Motion of the Official Committee of Asbestos Claimants and the Future Claimants' Representative to Modify and Condition the Preliminary Injunction Issued for the Benefit of Georgia-Pacific and Other Affiliated Non-Debtor Entities* at ¶ 3, Adv. Pro. No. 17-3105 (Bankr. W.D.N.C. July 29, 2020) [Adv. Dkt. No. 207] (suggesting that New GP benefits from the delay in this case and stating, "[t]hus, it is no surprise that mediation was unsuccessful," thereby insinuating inaccurately and unfairly that Bestwall and New GP did not make serious and good faith settlement offers in mediation).

[3]      Months before filing the Initial Plan, the Debtor provided a draft to the Claimant Representatives for comments, but received none. More recently, the Claimant Representatives have filed two versions of their own proposed plan of reorganization, seeking no input from the Debtor or New GP on either version [Dkts. 1172, 1219] (the "<u>ACC/FCR Plan</u>"). The Debtor believes the ACC/FCR Plan is unconfirmable on its face and will address its many deficiencies in a separate opposition to the Asbestos Committee's and the Future Claimants' Representative's proposed disclosure statement [Dkt. 1220] and solicitation procedures [Dkt. 1247].

available to pay asbestos claims (despite the clear language of the Funding Agreement and New

GP's strong financial condition), the Debtor has negotiated an agreement under which New GP

will provide $1 billion under the Funding Agreement to fund an irrevocable trust (the QSF Trust)

for the exclusive benefit of holders of Bestwall Asbestos Claims.  The QSF Trust would fund an

asbestos trust under a confirmed plan, including the Amended Plan if it were confirmed and

implemented.

8.      By proposing $1 billion as the funding amount for a section 524(g) trust

and negotiating funding for the QSF Trust in the same amount, the Debtor is not conceding that

$1 billion represents its liability for pending and future asbestos claims.  To the contrary,

although it lacks information necessary to fully assess the amount of its liability, the Debtor

believes $1 billion substantially exceeds its liability for Bestwall Asbestos Claims.  Nonetheless,

the Debtor has proposed this level of funding for a section 524(g) trust to demonstrate its

commitment to a consensual resolution of this case.

## Jurisdiction

9.      This Court has subject matter jurisdiction to consider this matter pursuant

to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

10.     By this Motion, the Debtor seeks entry of an order pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code approving and establishing the QSF Trust,

under the Court's jurisdiction, to resolve or satisfy Bestwall Asbestos Claims by:  (a) providing

funding for a trust under section 524(g) of the Bankruptcy Code in connection with a confirmed

plan of reorganization in the Chapter 11 Case (*e.g.*, the Amended Plan or a different plan); or (b)

if no such plan of reorganization in the Chapter 11 Case becomes effective, providing funding

for the payment of Bestwall Asbestos Claims when no chapter 11 case is pending, in the amounts

established by a court judgment or a final settlement.

## Relevant Facts

11.     The Debtor and its predecessor, the former Georgia-Pacific LLC

("Old GP"), have been the subject of asbestos-related claims since 1979, and this litigation is

anticipated to continue for decades more.  *Declaration of Tyler L. Woolson in Support of First*

*Day Pleadings* [Dkt. 2] (the "First Day Declaration") ¶ 25.  As of the commencement of

the Chapter 11 Case, approximately 64,000 asbestos-related claims were pending against

Bestwall nationwide, a third of them in active litigation.  *Id.*

12.     To provide Old GP with optionality for addressing this asbestos litigation,

Old GP underwent a corporate restructuring in July 2017 (the "2017 Corporate Restructuring"),

completing a divisional merger under the Texas Business Organizations Code.  *Id.* at ¶ 16.  As a

result of the 2017 Corporate Restructuring, (a) Old GP ceased to exist and (b) two new

companies were formed:  (i) Bestwall and (ii) New GP.  *Id.* at 7.  As part of the restructuring, all

of Old GP's asbestos liabilities and certain assets of Old GP were allocated to Bestwall.  *Id.*

at ¶ 18.  All of Old GP's remaining assets and liabilities were allocated to New GP in the

restructuring.  *Id.*

13.     A key objective of the 2017 Corporate Restructuring was to make certain

that Bestwall has the same ability to fund the costs of defending and resolving present and future

asbestos claims as Old GP had, including in connection with any chapter 11 filing.  *Id.* at ¶ 16.

To ensure that Bestwall has the same paying power as Old GP, as part of the 2017 Corporate

Restructuring, Bestwall and New GP became parties to that certain Second Amended and

Restated Funding Agreement, dated as of November 1, 2017, but effective as of July 31, 2017

(the "Funding Agreement"), which is attached to the First Day Declaration as Annex 2.  *Id.* at 7.

The Funding Agreement is a binding and enforceable contract requiring New GP to fund,

without any corresponding repayment obligation, (a) the cost of the Chapter 11 Case, only if and

to the extent that cash distributions received by the Debtor from its non-debtor subsidiaries are

insufficient to pay these costs and expenses; and (b) a section 524(g) trust established under

a confirmed plan of reorganization, only if and to the extent the Debtor's assets are insufficient

to provide the requisite trust funding. Funding Agreement at 5 (definition of Permitted Funding

Use).

14.     Since the Funding Agreement became effective, the parties have fully

complied with their obligations thereunder. Through August 12, 2020, New GP has provided the

Debtor with a total of nearly $160 million of funding, and New GP's financial statements

(provided to the Debtor under the terms of the Funding Agreement and forwarded by the Debtors

to the Claimant Representatives) demonstrate its ability to provide ongoing funding to the Debtor

in the future.[4] By its terms, the Funding Agreement does not require New GP to pre-fund

amounts that ultimately may be used to fund a section 524(g) trust under a chapter 11 plan.

Instead, it permits the Debtor to obtain funding to (a) pay up to 30 days of projected costs,

(b) maintain a $5 million reserve account and (c) fund a section 524(g) trust upon

the confirmation of a plan by final and non-appealable orders of this Court and the United States

---

[4]      Notably, despite the baseless rhetoric aimed at the Funding Agreement, the Claimant Representatives
recently acknowledged New GP's compliance with the Funding Agreement and their expectation that New
GP will be able to continue to comply with the Funding Agreement. *See* Dkt. 1257-1 (The Claimant
Representatives "expect Georgia-Pacific to continue to meet its obligations under the Funding Agreement
in the same manner that it has during the Reorganization Case to date."); *see also id*. ("The [Claimant
Representatives] have historically received copies of funding requests from the Debtor to Georgia-Pacific,
including as recently as for the month of Feb. 2020, and are not aware of Georgia-Pacific ever challenging
a funding request submitted by the Debtor. In fact, the [the Claimant Representatives] understand that
Georgia-Pacific has always met such requests within the allowed time period of three business days.").
Nevertheless, this Motion will alleviate any allegations or concerns about New GP's commitment to fund a
section 524(g) trust.

District Court for the Western District of North Carolina (the "District Court"), and only to

the extent the Debtor's other assets are insufficient.  *Id.* at 5, 6.

***Negotiation of the Term Sheet and the Trust Agreement***

15.     In this case, Bestwall seeks to fairly and equitably resolve all of its

asbestos claims—current and future—through a plan of reorganization that establishes a

section 524(g) trust to liquidate, settle and pay all such claims to the extent valid.  *Id.*  To that

end, the Debtor filed the Amended Plan concurrently with this Motion.

16.     Although funding will be available in the future under the Funding

Agreement, the Debtor determined that it would be in the estate's best interests to secure a

dedicated funding source for its Amended Plan or any other plan in the Chapter 11 Case that

would establish a section 524(g) trust for the benefit of holders of Bestwall Asbestos Claims.

Establishing the QSF Trust by Court order during the 2020 calendar year will be beneficial to all

parties.  Specifically, it will:  (a) benefit Bestwall and the asbestos claimants by placing a

significant amount of funds in an irrevocable trust for the benefit of holders of Bestwall Asbestos

Claims; and (b) as with most qualified settlement funds, benefit the direct or indirect owners of

Bestwall by giving rise to certain tax benefits.

17.     After negotiations, on August 11, 2020, the Debtor and New GP agreed to

the principal terms of the QSF Trust, which are set forth in the Term Sheet and described herein.

The Term Sheet provides for the immediate funding of the QSF Trust with $1 billion from New

GP to resolve or satisfy Bestwall Asbestos Claims.  Bestwall and New GP are continuing to

finalize a trust agreement that would establish the QSF Trust as a North Carolina trust pursuant

to terms consistent with the Term Sheet (the "Trust Agreement").  The Trust Agreement will be

filed with the Court once completed, prior to the hearing on this Motion.

**The Principal Terms of the QSF Trust**[5]

18.    The QSF Trust will be established to resolve or satisfy the Bestwall

Asbestos Claims, and it will provide ready and available funding that is held in trust for such

purpose.  Under the Trust Agreement, New GP will provide $1 billion in cash or cash

equivalents under the Funding Agreement to fund the QSF Trust (that amount, collectively with

(a) any future contributions to the QSF Trust and (b) any net earnings on the initial funding

amount or future contributions, the "Trust Funds").  Term Sheet at 1.  By agreeing to fund

the QSF Trust, New GP is committing to provide immediate funding that is otherwise not

required under the Funding Agreement at this time.  In this regard, the Funding Agreement

would require funding for a section 524(g) trust only in connection with a plan that has been

confirmed by final and non-appealable court orders, and only after the Debtor's other assets have

been exhausted.  Moreover, the funding of the QSF Trust will not affect the Debtor's rights or

New GP's obligations under the Funding Agreement in any way, although the Trust Funds that

New GP provides to fund the QSF Trust will reduce the overall amount (if any) that Bestwall

may need to draw under the Funding Agreement at a later time to fund its obligations with

respect to the Bestwall Asbestos Claims.  *Id.* at 2.  The Trust Funds may not be used to fund

the costs of administering the Chapter 11 Case; rather, funding for those costs will continue to be

available under the terms of the Funding Agreement.  *Id.*

19.    Unless New GP waives the conditions for release of the Trust Funds,

the Trust Funds will be released from the QSF Trust only if one of two conditions is satisfied.

First, the Trust Funds will be released to provide funding for an asbestos trust that is established

---

[5]    The description of the Term Sheet set forth herein is provided for the convenience of the Court and parties
in interest and is qualified in its entirety by the Term Sheet.  In the event of any inconsistency between the
description herein and the Term Sheet, the Term Sheet shall govern in all respects.

pursuant to section 524(g) of the Bankruptcy Code for the benefit of holders of Bestwall

Asbestos Claims upon the effective date of a plan of reorganization that is confirmed by this

Court and the District Court.  *Id.*  Consistent with this provision, the Amended Plan identifies

the QSF Trust as the source of funding for the proposed section 524(g) trust that will pay

Bestwall Asbestos Claims in accordance with the terms of the Amended Plan and the exhibits

thereto. *See, e.g.,* Amended Plan § IV.G.2.b.  However, access to the Trust Funds is not limited

to the Amended Plan.  Rather, the QSF Trust will be available to fund any section 524(g) trust

under any plan confirmed in the Chapter 11 Case by final and non-appealable orders of this

Court and the District Court.

20.    Alternatively, if no such confirmed plan of reorganization becomes

effective in the Chapter 11 Case establishing a section 524(g) trust, the Trust Funds will be

released, as necessary, to pay Bestwall Asbestos Claims upon a judgment of a court of competent

jurisdiction or a final settlement establishing the amount of such claims, at any time when

the Chapter 11 Case is no longer pending.  Term Sheet at 2.  This ensures that, even if no

section 524(g) plan ultimately is confirmed in the Chapter 11 Case, the Trust Funds nevertheless

will be available to pay Bestwall Asbestos Claims resolved in the tort system.

21.    The funding of the QSF Trust is irrevocable and New GP will have no

right to any of the Trust Funds except in the limited circumstances described in the Term Sheet.

In particular, New GP will have a right to any remaining Trust Funds only if the Court

(a) determines that (i) the Trust Funds are not required for the payment of Bestwall Asbestos

Claims or (ii) all Bestwall Asbestos Claims that were to be paid from the Trust Funds have been

paid or otherwise satisfied; or (b) issues an order dissolving or otherwise terminating the QSF

Trust.  *Id.*  These reversionary rights, if ever triggered, would be governed by the terms of

the Trust Agreement.

22.     The Trust Funds will be controlled by an independent trustee

(the "Trustee"), and the QSF Trust will be administered to ensure that it meets all requirements

to qualify as a "qualified settlement fund" under section 468B of the Internal Revenue Code of

1986, as amended (the "IRC"), and does not take any action that would cause the QSF Trust to

no longer so qualify.  *Id.*

23.     New GP, or a designee of New GP (which could be an affiliate of New

GP), will serve as the "Portfolio Manager" for the Trust Funds.  *Id.*  The Portfolio Manager will

manage and make investment decisions with respect to the Trust Funds until they are released,

for a reasonable fee that it will negotiate with the Trustee.  *Id.*  The Trustee, the administrator

and the Portfolio Manager will be governed by, and will act in accordance with, the North

Carolina prudent investor rule in Section 36C-9-901 of the North Carolina Uniform Trust Code.

*Id.*  In addition, the Trust Funds must be invested in accordance with the investment guidelines

detailed in Exhibit A to the Term Sheet, which guidelines generally are designed to limit the risk

to, and enhance the liquidity of, the Trust Funds while achieving a prudent rate of return.  *Id.*

24.     Certain conditions must be met before the QSF Trust is funded.  Among

them, the Trust Agreement, or other definitive documentation, must be finalized, executed and

delivered to the contract parties.  Further, the Court must enter an order (a) approving the Trust

Agreement, (b) establishing the QSF Trust and (c) determining that the Court will be the

supervisory court and will retain jurisdiction over the QSF Trust for the life of the QSF Trust.

That order must become final and non-appealable.  Such a court order is needed to comply with

section 468B of the IRC and related Treasury Regulations.  A proposed form of order is attached

hereto as Exhibit B.

## Basis for Relief Requested

25.    Section 363(b) of the Bankruptcy Code provides that a debtor "after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides that

the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

26.    Under applicable case law in this and other circuits, a court may authorize

the use, sale or lease of a debtor's property outside of the ordinary course of business under

section 363(b)(1) of the Bankruptcy Code where a sound business purpose exists for doing so.

*See, e.g., In re MCSGlobal Inc*., No. 15-11674, 2017 Bankr. LEXIS 16, *12 (Bankr. E.D. Va.

Jan. 4, 2017) ("Courts generally look to the trustee's business judgment in analyzing asset sales

under Section 363(b)."); *In re Century Drive LHDH, LLC*, No. 10-01253-8-SWH, 2010 Bankr.

LEXIS 1453, *4 (Bankr. E.D.N.C. Apr. 28, 2010) ("In reviewing a proposed . . . transaction

under this section [363(b)], the court should consider whether the debtor-in-possession exercised

sound business judgment such that approval of the proposed course of action is warranted.").[6]

27.    When a debtor articulates a valid business justification, "[i]t has been

recognized that courts should approve the exercise of a debtor's business judgment unless it is

'so manifestly unreasonable that it could not be based on sound business judgment, but only on

---

[6]    *See also Allen v. Absher (In re Allen)*, 607 F. App'x 840, 843 (10th Cir. 2015) ("The 'business judgment'
test applies to determine whether a sale under § 363(b) [of the Bankruptcy Code] should be approved.");
*ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (stating that
section 363(b) of the Bankruptcy Code "incorporates a business judgment standard" and that such standard
"is flexible and encourages discretion").

bad faith, whim or caprice.'" *See In re Georgetown Steel Co., LLC*, 306 B.R. 549, 555 (Bankr.

D.S.C. 2004) (quoting *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001)). Indeed,

under the business judgment standard, courts "generally will not entertain objections to

the debtor's conduct" if the debtor "articulates a reasonable basis for its business decisions

(as distinct from a decision made arbitrarily or capriciously)." *See Comm. of Asbestos-Related*

*Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612,

616 (Bankr. S.D.N.Y. 1986).

   28. The Debtor's decision to establish and fund the QSF Trust has a clear and

undeniable business justification:  it would secure funding in advance from New GP of

$1 billion, as needed, to pay asbestos-related claims against the Debtor, without imposing any

costs on the Debtor or its estate.  The Trust Funds would be set aside and protected, thus

ensuring that they are readily available for the Debtor's eventual use as needed to resolve or

satisfy Bestwall Asbestos Claims.  Further, the Trust Funds would be managed and invested in

accordance with prudent, pre-approved guidelines so those funds will remain secure and

available.  Although the same funding from New GP would be available to the Debtor in

the future under the Funding Agreement even without this arrangement, obtaining and

segregating those funds now will address questions that have been unfairly raised about

the parties' intentions under the Funding Agreement, assist in funding any section 524(g) trust in

this case and ultimately inure to the benefit of asbestos claimants, all to the benefit of

the Debtor's estate.  Significantly, establishing the QSF Trust will not diminish the Debtor's

rights or New GP's obligations under the Funding Agreement, which will remain in effect and

binding on the parties.

29.     Establishing and funding the QSF Trust at this time should address concerns expressed by the Claimant Representatives that New GP's payment obligations under the Funding Agreement are not secured or guaranteed.[7]  The QSF Trust would provide $1 billion of segregated funding that would be immediately available to pay Bestwall Asbestos Claims in accordance with a confirmed section 524(g) plan, which eliminates any imagined risk that such funds may not be available in the future.

30.     Thus, for the reasons discussed herein, the Debtor submits that the establishment and funding of the QSF Trust in accordance with the Term Sheet is amply supported by a valid business justification and should be authorized pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

## Requests for Immediate Relief and Waiver of Stay

31.     Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtor seeks a waiver, to the extent it is applicable, of the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## Notice

32.     Consistent with the *Order Establishing Certain Notice, Case Management and Administrative Procedures* [Dkt. 65] (the "Case Management Order"), notice of this Motion

---

[7]     The Claimant Representatives have expressed these concerns numerous times on the record, and most recently in the complaint filed on July 29, 2020 initiating an adversary proceeding against the Debtor and certain non-debtor affiliates.  *See Adversary Complaint* at ¶ 11, Adv. Pro. No. 20-03049 (Bankr. W.D.N.C. July 29, 2020) [Adv. Pro. Dkt. 1] ("The failure to secure or guarantee New GP's obligations renders the Funding Agreement unnecessarily flawed.").

has been provided to (a) the Office of the United States Bankruptcy Administrator for the

Western District of North Carolina; (b) counsel to the Asbestos Committee; (c) counsel to

the Future Claimants' Representative; (d) counsel to New GP; and (e) the other parties on

the Service List established by the Case Management Order.  The Debtor submits that, in light of

the nature of the relief requested, no other or further notice need be provided.

## **No Prior Request**

33.    No prior request for the relief sought herein has been made to this Court or

any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, granting (a) the relief requested herein and (b) such other and further relief to the Debtor as the Court may deem proper.

Dated: August 12, 2020
(Charlotte, North Carolina)

Respectfully submitted,

<u>/s/ Garland S. Cassada</u>
Garland S. Cassada (NC Bar No. 12352)
David M. Schilli (NC Bar No. 17989)
Andrew W.J. Tarr (NC Bar No. 31827)
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina  28246
Telephone:  (704) 377-2536
E-mail:      gcassada@robinsonbradshaw.com
              dschilli@robinsonbradshaw.com
              atarr@robinsonbradshaw.com

Gregory M. Gordon (TX Bar No. 08435300)
Amanda Rush (TX Bar No. 24079422)
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas  75201
Telephone:  (214) 220-3939
E-mail:      gmgordon@jonesday.com
              asrush@jonesday.com
(Admitted *pro hac vice*)

Jeffrey B. Ellman (GA Bar No. 141828)
Brad B. Erens (IL Bar No. 06206864)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia  30309
Telephone:  (404) 581-3939
E-mail:      jbellman@jonesday.com
              bberens@ jonesday.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTOR AND
DEBTOR IN POSSESSION

## **EXHIBIT A**

## **TERM SHEET**

**TERM SHEET FOR ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND**

**August 11, 2020**

This term sheet (the "Term Sheet") sets forth the principal terms of the proposed establishment of a North Carolina trust (the "Trust"), which is intended to constitute a "qualified settlement fund" under section 468B of the Internal Revenue Code of 1986, as amended (a "QSF"), to resolve and satisfy current and future asbestos-related claims asserted against or related to Bestwall LLC ("Bestwall" or the "Debtor") (collectively, "Asbestos Claims") either (a) by providing funding for a trust under section 524(g) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for the benefit of holders of Asbestos Claims that is included in a plan of reorganization (a "Chapter 11 524(g) Plan") in the Debtor's pending case (the "Chapter 11 Case") in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") or (b) if no Chapter 11 524(g) Plan becomes effective, by providing funding for the payment of Asbestos Claims the amounts of which have been established by a judgment of a court of competent jurisdiction or final settlement thereof.

Without limiting the generality of the preceding paragraph, this Term Sheet and the undertakings contemplated in this Term Sheet are for discussion purposes and are subject in all respects to the negotiation, execution, and delivery of definitive documentation, as well as the other conditions precedent set forth below.

This Term Sheet is in the nature of a settlement proposal in furtherance of settlement discussions. Accordingly, this Term Sheet and the information it contains are entitled to protection from any use or disclosure to any party or person pursuant to Rule 408 of the Federal Rules of Evidence and any other applicable rule, statute, or doctrine of similar import protecting the use or disclosure of confidential settlement discussions.

| Parties | Georgia-Pacific LLC ("GP") and Bestwall |
|---|---|
| Definitive Documentation | Trust Agreement (the "Trust Agreement") establishing a North Carolina trust. |
| Funding Amount | $1,000,000,000.00 in cash or cash equivalents (that amount, plus earnings on that amount and including any future contributions to the Trust and any earnings on those contributions, the "Trust Funds"). |
| Condition Precedent to Funding | Funding shall occur only on the entry by the Bankruptcy Court of an order that becomes final and non-appealable and (i) approves the Trust Agreement, (ii) establishes the Trust, and (iii) acknowledges and determines that the Bankruptcy Court shall be the supervisory court with respect to the Trust and shall retain jurisdiction over the Trust for the life of the Trust, unless GP, in its sole discretion, waives such condition in whole or in part. |
| Purpose of Trust | The Trust Agreement shall provide that the Trust is "established to resolve or satisfy" Asbestos Claims within the meaning of Treas. Reg. § 1.468B-1(c)(2) |

| | |
|---|---|
| | by providing ready and available funding in respect of Asbestos Claims as described in "Release Conditions" below.<br><br>For the avoidance of doubt, the establishment of the Trust shall not affect in any way the obligations of GP under that certain Second Amended and Restated Funding Agreement, dated as of November 1, 2017, but effective as of July 31, 2017, by and between GP and Bestwall (the "<u>Funding Agreement</u>"), except to the extent that funding actually provided by the Trust to satisfy Asbestos Claims reduces the aggregate amount necessary for Bestwall to fund all Permitted Funding Uses (as such term is defined in the Funding Agreement). |
| **Control of the Trust Funds** | An independent trustee shall control the Trust Funds as trustee (the "<u>Trustee</u>").  The Trustee shall be, or shall appoint a third party to be, the "administrator" of the Trust within the meaning of Treas. Reg. § 1.468B-2(k) and (i) shall ensure that the Trust meets all requirements to qualify as a QSF and (ii) shall take no action that would cause the Trust to fail to qualify as a QSF.  The Trustee and, if applicable, the administrator shall be governed by, and act in accordance with, the North Carolina prudent investor rule, North Carolina Uniform Trust Code, Section 36C-9-901 (the "<u>Prudent Investor Rule</u>"). |
| **Portfolio Manager** | GP (or its designee, which may be an affiliate of GP) (the "<u>Portfolio Manager</u>") shall, for a reasonable fee to be negotiated with the Trustee, manage the Trust Funds and make all investment decisions with respect to the Trust Funds unless and until the Trust Funds are released, as and to the extent provided below in "Release Conditions."  The Portfolio Manager shall be governed by, and act in accordance with, the Prudent Investor Rule.  The Trust Funds shall be invested in accordance with the investment guidelines set forth on <u>Exhibit A</u>. |
| **Release Conditions** | The Trust Funds shall be released from the Trust only upon satisfaction of the following conditions (the "<u>Release Conditions</u>"), unless GP, in its sole discretion, waives the Release Conditions to otherwise resolve and satisfy Asbestos Claims:<br><br>1.    <u>Chapter 11 524(g) Plan</u>.  The Trust Funds shall be released, in whole or in part, to resolve and satisfy Asbestos Claims pursuant to a Chapter 11 524(g) Plan confirmed by the Bankruptcy Court and the United States District Court in the district of the Bankruptcy Court upon the effectiveness thereof.  For the avoidance of doubt, the Trust Funds shall not be used to fund the costs of administering the Chapter 11 Case.<br><br>2.    <u>No Chapter 11 524(g) Plan</u>.    If no Chapter 11 524(g) Plan becomes effective, the Trust Funds shall be released, as necessary, to resolve and satisfy Asbestos Claims by providing funding for the payment of Asbestos Claims upon establishment of the amounts thereof by a judgment of a court of competent jurisdiction or final settlement at any time when the Chapter 11 Case is no longer pending. |

103992017.7NAI-1513846555V7

| **Reversionary Right** | Notwithstanding anything to the contrary in this Term Sheet, GP shall have the right to the return of all then-remaining Trust Funds upon the occurrence of either of the following conditions:<br><br>1.   A determination by the Bankruptcy Court either that Trust Funds are not required for the payment of Asbestos Claims or that all Asbestos Claims to be paid from the Trust Funds have either been paid or otherwise satisfied; or<br><br>2.   The issuance by the Bankruptcy Court of an order dissolving or otherwise terminating the Trust. |
|---|---|

[*Signature page follows*]

103992017.7NAI-1513846555V7

IN WITNESS WHEREOF, the parties have executed this Term Sheet as of the date first written above.

**GEORGIA-PACIFIC LLC**, a Delaware limited liability company

By: _____

Name:  Tye Darland

Title:    Senior Vice President, General Counsel and
             Secretary

**BESTWALL LLC**, a North Carolina limited liability company

By: _____

Name:  Duane Hughes

Title:    President

IN WITNESS WHEREOF, the parties have executed this Term Sheet as of the date first written above.

**GEORGIA-PACIFIC LLC**, a Delaware limited liability company

By: _____

Name:  Tye Darland

Title:   Senior Vice President, General Counsel and
         Secretary


**BESTWALL LLC**, a North Carolina limited liability company

By: _____

Name:  Duane Hughes

Title:   President

<u>**EXHIBIT A**</u>

**ENHANCED CASH INVESTMENT GUIDELINES**

The Portfolio Manager will have full discretion within the following guidelines to invest in fixed income and related securities.  Unless otherwise stated below, the following guidelines will be applied at the time of purchase.

<u>**Portfolio Manager Objectives**</u>

- Safety of Principal
- Liquidity

<u>**Portfolio Duration Range**</u>      Max 1.5 years

<u>**Asset Types and Investment Vehicles**</u>

The Portfolio Manager will have discretion to invest in the following instruments and investment vehicles:

- Money Market Instruments
- Government and Agency Securities
- Supranational Obligations (such as the International Bank for Reconstruction and Development)
- Municipal Bonds
- Variable and Floating-Rate Debt Securities
- Corporate Securities
- Private Placements (Including 144As)
- Yankee Bonds
- Mortgage-Backed Securities (including CMOs and REMICs)
- Asset-Backed Securities (Including CBOs, CLOs and CDOs)
- Emerging Market Securities
- Non-Levered Structured Notes
- PIMCO Pooled Funds
- Non-Investment Grade Securities (limited to 18-months final maturity)

<u>**Asset Types/Vehicles Explicitly Prohibited**</u>

- Non-USD Denominated
- Foreign Currency
- Repo and Reverse Repurchase Agreements
- Derivatives
- The debt of any person who is related to GP within the meaning of section 267(b) or section 707(b)(1) of the Internal Revenue Code of 1986, as amended.
- Any asset the acquisition or holding of which would cause the Trust to fail to qualify as a QSF.

<u>**Transaction Types**</u>

Purchases and sales may be transacted for regular settlement.

**Transaction Types Explicitly Prohibited**

Purchases and sales may not be transacted for deferred/forward settlement except new issue purchases that settle beyond T+5 days.

**Credit Quality Minimums**

The Portfolio Manager will apply quality ratings using the higher of Moody's, S&P or Fitch. If an issue is not rated by one of these rating agencies, then the Portfolio Manager will reasonably determine a rating.

    <u>Minimum Issue Quality</u>:                       BB-/Ba3 Rating

    <u>Minimum Commercial Paper Quality</u>:      A3/P3 (includes section 4(2) CP)

Should an issue be downgraded below these minimums, the Portfolio Manager will determine the appropriate action (sell or hold) based on the perceived risk and expected return.

**Concentration Limits**

The Portfolio Manager will limit the concentrations within the portfolio to the following:

<u>Issue or Issuer</u>:                            5%

    Excludes sovereign debt of OECD governments and U.S. agencies. Specific mortgage pools and trusts are considered separate issuers, and each tranche within a CMO is considered a separate issue.

<u>Corporate Securities</u>:                    60%

    Excludes commercial paper and supranationals

<u>Asset Backed Securities</u>                20%

<u>Non-agency Mortgage Backed Securities</u>    10%

<u>Emerging Markets</u>:                  10%

    The Portfolio Manager shall use the World Bank's definition for emerging markets, which is based on a GNP per capita calculation.

<u>Non-Investment Grade Securities</u>       10%

<u>Investment in securities ranging from BB+/Ba1 to BB-/Ba3 limited to 18-month final maturity.</u>

\*      \*      \*

103992017.7NAI-1513846555V7

# EXHIBIT B

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

**ORDER AUTHORIZING THE DEBTOR TO ESTABLISH A**
**QUALIFIED SETTLEMENT FUND FOR PAYMENT OF ASBESTOS CLAIMS**

This matter coming before the Court on the *Motion of the Debtor for an Order*

*Authorizing Establishment of a Qualified Settlement Fund for Payment of Asbestos Claims*

(the "Motion"),[2] filed by Bestwall LLC, the debtor and debtor in possession in the

above-captioned chapter 11 case (the "Debtor"); the Court having reviewed the Motion and

the Trust Agreement attached hereto as Annex 1 and having heard the statements of counsel and

the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing");

the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1]   The last four digits of the Debtor's taxpayer identification number are 5815.  The Debtor's address is
133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (c) this is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2), (d) notice of the Motion and the Hearing was

sufficient under the circumstances, (e) establishment and funding of the QSF Trust pursuant to

the Trust Agreement is a sound exercise of the Debtor's business judgment and (f) the Trust

Agreement is fair and reasonable and in the best interests of the Debtor's estate and parties in

interest; and the Court having determined that the legal and factual bases set forth in the Motion

and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtor is hereby authorized to enter into the Trust Agreement, and

the Trust Agreement is hereby approved as binding on all parties thereto.

3.      The QSF Trust shall be established in accordance with and governed by

the terms of the Trust Agreement so that it may constitute a "qualified settlement fund" under

section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations

§ 1.468B-1, *et seq.*  The QSF Trust will be funded and used to resolve or satisfy current and

future asbestos-related claims asserted against or related to the Debtor as provided in the Trust

Agreement.  The Trust Funds shall be earmarked for and only used for the purposes provided in

the Trust Agreement.

4.      This Court shall be the supervisory court with respect to the QSF Trust

and shall retain jurisdiction over the QSF Trust for the entire life of the QSF Trust.

5.      The Debtor is authorized and empowered to take all actions necessary or

appropriate to implement the relief granted in this Order.

6.      This Order shall be immediately effective and enforceable upon its entry.

To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is

hereby waived.

7.      This Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation, interpretation or enforcement of this Order.

This Order has been signed electronically.                    United States Bankruptcy Court
The Judge's signature and Court's seal appear
at the top of the Order.