FILED & JUDGMENT ENTERED
Steven T. Salata

September 25 2020

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*

Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

## ORDER AUTHORIZING THE DEBTOR TO ESTABLISH A
## QUALIFIED SETTLEMENT FUND FOR PAYMENT OF ASBESTOS CLAIMS

This matter coming before the Court on the *Motion of the Debtor for an Order Authorizing Establishment of a Qualified Settlement Fund for Payment of Asbestos Claims* [Dkt. 1275] (the "Motion"),[2] filed by Bestwall LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"); objections to the Motion having been filed by the Official Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative [Dkts. 1350, 1353] (collectively, the "Objections"); the Court having reviewed the Motion and the Trust Agreement attached hereto as Annex 1 and having heard the statements

---

[1]    The last four digits of the Debtor's taxpayer identification number are 5815.  The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

NAI-1514349766

of counsel and the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334, (b) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409, (c) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (d) notice of the Motion

and the Hearing was sufficient under the circumstances, (e) establishment and funding of

the QSF Trust pursuant to the Trust Agreement is a sound exercise of the Debtor's business

judgment and (f) the Trust Agreement is fair and reasonable and in the best interests of

the Debtor's estate and parties in interest; and the Court having determined that the legal and

factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED, and the Objections are resolved, on the terms
set forth herein.

2.      The Debtor is hereby authorized to enter into the Trust Agreement, and
the Trust Agreement is hereby approved as binding on all parties thereto.

3.      The QSF Trust shall be established in accordance with and governed by
the terms of the Trust Agreement so that it may constitute a "qualified settlement fund" under

section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations

§ 1.468B-1, *et seq.*  The QSF Trust will be funded and used to resolve or satisfy current and

future asbestos-related claims asserted against or related to the Debtor as provided in the Trust

Agreement.  The Trust Funds shall be earmarked for and only used for the purposes provided in

the Trust Agreement.

4.      This Court shall be the supervisory court with respect to the QSF Trust and shall retain jurisdiction over the QSF Trust for the entire life of the QSF Trust.

5.      The Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

6.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

7.      For the avoidance of doubt, the entry of this Order shall not constitute any determination regarding (a) whether New GP has standing to appear and be heard on any issue in this bankruptcy case other than issues related to the Trust Agreement and this Order, (b) the adequacy of the amount of funds contained in the QSF Trust to resolve or satisfy current and future asbestos-related claims that are the subject of this bankruptcy case or (c) the relevance of the entry of this Order to any other issue in this case, whether currently pending or that may be presented in the future.

8.      This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation or enforcement of this Order.

This Order has been signed electronically.                United States Bankruptcy Court
The Judge's signature and Court's seal appear
at the top of the Order.

# **ANNEX 1**

**BESTWALL SETTLEMENT
FACILITY AGREEMENT**

*By and Among*

**GEORGIA-PACIFIC LLC,**

**BESTWALL LLC**

*and*

**U.S. BANK NATIONAL ASSOCIATION, as the Trustee**

**Dated as of [●], 2020**

Article 1    AGREEMENT OF TRUST ................................................................- 2 -

    1.1    Creation and Name ................................................................- 2 -

    1.2    Purpose................................................................- 2 -

    1.3    Transfer of Assets ................................................................- 2 -

    1.4    Acceptance of Appointment and Contribution ................................- 3 -

    1.5    Release Conditions................................................................- 3 -

Article 2    TRUSTEE ................................................................- 3 -

    2.1    Appointment ................................................................- 3 -

    2.2    Term of Service................................................................- 3 -

    2.3    Appointment of Successor Trustee(s) ................................- 4 -

    2.4    Liability of Trustee and Representatives ................................- 4 -

    2.5    Compensation and Expenses of Trustee ................................- 4 -

    2.6    Trustee's Employment of Professionals ................................- 5 -

    2.7    Trustee Qualifications and Independence ................................- 5 -

    2.8    Bond ................................................................- 5 -

Article 3    POWERS, TRUST ADMINISTRATION AND REPORTING ................- 6 -

    3.1    Powers ................................................................- 6 -

    3.2    General Administration and Obligations of the Trustee ................- 8 -

    3.3    Indemnification of the Trustee................................................................- 10 -

Article 4    ACCOUNTS, INVESTMENTS, AND PAYMENTS ................................- 11 -

    4.1    Accounts ................................................................- 11 -

    4.2    Investments ................................................................- 11 -

    4.3    Payments ................................................................- 11 -

Article 5    OBLIGATIONS OF GP ................................................................- 11 -

    5.1    GP Settlement Contribution................................................................- 11 -

    5.2    Condition Precedent................................................................- 11 -

Article 6    GENERAL PROVISIONS ................................................................- 12 -

    6.1    Irrevocability................................................................- 12 -

    6.2    Termination................................................................- 12 -

    6.3    Amendments ................................................................- 12 -

    6.4    Severability ................................................................- 12 -

    6.5    Notices ................................................................- 12 -

6.6    Successors and Assigns ................................................................- 14 -

6.7    Entire Agreement; No Waiver ......................................................- 14 -

6.8    Headings ......................................................................................- 14 -

6.9    Governing Law ............................................................................- 14 -

6.10    Dispute Resolution ......................................................................- 15 -

6.11    Counterpart Signatures ................................................................- 15 -

Article 7         DEFINITIONS ............................................................................- 15 -

## BESTWALL SETTLEMENT FACILITY AGREEMENT

This Bestwall Settlement Facility Agreement (this "***Settlement Facility Agreement***") is entered into on this [●] day of [●], 2020 by and among Georgia-Pacific LLC ("***GP***"), Bestwall LLC ("***Bestwall***"), and the Trustee named on the signature pages of this Settlement Facility Agreement. Capitalized terms used in this Settlement Facility Agreement have the meanings set forth in Article 7.

## RECITALS

A.     GP and Bestwall executed that certain Second Amended and Restated Funding Agreement, dated as of November 1, 2017, but effective as of July 31, 2017 (the "***Funding Agreement***"), pursuant to which GP agreed to provide funding to Bestwall for the purpose of defending and resolving Asbestos Claims, including in connection with the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.     On November 2, 2017, Bestwall filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

C.     GP and Bestwall executed that certain Term Sheet for Establishment of Qualified Settlement Fund, dated as of August 11, 2020 (the "***Term Sheet***"), pursuant to which GP and Bestwall agreed to the principal terms on which (a) GP and Bestwall would create the Settlement Facility as a trust to resolve or satisfy Asbestos Claims, either (i) by providing funding for a Section 524(g) Trust included in a Chapter 11 524(g) Plan in the Chapter 11 Case or (ii) if no Chapter 11 524(g) Plan becomes effective, by providing funding for the payment of Asbestos Claims upon the establishment of the amounts thereof, by a judgment of a court of competent jurisdiction or a final settlement, at any time when the Chapter 11 Case is no longer pending, and (b) GP would provide the Settlement Facility with immediate funding of $1,000,000,000 in Cash.

D.     The Parties now desire to provide for the creation, funding, and administration of the Settlement Facility in accordance with the terms of this Settlement Facility Agreement.

E.     The Parties intend that the Settlement Facility (a) constitute a Qualified Settlement Fund and, as such, be supervised by the Bankruptcy Court, (b) be created as a North Carolina trust, (c) be managed by a trustee meeting specified independence criteria requirements, (d) be established to resolve or satisfy, within the meaning of Treas. Reg. § 1.468B-1(c)(2), Asbestos Claims, and (e) be funded with $1,000,000,000 in Cash immediately upon its creation.

F.     The Parties do not intend that this Settlement Facility Agreement, or the establishment of the Settlement Facility under this Settlement Facility Agreement, shall affect in any way the obligations of GP under the Funding Agreement, except to the extent that GP shall not be obligated to fund a Permitted Funding Use (as such term is defined in the Funding Agreement) to the extent that such Permitted Funding Use is actually paid by the disbursement of funds from the Settlement Facility.

**NOW, THEREFORE**, it is agreed as follows:

# ARTICLE 1

## AGREEMENT OF TRUST

**1.1**    **Creation and Name**.  GP, as grantor, hereby creates, effective as of the Effective Date and with the consent of Bestwall, a North Carolina trust that shall be known as the "***Bestwall Settlement Facility***" and that shall be managed by the Trustee.  The Trustee shall transact the business and affairs of the Settlement Facility in the name "Bestwall Settlement Facility."

**1.2**    **Purpose**.  The purposes of the Settlement Facility are as follows:

(a)    to resolve or satisfy Asbestos Claims in accordance with the Release Conditions set forth in Section 1.5;

(b)    to collect, invest, and distribute the Trust Funds in accordance with the terms of this Settlement Facility Agreement;

(c)    to pay Settlement Facility Expenses and any and all other liabilities of the Settlement Facility in accordance with the terms of this Settlement Facility Agreement;

(d)    at all times to qualify as a Qualified Settlement Fund; and

(e)    otherwise administer the Settlement Facility pursuant to the express provisions of this Settlement Facility Agreement and any other agreements entered into by the Trustee or the Settlement Facility in accordance with the terms of this Settlement Facility Agreement.

**1.3**    **Transfer of Assets**.

(a)    Immediate Cash Funding.  On the Effective Date, GP shall deliver the GP Settlement Contribution to the Settlement Facility by wire transfer of immediately available funds to the Settlement Facility Accounts, as directed in writing by the Trustee.

(b)    Funding Agreement.  GP and Bestwall acknowledge and agree that: (i) GP has no obligation to deliver the GP Settlement Contribution to the Settlement Facility, as provided in Section 1.3(a), under the existing terms of the Funding Agreement; (ii) notwithstanding the lack of any existing obligation to do so, on the Effective Date, as requested by Bestwall, GP shall deliver the GP Settlement Contribution to the Settlement Facility, under the Funding Agreement, as provided in Section 1.3(a); (iii) each of GP and Bestwall hereby waives any requirement or limitation set forth in Section 2 of the Funding Agreement to the extent necessary to permit the delivery of the GP Settlement Contribution to the Settlement Facility, under the Funding Agreement, as provided in Section 1.3(a), and release of the Trust Funds as provided in Section 1.5 or as otherwise provided in this Settlement Facility Agreement; (iv) GP hereby waives, for any and all purposes of the Funding Agreement (including the satisfaction of the conditions of Section 2.d of the Funding Agreement in connection with any future request by Bestwall for funding under the Funding Agreement), any breach of the Funding Agreement (including Section 5 thereof) resulting from the delivery of the

- 2 -

GP Settlement Contribution to the Settlement Facility, under the Funding Agreement, as provided in Section 1.3(a), or from release of the Trust Funds as provided in Section 1.5 or as otherwise provided in this Settlement Facility Agreement; and (v) the establishment of the Settlement Facility shall not affect in any way the obligations of GP under the Funding Agreement except to the extent that GP shall not be obligated to fund a Permitted Funding Use (as such term is defined in the Funding Agreement) to the extent that such Permitted Funding Use is actually paid by the disbursement of funds from the Settlement Facility.

   **1.4** **Acceptance of Appointment and Contribution**.  In connection with and in furtherance of the purposes of the Settlement Facility, the Trustee hereby expressly accepts its appointment as trustee of the Settlement Facility and, in such capacity, accepts the delivery of the GP Settlement Contribution to the Settlement Facility.

   **1.5** **Release Conditions**.  The Trustee shall release the Trust Funds to resolve or satisfy Asbestos Claims only in accordance with, and upon satisfaction of, either of the following conditions (the "***Release Conditions***"), unless GP, in its sole discretion, waives the requirement (in whole or in part) that either of the Release Conditions be met:

     (a) Release Pursuant to Chapter 11 524(g) Plan.  The Trust Funds shall be released, in whole or in part as necessary, to resolve or satisfy Asbestos Claims pursuant to a Chapter 11 524(g) Plan, upon the effectiveness of the Chapter 11 524(g) Plan.  For the avoidance of doubt, the Trust Funds shall not be used to fund costs of administering the Chapter 11 Case.

     (b) Release Without Chapter 11 524(g) Plan.  If no Chapter 11 524(g) Plan becomes effective, then, at any time when the Chapter 11 Case is no longer pending, the Trust Funds shall be released, as necessary, to resolve or satisfy Asbestos Claims by paying to the holder of any Asbestos Claim the amount of such Asbestos Claim upon establishment of the amount thereof, by either (i) a Final Order of a court of competent jurisdiction or (ii) a final settlement.

**ARTICLE 2**

**TRUSTEE**

   **2.1** **Appointment**.  The initial Trustee shall be U.S. Bank National Association.

   **2.2** **Term of Service**.

     (a) Initial Trustee.  The initial Trustee shall serve from the Effective Date, and each successor Trustee named to fill a vacancy shall serve from the date of appointment, until the earlier of (i) its resignation pursuant to Section 2.2(b), (ii) its removal pursuant to Section 2.2(c), or (iii) the termination of the Settlement Facility pursuant to Section 6.2.

     (b) Resignation.  The Trustee may resign at any time by written notice to GP and Bestwall.  Such notice shall specify a date on which such resignation shall take effect, which date shall not be (i) less than ninety (90) days after the date such notice is given, where practicable, or (ii) more than one hundred eighty (180) days after such notice.

- 3 -

(c)    <u>Removal</u>.  The Trustee may be removed in the event that it becomes unable or unwilling to discharge its duties under this Settlement Facility Agreement, or for other good cause.  For such purposes, good cause shall be deemed to include failure to comply with <u>Section 3.2</u>, a consistent pattern of neglect or failure with respect to the performance of the duties of the Trustee under this Settlement Facility Agreement, or repeated non-attendance at scheduled meetings related to the administration of the Settlement Facility, including those contemplated by <u>Section 3.2(f)</u>.  Such removal shall be made only by order of the Bankruptcy Court, upon motion by Bestwall or GP (after consultation with the other).

## 2.3    <u>Appointment of Successor Trustee(s)</u>.

(a)    <u>Vacancy</u>.  In the event of a vacancy in the position, GP and Bestwall shall jointly nominate a successor Trustee for appointment by the Bankruptcy Court, after notice and opportunity for hearing.  Any successor Trustee must meet the qualification requirements of <u>Section 2.7</u>.

(b)    <u>Vesting of Powers on Appointment</u>.  Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee under this Settlement Facility Agreement shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of its predecessor Trustee.

**2.4    <u>Liability of Trustee and Representatives</u>**.  None of the Trustee, the Portfolio Manager, or their respective Representatives shall be liable to the Settlement Facility or any other Person in the absence of gross negligence or willful misconduct, determined by a Final Order.  The Trustee shall have no liability for any action taken or failure to act by the Portfolio Manager with respect to the investment and reinvestment of the Trust Funds (it being understood that the delegation of authority to the Portfolio Manager does not otherwise alter the Trustee's obligations with respect to holding, administering, and distributing the Trust Funds).

## 2.5    <u>Compensation and Expenses of Trustee</u>.

(a)    <u>Compensation</u>.  The Settlement Facility shall pay the Trustee, from the Trust Funds, compensation for its services as a Trustee in the amount and on the terms set forth in <u>Exhibit B</u>.  Any adjustment to the compensation of the Trustee shall require the express written consent of GP and Bestwall and approval of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that in no event shall the compensation of the Trustee exceed reasonable compensation, as determined by an independent compensation consultant.

(b)    <u>Reimbursement</u>.  The Settlement Facility shall reimburse the Trustee, from the Trust Funds, on a monthly basis for all Settlement Facility Expenses incurred and documented by the Trustee.

103992284
NAI-1514303719

(c)   Report of Amounts Paid.   The Trustee shall cause a description of the amounts paid under this Section 2.5 to be included in reports Filed pursuant to Section 3.2(b)(i) of this Settlement Facility Agreement.

**2.6**   **Trustee's Employment of Professionals**.   The Trustee may, but shall not be required to, retain, or cause the Settlement Facility to retain, and consult with competent counsel, accountants, and other Representatives as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility in accordance with this Settlement Facility Agreement, including (i) in connection with the release of Trust Funds in accordance with, and upon satisfaction of, the Release Conditions and (ii) the use of Trust Funds to pay Settlement Facility Expenses and other liabilities of the Settlement Facility, including obligations in respect of indemnification and the advancement of expenses under Section 3.3.   The written opinion of any such Person on any matter the Trustee reasonably believes is within such Person's professional competence shall be full and complete authorization and protection in respect of any action taken or failure to act by the Trustee under this Settlement Facility Agreement in good faith and in accordance with such opinion, in the absence of gross negligence or willful misconduct by the Trustee, determined by a Final Order.

**2.7**   **Trustee Qualifications and Independence**.

(a)   Qualifications.   The Trustee, including the initial Trustee, shall be a Person (and, if an individual, someone over the age of 35) (i) with the appropriate experience and background for the responsibilities of the Trustee under this Settlement Facility Agreement, and (ii) at the time of appointment and at all times during the term of service, independent.

(b)   Independence.   For purposes of this Settlement Facility Agreement, a Person is not independent if such Person (i) is or was an officer, director, employee, or agent of GP, Bestwall, or an Affiliate of GP or Bestwall, or otherwise is or was an "insider" (as such term is defined in the Bankruptcy Code) with respect to GP, Bestwall, or an Affiliate of GP or Bestwall; or (ii) is or was an investment banker, financial advisor, counsel, accountant, or other professional advisor for GP, Bestwall, or an Affiliate of GP or Bestwall, or an officer, director, employee, or agent of any Person that provides or provided investment banking, financial advisory, legal, accounting, or other professional services to GP, Bestwall, or an Affiliate of GP or Bestwall.   For the avoidance of doubt, U.S. Bank National Association, or any successor trustee, may provide other unrelated commercial banking services to GP, Bestwall, or an Affiliate of GP or Bestwall except as expressly prohibited in this Section 2.7(b) and still be independent for purposes of this Settlement Facility Agreement.

**2.8**   **Bond**.   The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

- 5 -

# ARTICLE 3

## POWERS, TRUST ADMINISTRATION AND REPORTING

**3.1**    **Powers**.

(a)    <u>Duties and Powers</u>.    The Trustee is and shall serve as trustee to the Settlement Facility in accordance with the provisions of this Settlement Facility Agreement and North Carolina Uniform Trust Code, N.C.G.S. Sections 36C-1-101 et seq.  The Trustee shall, at all times, administer the Settlement Facility in accordance with this <u>Article 3</u>.  Subject to the limitations set forth in this Settlement Facility Agreement, the Trustee shall have the power to take any and all actions that, in its reasonable judgment, are necessary, advisable, or appropriate to effectuate the purposes of the Settlement Facility, including each power expressly granted in this <u>Section 3.1</u>, any power reasonably incidental to each such power, and any power of the Trustee now or hereafter permitted under applicable law.

(b)    <u>Court Approval Not Required</u>.    Except as required by applicable law or as otherwise specified in this Settlement Facility Agreement, the Trustee need not obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power or discretion conferred under this Settlement Facility Agreement.

(c)    <u>Administrator</u>.    The Trustee (i) shall be, or shall appoint a third party to be, the "administrator" of the Settlement Facility within the meaning of Treas. Reg. § 1.468B-2(k), (ii) shall ensure that the Settlement Facility meets all requirements to qualify as a QSF, and (iii) shall take no action that would cause, or could reasonably be expected to cause, the Settlement Facility to fail to qualify as a QSF.

(d)    <u>Powers</u>.    Without limiting the generality of <u>Section 3.1(a)</u>, and except as otherwise expressly limited in this Settlement Facility Agreement, the Trustee shall have the power to:

(i)    hold, administer, and distribute the Trust Funds in accordance with the terms of this Settlement Facility Agreement, including the release of Trust Funds to resolve or satisfy Asbestos Claims upon the occurrence of a Release Condition;

(ii)    subject to <u>Section 4.2</u>, invest and reinvest the Trust Funds in accordance with the terms of this Settlement Facility Agreement; delegate authority with respect to the investment and reinvestment of all or any portion of the Trust Funds in accordance with the terms of this Settlement Facility Agreement; and cause the Portfolio Manager to liquidate invested Trust Funds as necessary to make distributions of, and payments from, the Trust Funds in accordance with this Settlement Facility Agreement;

(iii)    administer the Settlement Facility in accordance with this Settlement Facility Agreement;

(iv)    pay, from the Trust Funds, any and all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility in accordance with this Settlement Facility Agreement;

- 6 -

(v)     adopt and amend by-laws and other rules and procedures not inconsistent with this Settlement Facility Agreement as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

(vi)     establish such accounts and reserves within the Trust Funds as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

(vii)     sue, defend, and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action related in any way to the Settlement Facility or this Settlement Facility Agreement and, subject to the terms of Section 3.3, defend, and pay, from the Trust Funds, all expenses, costs, and fees (including reasonable attorneys' fees and costs) for the defense of, any and all claims, proceedings, and legal actions against the Trustee or the Settlement Facility related to the administration of the Settlement Facility and the actions of the Trustee;

(viii)     retain, or cause the Settlement Facility to retain, counsel, accountants, and other Representatives of the Settlement Facility as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility and pay, from the Trust Funds, such counsel, accountants, and other Representatives reasonable compensation, including compensation for services rendered before the execution of this Settlement Facility Agreement;

(ix)     receive, from the Trust Funds, compensation and reimbursement of Settlement Facility Expenses, and indemnification and advancement of expenses, in accordance with the terms of this Settlement Facility Agreement;

(x)     execute and deliver, or cause the Settlement Facility to execute and deliver, such agreements, instruments, and other documents as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration of the Settlement Facility;

(xi)     enter into, or cause the Settlement Facility to enter into, such arrangements with third parties as the Trustee, in its reasonable judgment, deems necessary, advisable, or appropriate in connection with the administration the Settlement Facility;

(xii)     cause the Settlement Facility to indemnify and advance expenses to Indemnified Persons in accordance with Section 3.3 using the Trust Funds and, if applicable, insurance;

(xiii)     purchase, using Trust Funds, insurance for the Settlement Facility and Indemnified Persons;

(xiv)     consult with GP and Bestwall in accordance with Section 3.2(f) and otherwise at such times and with respect to such issues as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of the Settlement Facility;

- 7 -

(xv)    establish claims handling agreements and other arrangements as may be appropriate with respect to the Release Conditions;

(xvi)    cause the Settlement Facility to obtain a federal employer identification number and relevant state tax identification numbers, communicate with the IRS and state and local taxing authorities on behalf of the Settlement Facility, cause the Settlement Facility to make payment of required taxes, and cause the Settlement Facility to file all required tax returns;

(xvii)    if applicable, establish procedures for Medicare reporting and to protect the Settlement Facility from Medicare reimbursement claims; and

(xviii)    do all other acts and things consistent with the provisions of this Settlement Facility Agreement, a Chapter 11 524(g) Plan, and applicable law as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of the Settlement Facility.

(e)    <u>Certain Prohibitions</u>.  The Trustee shall not have the power to borrow money or guarantee any debt of any other Person or exercise any common law or statutory right (e.g., decanting, merger, or otherwise) to effectuate a modification or amendment of this Settlement Facility Agreement except as specifically permitted by Section 6.3.

## 3.2    General Administration and Obligations of the Trustee.

(a)    <u>Tax Returns and Reports</u>.

(i)    The Trustee shall cause the Settlement Facility to obtain a federal employer identification number and relevant state tax identification numbers, and to file all tax returns and pay all taxes as required under the Code and Treasury Regulations and any state, local, or other law.  The Trustee shall cause the Settlement Facility to comply with the provisions of Treas. Reg. § 1.468B-2 and all reporting and withholding obligations applicable to the Settlement Facility under the Code, Treasury Regulations, and any state, local, or other law.  The Trustee shall provide a draft of any required tax returns of the Settlement Facility to GP and Bestwall at least thirty (30) days before such returns are to be filed.

(ii)    The Trustee shall cause the Settlement Facility, within seventy-five (75) days after the end of each calendar year (or earlier if required by law), to prepare and deliver, including by electronic means, such information as required by law to enable payees to complete and file each of their respective federal, state, and local income and other tax returns.

(iii)    The Trustee and all parties to this Settlement Facility Agreement agree to cooperate to the maximum extent reasonably possible in conducting any matters involving taxes, including the preparation of any necessary tax returns or reports, the furnishing of information necessary to prepare tax returns or reports, the administration of any tax audit or review, and the conduct of any tax contest; <u>provided</u>, <u>however</u>, that in no event shall the Trustee or any other party have a right to obtain the tax return or financial

- 8 -

information of GP or any Affiliate of GP.  If it shall become necessary to contest any disputed tax, the party primarily liable for such potential tax liability shall be entitled to control such contest after consultation with GP, and the other parties shall cooperate with such controlling party to the maximum extent reasonably possible and shall have the right to participate in such contest to the extent any party has a reasonable expectation of any potential tax liability.

(b)     Financial and Claim Reports.  The Trustee shall cause to be prepared and Filed with the Bankruptcy Court the following reports:

(i)     Financial Reports.  As soon as available, but no later than one hundred twenty (120) days following the end of each calendar year, the Trustee shall cause to be prepared an annual report containing financial statements of the Settlement Facility (including a balance sheet of the Settlement Facility as of the end of such calendar year, a statement of operations for such calendar year, and the information required by Section 2.5(c)) audited by a firm of independent registered public accountants selected by the Trustee and accompanied by an opinion of such firm that such financial statements present fairly in all material respects the financial position of the Settlement Facility as of such year end and the results of its operations as of the year then ended in conformity with accounting principles generally accepted in the United States.

(ii)     Claim Reports.  As soon as available, but, in any event, no less frequently than quarterly, the Trustee shall cause to be prepared a report that provides a summary of the number and amount of payments in respect of Asbestos Claims requested from and paid by the Settlement Facility during such quarter, if any, with all such information classified by disease type.

(c)     Filing of Financial and Claim Reports.  Pursuant to section 107(a) of the Bankruptcy Code, and so long as the Chapter 11 Case is pending, all materials required by Section 3.2(b) shall be served on GP and Bestwall and Filed in the Chapter 11 Cases on the docket of the Bankruptcy Court and, except for redactions reasonably necessary to comply with applicable privacy laws, shall be public records and open to examination by any Person at reasonable times without charge.  Subsequent to the closing of the Chapter 11 Case, all materials required by this Section 3.2(b) shall be Filed with Bankruptcy Court in such manner as the Bankruptcy Court shall order.

(d)     Trust Fund Summary.  Each calendar quarter, the Trustee shall cause to be prepared and delivered to GP and Bestwall a summary of the Trust Funds and their then current value.  For so long as the Chapter 11 Case is pending, Bestwall shall, upon its receipt of any such summary, deliver a copy thereof to counsel for any official committee of asbestos claimants and any future claimants' representative appointed in the Chapter 11 Case on a confidential basis under the protective order entered in the Chapter 11 Case.

(e)     Budget and Cash Flow Projections.  Before the commencement of each calendar year, the Trustee shall cause to be prepared and delivered to GP and Bestwall a budget and cash flow projections for the Settlement Facility covering such calendar year.  For so long as the Chapter 11 Case is pending, Bestwall shall, upon its receipt of any such budget or cash flow

- 9 -

projections, deliver a copy thereof to counsel for any official committee of asbestos claimants and any future claimants' representative appointed in the Chapter 11 Case on a confidential basis under the protective order entered in the Chapter 11 Case.

(f)     Consultation with GP and Bestwall.  The Trustee shall consult with GP and Bestwall on the administration of the Settlement Facility.  The Trustee shall meet with GP and Bestwall not fewer than four (4) times each calendar year, on such dates and at such times as mutually agreed to by the Trustee, GP, and Bestwall, to discuss general matters regarding the administration of the Settlement Facility and to review payments in respect of Asbestos Claims requested from and paid by the Settlement Facility and the value of the Trust Funds.

### 3.3     Indemnification of the Trustee.

(a)     Indemnification.  The Settlement Facility shall defend, indemnify, and hold harmless, using the Trust Funds and, if applicable, insurance, the Trustee, any former Trustee, the Portfolio Manager, and any Representative of the Trustee, the Settlement Facility, or the Portfolio Manager (collectively, the "***Indemnified Persons***") to the fullest extent available under law against any and all liabilities, expenses, claims, damages, or losses (including reasonable attorneys' fees and costs) incurred by such Indemnified Person in connection with any judicial, administrative, arbitrative, or other proceeding or legal action on account of any act or failure to act in such Indemnified Person's capacity as trustee of the Settlement Facility or the Representative of such trustee, as applicable; provided, however, that the Settlement Facility shall not be obligated to so indemnify any such Indemnified Person for any liabilities, expenses, claims, damages, or losses (including reasonable attorneys' fees and costs) due to any act or failure to act by such Person constituting gross negligence or willful misconduct, determined by Final Order.

(b)     Costs and Expenses.  Reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) incurred by or imposed on any Indemnified Person in connection with any proceeding or legal action contemplated by this Section 3.3 shall be paid by the Settlement Facility, using the Trust Funds and, if applicable, insurance, in advance of the final disposition thereof; provided, however, that such reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) shall not be advanced until such Indemnified Person shall have delivered a written undertaking to the Settlement Facility to repay such reasonable expenses, costs, and fees (including reasonable attorneys' fees and costs) so advanced in the event that it shall be determined by Final Order that such Indemnified Person is not entitled to be indemnified by the Settlement Facility with respect thereto.

(c)     Insurance.  The Trustee, using the Trust Funds, shall purchase and maintain reasonable amounts and types of insurance for the Settlement Facility and any Indemnified Person.

(d)     Payment.  Any claim for indemnification or advancement of expenses from the Settlement Facility pursuant to Section 3.3 shall be satisfied from the Trust Funds and, if applicable, insurance. Nothing in this Settlement Facility Agreement is intended to be, nor shall it be construed as, an admission as to the validity or enforceability of any particular claim for indemnification or advancement of expenses. The indemnification provided by this Section 3.3 shall survive termination of this Settlement Facility Agreement.

- 10 -

## ARTICLE 4

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**4.1**    **Accounts**.  The Trustee may, from time to time, establish and maintain such accounts and reserves within the Trust Funds as the Trustee, in its reasonable judgment, deems necessary, desirable, or appropriate in connection with the administration of this Settlement Facility, and may restrict the use of Trust Funds in any such account or reserve in any manner consistent with the provisions of this Settlement Facility Agreement.

**4.2**    **Investments**.

(a)    **Investment Decisions**.  Pursuant to North Carolina Uniform Trust Code Section 36C-8-807(a), the Trustee shall retain the Portfolio Manager, for a reasonable fee to be negotiated with the Trustee, to manage the Trust Funds and make all investment decisions with respect to the Trust Funds unless and until the Trust Funds are released, as and to the extent provided in Section 1.5, or revert to GP, as and only to the extent provided in Section 6.2(b).  The Portfolio Manager shall be governed by, and act in accordance with, the Prudent Investor Rule.

(b)    **Investment Guidelines**.  The Trust Funds shall be invested in accordance with the investment guidelines set forth on Exhibit A.

(c)    **Delegation**.  Notwithstanding anything contained in this Settlement Facility Agreement to the contrary, as of the Effective Date, the authority of the Trustee to invest and reinvest the Trust Funds shall be delegated to the Portfolio Manager pursuant to this Section 4.2 and such delegation of authority shall not be modified or amended except in accordance with Section 6.3.  The Trustee shall have no liability for any action taken or failure to act by the Portfolio Manager with respect to the investment and reinvestment of the Trust Funds (it being understood that the delegation of authority to the Portfolio Manager does not otherwise alter the Trustee's obligations with respect to holding, administering, and distributing the Trust Funds).

**4.3**    **Payments**.  All Settlement Facility Expenses, and any and all other liabilities of the Settlement Facility, shall be payable from the Trust Funds, and, if applicable, insurance.  Prior to releasing Trust Funds under Section 1.5 or Section 6.2(b), the Trustee shall receive written instructions for such release from Bestwall, which instructions shall specify the amount to be released, the basis for such release and the name of, and wire transfer instructions for, the payee. The foregoing shall not, in any way, alter, modify or limit the terms or conditions pursuant to which Trust Funds shall be released under Section 1.5 or Section 6.2(b).

## ARTICLE 5

## OBLIGATIONS OF GP

**5.1**    **GP Settlement Contribution**.  GP shall be required to pay the GP Settlement Contribution on the Effective Date in accordance with Section 1.3.

**5.2**    **Condition Precedent**.  Notwithstanding anything contained in this Settlement Facility Agreement to the contrary, GP shall have no obligation to fund the GP Settlement

- 11 -

Contribution unless and until the Effectiveness Condition shall have been satisfied; <u>provided</u>, <u>however</u>, that GP, in its sole discretion, may waive (in whole or in part) the requirement that the Effectiveness Condition be satisfied.

**ARTICLE 6**

**<u>GENERAL PROVISIONS</u>**

**6.1** **<u>Irrevocability</u>**.   The trust created by this Settlement Facility Agreement is irrevocable and may only be amended or modified pursuant to <u>Section 6.3</u>.

**6.2** **<u>Termination</u>**.

(a)    <u>Automatic Termination</u>.   The Settlement Facility shall automatically terminate on the date ninety (90) days after the first to occur of the following events (the "***Termination Date***"):

(i)    a determination by the Bankruptcy Court that all Asbestos Claims have been paid or otherwise satisfied; or

(ii)    the issuance by the Bankruptcy Court of an order dissolving or otherwise terminating the Settlement Facility.

(b)    <u>Reversion</u>.   On the Termination Date, after payment of all Settlement Facility Expenses and any and all other liabilities of the Settlement Facility, and after allowing for reserves for final trust administration expenses, including indemnity, then, after liquidation of all investments then held by the Settlement Facility, all Cash remaining in the Settlement Facility estate shall either revert to GP or be transferred as directed by GP.  Notwithstanding any other provision of this Settlement Facility Agreement, this <u>Section 6.2(b)</u> cannot be modified or amended.

**6.3** **<u>Amendments</u>**.   The Bankruptcy Court, upon a motion of the Trustee (with the express written consent of GP and Bestwall) may modify or amend this Settlement Facility Agreement, other than <u>Section 6.2(b)</u>, based on proof that such modification or amendment is necessary to achieve the purposes of the Settlement Facility.  Except as modified or amended by an order of the Bankruptcy Court, no modification or amendment of this Settlement Facility Agreement may be made.  No modification or amendment of this Settlement Facility Agreement shall limit any obligations of GP under the Funding Agreement except to the extent such limitation is consistent with the limitation on such obligations set forth in <u>Section 1.3(b)(v)</u>.

**6.4** **<u>Severability</u>**.   Should any provision in this Settlement Facility Agreement, other than <u>Section 6.2(b)</u>, be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Settlement Facility Agreement.

**6.5** **<u>Notices</u>**.   Any notices or other report required or permitted by this Settlement Facility Agreement must be in (i) writing and is deemed given (a) when delivered personally to the recipient, (b) five (5) days after deposit in the U.S. mail, mailed by registered or certified mail,

- 12 -

return receipt requested, postage prepaid, (c) if sent by email, when the communication is received at the designated addresses, or (d) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (ii) addressed to the other Persons at the addresses set forth below, or at such other address as such Person now designates from time to time in writing in accordance with this <u>Section 6.5</u>.

To the Settlement Facility through the Trustee:

> U.S. Bank National Association
> 60 Livingston Ave
> Saint Paul, MN 55107-2292
> Attention: Timothy G. Pillar, Senior Vice President
> Email:  timothy.pillar@usbank.com

With a copy to:

> Greenberg Traurig, LLP
> 90 South Seventh Street, Suite 3500
> Minneapolis, MN 55402
> Attention: Michael B. Fisco
> Email:  fiscom@gtlaw.com

To Bestwall:

> Bestwall LLC
> 133 Peachtree Street N.E.
> Atlanta, Georgia 30303
> Attention: Duane Hughes
> Email:  drhughes@GAPAC.com

With a copy to:

> Jones Day
> 2727 N. Harwood Street
> Dallas, Texas 75201
> Attention:  Gregory M. Gordon
> Email:  gmgordon@jonesday.com

- 13 -

To GP:

      Georgia Pacific LLC
      133 Peachtree Street N.E.
      Atlanta, Georgia 30303
      Attention: Tye Darland, Senior Vice President, General Counsel, and Secretary
      Email:  TDarland@GAPAC.com

With a copy to:

      Debevoise & Plimpton LLP
      919 Third Avenue
      New York, NY 10022
      Attention: Natasha Labovitz
      Email:  nlabovitz@debevoise.com

      Gibson, Dunn & Crutcher LLP
      200 Park Avenue
      New York, New York 10166
      Attention: Eric B. Sloan
      Email: ESloan@gibsondunn.com

      **6.6**    **Successors and Assigns**.  The provisions of this Settlement Facility Agreement shall be binding upon and inure to the benefit of the Trustee, GP, and Bestwall and their respective successors and assigns, except that the Trustee may not assign or otherwise transfer any of the Trustee's rights or obligations under this Settlement Facility Agreement other than in accordance with Article 2.

      **6.7**    **Entire Agreement; No Waiver**.  The entire agreement of the Parties relating to the subject matter of this Settlement Facility Agreement is contained in this Settlement Facility Agreement, including the Exhibits attached to this Settlement Facility Agreement, and this Settlement Facility Agreement and such Exhibits supersede any prior oral or written agreements concerning the subject matter hereof, including the Term Sheet.  No failure to exercise or delay in exercising any right, power, or privilege under this Settlement Facility Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege under this Settlement Facility Agreement preclude any further exercise thereof or of any other right, power, or privilege.  The rights and remedies in this Settlement Facility Agreement are cumulative and are not exclusive of rights under law or in equity.

      **6.8**    **Headings**.  The headings used in this Settlement Facility Agreement are inserted for convenience only, shall not constitute a portion of this Settlement Facility Agreement, and shall not in any manner affect the construction of the provisions of this Settlement Facility Agreement.

      **6.9**    **Governing Law**.  This Settlement Facility Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina without regard to its conflict of laws principles.

- 14 -

**6.10**   **Dispute Resolution**.   Any disputes that arise under this Settlement Facility Agreement shall be resolved by the Bankruptcy Court, except as otherwise expressly provided in this Settlement Facility Agreement.

**6.11**   **Counterpart Signatures**.   This Settlement Facility Agreement may be executed in any number of counterparts, each of which shall constitute an original, and all such counterparts shall together constitute one and the same instrument.

## ARTICLE 7

## DEFINITIONS

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"*Asbestos Claim*" means current and future asbestos-related claims asserted against or related to Bestwall, including any claim of death or injury in any way related to asbestos or asbestos-containing materials used, stored, installed, or handled in connection with the operations of Bestwall or any of its predecessors or otherwise present at any premises owned or operated at any time by Bestwall or any of its predecessors, whether such claim is brought by the injured party, his, her or its estate or personal representative, or his or her family members based on any theory of liability, including loss of consortium, wrongful death, premises liability, or similar theories.

"*Bankruptcy Code*" means title 11 of the United States Code, sections 101–1532, as now in effect or as hereafter amended.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Western District of North Carolina, or, if such court ceases to exercise jurisdiction, the court or adjunct of that court that exercises jurisdiction over the Chapter 11 Cases.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of Title 28 of the United States Code, together with (a) the Rules of Practice and Procedures of the United States Bankruptcy Court for the Western District of North Carolina as now in effect or as the same may from time to time hereafter be amended and (b) the *Amended Standing Order of Reference* from the United States District Court for the Western District of North Carolina dated as of April 14, 2014.

"*Bestwall*" has the meaning set forth in the recitals.

"*Business Day*" means any day that is not a Saturday, Sunday, or "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"*Cash*" means lawful currency of the United States.

103992284
NAI-1514303719

"***Chapter 11 524(g) Plan***" means any plan of reorganization for Bestwall under chapter 11 of the Bankruptcy Code (including all exhibits and supplements of such plan of reorganization), as such plan may be altered, amended, or modified from time to time in accordance with the provisions of such plan and of the Bankruptcy Code and the Bankruptcy Rules, that establishes a Section 524(g) Trust and is confirmed by the Bankruptcy Court and the District Court pursuant to a Confirmation Order.

"***Chapter 11 Case***" means the case pending for Bestwall under chapter 11 of the Bankruptcy Code in the Bankruptcy Court under case number 17-31795 (LTB).

"***Code***" means the Internal Revenue Code of 1986, as amended.

"***Confirmation Order***" means a Final Order confirming a Chapter 11 524(g) Plan, as such order may be amended, modified, or supplemented, which order shall have been entered by the Bankruptcy Court and/or, at least as to the provisions of section 524(g) of the Bankruptcy Code, the District Court.

"***District Court***" means the United States District Court for the Western District of North Carolina.

"***Effectiveness Condition***" means (a) an order has been entered by the Bankruptcy Court approving this Settlement Facility Agreement, establishing the Settlement Facility, and acknowledging and determining that the Bankruptcy Court shall be the supervisory court with respect to the Settlement Facility and shall retain jurisdiction over the Settlement Facility for the life of the Settlement Facility and (b) such order has become a Final Order.

"***Effective Date***" means the first Business Day after the date on which the Effectiveness Condition shall have been (a) satisfied or (b) waived by GP.

"***Entity***" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"***File***," "***Filed***," or "***Filing***" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"***Final Order***" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court, the District Court or by any state, provincial, or other federal court or other tribunal having jurisdiction over the subject matter of such judgment, order, ruling, or other decree, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (a) the time to appeal or petition for review, rehearing, or certiorari or move for reargument has expired or shall have been waived in writing in form and substance satisfactory to GP or the Trustee, as applicable, and as to which no appeal or petition for review, rehearing, or certiorari or motion for reargument is pending; or (b) any appeal or petition for review, rehearing, certiorari, or reargument has been finally decided and no further appeal or petition for review, rehearing, certiorari, or reargument can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"**_Funding Agreement_**" has the meaning set forth in the recitals.

"**_GP_**" has the meaning set forth in the introductory paragraph.

"**_GP Settlement Contribution_**" means the sum of $1,000,000,000 in Cash.

"**_Indemnified Persons_**" has the meaning set forth in Section 3.3(a).

"**_Parties_**" means, collectively, GP, Bestwall, and the Trustee

"**_Person_**" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit or other Entity, and any successors or assigns of any of the foregoing.

"**_Portfolio Manager_**" means GP or its designee, which may be an Affiliate of GP.

"**_Prudent Investor Rule_**" means the "prudent investor rule" set forth in North Carolina Uniform Trust Code Section 36C-9-901 et seq., as amended.

"**_Qualified Settlement Fund_**" or "**_QSF_**" means a qualified settlement fund that satisfies the requirements of Treas. Reg. § 1.468B-1(c).

"**_Release Conditions_**" has the meaning set forth in Section 1.5.

"**_Representatives_**" means, when used with respect to the Trustee, the Settlement Facility, or the Portfolio Manager, (a) any Person retained by it in connection with this Settlement Facility Agreement, and its successors and assigns, but only in their capacities as such; and (b) the past, present, and future managers, directors, members, shareholders, affiliates, trustees, officers, employees, accountants (including independent registered public accountants), advisors, attorneys, consultants, and other agents, representatives, and professionals of it or any Person identified in clause (a), and their respective successors and assigns, in each case solely in their capacities as such.

"**_Section 524(g) Trust_**" means a trust established under section 524(g) of the Bankruptcy Code for the benefit of holders of Asbestos Claims that will, among other things, process, review, and pay Asbestos Claims, which trust must be (i) a new trust the transfer of Trust Funds to which would be treated as a transfer to resolve or satisfy Asbestos Claims within the meaning of Treas. Reg. § 1.468B-1(c) or (ii) this Settlement Facility.

"**_Settlement Facility_**" means the North Carolina trust created as a QSF pursuant to this Settlement Facility Agreement.

"**_Settlement Facility Accounts_**" means such accounts established by the Trustee pursuant to Section 4.1 or the Portfolio Manager pursuant to Section 4.2.

"**_Settlement Facility Agreement_**" has the meaning set forth in the introductory paragraph.

- 17 -

"*Settlement Facility Expenses*" means the reasonable out-of-pocket administrative and other expenses, costs, and fees (including reasonable attorneys' fees and costs) incurred by the Trustee or the Settlement Facility in connection with the administration of the Settlement Facility, but excluding any expenses, costs, and fees (including reasonable attorneys' fees and costs) contemplated by Section 3.3.  For the avoidance of doubt, Settlement Facility Expenses shall not include any expenses, costs, or fees associated with administering the Chapter 11 Case.

"*Termination Date*" has the meaning set forth in Section 6.2(a).

"*Term Sheet*" has the meaning set forth in the recitals.

"*Treasury Regulations*" means, and all "*Treas. Reg. §*" references are to, the Treasury regulations promulgated under the Code.

"*Trustee*" means the Person named on the signature page of this Settlement Facility Agreement, and any Person appointed as successor trustee pursuant to the provisions of this Settlement Facility Agreement.

"*Trust Funds*" means the GP Settlement Contribution together with (a) any future contributions to the Settlement Facility and (b) any earnings on the GP Settlement Contribution or future contributions.

*[Signature page follows.]*

- 18 -

**IN WITNESS WHEREOF**, the parties have executed this Settlement Facility Agreement as of the date first written above.

**GEORGIA-PACIFIC LLC**, a Delaware limited liability company

By: _____

Name: _____

Title: _____

**BESTWALL LLC**, a North Carolina limited liability company

By: _____

Name: _____

Title: _____

**U.S. BANK NATIONAL ASSOCIATION**, as Trustee

By: _____

Name: _____

Title: _____

\*      \*      \*

## EXHIBIT A TO SETTLEMENT FACILITY AGREEMENT

### ENHANCED CASH INVESTMENT GUIDELINES

The Portfolio Manager will have full discretion within the following guidelines to invest in fixed income and related securities. Unless otherwise stated below, the following guidelines will be applied at the time of purchase.

**Portfolio Manager Objectives**

- Safety of Principal
- Liquidity

**Portfolio Duration Range**    Maximum of 1.5 years

**Asset Types and Investment Vehicles**

The Portfolio Manager will have discretion to invest in the following instruments and investment vehicles:

- Money Market Instruments
- Government and Agency Securities
- Supranational Obligations (such as the International Bank for Reconstruction and Development)
- Municipal Bonds
- Variable and Floating-Rate Debt Securities
- Corporate Securities
- Private Placements (Including 144As)
- Yankee Bonds
- Mortgage-Backed Securities (including CMOs and REMICs)
- Asset-Backed Securities (Including CBOs, CLOs and CDOs)
- Emerging Market Securities
- Non-Levered Structured Notes
- PIMCO Pooled Funds
- Non-Investment Grade Securities (limited to 18-months final maturity)

**Asset Types/Vehicles Explicitly Prohibited**

- Non-USD Denominated
- Foreign Currency
- Repo and Reverse Repurchase Agreements
- Derivatives
- The debt of any Person who is related to GP within the meaning of section 267(b) or section 707(b)(1) of the Internal Revenue Code of 1986, as amended.
- Any asset the acquisition or holding of which would cause the Bestwall Settlement Facility to fail to qualify as a QSF.

**Transaction Types**

Purchases and sales may be transacted for regular settlement.

103992284
NAI-1514303719

## Transaction Types Explicitly Prohibited

Purchases and sales may not be transacted for deferred/forward settlement except new issue purchases that settle beyond T+5 days.

## Credit Quality Minimums

The Portfolio Manager will apply quality ratings using the higher of Moody's, S&P or Fitch. If an issue is not rated by one of these rating agencies, then the Portfolio Manager will reasonably determine a rating.

Minimum Issue Quality:                                BB-/Ba3 Rating

Minimum Commercial Paper Quality:        A3/P3 (includes section 4(2) CP)

Should an issue be downgraded below these minimums, the Portfolio Manager will determine the appropriate action (sell or hold) based on the perceived risk and expected return.

## Concentration Limits

The Portfolio Manager will limit the concentrations within the portfolio to the following:

Issue or Issuer:                                        5%

Excludes sovereign debt of OECD governments and U.S. agencies. Specific mortgage pools and trusts are considered separate issuers, and each tranche within a CMO is considered a separate issue.

Corporate Securities:                                60%

Excludes commercial paper and supranationals

Asset Backed Securities                            20%

Non-agency Mortgage Backed Securities        10%

Emerging Markets:                                    10%

The Portfolio Manager shall use the World Bank's definition for emerging markets, which is based on a GNP per capita calculation.

Non-Investment Grade Securities                10%

Investment in securities ranging from BB+/Ba1 to BB-/Ba3 limited to 18-month final maturity.

103992284
NAI-1514303719

## EXHIBIT B TO SETTLEMENT FACILITY AGREEMENT

### TRUSTEE FEE AGREEMENT

**[Pursuant to Dkt. 1370, this exhibit has been filed under seal.]**