

FILED & JUDGMENT ENTERED
Steven T. Salata

March 24 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>BESTWALL LLC,[1]<br><br>　　　　　Debtor. | Case No. 17-BK-31795 (LTB)<br><br>Chapter 11 |

**ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004
EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY
OF INFORMATION PROVIDED IN RESPONSE**

This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which ruling is incorporated herein by reference), the Court finds good cause for the relief granted herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion was given and it appears that no other notice need be given (except as set forth herein).

2. The Motion is GRANTED on the terms and conditions set forth herein. All objections to the relief granted herein are OVERRULED, except to the extent stated in the March 4, 2021 Ruling.

3. Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the "**Trusts**"):[4]

a. Armstrong World Industries Asbestos Personal Injury Settlement Trust
b. Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
c. Celotex Asbestos Settlement Trust
d. DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
e. Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
f. Flintkote Asbestos Trust
g. Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
h. Pittsburgh Corning Corporation Asbestos PI Trust
i. United States Gypsum Asbestos Personal Injury Settlement Trust
j. WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation and the negotiation, formulation, and confirmation of a plan of reorganization in this case, specifically: the determination of whether pre-petition settlements of mesothelioma claims provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed chapter 11 plan (collectively, the "**Permitted Purposes**").

4.    On or before March 31, 2021, the Debtor shall provide to the Manville Trust and DCPF a list (in electronic, text searchable format) of last names and Social Security numbers ("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

3

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in the last name field, and may also close spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the claimants in the Trusts' databases whose injured party datafields or related claimant datafields match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in a last-name field, and shall also close spaces between parts of a name (e.g., "Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April 21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall meet and confer concerning whether any of the claimants on the Meet and Confer List should

instead be classified as Matching Claimants. On or before May 26, 2021, the Debtor (and the Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided, however*, that such deletion deadline shall be extended for each day the meet and confer process between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand, continues after May 26, 2021.

6. DCPF and the Manville Trust (through its claims processing agent, Claims Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC (each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data described in paragraph 8 below will be produced if they do not notify the Notifying Facility and the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to quash.

   a. If counsel for any Matching Claimant communicates to the Notifying Facility and the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the Notifying Facility shall stay the production of any data relating to such Matching Claimant for an additional two weeks. If a motion to quash is filed by May 24, 2021, the Notifying Facility will stay the production of any data relating to such Matching Claimant until such motion is resolved.

   b. If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall produce to Debtor the data described in paragraph 8 below relating to the Matching Claimant on or before May 28, 2021.

5

7. If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8. Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

    a. Full name of injured party;

    b. Injured party SSN;

    c. Gender of injured party;

    d. Date of birth of injured party;

    e. Date of death of injured party;

    f. State of residency of injured party;

    g. Date of diagnosis of injured party;

    h. Claimed disease and disease body site (if available);

    i. Full name of any claimant who is not the injured party and his or her SSN;

    j. Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

    k. Date claim filed against Trust;

    l. Date claim approved by Trust, if approved;

    m. Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

    n. If not approved or paid, status of claim;

    o. All exposure-related fields, including:

        i. Date(s) exposure(s) began;

        ii. Date(s) exposure(s) ended;

        iii. Manner of exposure;

        iv. Occupation and industry when exposed; and

        v. Products to which exposed;

    p. Mode of review selected; and

    q. Mode of review under which claim was approved and paid.

9. The Matched Production shall be used as follows:

    a. Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

    b. Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

        i. Full name of injured party;

        ii. Injured party SSN;

        iii. Date of birth of injured party;

        iv. Date of death of injured party; and

        v. Full name of any claimant who is not the injured party and his or her SSN.

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c. After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d. Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

      entitled to such access pursuant to this Order, may obtain a copy of the Matching Key (or information derived therefrom) and the Anonymized Matched Production upon request to Bates White.

e. The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key only to (i) match and combine the Anonymized Matched Production, on a claimant-by-claimant basis, with data from the Debtor's database or other sources; (ii) provide sufficient identifying information from the Matching Key to an Authorized Representative to permit such Authorized Representative to match data from the Anonymized Matched Production with and analyze individual claims (provided that such identifying information shall be limited to data corresponding to the specific individual claims in the Anonymized Matched Production that are the subject of individual claims analysis, shall not contain data corresponding to claims that are not the subject of individual claims analysis, and shall not include data beyond that which is strictly necessary to effectuate the individual matches and analysis contemplated by this subdivision (ii)); (iii) verify the accuracy of any matching of data performed by another Authorized Representative; and (iv) defend challenges to the accuracy of any matching of data performed by an Authorized Representative, *provided, however*, that the Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only in connection with a Permitted Purpose. Absent further order by this Court, no Retained Expert or Authorized Representative shall use the Matching Key, or any portion or element thereof, for any other purpose, and shall not retain any other

        record of any kind linking the complete set of unique identifiers in the Anonymized Matched Production to the Matching Key.

    f. To the extent a Retained Expert uses the Matching Key to match the Anonymized Matched Production, on a claimant-by-claimant basis, to the Debtor's database or other sources of information, such Retained Expert shall delete from any resulting database any datafields or information of the type contained within paragraphs 9(b)(i) to 9(b)(v), without regard to whether such information was derived from data produced by DCPF or the Manville Trust or other sources of information (any such database being an "**Anonymized Database**").

10.     The Matching Key (and any portion or extract thereof), the Anonymized Matched Production, any Anonymized Databases, and (while it exists) the Matched Production (together, the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In addition to the protections in the Protective Order, the provisions in this Order (which will supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a. No Confidential Trust Data shall be disseminated or disclosed, whether in written or electronic form, to any individual other than an individual (1) who has a clear need to know the data to perform work in connection with a Permitted Purpose and (2) who is (i) a lawyer, employee, agent, or representative of a law firm representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal support staff for a Party (and working in a legal role for the Party), or (iii) a Party's Retained Expert (defined below) in this case (collectively, the "**Authorized Representatives**"); *provided, however*, that the right of access to

      the Confidential Trust Data hereby conferred on the foregoing persons shall be subject to the conditions precedent set forth in paragraph 10(b) immediately below.

b.  Any person exercising a right of access to the Confidential Trust Data shall thereby consent, and be deemed to consent, to be bound by this Order and shall thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue of this Court for any dispute pertaining to the interpretation or enforcement of this Order. Without limitation of the generality of the foregoing sentence, as a condition of the right of access to the Confidential Trust Data conferred by paragraph 10(a) above, each entity whose Authorized Representatives will receive access to the Confidential Trust Data and any other Authorized Representatives not associated with such an entity who will receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacity shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships, companies, or firms whose Authorized Representatives will receive access to the Confidential Trust Data in the performance of the entity's duties with respect to this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by individuals (such as witnesses or self-employed experts) who receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacities, rather than as employees, agents, or representatives of an entity.

    c. Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

    d. Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

      any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e. No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f. If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

    g. In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

    h. Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

    i. Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11. Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12. Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13. Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order shall restrict any person's right to make lawful use of:

   a. any discrete data set or materials that came into the possession of such person lawfully and free of any confidentiality obligation;

   b. any exhibit or other document that is placed on the public record in this bankruptcy case in conformity with this Order, or any data or material that is or becomes publicly available other than by a breach of this Order; or

   c. any discrete data set or materials developed by or on behalf of such person independent of any Confidential Trust Data.

14. For the avoidance of doubt, nothing in this Order shall prohibit any Party from seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall Claimants, including where such Bestwall Claimants are selected using knowledge gained from the discovery ordered herein, so long as such discovery requests do not disclose any information that is derived solely from or contained exclusively in the Matched Production.

15. Debtor shall reimburse DCPF and the Manville Trust their reasonable and documented expenses in complying with this Order and the subpoenas. DCPF and the Manville Trust shall have no liability in connection with their compliance with the subpoenas described in this Order.

16. This Court shall retain exclusive jurisdiction to interpret, modify, apply, and enforce this Order to the full extent permitted by law.

This Order has been signed
electronically. The judge's
signature and court's seal
appear at the top of the Order.

United States Bankruptcy Court

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re: *In re Bestwall LLC*
Case No. 17-BK-31795 (LTB)
United States Bankruptcy Court
for the Western District of North Carolina

*Instructions*: This joinder must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute a joinder pursuant to paragraph 10(b) of the above-referenced Order.

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to _____ [*name of the Party or other client for whom Employer is rendering services in connection with the bankruptcy case*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself and all of its Authorized Representatives who receive access to any Confidential Trust Data, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order and this joinder known in advance to all of Employer's Authorized Representatives who are to receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. They will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____
Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re:  *In re Bestwall LLC*
Case No. 17-31795 (LTB)
**United States Bankruptcy Court
for the Western District of North Carolina**

*Instructions*:  This joinder must be executed by any individual required to execute a joinder in his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined herein shall have the meanings ascribed to them in the Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. I will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____