

```
FILED & JUDGMENT ENTERED
        Steven T. Salata


        March  31  2021


    Clerk, U.S. Bankruptcy Court
  Western District of North Carolina
```



*Laura T Beyer*
_____
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1]<br>Debtor. | Case No. 17-31795 (LTB) |

## CASE MANAGEMENT ORDER FOR ESTIMATION OF
## THE DEBTOR'S LIABILITY FOR MESOTHELIOMA CLAIMS

On January 19, 2021, the Court entered the *Order Authorizing Estimation of Current and Future Mesothelioma Claims* [Dkt. 1577] (the "**Estimation Order**").

This Order sets forth the schedule and procedures that shall apply to the proceeding (the "**Estimation Proceeding**") authorized by the Estimation Order.

The Court determines and finds that (a) the Court has jurisdiction over this Order pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and (c) the schedule for discovery, disclosures, and submissions set forth herein, and the other terms hereof, are fair and appropriate under the circumstances.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Each of Bestwall LLC (the "**Debtor**"), Georgia-Pacific LLC ("**New GP**"), the Official Committee of Asbestos Claimants (the "**Committee**"), and the Future Claimants

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

Representative (the "**FCR**" and, together with the Debtor, New GP, and the Committee, the "**Parties**," or each individually a "**Party**") shall be treated as a party for purposes of the Estimation Proceeding.

2.      The Joint Discovery Plan and Report (ESI Protocol) (the "**Discovery Plan**"), attached hereto as **Exhibit 1**, shall govern discovery among the Parties to the Estimation Proceeding.

3.      Pursuant to Rule 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 26(a)(1) of the Federal Rules of Civil Procedure (the "**Civil Rules**") shall apply in the Estimation Proceeding.  The Committee, the FCR and New GP shall make their initial disclosures as required by Civil Rule 26(a)(1) by **April 15, 2021**.  The Debtor's initial disclosures shall consist of the following:

(a)      <u>Custodians</u>.    By **April 15, 2021**, the Debtor shall identify the 15 custodians most likely to have discoverable information in their possession, custody, or control.  The custodians shall be identified by name, title, and role related to the Debtor's asbestos-related personal injury claims, and the disclosures shall describe the nature and types of information in the custodians' possession, custody or control.

(b)      <u>Non-Custodial Data Sources</u>.[2]  By **April 15, 2021**, the Debtor shall identify 10 non-custodial data sources that are most likely to contain non-duplicative discoverable information.

---

[2] "Non-custodial data sources" means a system or container that stores electronically stored data ("**ESI**") that the Debtor does not, and Old GP (as defined below) did not, organize, manage, or maintain.

(c)     Shared Repositories and Drives.  By **April 15, 2021**, the Debtor shall identify shared repositories, shared databases, and shared drives reasonably likely to contain discoverable documents or communications.

(d)     Asbestos Containing Products.   By **April 15, 2021**, the Debtor shall provide information about the asbestos-containing joint compound products that are the subject of the Estimation Proceeding, substantially in the form of the following chart:

| Product | Other Product Name(s) | Year(s) Manufactured Containing Asbestos | Type and Use of Product | Manufacturing Facilities Location(s) | Date First Sold by Old GP or Old Bestwall[3] | Date Last Sold by Old GP Before 1/1/78 |
|---|---|---|---|---|---|---|
| All Purpose Joint Compound | | | | | | |
| Bedding Compound | | | | | | |
| Central Mix | | | | | | |
| Ready Mix | | | | | | |
| Joint Compound | | | | | | |
| Speed Set/One Day | | | | | | |
| Topping Compound | | | | | | |
| Triple Duty Joint Compound | | | | | | |

(e)     Bates White Reliance Materials Related to Resolved Mesothelioma Claims.  Commencing by **April 15, 2021** and concluding by **April 30, 2021**, the Debtor shall produce to the Committee and the FCR reliance materials for approximately 2,200 resolved mesothelioma claims against the Debtor requested by Bates White as of the date of this Order.

---

[3]  "**Old GP**" refers to the former Georgia-Pacific LLC that ceased to exist on July 31, 2017.  "**Old Bestwall**" refers to the former Bestwall Gypsum Co.

4.      Each Party may serve interrogatories, requests for production of documents, requests for admission, and subpoenas *duces tecum* ("**Written Discovery**") at any time subject to the rules applicable to contested matters and the deadlines for fact and expert discovery.

5.      The limitations on discovery found in Civil Rules 30, 31, and 33, made applicable to this contested matter pursuant by Bankruptcy Rules 7030, 7031, 7033, and 9014, are hereby expanded as follows:  (a) the Debtor and New GP, together as one side, and the Committee and the FCR, together as the other side, may take up to 20 fact witness depositions noticed pursuant to Civil Rules 30 and 31 (*i.e.*, up to 20 depositions per side);[4] and (b) each side may serve no more than 50 interrogatories, including all discrete subparts.  The Parties reserve the right to modify, either through stipulation or further order from this Court, (a) the number of depositions permitted under Civil Rules 30 and 31 and this Order or (b) the number of interrogatories permitted by Civil Rule 33 and this Order.

6.      The Parties shall meet and confer in good faith regarding the time and place of any deposition.  A Party requesting a deposition under Civil Rule 30(b)(6) and the Party subject to such deposition request also shall meet and confer regarding the topics for inquiry within 10 days of service of any Civil Rule 30(b)(6) deposition notice.

7.      The Parties shall serve preliminary disclosures of the identities of fact witnesses they plan to call in their cases-in-chief no later than **June 1, 2021**.  These disclosures shall be timely supplemented on a rolling basis until **August 31, 2021**.  Following this latter date, no further supplements will be permitted; *provided however*, to the extent that any written discovery directed to a Party has not been completed, any Receiving Party shall have 30 days from receipt of such discovery to supplement these disclosures with individuals identified by reason of such discovery responses.

---

[4]      Expert depositions are addressed separately in paragraph 12 below.

8.      The Parties shall serve preliminary disclosures of the subjects of expert testimony and fields of expertise (but not the experts' identities) for their respective cases-in-chief on or before **July 15, 2021**. The Parties shall serve preliminary disclosures of the subjects of expert testimony and fields of expertise for their respective rebuttal cases on or before **August 16, 2021.**

9.      Fact discovery shall end on **September 30, 2021**.

10.     All Parties who will seek to call one or more retained experts to testify in their respective cases-in-chief regarding any of the subjects of expert testimony identified as required by paragraph 8 above shall produce and serve a report of any such experts that is (a) limited to the identified subjects of expert testimony and (b) prepared in compliance with Civil Rule 26(a)(2) (an "**Expert Report**") by **November 24, 2021**.

11.     All Parties seeking to call one or more experts to respond to any expert report produced and served pursuant to paragraph 10 above shall produce and serve a responsive report from each such expert that complies with Civil Rule 26(a)(2) no later than **January 7, 2022**.

12.     The period for depositions of expert witnesses shall commence on or before **January 24, 2022** and conclude on or before **March 5, 2022**.

13.     The Parties shall exchange witness lists on or before **March 12, 2022**. The witness lists shall identify each witness a Party intends to call or may call as a witness in its case in chief.

14.     All Parties shall file and serve any pre-hearing motions, which shall include, without limitation, motions in *limine* and *Daubert* motions no later than **March 30, 2022**.

15.     All Parties shall file and serve their respective trial briefs no later than **April 15, 2022**.

16.     The Parties shall exchange exhibits a Party intends to use or may use in its case in chief (pre-marked for identification) on or before a date that is **10 days prior to the commencement of the Estimation Hearing** (as defined below).   A Party's exchanged exhibits need not include witnesses or exhibits to be called or used solely for impeachment.

17.     The Parties shall exchange designations of deposition testimony on or before **20 days before the Estimation Hearing**.

18.     The Parties shall exchange counter-designations of deposition testimony on or before **10 days before the Estimation Hearing**.

19.     The Parties shall meet and confer in good faith to reach resolutions regarding any objections to the admissibility of exhibits or designations of deposition testimony no later than 10 days before the Estimation Hearing.

20.     The Court shall convene a pre-hearing conference at the regularly scheduled omnibus hearing that occurs at least 90 days prior to the commencement of the Estimation Hearing or such other date established by the Court at least 90 days prior to the commencement of the Estimation Hearing.   At such pre-hearing conference, the Court will consider ways to streamline the Estimation Hearing and reduce the number of days required for the hearing. The Parties shall meet and confer in good faith prior to the pre-hearing conference to discuss, and attempt to reach agreement on, potential alternatives for streamlining and shortening the Estimation Hearing, including through preparation of stipulated facts, submission of direct testimony by declaration, and the imposition of time limits on each side's case in chief.

21.     The Court shall schedule a further pre-hearing conference at the regularly scheduled omnibus hearing that occurs at least 30 days prior to the commencement of the Estimation Hearing or such other date established by the Court at least 30 days prior to

the commencement of the Estimation Hearing.  At such pre-hearing conference, the Court will consider any pre-hearing matters that remain unresolved among the Parties.  The Court may schedule additional pre-trial conferences as necessary or appropriate.

22.    The Estimation Hearing will commence on a date to be determined (the "**Estimation Hearing**").

23.    Notwithstanding anything in this Order, the deadlines specified herein may be extended by consent of the Parties, except that leave of Court shall be required for any modification of the schedule that would potentially jeopardize the commencement of the Estimation Hearing on the date specified.  Upon a showing of good cause by any Party, after notice and hearing, the Court may alter or extend any of the deadlines specified herein.

24.    This Court shall retain jurisdiction to hear and determine all matters involving the interpretation, implementation, or enforcement of this Order.

This Order has been signed                                United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order

**<u>EXHIBIT 1</u>**

## <u>JOINT DISCOVERY PLAN AND REPORT (ESI PROTOCOL)</u>

The following *Joint Discovery Plan and Report (ESI Protocol)* (this "**<u>Discovery Plan</u>**") will govern discovery, including discovery of electronically stored information[1] ("**<u>ESI</u>**"), in connection with the estimation proceeding contemplated by the *Order Authorizing Estimation of Current and Future Mesothelioma Claims* [Dkt. 1577] (such proceeding, the "**<u>Estimation Proceeding</u>**") and the appended *Case Management Order for Estimation of the Debtor's Liability for Mesothelioma Claims* (the "**<u>Case Management Order</u>**"):[2]

1. **Discovery.**

A. **Requests.**  Each Party may serve (the "**<u>Requesting Party</u>**") interrogatories, requests for production of documents, and requests for admission (collectively, "**<u>Requests</u>**") subject to the rules applicable to contested matters, the Federal Rules of Bankruptcy Procedure (the "**<u>Bankruptcy Rules</u>**"), the Federal Rules of Civil Procedure (the "**<u>Civil Rules</u>**"), and the deadlines for completion of discovery set forth in the Case Management Order.

B. **Cooperation.**  The Parties will cooperate in good faith throughout the discovery process in the Estimation Proceeding.  The Parties recognize that discovery of ESI is governed by the proportionality standard set forth in Civil Rule 26.

---

[1]     The  timing the collection, review, and production of the Parties' hard copy documents may need to be assessed in light of the ongoing COVID-19 pandemic and its impact on safe access to physical workspaces and documents.

[2]     Capitalized terms not otherwise defined in this Discovery Plan shall have the meanings given to them in the Case Management Order.

2.    **Document Production.**    Productions of documents[3] shall commence within 30 days of service of the Requests to the Party responding to the Requests (the "**Responding Party**"), be made on a rolling basis and, subject to the following sentence, be substantially completed within 75 days of service of the Requests.    Within 14 days of service of Requests, the Parties shall meet and confer regarding the propriety of the 75-day deadline for substantial completion of production in response to such Requests.    If the Parties agree to a modification of the deadline, the deadline shall be changed in accordance with the Parties' agreement.    If the Parties are unable to reach an agreement, the Party requesting a change may ask the Court, by motion, to set the substantial completion deadline.

3.    **Custodians.**    In response to requests for production, a Party shall search the ESI and, where practicable, the hard-copy documents of applicable current and/or former employees or other individuals whose ESI or documents are in the Party's possession, custody, or control (each a "**Custodian**").

4.    **Identification of Custodians.**    The Parties shall meet and confer to identify Custodians likely to have discoverable,[4] responsive, non-duplicative documents or communications.    The Party issuing a request for production (the "**Requesting Party**") may designate Custodians whom it believes in good faith to have responsive documents or communications.    The Responding Party may in good faith challenge any such designation. The Parties will negotiate in good faith to reach agreement as to the number and identity of Custodians whose ESI will be searched in connection with the Estimation Proceeding.    After

---

[3]    For the purposes of this Discovery Plan, "document" shall have the meaning set forth in Civil Rule 34, but shall exclude documents that the Parties agree are not reasonably accessible as described in Section 6.B.

[4]    "Discoverable," as it is used here, is not intended to suggest that the Parties will not propose Custodians whose data may include privileged information.    The Parties contemplate reviewing custodial data for privilege and producing non-privileged documents.

reaching agreement concerning the number and identity of Custodians, the Parties, nonetheless, may request searches of the custodial data of additional Custodians if, in their view, it becomes apparent that other such Custodians likely have responsive documents.  The Parties will meet and confer in good faith regarding such request.  If the Parties are unable to resolve any dispute regarding Custodian designation, whether concerning number or identity, the Requesting Party may seek relief from the Court.

5.      **Preservation Obligations.**  Nothing in this Discovery Plan shall affect the Parties' respective preservation obligations imposed by rule or law.

6.      **Search and Identification of ESI.**  In responding to requests for production, the Parties will meet and confer about methods to search ESI for documents that will be reviewed for responsiveness, privilege, confidentiality, and production.

A.      **Application of Search Methodology.**  The Parties shall meet and confer to develop a search methodology to be applied to identify and limit the volume of custodial ESI to be reviewed for responsiveness.  The Parties shall exchange proposed search terms to apply their search of Custodian files and Shared Repositories (as defined below) as appropriate, and attempt to reach agreement as to those search terms.  In the event the search terms identified return an unmanageable volume of ESI for review, the Responding Party reserves the right to propose modifications to the proposed terms and will meet and confer with the Requesting Party regarding such a change.  As specified in Sections 6.D and 6.E, the Parties may use certain other search methods and analytics tools to manage the volume of ESI for review.

B.      **Not Reasonably Accessible ESI.**  The Parties agree that they will work cooperatively on determining what ESI is reasonably accessible and what is not and agree to consider in good faith reasonable requests for information on ESI management in that effort.  ESI of limited accessibility may include those documents created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.  For purposes of this paragraph, the Parties agree that the following sources of ESI are not reasonably accessible:

(a)      Data stored in a backup system for the purpose of system recovery or information recovery, including, but not limited to disaster recovery backup tapes and media, continuity of operations systems, and data or system mirrors or shadows.

3

(b)        Voicemail recordings.

(c)        Instant/Chat Messages.

(d)        Mobile telephones (*i.e.*, cell phones), including smart phones.

(e)        Tablets,[5] subject to each custodian certifying under penalty of perjury either (a) that they do not use a tablet for business purposes, including, but not limited to, taking notes or the creation or editing of documents, or (b) if they use a tablet for business purposes, that all data used for such purposes is otherwise stored in the Responding Party's systems and will be collected from another source.

(f)        Legacy Data (*e.g.*, data stored on floppy discs).

(g)        Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

(h)        Data stored in Random Access Memory (*i.e.*, RAM), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

(i)        Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

(j)        Data stored on printers, photocopiers, scanners, and fax machines.

(k)        Data stored as server, system, or network logs.

C.      **Shared Repositories and Drives.**  The Parties shall, in good faith and using reasonable measures, identify and search shared repositories, shared databases, and shared drives reasonably likely to contain discoverable documents or communications ("**Shared Repositories**").

D.      **Use of Other Review Analytics.**  The Parties may use other reasonable review analytics or tools, including but not limited to de-duplication, e-mail threading, inclusiveness-only review and production, and technology-assisted review to streamline the review of ESI, to the extent that those review analytics and tools are consistent with other provisions in the Discovery Plan, including provisions relating to the Form of Production (Section 6.F below).  Those review and analytics tools used by any Party that are set forth in section 6.E shall be disclosed to the other Parties.

E.      **Use of Predictive Coding, Clustering, or Technology Assisted Review.**  Before a Responding Party employs culling tools, such as predictive coding, clustering, or Technology Assisted Review, to remove from review documents otherwise

---

[5]    For the avoidance of doubt, "tablet" does not include laptop computers.

identified using the search terms referenced herein, the Responding Party shall advise the Requesting Party of its intention and provide the Requesting Party with a statistical sample of documents it intends to use to seed the process in the case of predictive coding, or the search parameters that the Responding Party intends to use. Within five business days of being notified of the Responding Party's intention to use predictive coding or other analytic tools listed in this paragraph, the Requesting Party may object in writing. In the event of an objection, the Parties will meet and confer and attempt to reach resolution. If no resolution is met, the Parties may raise disputed issues with the Court.

F.  **Form of Production.**  The Parties agree to produce responsive non-privileged ESI in the manner set out in this Discovery Plan. The Parties agree to take reasonable steps not to degrade the searchability or legibility of ESI as part of the document review and production processes. Additionally, if particular responsive ESI warrants a format different than those set out below, the Parties will meet and confer in an effort to agree to a mutually acceptable format.

G.  **Format for ESI.**  The Parties shall produce responsive non-privileged ESI in the format set out in **Attachment A** hereto unless otherwise agreed in writing or ordered by the Court.

H.  **Format for Electronically Scanned Hard Copies.**  To the extent practicable, the Parties shall produce electronically scanned hard-copy documents in the applicable format set out in Attachment A unless otherwise agreed in writing or ordered by the Court. In particular, the Parties shall format such documents with optical character recognition, or OCR, as described in Attachment A and include the metadata fields identified in Attachment A where that metadata is available.

I.  **Family Production.**  The Parties shall produce documents and e-mail communications as family complete as is reasonably practicable. The Parties shall not take steps to dissociate attachments to e-mails or other documents from parent e-mails or documents even if the attachments are exact duplicates of other documents in the production. Parent documents and any attachments shall be assigned sequential Bates numbers. If a responsive, non-privileged e-mail or document has a privileged attachment, a Party may replace the attachment with a Bates-numbered slip-sheet indicating that the attachment was withheld on privilege grounds or may redact the privileged material.

J.  **E-mail Threading.** The Parties agree that e-mail threading and inclusiveness-only review and production may be applied to production documents such that only the most inclusive version of any responsive, non-privileged e-mail chain is produced, *provided that* the e-mail-threading process is performed by an e-discovery vendor in a manner consistent with standard practices in the industry and that all independent responsive, non-privileged branches of the chain are produced.

K.  **Global Deduplication.** The Parties agree that automated document de-duplication may be applied across ESI identified for review and production such that only one

copy of any responsive, non-privileged document is produced, provided that the de-duplication process is performed by an e-discovery vendor in a manner consistent with standard practices in the industry.  Further, de-duplication shall be performed only at the document family level such that attachments are not de-duplicated against identical stand-alone versions of such document and vice versa.

L.      **Related Metadata.**  If a Party opts to apply document de-duplication, that Party shall include in its production "Other Custodian" metadata or some other field, to the extent practicable, indicating each Custodian who appears from the available ESI to have maintained a copy of the produced document in his or her files (where such copy was removed from production through the de-duplication process).

7.      **Privilege Logs.**  Within 45 days of each production, the Responding Party shall provide a privilege log identifying each responsive document withheld in whole or in part (*i.e.*, redacted) on the basis of privilege.  A Responding Party shall use reasonable measures, consistent with applicable law, to include information in their respective privilege logs sufficient to permit the Requesting Party to assess any privilege claims.  Specifically:

A.      **Log Information.**  The Parties shall provide in their respective privilege logs the categories, or fields, of information identified in **Attachment B** hereto, to the extent available, unless agreed otherwise in writing or pursuant to an order of Court.

B.      **Privilege Redactions.**  Where requested documents contain responsive information together with privileged or protected information and the privileged or protected information can be redacted by the Responding Party without undue burden and while preserving for production the responsive information, the Responding Party shall apply such redactions and produce the requested documents.  The word "Redacted - Privileged" shall appear over the redacted portion or portions of such documents.

C.      **Categorical Privilege Logging.**  The Parties shall meet and confer to discuss those responsive-privileged documents that can be logged categorically (*e.g.*, because logging such documents on a document-by-document basis would be unduly burdensome and disproportionate to the needs of the case).  Absent agreement, the Parties reserve their rights to seek relief from the Court on these matters.

8.      **Discovery Disputes.**

A.      **Meet and Confer.**  If the Parties have a dispute regarding any discovery issue related to the Estimation Proceeding (a "**Discovery Dispute**"), the Parties must meet and confer in a reasonable timeframe prior to filing a discovery-related motion.

B.    **Discovery-Related Motions.**  All motion papers under Bankruptcy Rules 7026–7037 and 9016 shall be filed and served so as to be received at least 12 days before the hearing date on such motion.  When service is made for a discovery-related motion under this Discovery Plan, any objection shall be filed and served so as to be received at least two business days before the hearing date.

9.    **Personal Identifying Information.**    Where requested documents contain responsive information together with personal identifying information that is required to be redacted for filings pursuant to Bankruptcy Rule 9037, and such personal identifying information can be redacted by the Responding Party without undue burden and while preserving for production the responsive information, the Responding Party may apply such redactions and produce the requested documents.  A black bar shall appear over redacted portion or portions of such documents.  The Responding Party shall not be required to provide a log for documents redacted for personal identifying information.

10.    **Scope of Discovery.**  Nothing in this Discovery Plan constitutes an agreement regarding the appropriate substantive scope of discovery, the responsiveness of any document or category thereof, or the relevance or admissibility of any document or category thereof. The Parties reserve all objections as to discoverability, relevance, authenticity, use, and admissibility.

11.    **No Waiver.**  Nothing in this Discovery Plan, including any meet-and-confer obligation specified, constitutes a waiver of any privilege or protection available by law, including any Party's attorney-client privilege or the protection afforded to work product and trial preparation materials.  Inadvertent production of information subject to a claim of privilege or protection is addressed in and governed by Paragraph M of the *Agreed Protective Order Governing Confidential Information entered in the Chapter 11 Case* [Dkt. 337].

7

12.     **Modifications.**    The Parties may, by agreement, modify any provision in this Discovery Plan.  Further, if the Parties are unable to agree regarding a proposed modification, the Party requesting the modification may seek relief from the Court.

## ATTACHMENT A

The Parties shall produce responsive non-privileged ESI in the following format unless agreed

otherwise or pursuant to an order of Court:

1. **Format.**  ESI should be produced in Concordance, Opticon, or universal format.

2. **TIFFs.**  Bates-branded, black and white, Group 4, single page TIFF files at 300 dpi, named

   according to sequential Bates number will be produced for all ESI documents except

   spreadsheet file types (*e.g.*, .xls, .xlt, .xml), database file types (*e.g.*, .csv), presentation file

   types (*e.g.*, .ppt, .pptx, .pptm), and software code file types.  Single-page TIFF files will be

   delivered in unique sequentially numbered folders (i.e. 001, 002, 003) and each folder shall

   not consist of more than 5,000 images.  No image file name shall contain spaces or

   underscore symbols.  JPG format may be used for pages that require production of color

   images.  If a document was not produced in color and a Party deems color necessary to

   understand the document, they may request a color image or native form of that document.

   All image files should cross reference to both the log file for Opticon image base (.OPT)

   and Concordance delimited text file (.DAT).  For word-processing file types other than e-

   mail (*e.g*, .doc), corresponding TIFF files will reflect any track changes or comments

   contained in the underlying word-processing documents.  If a document is more than one

   page, the unitization of the document and any attachments and/or affixed note shall be

   maintained as it existed in the original when creating the image file.

3. **TIFF Reference File.**  A log file for Opticon image base (.OPT) that lays out the document

   unitization of each discrete document will be produced.

4. **Native Format.** Spreadsheet file types, database file types, and presentation file types will

   be produced in native format.  The Parties will provide native files, named according to

1

ProdBegDoc, in a separate folder and provide the path to the native file in the DocLink field of the .DAT file.   Documents produced in native file format shall be produced in the manner such files were maintained electronically in the ordinary course of business. A placeholder TIFF shall be produced indicating the Bates number of the native file and confidentiality designation, if applicable.   In the event any document produced in native format is to be used as an exhibit at deposition, trial or otherwise, the Parties may request that the Party using such exhibit provide the MD5 programmatic hash value of the underlying electronic file from which the exhibit is derived to be provided to all Parties, and such information should be provided promptly.

5. **Other File Formats.** Non-document files types (*e.g.*, .wav, .mp3, .aiff, .avi, .mov, .mp4) will be produced in native format with accompanying slip sheet.

6. **Request for Natives.** The parties reserve the right to request native files for individual ESI documents produced in TIFF format.

7. **Redactions to Native Format.** To the extent redactions are necessary in a document to be produced in native form, and the ability to remove such redactions cannot practicably be prohibited in native form, the document may be converted to TIFF format, or some comparable image file type, for redaction.   To the extent that such conversion erodes the legibility or significant functionality of a document, the Parties agree to meet and confer in good faith to determine how such document can be produced without those limitations, to the extent practicable, and while still protecting the redacted information.

8. **Hard Copy Documents.** Hard-copy or paper documents should be converted to Group IV, single page TIFF format image files.   All hard copy paper documents shall be logically unitized prior to production.   Therefore, when scanning or producing paper documents,

distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records.  All Parties shall make their reasonable best efforts to unitize documents correctly.

9.  **Extracted Text Files.** For each item of ESI, and any hard-copy or paper document that has been converted to TIFF image file, document level TXT files should be provided in a separate folder and should have file names that are identical to the first TIFF image file of the corresponding images for a document.  To the extent practicable, text from native files should be extracted directly from the native file, except that, where redaction is necessary for a document to be produced in native format, the text file corresponding to such document may be extracted from the OCR of the redacted image file (as opposed to from the native file).  Redactions shall be reflected in the multipage TXT file containing OCR for searching purposes.

10. **Unique IDs.** Each TIFF image shall have a unique, sequential Bates number.  Each Native file shall have a unique, sequential Bates number applied to the TIFF placeholder indicating that the file has been produced in native format.

11. **Metadata.** Where available, the Parties shall produce the following metadata fields for all ESI and scanned hard-copy or paper files produced, in an ASCII delimited text file (.DAT), using standard Concordance delimiters:

| Preferred Field Name | Description | Example |
|---|---|---|
| ProdBegDoc | Start Bates value. | ABC0500 |
| EndBegDoc | End Bates value. | ABC0500 |
| ProdBegAtt | Start Bates of first attachment. | ABC0501 |
| ProdEndAtt | End Bates of last attachment. | ABC0503 |
| ImageCount | Total pages in document. | 1 |
| TO | Email TO recipients. | Mary Smith; Tjones |
| FROM | Email sender (author). | Doe, John |
| CC | Email CC recipients. | Some User |
| BCC | Email BCC recipients. | Johnson, M. |
| Subject | Email subject line. | Your subject line |
| DateTimeCrt | The date and time the file/email was created. | 4/1/2003 8:12:32 AM |
| DateCreated | The date the file/email was created. | 4/1/2003 |
| TimeCreated | The time the file/email was created. | 8:12:32 AM |
| DateTimeSent | The date and time the email was sent. | 4/1/2003 8:12:32 AM |
| DateSent | The date the email was sent. | 4/1/2003 |
| TimeSent | The time the email was sent. | 8:12:32 AM |
| DateTimeRcv | The date and time the email was received. | 4/1/2003 8:12:32 AM |
| DateReceived | The date the email was received. | 4/1/2003 |
| TimeReceived | The time the email was received. | 8:12:32 AM |
| DateTimeMod | The date and time the file/email was last saved. | 4/1/2003 8:12:32 AM |
| DateModified | The date the file/email was last saved. | 4/1/2003 |
| TimeModified | The time the file/email was last saved. | 8:11:32 AM |
| System Last Modified On | The date the record was last reviewed. | 2/20/2004 |
| FileExt | Extension of the file. | .doc |
| Filename | The name of the file. | Filename.doc |
| FileSize | The size of the file or message in bytes. | 802 |
| DocType | The file type determined by the file signature (Excel, Word etc.). | Microsoft Office Word |
| MD5HASH | | |

4

| Preferred Field Name | Description | Example |
|---|---|---|
| Custodian | The Custodian associated with the item. | Doe, John |
| Other Custodians | All custodians who retained a duplicative copy of the file in their ESI files, to the extent that copy was removed by de-duplication. | Doe, John; Doe, Jane; Smith, Mary |
| DocLink | The relative path to the associated native file. | \export\00000000000003E8.xls |
| ExtractText | The extracted text for an item.  This field will populate with the path to the text file location and the text will be delivered separately. | "This is sample text. It can be extracted from a document or email or can be generated when converting to TIFF format." |

## ATTACHMENT B

1. **Privilege Log Requirements:** The Responding Party (or Responding Parties)[1] shall provide the following information, where available, for any document withheld on the grounds of privilege or protection from disclosure and for any document produced with redactions, to the extent that providing such information would not waive any privilege or protection:

| Preferred Field Name | Description | Example |
|---|---|---|
| Parent/Child | Identifying whether a document is the parent document or child document in a family. | Parent; Child |
| ProdBegDoc | Start Bates number for redacted documents. | ABC0500 |
| EndAtt ID or ProdEndAtt | End identifier value of last attachment. Bates number for redacted documents. | ABC0503 |
| DocType | The file type determined by the file signature (Excel, Word, etc.). | Microsoft Office Word |
| Author/From | Who drafted or sent the document or message, as appropriate. | Doe, Jane |
| TO | Email TO recipients.  Or those whose received the document, as appropriate. | Mary Smith; Tjones |
| FROM | Email sender (author). | Doe, John |
| CC | Email CC recipients. | Some User |
| BCC | Email BCC recipients. | Johnson, M. |
| Date | The date and time the file was created, or if an email the date and time the email was received by the custodian. | 4/1/2003 8:12:32 AM |
| Custodian | The Custodian associated with the item. | Doe, John |
| Other Custodians | All custodians who retained a duplicative copy of the file in their ESI files, to the extent available. | Doe, John; Doe, Jane; Smith, Mary |

---

[1]    Unless otherwise provided herein, this Attachment B adopts the capitalized terms as defined in the Discovery Plan appended hereto.

| Preferred Field Name | Description | Example |
|---|---|---|
| Redacted or Withheld | Identifying whether a document was withheld in its entirety or produced with redactions. | Produced with Redactions or Withheld Entirely |
| Privilege / Protection Type | Basis for withholding or redacting document. | Attorney-Client Privilege, Trial Preparation Material |
| Privilege / Protection Description | Explanation of basis for withholding or redacting document with enough information for Requesting Party to assess claimed basis. | E-mail communication reflecting legal advice provided by [insert name of lawyer, firm, and client represented] re: defense strategy related to defense of an asbestos related personal injury claims. |
| Identification of Attorney(s) on E-mail | The specific attorney(s) appearing in a list of recipients will be specifically identified using either an asterisk or **bold** or *italicized* text. | Doe, John; **Doe, Jane**; Smith, Mary |

2.      **Players' List**.  The Responding Parties will provide a detailed listing of all individuals appearing on the privilege log.  This will identify the individual by organization and include the following information: title within the organization, date(s) of employment, e-mail addresses appearing on the privilege log (including any personal e-mail addresses), user names appearing on the privilege log.

3.      **Common Interest Assertions.**  If a Responding Party raises common interest or community of interest as privilege/protection type on the privilege log, the Responding Party must describe the common interest with sufficient particularity, which description may include identification of: (a) the parties to such agreement (written or oral), (b) the date such agreement was created and/or effectuated, and (c) the shared common interest(s) that are subject to such agreement(s).

2