**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

**NOTICE OF SERVICE OF SUBPOENAS TO PRODUCE DOCUMENTS,**
**INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION**
**OF PREMISES IN A BANKRUPTCY CASE**

PLEASE TAKE NOTICE that Bestwall LLC (the "Debtor") intends to serve Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case on (1) the Delaware Claims Processing Facility ("DCPF"), (2) individual asbestos trusts whose claims are handled by DCPF, and (3) the Manville Personal Injury Settlement Trust on April 2, 2021, consistent with the Court's *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (Dkt. 1672). Copies of the subpoenas are attached hereto as Exhibit A.

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

Dated: April 1, 2021
Charlotte, North Carolina

Respectfully submitted,

/s/ Garland S. Cassada
Garland S. Cassada (NC Bar No. 12352)
Richard C. Worf, Jr. (NC Bar No. 37143)
Stuart L. Pratt (NC Bar No. 43139)
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
E-mail:     gcassada@robinsonbradshaw.com
            rworf@robinsonbradshaw.com
            spratt@robinsonbradshaw.com

Gregory M. Gordon (TX Bar No. 08435300)
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
E-mail:     gmgordon@jonesday.com
(Admitted *pro hac vice*)

Jeffrey B. Ellman (GA Bar No. 141828)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
E-mail:     jbellman@jonesday.com
(Admitted *pro hac vice*)

Cary Ira Schachter (TX 17719900)
Raymond P. Harris, Jr. (TX 09088050)
Erin A. Therrian (TX 24072524)
SCHACHTER HARRIS, LLP
909 Lake Carolyn Parkway, Suite 1775
Irving, Texas 75039
Telephone: (214) 999-5700
E-mail:     cschachter@shtriallaw.com
            rharris@shtriallaw.com
            etherrian@shtriallaw.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTOR AND DEBTOR
IN POSSESSION

- 2 -

# EXHIBIT A

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Western _____ District of __ North Carolina __

In re __ Bestwall LLC _____
                    Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __ 17-BK-31795 (LTB) __

Chapter __ 11 __

_____
                    Plaintiff
                        v.
_____
                    Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust c/o Delaware Claims Processing Facility
_____
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __ April 1, 2021 __

CLERK OF COURT

                                    OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Bestwall LLC _____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____  .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                        _____
                                                    *Server's signature*

                                        _____
                                                    *Printed name and title*


                                        _____
                                                    *Server's address*


Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

FILED & JUDGMENT ENTERED
Steven T. Salata

March 24 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



*Laura T Beyer*

Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>BESTWALL LLC,[1]<br><br>        Debtor. | Case No. 17-BK-31795 (LTB)<br><br>Chapter 11 |

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

     a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
     b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
     c.  Celotex Asbestos Settlement Trust
     d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
     e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
     f.  Flintkote Asbestos Trust
     g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
     h.  Pittsburgh Corning Corporation Asbestos PI Trust
     i.  United States Gypsum Asbestos Personal Injury Settlement Trust
     j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

     4.    On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in the last name field, and may also close spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the claimants in the Trusts' databases whose injured party datafields or related claimant datafields match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in a last-name field, and shall also close spaces between parts of a name (e.g., "Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April 21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants. On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.      DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

   a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

        the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

        Notifying Facility shall stay the production of any data relating to such Matching

        Claimant for an additional two weeks. If a motion to quash is filed by May 24,

        2021, the Notifying Facility will stay the production of any data relating to such

        Matching Claimant until such motion is resolved.

   b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

        produce to Debtor the data described in paragraph 8 below relating to the

        Matching Claimant on or before May 28, 2021.

5

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.  Full name of injured party;

    b.  Injured party SSN;

    c.  Gender of injured party;

    d.  Date of birth of injured party;

    e.  Date of death of injured party;

    f.  State of residency of injured party;

    g.  Date of diagnosis of injured party;

    h.  Claimed disease and disease body site (if available);

    i.  Full name of any claimant who is not the injured party and his or her SSN;

    j.  Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

    k.  Date claim filed against Trust;

    l.  Date claim approved by Trust, if approved;

    m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.   If not approved or paid, status of claim;

o.   All exposure-related fields, including:

  i.   Date(s) exposure(s) began;

  ii.   Date(s) exposure(s) ended;

  iii.   Manner of exposure;

  iv.   Occupation and industry when exposed; and

  v.   Products to which exposed;

p.   Mode of review selected; and

q.   Mode of review under which claim was approved and paid.

9.   The Matched Production shall be used as follows:

a.   Bates White shall assign a unique identifier to each claimant record in the
Matched Production and may use the date of birth and date of death fields to
create age fields for each claimant record, rounded to the nearest year;

b.   Bates White shall create a separate file (the "**Matching Key**") containing the
unique identifier and the following fields from the Matched Production (to the
extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8
include such information):

  i.   Full name of injured party;

  ii.   Injured party SSN;

  iii.   Date of birth of injured party;

  iv.   Date of death of injured party; and

  v.   Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.   The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.    To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.    No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be subject to the conditions precedent set forth in paragraph 10(b) immediately below.

b.  Any person exercising a right of access to the Confidential Trust Data shall thereby consent, and be deemed to consent, to be bound by this Order and shall thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue of this Court for any dispute pertaining to the interpretation or enforcement of this Order. Without limitation of the generality of the foregoing sentence, as a condition of the right of access to the Confidential Trust Data conferred by paragraph 10(a) above, each entity whose Authorized Representatives will receive access to the Confidential Trust Data and any other Authorized Representatives not associated with such an entity who will receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacity shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships, companies, or firms whose Authorized Representatives will receive access to the Confidential Trust Data in the performance of the entity's duties with respect to this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by individuals (such as witnesses or self-employed experts) who receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacities, rather than as employees, agents, or representatives of an entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.   No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.   If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

g. In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h. Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i. Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11. Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12. Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.  any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

     b.  any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

     c.  any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                      United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re: *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>:  *This joinder must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute a joinder pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to _____ [*name of the Party or other client for whom Employer is rendering services in connection with the bankruptcy case*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself and all of its Authorized Representatives who receive access to any Confidential Trust Data, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order and this joinder known in advance to all of Employer's Authorized Representatives who are to receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. They will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

18

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC*
Case No. 17-31795 (LTB)
United States Bankruptcy Court
for the Western District of North Carolina**

*Instructions:*  *This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

19

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Western ___ District of ___ North Carolina ___

In re   Bestwall LLC
_____
                    Debtor

*(Complete if issued in an adversary proceeding)*

_____

_____
                    Plaintiff

                      v.

_____
                    Defendant

Case No. ___ 17-BK-31795 (LTB) ___

Chapter ___ 11 ___

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   The Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust c/o Delaware Claims Processing Facility
_____
            *(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

      The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   April 1, 2021

            CLERK OF COURT

                                              OR

      _____                    _____
      *Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
  Bestwall LLC
_____ , who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

    Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

  This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

      a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
      b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
      c.  Celotex Asbestos Settlement Trust
      d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
      e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
      f.  Flintkote Asbestos Trust
      g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
      h.  Pittsburgh Corning Corporation Asbestos PI Trust
      i.  United States Gypsum Asbestos Personal Injury Settlement Trust
      j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

     4.     On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the
injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in
this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,
III, IV, etc.), and any other words that do not constitute part of the name ("executor,"
"deceased," "dec," etc.) but that may be contained in the last name field, and may also close
spaces between parts of a name (e.g., "Van" or "De").

5.     On or before April 21, 2021, DCPF and the Manville Trust shall identify the
claimants in the Trusts' databases whose injured party datafields or related claimant datafields
match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the
Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching
Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard
punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other
words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may
be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,
"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April
21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the
first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN
of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants
on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name
associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List
shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as
defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall
meet and confer concerning whether any of the claimants on the Meet and Confer List should

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.    DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

    a.    If counsel for any Matching Claimant communicates to the Notifying Facility and

the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

Notifying Facility shall stay the production of any data relating to such Matching

Claimant for an additional two weeks. If a motion to quash is filed by May 24,

2021, the Notifying Facility will stay the production of any data relating to such

Matching Claimant until such motion is resolved.

    b.    If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

produce to Debtor the data described in paragraph 8 below relating to the

Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.  Full name of injured party;

    b.  Injured party SSN;

    c.  Gender of injured party;

    d.  Date of birth of injured party;

    e.  Date of death of injured party;

    f.  State of residency of injured party;

    g.  Date of diagnosis of injured party;

    h.  Claimed disease and disease body site (if available);

    i.  Full name of any claimant who is not the injured party and his or her SSN;

    j.  Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

    k.  Date claim filed against Trust;

    l.  Date claim approved by Trust, if approved;

    m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

    n.  If not approved or paid, status of claim;

    o.  All exposure-related fields, including:

        i.  Date(s) exposure(s) began;

        ii.  Date(s) exposure(s) ended;

        iii.  Manner of exposure;

        iv.  Occupation and industry when exposed; and

        v.  Products to which exposed;

    p.  Mode of review selected; and

    q.  Mode of review under which claim was approved and paid.

9.    The Matched Production shall be used as follows:

    a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

    b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

        i.  Full name of injured party;

        ii.  Injured party SSN;

        iii.  Date of birth of injured party;

        iv.  Date of death of injured party; and

        v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e. The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

f.  To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.   The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

a.  No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.   Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c. Any entity whose Authorized Representatives receive access to any Confidential
Trust Data and any Authorized Representative who receives access to any
Confidential Trust Data in their individual capacity as provided in this Order shall
provide for physical, managerial, and electronic security thereof such that the
Confidential Trust Data are reasonably maintained and secured, ensuring that they
are safe from unauthorized access or use during utilization, transmission, and
storage. Any electronic transmission of the Confidential Trust Data (including
without limitation the Matching Key or any information derived therefrom) must
be through a secure encrypted service, and not as an ordinary email attachment.

d. Notwithstanding anything in this Order to the contrary, access to the Matching
Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura
Consulting Group, LLC, each in its capacity as a retained claims expert for the
Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained
experts (consulting or testifying) in this case (if any), and (iii) to the professional
staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"),
and (iv) such other persons as the Parties, DCPF, and the Manville Trust may
agree to in writing from time to time; *provided, however*, that a Retained Expert
shall be permitted to access the Matching Key only in connection with a
Permitted Purpose and only if the Retained Expert has a clear need for such
access. Any Retained Expert granted access to the Matching Key shall store the
Matching Key in a separate, password-protected folder on Retained Expert's
network, accessible only to individuals authorized to access the Matching Key
under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).
Any electronic transmission of the Matching Key must be through a secure
encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,
including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)
to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,
(ii) placed on the public record, or (iii) filed with this Court, the District Court, or
any reviewing court (including under seal), absent further order by this Court,
made after notice of hearing of a motion (with notice to DCPF, the Manville
Trust, and claimants provided to their attorneys at the addresses contained in the
data produced by the Manville Trust and DCPF) authorizing such use. Such
motion shall be brought by the movant no later than 30 days before such offer or
use. The restrictions of this paragraph 10(e) shall also apply to any de-identified
data (i.e., data that does not contain claimant-specific details) from or derived
from any Confidential Trust Data that could reasonably be used, by cross-
referencing publicly available information or otherwise, to determine or reveal a
claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to
such motion, a Party proposes to place any Confidential Trust Data under seal,
that Party shall have the burden of making the showing required for sealing under
applicable law.

g. In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h. Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i. Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11. Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12. Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.    Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.    any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

     b.    any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

     c.    any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.    For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.    Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                              United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>*:    This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:** *In re Bestwall LLC*
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

*<u>Instructions</u>: This joinder must be executed by any individual required to execute a joinder in his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined herein shall have the meanings ascribed to them in the Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. I will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By:          _____

Print Name:  _____

Title:       _____

Employer:    _____

Address:     _____

             _____

Dated:       _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western _____ District of North Carolina

In re  Bestwall LLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No.  17-BK-31795 (LTB)

Chapter  11

Adv. Proc. No.  _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Celotex Asbestos Settlement Trust c/o Delaware Claims Processing Facility
_____
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  April 1, 2021

CLERK OF COURT

OR

_____                   _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Bestwall LLC _____ , who issues or requests this subpoena, are:  Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

IN RE:

BESTWALL LLC,[1]

        Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

**ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004
EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY
OF INFORMATION PROVIDED IN RESPONSE**

      This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned
debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the
Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree
Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville
Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.     The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.     Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

2

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
c.  Celotex Asbestos Settlement Trust
d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
f.  Flintkote Asbestos Trust
g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
h.  Pittsburgh Corning Corporation Asbestos PI Trust
i.  United States Gypsum Asbestos Personal Injury Settlement Trust
j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

4.       On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

3

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

     5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching

Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.      DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

Notifying Facility shall stay the production of any data relating to such Matching

Claimant for an additional two weeks. If a motion to quash is filed by May 24,

2021, the Notifying Facility will stay the production of any data relating to such

Matching Claimant until such motion is resolved.

b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

produce to Debtor the data described in paragraph 8 below relating to the

Matching Claimant on or before May 28, 2021.

5

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify

the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to

quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the

information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville

Trust shall produce to Bates White (in electronic database format and, with respect to DCPF,

separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent

the relevant Trust databases contain such information) (the "**Matched Production**"):

   a.  Full name of injured party;

   b.  Injured party SSN;

   c.  Gender of injured party;

   d.  Date of birth of injured party;

   e.  Date of death of injured party;

   f.  State of residency of injured party;

   g.  Date of diagnosis of injured party;

   h.  Claimed disease and disease body site (if available);

   i.  Full name of any claimant who is not the injured party and his or her SSN;

   j.  Claimant's law firm (with email and address of contact person), jurisdiction of
       tort claim filing, and date of tort claim filing;

   k.  Date claim filed against Trust;

   l.  Date claim approved by Trust, if approved;

   m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes
any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified
as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

    i.  Date(s) exposure(s) began;

    ii.  Date(s) exposure(s) ended;

    iii.  Manner of exposure;

    iv.  Occupation and industry when exposed; and

    v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.  The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

    i.  Full name of injured party;

    ii.  Injured party SSN;

    iii.  Date of birth of injured party;

    iv.  Date of death of injured party; and

    v.  Full name of any claimant who is not the injured party and his or her SSN.

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.   After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.   Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching
Key (or information derived therefrom) and the Anonymized Matched Production
upon request to Bates White.

e.   The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key
only to (i) match and combine the Anonymized Matched Production, on a
claimant-by-claimant basis, with data from the Debtor's database or other
sources; (ii) provide sufficient identifying information from the Matching Key to
an Authorized Representative to permit such Authorized Representative to match
data from the Anonymized Matched Production with and analyze individual
claims (provided that such identifying information shall be limited to data
corresponding to the specific individual claims in the Anonymized Matched
Production that are the subject of individual claims analysis, shall not contain data
corresponding to claims that are not the subject of individual claims analysis, and
shall not include data beyond that which is strictly necessary to effectuate the
individual matches and analysis contemplated by this subdivision (ii)); (iii) verify
the accuracy of any matching of data performed by another Authorized
Representative; and (iv) defend challenges to the accuracy of any matching of
data performed by an Authorized Representative, *provided, however*, that the
Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only
in connection with a Permitted Purpose. Absent further order by this Court, no
Retained Expert or Authorized Representative shall use the Matching Key, or any
portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the
Anonymized Matched Production to the Matching Key.

f.   To the extent a Retained Expert uses the Matching Key to match the Anonymized
Matched Production, on a claimant-by-claimant basis, to the Debtor's database or
other sources of information, such Retained Expert shall delete from any resulting
database any datafields or information of the type contained within paragraphs
9(b)(i) to 9(b)(v), without regard to whether such information was derived from
data produced by DCPF or the Manville Trust or other sources of information
(any such database being an "**Anonymized Database**").

10.     The Matching Key (and any portion or extract thereof), the Anonymized Matched
Production, any Anonymized Databases, and (while it exists) the Matched Production (together,
the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed
Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In
addition to the protections in the Protective Order, the provisions in this Order (which will
supersede the Protective Order in the event of any conflict) shall apply, including the following:

a.   No Confidential Trust Data shall be disseminated or disclosed, whether in written
or electronic form, to any individual other than an individual (1) who has a clear
need to know the data to perform work in connection with a Permitted Purpose
and (2) who is (i) a lawyer, employee, agent, or representative of a law firm
representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal
support staff for a Party (and working in a legal role for the Party), or (iii) a
Party's Retained Expert (defined below) in this case (collectively, the
"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.   Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c. Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d. Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).
Any electronic transmission of the Matching Key must be through a secure
encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,
including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)
to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,
(ii) placed on the public record, or (iii) filed with this Court, the District Court, or
any reviewing court (including under seal), absent further order by this Court,
made after notice of hearing of a motion (with notice to DCPF, the Manville
Trust, and claimants provided to their attorneys at the addresses contained in the
data produced by the Manville Trust and DCPF) authorizing such use. Such
motion shall be brought by the movant no later than 30 days before such offer or
use. The restrictions of this paragraph 10(e) shall also apply to any de-identified
data (i.e., data that does not contain claimant-specific details) from or derived
from any Confidential Trust Data that could reasonably be used, by cross-
referencing publicly available information or otherwise, to determine or reveal a
claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to
such motion, a Party proposes to place any Confidential Trust Data under seal,
that Party shall have the burden of making the showing required for sealing under
applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.  Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.  Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

    a.   any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

    b.   any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

    c.   any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

15

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re:  *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>**Instructions**</u>:  *This joinder must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute a joinder pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to _____ [*name of the Party or other client for whom Employer is rendering services in connection with the bankruptcy case*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself and all of its Authorized Representatives who receive access to any Confidential Trust Data, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order and this joinder known in advance to all of Employer's Authorized Representatives who are to receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. They will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

*<u>Instructions</u>:  This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

## A C K N O W L E D G E M E N T

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western _____ District of __North Carolina__

In re  __Bestwall LLC__
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __17-BK-31795 (LTB)__

Chapter __11__

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Delaware Claims Processing Facility__
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __April 1, 2021__

CLERK OF COURT

_____                OR        _____
Signature of Clerk or Deputy Clerk                              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Bestwall LLC_____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
                                                          *Server's signature*

_____
                                                          *Printed name and title*

_____
                                                          *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

        Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

        This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

     a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
     b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
     c.  Celotex Asbestos Settlement Trust
     d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
     e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
     f.  Flintkote Asbestos Trust
     g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
     h.  Pittsburgh Corning Corporation Asbestos PI Trust
     i.  United States Gypsum Asbestos Personal Injury Settlement Trust
     j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

    4.     On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

3

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in the last name field, and may also close spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the claimants in the Trusts' databases whose injured party datafields or related claimant datafields match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in a last-name field, and shall also close spaces between parts of a name (e.g., "Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April 21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

a.  If counsel for any Matching Claimant communicates to the Notifying Facility and

the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

Notifying Facility shall stay the production of any data relating to such Matching

Claimant for an additional two weeks. If a motion to quash is filed by May 24,

2021, the Notifying Facility will stay the production of any data relating to such

Matching Claimant until such motion is resolved.

b.  If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

produce to Debtor the data described in paragraph 8 below relating to the

Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

   a.   Full name of injured party;

   b.   Injured party SSN;

   c.   Gender of injured party;

   d.   Date of birth of injured party;

   e.   Date of death of injured party;

   f.   State of residency of injured party;

   g.   Date of diagnosis of injured party;

   h.   Claimed disease and disease body site (if available);

   i.   Full name of any claimant who is not the injured party and his or her SSN;

   j.   Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

   k.   Date claim filed against Trust;

   l.   Date claim approved by Trust, if approved;

   m.   Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

   i.  Date(s) exposure(s) began;

   ii.  Date(s) exposure(s) ended;

   iii.  Manner of exposure;

   iv.  Occupation and industry when exposed; and

   v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.    The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the
Matched Production and may use the date of birth and date of death fields to
create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the
unique identifier and the following fields from the Matched Production (to the
extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8
include such information):

   i.  Full name of injured party;

   ii.  Injured party SSN;

   iii.  Date of birth of injured party;

   iv.  Date of death of injured party; and

   v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.  The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the
Anonymized Matched Production to the Matching Key.

    f.   To the extent a Retained Expert uses the Matching Key to match the Anonymized
Matched Production, on a claimant-by-claimant basis, to the Debtor's database or
other sources of information, such Retained Expert shall delete from any resulting
database any datafields or information of the type contained within paragraphs
9(b)(i) to 9(b)(v), without regard to whether such information was derived from
data produced by DCPF or the Manville Trust or other sources of information
(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched
Production, any Anonymized Databases, and (while it exists) the Matched Production (together,
the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed
Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In
addition to the protections in the Protective Order, the provisions in this Order (which will
supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.   No Confidential Trust Data shall be disseminated or disclosed, whether in written
or electronic form, to any individual other than an individual (1) who has a clear
need to know the data to perform work in connection with a Permitted Purpose
and (2) who is (i) a lawyer, employee, agent, or representative of a law firm
representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal
support staff for a Party (and working in a legal role for the Party), or (iii) a
Party's Retained Expert (defined below) in this case (collectively, the
"**Authorized Representatives**"); *provided, however*, that the right of access to

the Confidential Trust Data hereby conferred on the foregoing persons shall be
subject to the conditions precedent set forth in paragraph 10(b) immediately
below.

b.  Any person exercising a right of access to the Confidential Trust Data shall
thereby consent, and be deemed to consent, to be bound by this Order and shall
thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue
of this Court for any dispute pertaining to the interpretation or enforcement of this
Order. Without limitation of the generality of the foregoing sentence, as a
condition of the right of access to the Confidential Trust Data conferred by
paragraph 10(a) above, each entity whose Authorized Representatives will receive
access to the Confidential Trust Data and any other Authorized Representatives
not associated with such an entity who will receive a right of access to the
Confidential Trust Data under paragraph 10(a) above in their individual capacity
shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit
A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,
companies, or firms whose Authorized Representatives will receive access to the
Confidential Trust Data in the performance of the entity's duties with respect to
this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by
individuals (such as witnesses or self-employed experts) who receive a right of
access to the Confidential Trust Data under paragraph 10(a) above in their
individual capacities, rather than as employees, agents, or representatives of an
entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential
Trust Data and any Authorized Representative who receives access to any
Confidential Trust Data in their individual capacity as provided in this Order shall
provide for physical, managerial, and electronic security thereof such that the
Confidential Trust Data are reasonably maintained and secured, ensuring that they
are safe from unauthorized access or use during utilization, transmission, and
storage. Any electronic transmission of the Confidential Trust Data (including
without limitation the Matching Key or any information derived therefrom) must
be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching
Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura
Consulting Group, LLC, each in its capacity as a retained claims expert for the
Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained
experts (consulting or testifying) in this case (if any), and (iii) to the professional
staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"),
and (iv) such other persons as the Parties, DCPF, and the Manville Trust may
agree to in writing from time to time; *provided, however*, that a Retained Expert
shall be permitted to access the Matching Key only in connection with a
Permitted Purpose and only if the Retained Expert has a clear need for such
access. Any Retained Expert granted access to the Matching Key shall store the
Matching Key in a separate, password-protected folder on Retained Expert's
network, accessible only to individuals authorized to access the Matching Key
under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

13

g.   In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.   Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.   Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.   Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.   Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

    a.   any discrete data set or materials that came into the possession of such person

       lawfully and free of any confidentiality obligation;

    b.   any exhibit or other document that is placed on the public record in this

       bankruptcy case in conformity with this Order, or any data or material that is or

       becomes publicly available other than by a breach of this Order; or

    c.   any discrete data set or materials developed by or on behalf of such person

       independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

15

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                           United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re: *In re Bestwall LLC***
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>*: This joinder must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute a joinder pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to _____ [*name of the Party or other client for whom Employer is rendering services in connection with the bankruptcy case*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself and all of its Authorized Representatives who receive access to any Confidential Trust Data, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order and this joinder known in advance to all of Employer's Authorized Representatives who are to receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. They will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>*:  **This joinder must be executed by any individual required to execute a joinder in his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined herein shall have the meanings ascribed to them in the Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. I will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

<table>
<tr><td>Western</td><td>District of</td><td>North Carolina</td></tr>
</table>

In re   Bestwall LLC

_____
Debtor

_(Complete if issued in an adversary proceeding)_

Case No.   17-BK-31795 (LTB)

Chapter   11

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   DII Industries, LLC Asbestos PI Trust c/o Delaware Claims Processing Facility
_____
_(Name of person to whom the subpoena is directed)_

[X]  _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ]  _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   April 1, 2021

CLERK OF COURT

OR

_____                              _____
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Bestwall LLC
_____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

FILED & JUDGMENT ENTERED
Steven T. Salata

March 24 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

IN RE:

BESTWALL LLC,[1]

          Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

**ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004
EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY
OF INFORMATION PROVIDED IN RESPONSE**

       This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned
debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the
Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree
Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville
Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

> a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
> b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
> c.  Celotex Asbestos Settlement Trust
> d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
> e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
> f.  Flintkote Asbestos Trust
> g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
> h.  Pittsburgh Corning Corporation Asbestos PI Trust
> i.  United States Gypsum Asbestos Personal Injury Settlement Trust
> j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

   4.      On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

     5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching

Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

      6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

      a.  If counsel for any Matching Claimant communicates to the Notifying Facility and

            the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

            Notifying Facility shall stay the production of any data relating to such Matching

            Claimant for an additional two weeks. If a motion to quash is filed by May 24,

            2021, the Notifying Facility will stay the production of any data relating to such

            Matching Claimant until such motion is resolved.

      b.  If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

            produce to Debtor the data described in paragraph 8 below relating to the

            Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

   a.  Full name of injured party;

   b.  Injured party SSN;

   c.  Gender of injured party;

   d.  Date of birth of injured party;

   e.  Date of death of injured party;

   f.  State of residency of injured party;

   g.  Date of diagnosis of injured party;

   h.  Claimed disease and disease body site (if available);

   i.  Full name of any claimant who is not the injured party and his or her SSN;

   j.  Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

   k.  Date claim filed against Trust;

   l.  Date claim approved by Trust, if approved;

   m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

   i.   Date(s) exposure(s) began;

   ii.  Date(s) exposure(s) ended;

   iii. Manner of exposure;

   iv.  Occupation and industry when exposed; and

   v.   Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.    The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the
Matched Production and may use the date of birth and date of death fields to
create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the
unique identifier and the following fields from the Matched Production (to the
extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8
include such information):

   i.   Full name of injured party;

   ii.  Injured party SSN;

   iii. Date of birth of injured party;

   iv.  Date of death of injured party; and

   v.   Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e. The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

9

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

f. To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10. The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed

Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

a. No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.  Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

   c.  Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

   d.  Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order,

unless otherwise ordered by the Court, the Confidential Trust Data shall be used

only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted

Purpose in this Court, or any reviewing court, summaries or analyses derived

from the Confidential Trust Data if such material is redacted so as not to reveal

any identifying detail of any individual claimant, including without limitation any

of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the

Confidential Trust Data from using or referring to the Confidential Trust Data (in

connection with a Permitted Purpose) in an expert report, preparing summaries of

information for other experts to rely on, or testifying concerning the Confidential

Trust Data, so long as any such testimony, summary, or report does not reveal any

identifying detail of any individual claimant, including without limitation any of

the identifying details subject to the restrictions of paragraph 10(e) above.

11.  Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data

shall be subject to subpoena or otherwise discoverable by any person or entity other than the

Parties.

12.  Within 90 days after the effective date of a confirmed plan for the Debtor or the

entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized

Representatives (and any of their associated entities), including without limitation any Retained

Experts, who received access to or who possess any Confidential Trust Data or any excerpts

thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.  any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

     b.  any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

     c.  any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

15

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.


16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re:  *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>*:  This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC*
Case No. 17-31795 (LTB)
United States Bankruptcy Court
for the Western District of North Carolina**

*<u>Instructions</u>:  This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

19

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

<table>
<tr><td></td><td>Western</td><td>District of</td><td>North Carolina</td></tr>
</table>

In re   Bestwall LLC
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No.   17-BK-31795 (LTB)

Chapter   11

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   The Flintkote Asbestos Trust c/o Delaware Claims Processing Facility
_____
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE<br>Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | DATE AND TIME<br>Dates and times provided in the Order |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   April 1, 2021

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Bestwall LLC _____ , who issues or requests this subpoena, are:  Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                    _____
                                                                    *Server's signature*

                                                    _____
                                                                    *Printed name and title*


                                                    _____
                                                                    *Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

### (c) Place of compliance.

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

### (g) Contempt. The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: | Case No. 17-BK-31795 (LTB) |
| BESTWALL LLC,[1] | Chapter 11 |
| Debtor. | |

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling"**) (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

a. Armstrong World Industries Asbestos Personal Injury Settlement Trust
b. Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
c. Celotex Asbestos Settlement Trust
d. DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
e. Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
f. Flintkote Asbestos Trust
g. Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
h. Pittsburgh Corning Corporation Asbestos PI Trust
i. United States Gypsum Asbestos Personal Injury Settlement Trust
j. WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

4.    On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the
injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in
this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,
III, IV, etc.), and any other words that do not constitute part of the name ("executor,"
"deceased," "dec," etc.) but that may be contained in the last name field, and may also close
spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the
claimants in the Trusts' databases whose injured party datafields or related claimant datafields
match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the
Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching
Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard
punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other
words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may
be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,
"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April
21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the
first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN
of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants
on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name
associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List
shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as
defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall
meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants. On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

      6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

      a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

         the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

         Notifying Facility shall stay the production of any data relating to such Matching

         Claimant for an additional two weeks. If a motion to quash is filed by May 24,

         2021, the Notifying Facility will stay the production of any data relating to such

         Matching Claimant until such motion is resolved.

      b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

         produce to Debtor the data described in paragraph 8 below relating to the

         Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify

the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to

quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the

information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville

Trust shall produce to Bates White (in electronic database format and, with respect to DCPF,

separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent

the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.  Full name of injured party;

    b.  Injured party SSN;

    c.  Gender of injured party;

    d.  Date of birth of injured party;

    e.  Date of death of injured party;

    f.  State of residency of injured party;

    g.  Date of diagnosis of injured party;

    h.  Claimed disease and disease body site (if available);

    i.  Full name of any claimant who is not the injured party and his or her SSN;

    j.  Claimant's law firm (with email and address of contact person), jurisdiction of
        tort claim filing, and date of tort claim filing;

    k.  Date claim filed against Trust;

    l.  Date claim approved by Trust, if approved;

    m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

    i.  Date(s) exposure(s) began;

    ii.  Date(s) exposure(s) ended;

    iii.  Manner of exposure;

    iv.  Occupation and industry when exposed; and

    v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.  The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

    i.  Full name of injured party;

    ii.  Injured party SSN;

    iii.  Date of birth of injured party;

    iv.  Date of death of injured party; and

    v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.   After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.   Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.  The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.    To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.    No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.   Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c. Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d. Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).
Any electronic transmission of the Matching Key must be through a secure
encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,
including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)
to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,
(ii) placed on the public record, or (iii) filed with this Court, the District Court, or
any reviewing court (including under seal), absent further order by this Court,
made after notice of hearing of a motion (with notice to DCPF, the Manville
Trust, and claimants provided to their attorneys at the addresses contained in the
data produced by the Manville Trust and DCPF) authorizing such use. Such
motion shall be brought by the movant no later than 30 days before such offer or
use. The restrictions of this paragraph 10(e) shall also apply to any de-identified
data (i.e., data that does not contain claimant-specific details) from or derived
from any Confidential Trust Data that could reasonably be used, by cross-
referencing publicly available information or otherwise, to determine or reveal a
claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to
such motion, a Party proposes to place any Confidential Trust Data under seal,
that Party shall have the burden of making the showing required for sealing under
applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.  Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.  Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.  any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

     b.  any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

     c.  any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>***:   This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>***:  This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

19

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Western__ District of __North Carolina__

In re  Bestwall LLC
_____
Debtor

_(Complete if issued in an adversary proceeding)_

Case No. __17-BK-31795 (LTB)__

Chapter __11__

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Federal-Mogul U.S. Asbestos Personal Injury Trust c/o Delaware Claims Processing Facility
_____
_(Name of person to whom the subpoena is directed)_

[X] _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  April 1, 2021

CLERK OF COURT

OR

_____          _____
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
Bestwall LLC
_____, who issues or requests this subpoena, are:  Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____

                                                                        _____
                                                                                        *Server's signature*

                                                                        _____
                                                                                        *Printed name and title*

                                                                        _____
                                                                                        *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

        Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.     The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.     Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

      a.   Armstrong World Industries Asbestos Personal Injury Settlement Trust
      b.   Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
      c.   Celotex Asbestos Settlement Trust
      d.   DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
      e.   Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
      f.   Flintkote Asbestos Trust
      g.   Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
      h.   Pittsburgh Corning Corporation Asbestos PI Trust
      i.   United States Gypsum Asbestos Personal Injury Settlement Trust
      j.   WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

      4.     On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching**

**Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

      6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

      a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

          the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

          Notifying Facility shall stay the production of any data relating to such Matching

          Claimant for an additional two weeks. If a motion to quash is filed by May 24,

          2021, the Notifying Facility will stay the production of any data relating to such

          Matching Claimant until such motion is resolved.

      b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

          produce to Debtor the data described in paragraph 8 below relating to the

          Matching Claimant on or before May 28, 2021.

5

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.   Full name of injured party;

    b.   Injured party SSN;

    c.   Gender of injured party;

    d.   Date of birth of injured party;

    e.   Date of death of injured party;

    f.   State of residency of injured party;

    g.   Date of diagnosis of injured party;

    h.   Claimed disease and disease body site (if available);

    i.   Full name of any claimant who is not the injured party and his or her SSN;

    j.   Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

    k.   Date claim filed against Trust;

    l.   Date claim approved by Trust, if approved;

    m.   Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

   i.  Date(s) exposure(s) began;

   ii.  Date(s) exposure(s) ended;

   iii.  Manner of exposure;

   iv.  Occupation and industry when exposed; and

   v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.  The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

   i.  Full name of injured party;

   ii.  Injured party SSN;

   iii.  Date of birth of injured party;

   iv.  Date of death of injured party; and

   v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching
Key (or information derived therefrom) and the Anonymized Matched Production
upon request to Bates White.

e.  The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key
only to (i) match and combine the Anonymized Matched Production, on a
claimant-by-claimant basis, with data from the Debtor's database or other
sources; (ii) provide sufficient identifying information from the Matching Key to
an Authorized Representative to permit such Authorized Representative to match
data from the Anonymized Matched Production with and analyze individual
claims (provided that such identifying information shall be limited to data
corresponding to the specific individual claims in the Anonymized Matched
Production that are the subject of individual claims analysis, shall not contain data
corresponding to claims that are not the subject of individual claims analysis, and
shall not include data beyond that which is strictly necessary to effectuate the
individual matches and analysis contemplated by this subdivision (ii)); (iii) verify
the accuracy of any matching of data performed by another Authorized
Representative; and (iv) defend challenges to the accuracy of any matching of
data performed by an Authorized Representative, *provided, however*, that the
Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only
in connection with a Permitted Purpose. Absent further order by this Court, no
Retained Expert or Authorized Representative shall use the Matching Key, or any
portion or element thereof, for any other purpose, and shall not retain any other

9

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.   To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.   No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.  Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential
Trust Data and any Authorized Representative who receives access to any
Confidential Trust Data in their individual capacity as provided in this Order shall
provide for physical, managerial, and electronic security thereof such that the
Confidential Trust Data are reasonably maintained and secured, ensuring that they
are safe from unauthorized access or use during utilization, transmission, and
storage. Any electronic transmission of the Confidential Trust Data (including
without limitation the Matching Key or any information derived therefrom) must
be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching
Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura
Consulting Group, LLC, each in its capacity as a retained claims expert for the
Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained
experts (consulting or testifying) in this case (if any), and (iii) to the professional
staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"),
and (iv) such other persons as the Parties, DCPF, and the Manville Trust may
agree to in writing from time to time; *provided, however*, that a Retained Expert
shall be permitted to access the Matching Key only in connection with a
Permitted Purpose and only if the Retained Expert has a clear need for such
access. Any Retained Expert granted access to the Matching Key shall store the
Matching Key in a separate, password-protected folder on Retained Expert's
network, accessible only to individuals authorized to access the Matching Key
under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.  Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.  Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.    Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

   a.  any discrete data set or materials that came into the possession of such person

       lawfully and free of any confidentiality obligation;

   b.  any exhibit or other document that is placed on the public record in this

       bankruptcy case in conformity with this Order, or any data or material that is or

       becomes publicly available other than by a breach of this Order; or

   c.  any discrete data set or materials developed by or on behalf of such person

       independent of any Confidential Trust Data.

14.    For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.    Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

15

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.

This Order has been signed                        United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re: *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

***Instructions:*** ***This joinder must be executed by an authorized representative of any corporation, partnership, company, or firm required to execute a joinder pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to _____ [*name of the Party or other client for whom Employer is rendering services in connection with the bankruptcy case*]. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself and all of its Authorized Representatives who receive access to any Confidential Trust Data, hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order and this joinder known in advance to all of Employer's Authorized Representatives who are to receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. They will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>***:  This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

<u>Western</u>    District of <u>North Carolina</u>

In re   <u>Bestwall LLC</u>
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No.   <u>17-BK-31795 (LTB)</u>

Chapter   <u>11</u>

_____
Plaintiff
v.
_____
Defendant

Adv. Proc. No.   _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   <u>Manville Personal Injury Settlement Trust</u>

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  <u>April 1, 2021</u>

CLERK OF COURT

_____              OR    _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
<u>Bestwall LLC</u>_____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                          _____
                                                    *Server's signature*

                                          _____
                                        *Printed name and title*

                                          _____
                                          *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

          Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004
## EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY
## OF INFORMATION PROVIDED IN RESPONSE

      This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule*

*2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned

debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the

Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree
Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville
Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling"**) (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

      a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
      b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
      c.  Celotex Asbestos Settlement Trust
      d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
      e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
      f.  Flintkote Asbestos Trust
      g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
      h.  Pittsburgh Corning Corporation Asbestos PI Trust
      i.  United States Gypsum Asbestos Personal Injury Settlement Trust
      j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

      4.     On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in the last name field, and may also close spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the claimants in the Trusts' databases whose injured party datafields or related claimant datafields match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in a last-name field, and shall also close spaces between parts of a name (e.g., "Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April 21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

      6.      DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

      a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

         the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

         Notifying Facility shall stay the production of any data relating to such Matching

         Claimant for an additional two weeks. If a motion to quash is filed by May 24,

         2021, the Notifying Facility will stay the production of any data relating to such

         Matching Claimant until such motion is resolved.

      b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

         produce to Debtor the data described in paragraph 8 below relating to the

         Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

  a.   Full name of injured party;

  b.   Injured party SSN;

  c.   Gender of injured party;

  d.   Date of birth of injured party;

  e.   Date of death of injured party;

  f.   State of residency of injured party;

  g.   Date of diagnosis of injured party;

  h.   Claimed disease and disease body site (if available);

  i.   Full name of any claimant who is not the injured party and his or her SSN;

  j.   Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

  k.   Date claim filed against Trust;

  l.   Date claim approved by Trust, if approved;

  m.   Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

  i.  Date(s) exposure(s) began;

  ii.  Date(s) exposure(s) ended;

  iii.  Manner of exposure;

  iv.  Occupation and industry when exposed; and

  v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.  The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

  i.  Full name of injured party;

  ii.  Injured party SSN;

  iii.  Date of birth of injured party;

  iv.  Date of death of injured party; and

  v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.  The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

9

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.    To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.    No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.  Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential
Trust Data and any Authorized Representative who receives access to any
Confidential Trust Data in their individual capacity as provided in this Order shall
provide for physical, managerial, and electronic security thereof such that the
Confidential Trust Data are reasonably maintained and secured, ensuring that they
are safe from unauthorized access or use during utilization, transmission, and
storage. Any electronic transmission of the Confidential Trust Data (including
without limitation the Matching Key or any information derived therefrom) must
be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching
Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura
Consulting Group, LLC, each in its capacity as a retained claims expert for the
Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained
experts (consulting or testifying) in this case (if any), and (iii) to the professional
staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"),
and (iv) such other persons as the Parties, DCPF, and the Manville Trust may
agree to in writing from time to time; *provided, however*, that a Retained Expert
shall be permitted to access the Matching Key only in connection with a
Permitted Purpose and only if the Retained Expert has a clear need for such
access. Any Retained Expert granted access to the Matching Key shall store the
Matching Key in a separate, password-protected folder on Retained Expert's
network, accessible only to individuals authorized to access the Matching Key
under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.   No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.   If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.    Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.    Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

      a.   any discrete data set or materials that came into the possession of such person

           lawfully and free of any confidentiality obligation;

      b.   any exhibit or other document that is placed on the public record in this

           bankruptcy case in conformity with this Order, or any data or material that is or

           becomes publicly available other than by a breach of this Order; or

      c.   any discrete data set or materials developed by or on behalf of such person

           independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.    This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

16

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re: *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>*: This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

**<u>Instructions</u>:  *This joinder must be executed by any individual required to execute a joinder in his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined herein shall have the meanings ascribed to them in the Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. I will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

20

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western_____ District of North Carolina_____

In re Bestwall LLC_____

_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 17-BK-31795 (LTB)_____

Chapter 11_____

_____
Plaintiff

v.

_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Owens Corning/Fibreboard Asbestos Personal Injury Trust c/o Delaware Claims Processing Facility_____

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE<br>Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | DATE AND TIME<br>Dates and times provided in the Order |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 1, 2021_____

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Bestwall LLC_____ , who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March 24 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| IN RE:<br><br>BESTWALL LLC,[1]<br><br>       Debtor. | Case No. 17-BK-31795 (LTB)<br><br>Chapter 11 |

### ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

      This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule*
*2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's*
*Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to*
*Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004*
*Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos*
*Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in*
*Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental*
*Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of*
*Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants*
*to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury*
*Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004*
*Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America*
*Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)*
*Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order*
*Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending*
*Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States*
*Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement*
*Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule*
*2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing*
*Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and*
*Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility*
*Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

> a. Armstrong World Industries Asbestos Personal Injury Settlement Trust
> b. Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
> c. Celotex Asbestos Settlement Trust
> d. DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
> e. Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
> f. Flintkote Asbestos Trust
> g. Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
> h. Pittsburgh Corning Corporation Asbestos PI Trust
> i. United States Gypsum Asbestos Personal Injury Settlement Trust
> j. WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

4. On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

3

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching

Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.      DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

Notifying Facility shall stay the production of any data relating to such Matching

Claimant for an additional two weeks. If a motion to quash is filed by May 24,

2021, the Notifying Facility will stay the production of any data relating to such

Matching Claimant until such motion is resolved.

b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

produce to Debtor the data described in paragraph 8 below relating to the

Matching Claimant on or before May 28, 2021.

7.     If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.     Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

   a.   Full name of injured party;

   b.   Injured party SSN;

   c.   Gender of injured party;

   d.   Date of birth of injured party;

   e.   Date of death of injured party;

   f.   State of residency of injured party;

   g.   Date of diagnosis of injured party;

   h.   Claimed disease and disease body site (if available);

   i.   Full name of any claimant who is not the injured party and his or her SSN;

   j.   Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

   k.   Date claim filed against Trust;

   l.   Date claim approved by Trust, if approved;

   m.   Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

    n.   If not approved or paid, status of claim;

    o.   All exposure-related fields, including:

         i.   Date(s) exposure(s) began;

        ii.   Date(s) exposure(s) ended;

      iii.   Manner of exposure;

      iv.   Occupation and industry when exposed; and

       v.   Products to which exposed;

    p.   Mode of review selected; and

    q.   Mode of review under which claim was approved and paid.

9.     The Matched Production shall be used as follows:

    a.   Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

    b.   Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

         i.   Full name of injured party;

        ii.   Injured party SSN;

      iii.   Date of birth of injured party;

      iv.   Date of death of injured party; and

       v.   Full name of any claimant who is not the injured party and his or her SSN.

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.  The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

f.  To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.  The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

a.  No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be subject to the conditions precedent set forth in paragraph 10(b) immediately below.

b.  Any person exercising a right of access to the Confidential Trust Data shall thereby consent, and be deemed to consent, to be bound by this Order and shall thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue of this Court for any dispute pertaining to the interpretation or enforcement of this Order. Without limitation of the generality of the foregoing sentence, as a condition of the right of access to the Confidential Trust Data conferred by paragraph 10(a) above, each entity whose Authorized Representatives will receive access to the Confidential Trust Data and any other Authorized Representatives not associated with such an entity who will receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacity shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships, companies, or firms whose Authorized Representatives will receive access to the Confidential Trust Data in the performance of the entity's duties with respect to this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by individuals (such as witnesses or self-employed experts) who receive a right of access to the Confidential Trust Data under paragraph 10(a) above in their individual capacities, rather than as employees, agents, or representatives of an entity.

11

c. Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d. Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d). Any electronic transmission of the Matching Key must be through a secure encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data, including without limitation the kinds of claimant data listed in paragraphs 9(b)(i) to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case, (ii) placed on the public record, or (iii) filed with this Court, the District Court, or any reviewing court (including under seal), absent further order by this Court, made after notice of hearing of a motion (with notice to DCPF, the Manville Trust, and claimants provided to their attorneys at the addresses contained in the data produced by the Manville Trust and DCPF) authorizing such use. Such motion shall be brought by the movant no later than 30 days before such offer or use. The restrictions of this paragraph 10(e) shall also apply to any de-identified data (i.e., data that does not contain claimant-specific details) from or derived from any Confidential Trust Data that could reasonably be used, by cross-referencing publicly available information or otherwise, to determine or reveal a claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to such motion, a Party proposes to place any Confidential Trust Data under seal, that Party shall have the burden of making the showing required for sealing under applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.   Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.   Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.    Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

      a.  any discrete data set or materials that came into the possession of such person

         lawfully and free of any confidentiality obligation;

      b.  any exhibit or other document that is placed on the public record in this

         bankruptcy case in conformity with this Order, or any data or material that is or

         becomes publicly available other than by a breach of this Order; or

      c.  any discrete data set or materials developed by or on behalf of such person

         independent of any Confidential Trust Data.

14.    For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.    Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                                    United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re: *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>:   *This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

18

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>*:  This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western _____ District of __North Carolina__

In re  __Bestwall LLC__
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No. __17-BK-31795 (LTB)__

Chapter __11__

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Pittsburgh Corning Corporation Asbestos PI Trust c/o Delaware Claims Processing Facility
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __April 1, 2021__

CLERK OF COURT

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Bestwall LLC__ _____ , who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

       I declare under penalty of perjury that this information is true and correct.

Date: _____

                                          _____
                                                     *Server's signature*

                                          _____
                                             *Printed name and title*

                                          _____
                                             *Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

          Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

       This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

> a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
> b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
> c.  Celotex Asbestos Settlement Trust
> d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
> e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
> f.  Flintkote Asbestos Trust
> g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
> h.  Pittsburgh Corning Corporation Asbestos PI Trust
> i.  United States Gypsum Asbestos Personal Injury Settlement Trust
> j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

    4.      On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching

Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

Notifying Facility shall stay the production of any data relating to such Matching

Claimant for an additional two weeks. If a motion to quash is filed by May 24,

2021, the Notifying Facility will stay the production of any data relating to such

Matching Claimant until such motion is resolved.

b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

produce to Debtor the data described in paragraph 8 below relating to the

Matching Claimant on or before May 28, 2021.

5

7.     If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.     Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.  Full name of injured party;

    b.  Injured party SSN;

    c.  Gender of injured party;

    d.  Date of birth of injured party;

    e.  Date of death of injured party;

    f.  State of residency of injured party;

    g.  Date of diagnosis of injured party;

    h.  Claimed disease and disease body site (if available);

    i.  Full name of any claimant who is not the injured party and his or her SSN;

    j.  Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

    k.  Date claim filed against Trust;

    l.  Date claim approved by Trust, if approved;

    m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n. If not approved or paid, status of claim;

o. All exposure-related fields, including:

    i. Date(s) exposure(s) began;

    ii. Date(s) exposure(s) ended;

    iii. Manner of exposure;

    iv. Occupation and industry when exposed; and

    v. Products to which exposed;

p. Mode of review selected; and

q. Mode of review under which claim was approved and paid.

9. The Matched Production shall be used as follows:

a. Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b. Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

    i. Full name of injured party;

    ii. Injured party SSN;

    iii. Date of birth of injured party;

    iv. Date of death of injured party; and

    v. Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.  After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.  Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.   The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.    To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed

Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.    No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.  Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential
Trust Data and any Authorized Representative who receives access to any
Confidential Trust Data in their individual capacity as provided in this Order shall
provide for physical, managerial, and electronic security thereof such that the
Confidential Trust Data are reasonably maintained and secured, ensuring that they
are safe from unauthorized access or use during utilization, transmission, and
storage. Any electronic transmission of the Confidential Trust Data (including
without limitation the Matching Key or any information derived therefrom) must
be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching
Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura
Consulting Group, LLC, each in its capacity as a retained claims expert for the
Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained
experts (consulting or testifying) in this case (if any), and (iii) to the professional
staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"),
and (iv) such other persons as the Parties, DCPF, and the Manville Trust may
agree to in writing from time to time; *provided, however*, that a Retained Expert
shall be permitted to access the Matching Key only in connection with a
Permitted Purpose and only if the Retained Expert has a clear need for such
access. Any Retained Expert granted access to the Matching Key shall store the
Matching Key in a separate, password-protected folder on Retained Expert's
network, accessible only to individuals authorized to access the Matching Key
under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).
Any electronic transmission of the Matching Key must be through a secure
encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,
including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)
to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,
(ii) placed on the public record, or (iii) filed with this Court, the District Court, or
any reviewing court (including under seal), absent further order by this Court,
made after notice of hearing of a motion (with notice to DCPF, the Manville
Trust, and claimants provided to their attorneys at the addresses contained in the
data produced by the Manville Trust and DCPF) authorizing such use. Such
motion shall be brought by the movant no later than 30 days before such offer or
use. The restrictions of this paragraph 10(e) shall also apply to any de-identified
data (i.e., data that does not contain claimant-specific details) from or derived
from any Confidential Trust Data that could reasonably be used, by cross-
referencing publicly available information or otherwise, to determine or reveal a
claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to
such motion, a Party proposes to place any Confidential Trust Data under seal,
that Party shall have the burden of making the showing required for sealing under
applicable law.

g. In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h. Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i. Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.    Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.    Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.    Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

a.    any discrete data set or materials that came into the possession of such person

lawfully and free of any confidentiality obligation;

b.    any exhibit or other document that is placed on the public record in this

bankruptcy case in conformity with this Order, or any data or material that is or

becomes publicly available other than by a breach of this Order; or

c.    any discrete data set or materials developed by or on behalf of such person

independent of any Confidential Trust Data.

14.    For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.    Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

15

16.    This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                              United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re:  *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

**_Instructions_**:  *This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____
Print Name: _____
Title: _____
Employer: _____
Address: _____
_____
Dated: _____
Relationship to Employer: _____

18

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

*Instructions*:  *This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

__Western__ District of __North Carolina__

In re __Bestwall LLC__
_____
Debtor

_(Complete if issued in an adversary proceeding)_

_____
Plaintiff

v.

_____
Defendant

Case No. __17-BK-31795 (LTB)__

Chapter __11__

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __United States Gypsum Asbestos Personal Injury Settlement Trust c/o Delaware Claims Processing Facility__
_(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __April 1, 2021__

CLERK OF COURT

OR

_____
_Signature of Clerk or Deputy Clerk_

_____
_Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
__Bestwall LLC_____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

          Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

        This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling"**) (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.  The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.  Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response*
(Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's
Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to
Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos
Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in
Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental
Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of
Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants
to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury
Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America
Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I)
Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order
Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending
Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States
Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement
Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule
2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing
Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and
Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility
Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

      a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
      b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
      c.  Celotex Asbestos Settlement Trust
      d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
      e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
      f.  Flintkote Asbestos Trust
      g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
      h.  Pittsburgh Corning Corporation Asbestos PI Trust
      i.  United States Gypsum Asbestos Personal Injury Settlement Trust
      j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

      4.     On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the

injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in

this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr.,

III, IV, etc.), and any other words that do not constitute part of the name ("executor,"

"deceased," "dec," etc.) but that may be contained in the last name field, and may also close

spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the

claimants in the Trusts' databases whose injured party datafields or related claimant datafields

match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the

Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching

Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard

punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other

words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may

be contained in a last-name field, and shall also close spaces between parts of a name (e.g.,

"Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April

21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the

first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN

of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants

on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name

associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List

shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as

defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall

meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants. On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

      6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

      a.   If counsel for any Matching Claimant communicates to the Notifying Facility and

           the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

           Notifying Facility shall stay the production of any data relating to such Matching

           Claimant for an additional two weeks. If a motion to quash is filed by May 24,

           2021, the Notifying Facility will stay the production of any data relating to such

           Matching Claimant until such motion is resolved.

      b.   If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

           produce to Debtor the data described in paragraph 8 below relating to the

           Matching Claimant on or before May 28, 2021.

7.      If counsel for any Matching Claimants do not on or before May 12, 2021 notify

the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to

quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the

information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.      Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville

Trust shall produce to Bates White (in electronic database format and, with respect to DCPF,

separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent

the relevant Trust databases contain such information) (the "**Matched Production**"):

    a.  Full name of injured party;

    b.  Injured party SSN;

    c.  Gender of injured party;

    d.  Date of birth of injured party;

    e.  Date of death of injured party;

    f.  State of residency of injured party;

    g.  Date of diagnosis of injured party;

    h.  Claimed disease and disease body site (if available);

    i.  Full name of any claimant who is not the injured party and his or her SSN;

    j.  Claimant's law firm (with email and address of contact person), jurisdiction of
       tort claim filing, and date of tort claim filing;

    k.  Date claim filed against Trust;

    l.  Date claim approved by Trust, if approved;

    m.  Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes
any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified
as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n. If not approved or paid, status of claim;

o. All exposure-related fields, including:

    i. Date(s) exposure(s) began;

    ii. Date(s) exposure(s) ended;

    iii. Manner of exposure;

    iv. Occupation and industry when exposed; and

    v. Products to which exposed;

p. Mode of review selected; and

q. Mode of review under which claim was approved and paid.

9. The Matched Production shall be used as follows:

a. Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b. Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

    i. Full name of injured party;

    ii. Injured party SSN;

    iii. Date of birth of injured party;

    iv. Date of death of injured party; and

    v. Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c.   After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d.   Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.   The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.   To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed*

*Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.   No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

10

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.  Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c.  Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d.  Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).

Any electronic transmission of the Matching Key must be through a secure

encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,

including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)

to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,

(ii) placed on the public record, or (iii) filed with this Court, the District Court, or

any reviewing court (including under seal), absent further order by this Court,

made after notice of hearing of a motion (with notice to DCPF, the Manville

Trust, and claimants provided to their attorneys at the addresses contained in the

data produced by the Manville Trust and DCPF) authorizing such use. Such

motion shall be brought by the movant no later than 30 days before such offer or

use. The restrictions of this paragraph 10(e) shall also apply to any de-identified

data (i.e., data that does not contain claimant-specific details) from or derived

from any Confidential Trust Data that could reasonably be used, by cross-

referencing publicly available information or otherwise, to determine or reveal a

claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to

such motion, a Party proposes to place any Confidential Trust Data under seal,

that Party shall have the burden of making the showing required for sealing under

applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.  Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.  Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.   any discrete data set or materials that came into the possession of such person

          lawfully and free of any confidentiality obligation;

     b.   any exhibit or other document that is placed on the public record in this

          bankruptcy case in conformity with this Order, or any data or material that is or

          becomes publicly available other than by a breach of this Order; or

     c.   any discrete data set or materials developed by or on behalf of such person

          independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.    This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                              United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>*:   This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

18

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

**<u>Instructions</u>:  *This joinder must be executed by any individual required to execute a joinder in
his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

**A C K N O W L E D G E M E N T**

I may be given access to certain confidential and protected information in connection
with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004
Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in
Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District
of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined
herein shall have the meanings ascribed to them in the Order. I understand the conditions and
obligations of confidentiality, and use restrictions, that the Order makes applicable to the
Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those
conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order,
or further order of the Bankruptcy Court, to receive such information. I will not use any
Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within
90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order
confirming such a plan, whichever is later, and will promptly certify such destruction in writing
to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Western_____ District of _North Carolina_

In re __Bestwall LLC_____
    _____
                 _Debtor_

_(Complete if issued in an adversary proceeding)_

_____
                 Plaintiff
                   v.
_____
                 Defendant

Case No. __17-BK-31795 (LTB)___

Chapter __11_____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __WRG Asbestos PI Trust c/o Delaware Claims Processing Facility_____
_(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: The information described in the attached Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response (Dkt. 1672) (the "Order"), entered in the above-captioned case.

| PLACE | DATE AND TIME |
|---|---|
| Bates White LLC, 2001 K Street NW, North Building, Suite 500, Washington, DC 20006 | Dates and times provided in the Order |

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _April 1, 2021_____

            CLERK OF COURT

                                    OR

_____                    _____
_Signature of Clerk or Deputy Clerk_                    _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_Bestwall LLC_____, who issues or requests this subpoena, are: Stuart L. Pratt, Robinson, Bradshaw & Hinson, PA
101 North Tryon Street, Suite 1900, Charlotte, NC 28246, spratt@robinsonbradshaw.com, 704-377-8168

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                                _____
                                                                                *Server's signature*

                                                                _____
                                                                                *Printed name and title*

                                                                _____
                                                                                *Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)



FILED & JUDGMENT ENTERED
Steven T. Salata

March  24  2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN RE:

BESTWALL LLC,[1]

            Debtor.

Case No. 17-BK-31795 (LTB)

Chapter 11

## ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE

      This matter came before the Court pursuant to *Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1237) (the "**Motion**"), filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**" or "**Bestwall**").[2] Based upon a review of the Motion, the further submissions of the parties,[3] the evidence presented, and the arguments of

---

[1] The last four digits of debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.
[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
[3] The parties submitted the following with respect to the Motion: *Response and Objection of Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility to the Debtor's Motion for Bankruptcy*

1

counsel at the hearing before the Court on January 21, 2021, and for the reasons stated in the

Court's bench ruling at the hearing on March 4, 2021 (the "**March 4, 2021 Ruling**") (which

ruling is incorporated herein by reference), the Court finds good cause for the relief granted

herein and hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion

was given and it appears that no other notice need be given (except as set forth herein).

2.      The Motion is GRANTED on the terms and conditions set forth herein. All

objections to the relief granted herein are OVERRULED, except to the extent stated in the March

4, 2021 Ruling.

3.      Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016, the Debtor is

authorized to issue and serve subpoenas requesting the data described in paragraph 8 below on

---

*Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (Dkt. 1321); *Objection of the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1327); *Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1328); *Buck Law Firm's Clients' Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1330); *Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1332); *Reply in Support of Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1354); *Supplemental Objection of the Future Claimants' Representative to Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. No. 1510); *Supplemental Brief and Objection of the Official Committee of Asbestos Claimants to (I) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants and (II) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1511); *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Dkt. 1557); *Debtor's Omnibus Supplemental Reply in Support of (I) Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and (II) Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1565); *The Official Committee of Asbestos Claimants Response to United States Statement of Interest* (Dkt. 1581); *Supplemental Submission by Nonparties Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility in Further Opposition to the Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Dkt. 1612); *The Official Committee of Asbestos Claimants' Post-Hearing Brief Regarding Estimation-Related Motions* (Dkt. No. 1614); *Debtor's Supplemental Brief on Discovery and Limiting Motions* (Dkt. 1615); *Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility Letter to the Court* (Dkt. No. 1616); *Debtor's Reply to Trusts' Letter Regarding Trust Discovery* (Dkt. 1622).

the Manville Personal Injury Settlement Trust ("**Manville Trust**") and the Delaware Claims

Processing Facility ("**DCPF**") with respect to the following asbestos personal injury trusts whose

claims are handled by DCPF (the "**DCPF Trusts**," and together with the Manville Trust, the

"**Trusts**"):[4]

> a.  Armstrong World Industries Asbestos Personal Injury Settlement Trust
> b.  Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust
> c.  Celotex Asbestos Settlement Trust
> d.  DII Industries, LLC Asbestos PI Trust (Halliburton, Harbison-Walker Subfunds)
> e.  Federal Mogul U.S. Asbestos Personal Injury Trust (T&N, FMP, Flexitallic, Ferodo)
> f.  Flintkote Asbestos Trust
> g.  Owens Corning Fibreboard Asbestos Personal Injury Trust (FB and OC Subfunds)
> h.  Pittsburgh Corning Corporation Asbestos PI Trust
> i.  United States Gypsum Asbestos Personal Injury Settlement Trust
> j.  WRG Asbestos PI Trust

The subpoenas seek evidence that is relevant to specific purposes in connection with estimation

and the negotiation, formulation, and confirmation of a plan of reorganization in this case,

specifically:  the determination of whether pre-petition settlements of mesothelioma claims

provide a reliable basis for estimating the Debtor's asbestos liability; the estimation of the

Debtor's asbestos liability; and the Debtor's development of its trust distribution procedures and

evaluation of the procedures proposed by the Official Committee of Asbestos Personal Injury

Claimants (the "**ACC**") and the Future Claimants' Representative (the "**FCR**") in their proposed

chapter 11 plan (collectively, the "**Permitted Purposes**").

4.      On or before March 31, 2021, the Debtor shall provide to the Manville Trust and

DCPF a list (in electronic, text searchable format) of last names and Social Security numbers

("**SSNs**"), in separate fields, for claimants who asserted mesothelioma claims against the Debtor

or the former Georgia-Pacific LLC ("**Old GP**") that were resolved by settlement or verdict and

---

[4] The Debtor may also subpoena the DCPF Trusts if necessary to effectuate this Order.

for whom Debtor possesses SSNs, as well as the corresponding last names and SSNs of the injured parties if different from the claimant (the "**Bestwall Claimants**"). The list referenced in this paragraph may delete punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in the last name field, and may also close spaces between parts of a name (e.g., "Van" or "De").

5.      On or before April 21, 2021, DCPF and the Manville Trust shall identify the claimants in the Trusts' databases whose injured party datafields or related claimant datafields match any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in the Debtor's claims database and who did not file their Trust claims *pro se* (the "**Matching Claimants**"). In performing this match, DCPF and the Manville Trust shall disregard punctuation marks, prefixes (Mr., Miss, Ms., etc.), suffixes (Sr., Jr., III, IV, etc.), and any other words that do not constitute part of the name ("executor," "deceased," "dec," etc.) but that may be contained in a last-name field, and shall also close spaces between parts of a name (e.g., "Van" or "De") as necessary to ensure the most comprehensive initial match. On or before April 21, 2021, DCPF and the Manville Trust shall also provide to counsel for the Debtor a list of the first and last names and SSN of claimants in the Trusts' databases who match the nine-digit SSN of any Bestwall Claimant but who (a) filed their Trust claims *pro se* (and identify such claimants on the list) or (b) in the view of DCPF or the Manville Trust do not match the last name associated with the Bestwall Claimant (the "**Meet and Confer List**"). The Meet and Confer List shall be subject to the same confidentiality and use restrictions as Confidential Trust Data (as defined herein). On or before April 30, 2021, the Debtor, DCPF, and the Manville Trust shall meet and confer concerning whether any of the claimants on the Meet and Confer List should

4

instead be classified as Matching Claimants.  On or before May 26, 2021, the Debtor (and the

Debtor's Retained Experts, as defined herein) shall permanently delete the Meet and Confer List

and provide DCPF and the Manville Trust with written confirmation of such deletion; *provided,*

*however*, that such deletion deadline shall be extended for each day the meet and confer process

between the Debtor, on the one hand, and DCPF and the Manville Trust, on the other hand,

continues after May 26, 2021.

6.     DCPF and the Manville Trust (through its claims processing agent, Claims

Resolution Management Corporation ("**CRMC**")) shall notify the Matching Claimants' counsel

of record that the relevant Trusts have received a subpoena from the Debtor. DCPF and CRMC

(each, a "**Notifying Facility**") shall inform such counsel that the Matching Claimants' data

described in paragraph 8 below will be produced if they do not notify the Notifying Facility and

the Debtor in writing by May 12, 2021 that the Matching Claimant intends to file a motion to

quash.

    a.  If counsel for any Matching Claimant communicates to the Notifying Facility and

       the Debtor by May 12, 2021 an intent to file a motion to quash the subpoena, the

       Notifying Facility shall stay the production of any data relating to such Matching

       Claimant for an additional two weeks. If a motion to quash is filed by May 24,

       2021, the Notifying Facility will stay the production of any data relating to such

       Matching Claimant until such motion is resolved.

    b.  If a motion to quash is not filed by May 24, 2021, the Notifying Facility shall

       produce to Debtor the data described in paragraph 8 below relating to the

       Matching Claimant on or before May 28, 2021.

7.    If counsel for any Matching Claimants do not on or before May 12, 2021 notify the Notifying Facility and the Debtor that the Matching Claimant intends to file a motion to quash the subpoena, the Notifying Facility shall produce to the Debtor's expert, Bates White, the information in paragraph 8 relating to any such Matching Claimants on or before May 28, 2021.

8.    Subject to the procedures set forth in paragraph 6 above, DCPF and the Manville Trust shall produce to Bates White (in electronic database format and, with respect to DCPF, separated by Trust) the following information pertaining to Matching Claimants[5] (to the extent the relevant Trust databases contain such information) (the "**Matched Production**"):

  a. Full name of injured party;

  b. Injured party SSN;

  c. Gender of injured party;

  d. Date of birth of injured party;

  e. Date of death of injured party;

  f. State of residency of injured party;

  g. Date of diagnosis of injured party;

  h. Claimed disease and disease body site (if available);

  i. Full name of any claimant who is not the injured party and his or her SSN;

  j. Claimant's law firm (with email and address of contact person), jurisdiction of tort claim filing, and date of tort claim filing;

  k. Date claim filed against Trust;

  l. Date claim approved by Trust, if approved;

  m. Date claim paid by Trust, if paid;

---

[5] For the avoidance of doubt, the term "Matching Claimants" referenced here and elsewhere in this Order includes any claimants on the Meet and Confer List that the parties agree, after meeting and conferring, should be classified as Matching Claimants, but excludes any other claimants on the Meet and Confer List.

6

n.  If not approved or paid, status of claim;

o.  All exposure-related fields, including:

i.  Date(s) exposure(s) began;

ii.  Date(s) exposure(s) ended;

iii.  Manner of exposure;

iv.  Occupation and industry when exposed; and

v.  Products to which exposed;

p.  Mode of review selected; and

q.  Mode of review under which claim was approved and paid.

9.  The Matched Production shall be used as follows:

a.  Bates White shall assign a unique identifier to each claimant record in the Matched Production and may use the date of birth and date of death fields to create age fields for each claimant record, rounded to the nearest year;

b.  Bates White shall create a separate file (the "**Matching Key**") containing the unique identifier and the following fields from the Matched Production (to the extent the data produced by DCPF and the Manville Trust pursuant to paragraph 8 include such information):

i.  Full name of injured party;

ii.  Injured party SSN;

iii.  Date of birth of injured party;

iv.  Date of death of injured party; and

v.  Full name of any claimant who is not the injured party and his or her SSN.

7

For the avoidance of doubt, nothing in this paragraph 9(b) should be construed as modifying or expanding the scope of DCPF's and the Manville Trust's disclosure obligations under paragraph 8.

c. After creating the Matching Key, Bates White shall permanently delete from the Matched Production the datafields contained within the Matching Key (except the unique identifier and the year of the date of birth and the year of any date of death). The resulting database will be the "**Anonymized Matched Production**." Bates White shall then provide a copy of the Matching Key and the Anonymized Matched Production to Legal Analysis Systems, Inc. and Ankura Consulting Group, LLC, each in its capacity as a Retained Expert (as defined herein) for the ACC and the FCR, respectively. Within four weeks after the final production of any Matching Claimant's data or the resolution of all pending motions to quash described in paragraph 6, whichever is later, Bates White shall serve a declaration on DCPF, the Manville Trust, and the other Parties (as defined herein) that attests to the creation of the Anonymized Matched Production and the Matching Key pursuant to this Order; and attests to the storage of the Matching Key in a separate password-protected network folder. The declaration shall be deemed "Confidential" pursuant to the Protective Order (as defined herein).

d. Subject to and without in any way limiting the restrictions described in paragraph 10(d) below concerning access to the Matching Key (or information derived therefrom), Retained Experts and Authorized Representatives (each as defined below) of the Debtor, the ACC, the FCR, and Georgia-Pacific LLC ("**New GP**" and, together with the Debtor, the ACC, and the FCR, the "**Parties**"), if otherwise

8

entitled to such access pursuant to this Order, may obtain a copy of the Matching

Key (or information derived therefrom) and the Anonymized Matched Production

upon request to Bates White.

e.   The Retained Experts (as defined in paragraph 10(d)) shall use the Matching Key

only to (i) match and combine the Anonymized Matched Production, on a

claimant-by-claimant basis, with data from the Debtor's database or other

sources; (ii) provide sufficient identifying information from the Matching Key to

an Authorized Representative to permit such Authorized Representative to match

data from the Anonymized Matched Production with and analyze individual

claims (provided that such identifying information shall be limited to data

corresponding to the specific individual claims in the Anonymized Matched

Production that are the subject of individual claims analysis, shall not contain data

corresponding to claims that are not the subject of individual claims analysis, and

shall not include data beyond that which is strictly necessary to effectuate the

individual matches and analysis contemplated by this subdivision (ii)); (iii) verify

the accuracy of any matching of data performed by another Authorized

Representative; and (iv) defend challenges to the accuracy of any matching of

data performed by an Authorized Representative, *provided, however*, that the

Matching Key may be used in the manner described in (i), (ii), (iii), and (iv) only

in connection with a Permitted Purpose. Absent further order by this Court, no

Retained Expert or Authorized Representative shall use the Matching Key, or any

portion or element thereof, for any other purpose, and shall not retain any other

9

record of any kind linking the complete set of unique identifiers in the

Anonymized Matched Production to the Matching Key.

    f.   To the extent a Retained Expert uses the Matching Key to match the Anonymized

Matched Production, on a claimant-by-claimant basis, to the Debtor's database or

other sources of information, such Retained Expert shall delete from any resulting

database any datafields or information of the type contained within paragraphs

9(b)(i) to 9(b)(v), without regard to whether such information was derived from

data produced by DCPF or the Manville Trust or other sources of information

(any such database being an "**Anonymized Database**").

10.    The Matching Key (and any portion or extract thereof), the Anonymized Matched

Production, any Anonymized Databases, and (while it exists) the Matched Production (together,

the "**Confidential Trust Data**") shall be deemed "Confidential" pursuant to the *Agreed

Protective Order Governing Confidential Information* (Dkt. 337) (the **Protective Order**"). In

addition to the protections in the Protective Order, the provisions in this Order (which will

supersede the Protective Order in the event of any conflict) shall apply, including the following:

    a.   No Confidential Trust Data shall be disseminated or disclosed, whether in written

or electronic form, to any individual other than an individual (1) who has a clear

need to know the data to perform work in connection with a Permitted Purpose

and (2) who is (i) a lawyer, employee, agent, or representative of a law firm

representing a Party in connection with this case, (ii) a lawyer, paralegal, or legal

support staff for a Party (and working in a legal role for the Party), or (iii) a

Party's Retained Expert (defined below) in this case (collectively, the

"**Authorized Representatives**"); *provided, however*, that the right of access to

the Confidential Trust Data hereby conferred on the foregoing persons shall be

subject to the conditions precedent set forth in paragraph 10(b) immediately

below.

b.   Any person exercising a right of access to the Confidential Trust Data shall

thereby consent, and be deemed to consent, to be bound by this Order and shall

thereby submit, and be deemed to submit, to the exclusive jurisdiction and venue

of this Court for any dispute pertaining to the interpretation or enforcement of this

Order. Without limitation of the generality of the foregoing sentence, as a

condition of the right of access to the Confidential Trust Data conferred by

paragraph 10(a) above, each entity whose Authorized Representatives will receive

access to the Confidential Trust Data and any other Authorized Representatives

not associated with such an entity who will receive a right of access to the

Confidential Trust Data under paragraph 10(a) above in their individual capacity

shall execute a joinder in the form annexed to this Order as Exhibit A.1 or Exhibit

A.2. Exhibit A.1 shall be executed on the part of corporations, partnerships,

companies, or firms whose Authorized Representatives will receive access to the

Confidential Trust Data in the performance of the entity's duties with respect to

this bankruptcy case. Exhibit A.2 shall be signed in an individual capacity by

individuals (such as witnesses or self-employed experts) who receive a right of

access to the Confidential Trust Data under paragraph 10(a) above in their

individual capacities, rather than as employees, agents, or representatives of an

entity.

11

c. Any entity whose Authorized Representatives receive access to any Confidential Trust Data and any Authorized Representative who receives access to any Confidential Trust Data in their individual capacity as provided in this Order shall provide for physical, managerial, and electronic security thereof such that the Confidential Trust Data are reasonably maintained and secured, ensuring that they are safe from unauthorized access or use during utilization, transmission, and storage. Any electronic transmission of the Confidential Trust Data (including without limitation the Matching Key or any information derived therefrom) must be through a secure encrypted service, and not as an ordinary email attachment.

d. Notwithstanding anything in this Order to the contrary, access to the Matching Key shall be limited to (i) Bates White, Legal Analysis Systems, Inc., and Ankura Consulting Group, LLC, each in its capacity as a retained claims expert for the Debtor, the ACC, and the FCR, respectively, (ii) the Parties' other retained experts (consulting or testifying) in this case (if any), and (iii) to the professional staff employed by such experts (each of (i), (ii), and (iii), a "**Retained Expert**"), and (iv) such other persons as the Parties, DCPF, and the Manville Trust may agree to in writing from time to time; *provided, however*, that a Retained Expert shall be permitted to access the Matching Key only in connection with a Permitted Purpose and only if the Retained Expert has a clear need for such access. Any Retained Expert granted access to the Matching Key shall store the Matching Key in a separate, password-protected folder on Retained Expert's network, accessible only to individuals authorized to access the Matching Key under this paragraph 10(d), and the same data security requirement shall apply to

12

any other person granted access to the Matching Key under this paragraph 10(d).

Any electronic transmission of the Matching Key must be through a secure

encrypted service, and not as an ordinary email attachment.

e.  No claimant-specific data from or derived from any Confidential Trust Data,

including without limitation the kinds of claimant data listed in paragraphs 9(b)(i)

to 9(b)(v) above, shall be (i) offered as evidence in this bankruptcy case,

(ii) placed on the public record, or (iii) filed with this Court, the District Court, or

any reviewing court (including under seal), absent further order by this Court,

made after notice of hearing of a motion (with notice to DCPF, the Manville

Trust, and claimants provided to their attorneys at the addresses contained in the

data produced by the Manville Trust and DCPF) authorizing such use. Such

motion shall be brought by the movant no later than 30 days before such offer or

use. The restrictions of this paragraph 10(e) shall also apply to any de-identified

data (i.e., data that does not contain claimant-specific details) from or derived

from any Confidential Trust Data that could reasonably be used, by cross-

referencing publicly available information or otherwise, to determine or reveal a

claimant's identity.

f.  If, in connection with a motion pursuant to paragraph 10(e), or any response to

such motion, a Party proposes to place any Confidential Trust Data under seal,

that Party shall have the burden of making the showing required for sealing under

applicable law.

13

g.  In addition to, and without diminution of any other use restrictions in this Order, unless otherwise ordered by the Court, the Confidential Trust Data shall be used only in connection with a Permitted Purpose.

h.  Notwithstanding the foregoing, a Party may use in connection with a Permitted Purpose in this Court, or any reviewing court, summaries or analyses derived from the Confidential Trust Data if such material is redacted so as not to reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

i.  Likewise, nothing herein shall prohibit a Retained Expert with access to the Confidential Trust Data from using or referring to the Confidential Trust Data (in connection with a Permitted Purpose) in an expert report, preparing summaries of information for other experts to rely on, or testifying concerning the Confidential Trust Data, so long as any such testimony, summary, or report does not reveal any identifying detail of any individual claimant, including without limitation any of the identifying details subject to the restrictions of paragraph 10(e) above.

11.    Pursuant to section 105(a) of the Bankruptcy Code, no Confidential Trust Data shall be subject to subpoena or otherwise discoverable by any person or entity other than the Parties.

12.    Within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, the Parties and any Authorized Representatives (and any of their associated entities), including without limitation any Retained Experts, who received access to or who possess any Confidential Trust Data or any excerpts thereof, including without limitation any person or entity that executed a joinder in the form

14

annexed to this Order as Exhibit A.1 or Exhibit A.2, shall (i) permanently delete such

Confidential Trust Data and any excerpts thereof, without in any way retaining, preserving, or

copying the Confidential Trust Data or any excerpts thereof, and (ii) certify in writing to DCPF

and the Manville Trust that they have permanently deleted such files and any excerpts thereof.

13.     Subject to the requirements of paragraphs 9 and 10 above, nothing in this Order

shall restrict any person's right to make lawful use of:

     a.  any discrete data set or materials that came into the possession of such person

        lawfully and free of any confidentiality obligation;

     b.  any exhibit or other document that is placed on the public record in this

        bankruptcy case in conformity with this Order, or any data or material that is or

        becomes publicly available other than by a breach of this Order; or

     c.  any discrete data set or materials developed by or on behalf of such person

        independent of any Confidential Trust Data.

14.     For the avoidance of doubt, nothing in this Order shall prohibit any Party from

seeking discovery in connection with a Permitted Purpose with respect to any particular Bestwall

Claimants, including where such Bestwall Claimants are selected using knowledge gained from

the discovery ordered herein, so long as such discovery requests do not disclose any information

that is derived solely from or contained exclusively in the Matched Production.

15.     Debtor shall reimburse DCPF and the Manville Trust their reasonable and

documented expenses in complying with this Order and the subpoenas. DCPF and the Manville

Trust shall have no liability in connection with their compliance with the subpoenas described in

this Order.

16.     This Court shall retain exclusive jurisdiction to interpret, modify, apply, and

enforce this Order to the full extent permitted by law.


This Order has been signed                              United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

**EXHIBIT A.1 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

Re:  *In re Bestwall LLC*
**Case No. 17-BK-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>*Instructions*</u>:  *This joinder must be executed by an authorized representative of any
corporation, partnership, company, or firm required to execute a joinder pursuant to
paragraph 10(b) of the above-referenced Order.*

**A C K N O W L E D G E M E N T**

On behalf of my employer, _____ [*write in name
of employer*] ("**Employer**"), I and Authorized Representatives of Employer may be given access
to Confidential Trust Data. The Confidential Trust Data constitutes confidential and protected
information in connection with the above-referenced *Order Granting Debtor's Motion for
Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of
Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court
for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced
chapter 11 case. Capitalized terms used in this Acknowledgment but not otherwise defined
herein shall have the meanings ascribed to them in the Order.

I have read the Order on behalf of Employer as part of performing its duties to
_____ [*name of the Party or other
client for whom Employer is rendering services in connection with the bankruptcy case*]. I
understand the conditions and obligations of confidentiality, and use restrictions, that the Order
makes applicable to the Confidential Trust Data. By my signature below, Employer, for itself
and all of its Authorized Representatives who receive access to any Confidential Trust Data,
hereby accepts and agrees to be bound by, and to abide by, those conditions, obligations, and
restrictions. On Employer's behalf, I represent that Employer has made, or will make the Order
and this joinder known in advance to all of Employer's Authorized Representatives who are to
receive access to any Confidential Trust Data, so that they will be on notice of Employer's duties
in connection therewith and their own responsibilities to ensure compliance with the Order.

Employer and its Authorized Representatives will not disclose any Confidential Trust
Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to
receive such information. They will not use any Confidential Trust Data except in connection
with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, Employer will destroy any Confidential Trust
Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a

17

final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

Employer and I (in my individual capacity and my capacity as a representative of Employer) consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of the Order and this joinder.

I represent that I am duly authorized to execute this joinder on behalf of Employer.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____

Relationship to Employer: _____

18

**EXHIBIT A.2 TO ORDER GRANTING DEBTOR'S MOTION FOR BANKRUPTCY
RULE 2004 EXAMINATION OF ASBESTOS TRUSTS AND GOVERNING
CONFIDENTIALITY OF INFORMATION PROVIDED IN RESPONSE**

**Re:  *In re Bestwall LLC***
**Case No. 17-31795 (LTB)**
**United States Bankruptcy Court**
**for the Western District of North Carolina**

<u>***Instructions***</u>***:  This joinder must be executed by any individual required to execute a joinder in his or her individual capacity pursuant to paragraph 10(b) of the above-referenced Order.***

# A C K N O W L E D G E M E N T

I may be given access to certain confidential and protected information in connection with the above-referenced *Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response* (the "**Order**"), entered by the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**") in the above-referenced chapter 11 case.

I have read the Order. Capitalized terms used in this joinder but not otherwise defined herein shall have the meanings ascribed to them in the Order. I understand the conditions and obligations of confidentiality, and use restrictions, that the Order makes applicable to the Confidential Trust Data and hereby accept and agree to be bound by, and to abide by, those conditions, obligations, and restrictions.

I will not disclose any Confidential Trust Data to any person not authorized by the Order, or further order of the Bankruptcy Court, to receive such information. I will not use any Confidential Trust Data except in connection with a Permitted Purpose (as defined in the Order).

Pursuant to paragraph 12 of the Order, I will destroy any Confidential Trust Data within 90 days after the effective date of a confirmed plan for the Debtor or the entry of a final order confirming such a plan, whichever is later, and will promptly certify such destruction in writing to counsel of record for DCPF and the Manville Trust.

I consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any action to interpret, apply, and enforce the terms of this Order and this joinder.

By: _____

Print Name: _____

Title: _____

Employer: _____

Address: _____

_____

Dated: _____