**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

**DEBTOR'S MOTION TO OVERRULE OBJECTION BY**
**SIMON GREENSTONE PANATIER, PC TO PIQ ORDER**

Debtor Bestwall LLC ("**Bestwall**" or the "**Debtor**") brings this motion (the "**Motion**") to overrule the objection (the "**Simon Greenstone Objection**") to the Court's *Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants and Governing the Confidentiality of Responses* (Dkt. 1670) (the "**PIQ Order**") served on the Debtor by Simon Greenstone Panatier, PC ("**Simon Greenstone**").[2]

In the Simon Greenstone Objection, Simon Greenstone asserts that the PIQ Order is a "nullity," based on a series of arguments identical to those already raised by the Official Committee of Asbestos Personal Injury Claimants (the "**ACC**") and numerous claimant law firms in the extensive proceedings leading to the PIQ Order. The Simon Greenstone Objection (a copy of which is attached as **Exhibit A** hereto) represents that the Simon Greenstone Claimants will not respond to the Questionnaire unless the Debtor issues a subpoena and seeks to enforce it in the United States District Court for the Northern District of Texas (where Simon Greenstone's principal office is located, and which Simon Greenstone describes as "the appropriate court").

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2] The Pending Mesothelioma Claimants (as defined in the PIQ Order) who are represented by Simon Greenstone are referred to herein as the "**Simon Greenstone Claimants**."

Simon Greenstone's contention that its Pending Mesothelioma Claimant clients do not have to respond to the Questionnaire is incorrect. The PIQ Order binds the Simon Greenstone Claimants, who received notice of the PIQ Motion and were given an opportunity to be heard with respect to the PIQ Motion. Simon Greenstone's apparent rejection of the PIQ Order, including its insistence on (a) the issuance of subpoenas (notwithstanding this Court's ruling that no subpoena is necessary) and (b) the commencement by the Debtor of litigation in Texas, should not be permitted. If other law firms serve similar objections taking fundamentally the same position (or, even worse, file motions collaterally attacking the PIQ Order in other districts where Pending Mesothelioma Claimants or their law firms may be located), the Questionnaire process will be substantially delayed and potentially completely undermined.

Accordingly, the Debtor respectfully requests that the Court enter an order (substantially in the form attached as **Exhibit B**) overruling the Simon Greenstone Objection and confirming that the Simon Greenstone Claimants (i) received due process in connection with the PIQ Order and (ii) are bound by the PIQ Order.

### Relevant Background

1.      The Debtor filed its *Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1236) (the "**PIQ Motion**") on July 30, 2020. The PIQ Motion sought discovery of basic information from Pending Mesothelioma Claimants (including information about their mesothelioma diagnoses, their exposures to asbestos, their alleged damages, and their claims against other parties) through the form of a questionnaire (the "**Questionnaire**"). "Pending Mesothelioma Claimants" were defined in the PIQ Motion as "every person who alleges a claim against Bestwall based on a diagnosis of mesothelioma on or before May 1, 2020 allegedly

caused by asbestos-containing products for which Bestwall is (or previously Old GP was) responsible." PIQ Motion ¶ 2. The PIQ Motion clearly set forth that the proposed Questionnaire would be served on counsel for those claimants. Id.; see also PIQ Motion, Ex. B ¶ 5(a) (proposed order describing form of service).

2.      The Debtor (through the claims agent) provided notice of the PIQ Motion to Pending Mesothelioma Claimants by first class U.S. mail on law firms representing known Pending Mesothelioma Claimants (as well as by electronic mail to some law firms). Affidavit of Service (Dkt. 1251). This mode of service complied with the Court's *Order (I) Authorizing the Debtor to File a List of the Top Law Firms With Asbestos Cases Against the Debtor In Lieu of the List of 20 Largest Unsecured Creditors; (II) Approving Certain Notice Procedures for Asbestos Claimants; and (III) Approving the Form and Manner of Notice of Commencement of This Case* (Dkt. 67) (the "**Notice Order**"), which provides that the "Debtor is authorized to serve all notices, mailings, filed documents and other communications relating to the above-captioned chapter 11 case on the Asbestos Claimants in care of their counsel . . . at such counsel's address, including e-mail address." Id. ¶ 4.[3]

3.      In particular, the Debtor (through the claims agent) served Simon Greenstone by electronic mail to its named partner as well as by first class U.S. mail at its California address. Dkt. 1251, Ex. 1 at 5, Ex. 3 at 21. The Simon Greenstone Claimants received notice of several other pleadings relating to the PIQ Motion, by the same method. Dkt. 1362, Ex. 3 at 4, Ex. 4 at 21 (Debtor's reply in support of PIQ Motion); Dkt. 1572, Ex. 1 at 5, Ex. 3 at 22 (Debtor's supplemental reply in support of PIQ Motion); Dkt. 1630, Ex. 1 at 5, Ex. 2 at 22 (Debtor's

---

[3] Simon Greenstone was served with notice of both the Notice Order and the motion seeking entry of the Notice Order. Dkt. 52, Ex. 1 at 1, Ex. 2 at 1; Dkt. 105, Ex. 1 at 2, Ex. 2 at 1.

supplemental brief on discovery and limiting motions). Simon Greenstone has not alleged that it

did not receive any of these notices.

4.      Twenty-five law firms representing Pending Mesothelioma Claimants appeared

and objected to the PIQ Motion (the "**Objecting Law Firms**"). *Buck Law Firm's Clients'*

*Joinder to Objection Filed by the Official Committee of Asbestos Claimants to Debtor's Motion*

*for Order Pursuant to Rule 2004 Directing Submission of Personal Injury Questionnaires by*

*Pending Mesothelioma Claimants* (Dkt. 1329); *Joinder to Objection Filed by the Official*

*Committee of Asbestos Claimants to Debtor's Motion for Order Pursuant to Bankruptcy Rule*

*2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma*

*Claimants* (Dkt. 1333). Simon Greenstone did not appear or object to the PIQ Motion on behalf

of the Simon Greenstone Claimants.

5.      The PIQ Motion was the subject of extensive briefing, in multiple rounds over

almost six months, in which the Objecting Law Firms actively participated. See PIQ Order at 1

n.3. The ACC and the FCR also took document and deposition discovery with respect to the PIQ

Motion. The Court then heard oral argument on the PIQ Motion on January 21, 2021.

6.      On March 4, 2021, the Court granted the PIQ Motion. The Court entered its PIQ

Order on March 23, 2021.[4] The PIQ Order requires Pending Mesothelioma Claimants to

"complete and return the Questionnaire" no later than July 26, 2021. Id. ¶¶ 4-5.

7.      The PIQ Order further provides that "[t]his Court shall retain exclusive

jurisdiction to interpret, apply, and enforce this Order to the full extent permitted by law." Id. ¶

---

[4] Based on a modification to the PIQ Motion requested by the ACC and accepted by the Debtor at the January 21,
2021 hearing, the definition of "Pending Mesothelioma Claimants" in the PIQ Order is narrower than the definition
contained in the PIQ Motion, and extends only to "Every person who alleges a claim against Bestwall based on a
diagnosis of mesothelioma on or before May 1, 2020 that arose, in whole or in part, from alleged exposure to joint
compound products that (a) contained asbestos either as a constituent ingredient or an alleged contaminant and (b)
were manufactured and sold by the Debtor or its predecessors (including the former Georgia-Pacific LLC ("**Old
GP**")) on or before December 31, 1977." PIQ Order ¶ 4. Thus, the PIQ Motion actually provided notice to a broader
set of Pending Mesothelioma Claimants than those ultimately affected by the PIQ Order entered by the Court.

18. It requires "[a]ny person who seeks relief from any provision of this Order" to "do so by motion in this Court on notice to the Parties and the Pending Mesothelioma Claimants potentially affected by the relief sought," and provides that "[t]he movant shall bear the burden of showing good cause for the requested relief." Id. ¶ 17.

8.      On March 26, 2021, as required by the PIQ Order, the claims agent served the Questionnaire and PIQ Order by first class U.S. mail on more than 800 law firms that either represent known potential Pending Mesothelioma Claimants (as defined in the PIQ Order) or sued Old GP or Bestwall on an asbestos claim in the past. See Dkt. 1678.

9.      Simon Greenstone was one of the firms served with the Questionnaire and PIQ Order. Id., Ex. 1 at 10. Also as required by the PIQ Order, Simon Greenstone received a list of the 29 potential Pending Mesothelioma Claimants represented by Simon Greenstone that are known to the Debtor. Id., Ex. 2.

10.     On April 6, 2021, the ACC filed a notice of appeal with respect to the PIQ Order, filed a motion for leave to appeal with the District Court, and filed with this Court a motion for a stay of the PIQ Order pending appeal (Dkt. 1711, the "**Stay Motion**") (certain law firms and the FCR also appealed). The Court denied the Stay Motion after a hearing on April 22, 2021.

11.     On April 23, 2021, counsel for the Debtor received the Simon Greenstone Objection via email. The objection was signed by attorneys for Simon Greenstone Panatier, PC (Whitaker Chalk Swindle & Schwartz PLLC, "**Whitaker Chalk**") and attached a declaration from David Greenstone, a Simon Greenstone attorney. Whitaker Chalk has indicated to the Debtor that it does not represent the Simon Greenstone Claimants—only Simon Greenstone.

12.     The Simon Greenstone Objection raises numerous broad-based objections to the PIQ Order and claims that the order "is unauthorized under Rule 2004 and is a 'nullity.'" Simon

Greenstone Objection ¶ 3. The Objection makes numerous arguments against the PIQ Order that

the Court has already heard and rejected, including that:

a. The Debtor must serve subpoenas in order to obtain compliance with the

Questionnaire, id. at 1;

b. The Questionnaire "should be *modified* because it is enormously onerous, unduly

burdensome, and intrusive," id. at 2 (emphasis in original);

c. The Court does not have authority to issue the Questionnaire under Rule 2004,

including because "[o]nly parties to litigation are subject to the requirement to

answer interrogatories," id. ¶ 3;

d. The pending proceeding rule bars issuance of the Questionnaire under Rule 2004,

id. ¶ 4;

e. The method for serving the Questionnaire on Pending Mesothelioma Claimants is

improper, id. ¶ 5; and

f. The Questionnaire amounts to an injunction and does not meet the standards for

that relief, id. ¶ 6.

The Objection also claims the PIQ Order "operates to violate the attorney-client privilege and

work product doctrine as relates to communications between SGP and its clients," id. ¶ 7, but

does not explain how a Questionnaire seeking basic non-privileged information about the

Pending Mesothelioma Claimants' claims has this effect.

13.    Although the Simon Greenstone Objection is lodged on behalf of the Simon

Greenstone law firm, and not the Simon Greenstone Claimants, the unavoidable conclusion,

based on that objection, is that the Simon Greenstone Claimants will not respond to the

Questionnaire by the required deadline. Instead, the Simon Greenstone Objection states that the

Debtor must issue a subpoena and "efforts by Debtor to enforce the 2004 Order against SGP or its clients must proceed in the Northern District of Texas, Dallas Division, the place where the performance sought to be compelled 2004 Order [sic] would take place." Id. ¶ 9. Simon Greenstone appears to contemplate that in Texas, "SGP may have its 'day in court' to set out the bases on which it claims that the 2004 Order is invalid in whole or part." Id. at 1. See also id. ¶ 10 ("SGP believes it is not obliged to provide the 'discovery' sought in the Order until such time as the *appropriate court* may rule on any potential motion to compel or motion for protective order.") (emphasis in original). Until the Debtor takes that step, "SGP respectfully invokes such a right to postpone any compliance with the Order pending such a ruling." Id.

14.     The Debtor met and conferred with Whitaker Chalk and Charlotte counsel for the Simon Greenstone firm on April 28, 2021. When Debtor's counsel asked whether the Simon Greenstone Claimants would or would not comply with the PIQ Order, counsel for Simon Greenstone responded that no decision regarding compliance had yet been made. When Debtor's counsel asked when a decision on compliance or noncompliance would be made, counsel for Simon Greenstone responded that the timing of such decision was unknown.

## Argument

15.     The Court should overrule the Simon Greenstone Objection and confirm that the Simon Greenstone Claimants are bound by the Court's PIQ Order. Persons affected by court orders are bound so long as they received due process, and "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also State of Maryland v. Antonelli Creditors'

Liquidating Trust, 123 F.3d 777, 783 (4th Cir. 1997) ("The binding effect of bankruptcy orders

does not depend on whether the creditors receive notice *because of* a particular proof of claim

they filed, but on whether they receive notice reasonably calculated under all the circumstances,

to apprise them of the pendency of the action and afford them an opportunity to present their

objections") (quotation omitted, emphasis in original). The notice required by due process "must

be of such nature as reasonably to convey the required information . . . and it must afford a

reasonable time for those interested to make their appearance. . . . [I]f with due regard for the

practicalities and peculiarities of the case these conditions are reasonably met the constitutional

requirements are satisfied." Mullane, 339 U.S. at 314-15.

16.     This Court has both inherent and statutory authority to enforce its lawfully entered

orders. See In re Midstate Mills, Inc., 2015 WL 5475295, at *6 (Bankr. W.D.N.C. Sept. 15,

2015) ("[T]his court has the inherent authority to interpret and enforce its prior orders.") (citing

Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009)); In re Mead, 2012 WL 627699, at *5

(Bankr. E.D.N.C. Feb. 24, 2012) ("A bankruptcy court has not only the inherent authority to

enforce its orders, but also the statutory authority, under 11 U.S.C. § 105(a), to issue 'any order,

process, or judgment that is necessary or appropriate to carry out the provisions' of the

Bankruptcy Code"). A court may impose a variety of sanctions up to and including contempt to

enforce its orders (though the Debtor does not seek any such sanctions at this time). In re Adams,

2010 WL 2721205, at *3-4 (Bankr. E.D.N.C. July 7, 2010) (contempt may be imposed); In re

Midstate Mills, Inc., 2015 WL 5475295, at *6 (injunction may be used to enforce court orders,

citing Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 638 (S.D.N.Y. 1997)).

17.     Court orders that bind a person must be challenged under the procedures

contained in the Federal Rules of Bankruptcy Procedure, not attacked collaterally or simply

8

disregarded. See Travelers, 557 U.S. at 152 (holding that even lack of subject matter jurisdiction must ordinarily be challenged on direct review, not collaterally after the time for challenge has passed, and observing that "[i]t is just as important that there should be a place to end as that there should be a place to begin litigation.") (citation omitted).

18.     Here, the Simon Greenstone Claimants received due process under the Mullane standard. They received notice of the PIQ Motion; they were given an opportunity to be heard. Complying with the Court's notice procedures, the Debtor served the PIQ Motion on Simon Greenstone, as counsel to the Simon Greenstone Claimants. The PIQ Motion stated that the Debtor sought Questionnaires from Pending Mesothelioma Claimants, clearly defined who those claimants are, and attached a detailed proposed order and form of Questionnaire, which included the proposed provisions for serving the Questionnaire on law firms for Pending Mesothelioma Claimants. Then, Simon Greenstone was served with multiple subsequent pleadings relating to the PIQ Motion. Simon Greenstone, on behalf of its clients, had notice and many months to appear and object, and its clients thus received due process. Indeed, demonstrating the fairness of the procedure followed in connection with the PIQ Order, twenty-five law firms did appear on behalf of the claimants they represent and raised the same objections Simon Greenstone now raises. The ACC, which represents the interests of all current asbestos claimants, also raised these objections. The Court overruled these objections in the PIQ Order.

19.     The Simon Greenstone Objection claims, without authority, that the Simon Greenstone Claimants did not receive due process because "SGP has not appeared in the Debtor's Chapter 11 case" and has not "been active in any way," the PIQ Motion "was not addressed directly to SGP" "[n]or did the Debtor confer with SGP before filing it," and "the 2004 Order came as a complete surprise, a bolt from the blue." Simon Greenstone Objection ¶ 1.

9

None of these are requirements of due process: rather, the Debtor was required to give notice

"reasonably calculated" to apprise the Simon Greenstone Claimants of the PIQ Motion and the

relief sought, to give the Simon Greenstone Claimants the opportunity to be heard.

20.     Simon Greenstone does not dispute that the Debtor emailed and mailed notice of

the PIQ Motion to Simon Greenstone, and thus provided the notice to the Simon Greenstone

Claimants required by this Court's Notice Order. Nor does Simon Greenstone apparently dispute

that numerous subsequent pleadings relating to the PIQ Motion were likewise mailed to Simon

Greenstone, providing further notice of the PIQ Motion. Due process did not require the Debtor

to meet and confer with each of the over 800 law firms before filing the PIQ Motion, nor did it

require including over 800 law firms by name in the caption of the PIQ Motion. To the contrary,

any law firm that received the PIQ Motion would have immediately seen that it pertained to

Pending Mesothelioma Claimants and that the PIQ Motion proposed serving the Questionnaire

on attorneys for Pending Mesothelioma Claimants. If any law firm or its clients objected to that

relief, it was incumbent upon the firm to appear and object. It is too late to raise objections to the

relief ordered in the PIQ Order now, and Pending Mesothelioma Claimants, including the Simon

Greenstone Claimants, are bound by the PIQ Order.

21.     As provided by the PIQ Order (which binds the Simon Greenstone Claimants),

any relief from the provisions of the PIQ Order must be sought by motion in this Court and must

demonstrate good cause. PIQ Order ¶ 17. Simon Greenstone has not filed such a motion, and in

any event cannot demonstrate good cause because its arguments are the same ones this Court

already considered and rejected after extensive litigation. Simon Greenstone has no right to

demand that the Debtor seek enforcement of the PIQ Order in the Northern District of Texas—it

is *this* Court that entered the PIQ Order and that retains "exclusive jurisdiction to interpret, apply, and enforce [the PIQ] Order to the full extent permitted by law." <u>Id.</u> ¶ 18.

22.     The Debtor seeks an order overruling the Simon Greenstone Objection, and asks that the Court expressly reject the argument that the Simon Greenstone Claimants are not bound by the PIQ Order or did not receive due process in the litigation that led to the PIQ Order.

23.     The Debtor believes that the entry of an order overruling the Simon Greenstone Objection will promote the orderly progress of the Questionnaire process under the PIQ Order and discourage claimants or their counsel from ignoring the requirements of that order. This is essential to the Debtor's ability to meet its obligations under the *Case Management Order for Estimation of the Debtor's Liability for Mesothelioma Claims* (Dkt. 1685), including the obligation to serve expert reports no later than November 24, 2021.

24.     In contrast, Simon Greenstone's proposed conditions for PIQ Order compliance would require the Debtor to enforce subpoenas in scores of jurisdictions across the United States where Pending Mesothelioma Claimants or their counsel may be located. These conditions have already been rejected by this Court. <u>See</u> 3/4/21 Tr. at 9-10 (holding that requirement to subpoena Pending Mesothelioma Claimants "is neither practical nor feasible," "would likely just create confusion and delay," is not supported by precedent, and is not required). Moreover, these conditions would disserve the purpose of estimation, would delay the administration of this case, and would disrupt the schedule leading to the estimation hearing in May 2022.

25.     The Debtor thus respectfully requests that the Court overrule the Simon Greenstone Objection and confirm that the Simon Greenstone Claimants received due process and, accordingly, are bound by and obligated to comply with the PIQ Order.

**Notice**

26.     Consistent with the Order Establishing Certain Notice, Case Management and

Administrative Procedures (Dkt. 65) (the "**Case Management Order**"), notice of this Motion

has been provided to: (a) the Office of the United States Bankruptcy Administrator for the

Western District of North Carolina; (b) counsel to the ACC; (c) counsel to the FCR; (d) counsel

to New GP; (e) Simon Greenstone (for itself and as counsel to the Simon Greenstone Claimants)

and counsel for Simon Greenstone; and (f) the other parties on the Service List established by the

Case Management Order. Bestwall submits that, in light of the nature of the relief requested, no

other or further notice need be provided.

**No Prior Request**

27.     No prior request for the relief sought herein has been made to this Court or any

other court.

Dated: April 28, 2021          Respectfully submitted,
      Charlotte, North Carolina

                                   /s/  Garland S. Cassada
                                   Garland S. Cassada (NC Bar No. 12352)
                                   Richard C. Worf, Jr. (NC Bar No. 37143)
                                   Stuart L. Pratt (NC Bar No. 43139)
                                   ROBINSON, BRADSHAW & HINSON, P.A.
                                   101 North Tryon Street, Suite 1900
                                   Charlotte, North Carolina  28246
                                   Telephone:  (704) 377-2536
                                   Facsimile:  (704) 378-4000
                                   E-mail:      gcassada@robinsonbradshaw.com
                                                             rworf@robinsonbradshaw.com
                                                             spratt@robinsonbradshaw.com

                                   Gregory M. Gordon (TX Bar No. 08435300)
                                   JONES DAY
                                   2727 North Harwood Street, Suite 500
                                   Dallas, Texas  75201
                                   Telephone:  (214) 220-3939
                                   Facsimile:  (214) 969-5100
                                   E-mail:      gmgordon@jonesday.com
                                   (Admitted *pro hac vice*)

Jeffrey B. Ellman (GA Bar No. 141828)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia  30309
Telephone:  (404) 581-3939
Facsimile:  (404) 581-8330
E-mail:      jbellman@jonesday.com
(Admitted *pro hac vice*)

ATTORNEYS FOR DEBTOR AND DEBTOR
IN POSSESSION

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BESTWALL, LLC, | Case No. 17-31795 (LTB) |
| Debtor. | |

**OBJECTION OF SIMON GREENSTONE PANATIER, PC TO**
**ORDER PURSUANT TO BANKRUPTCY RULE 2004 DIRECTING SUBMISSION OF**
**PERSONAL INJURY QUESTIONNAIRES BY PENDING MESOTHELIOMA**
**CLAIMANTS, FILED ON MARCH 23, 2021 (DOC 1670)**

COMES NOW SIMON GREENSTONE PANATIER, PC (SGP), a non-party to these proceedings and a law firm headquartered in Dallas, Texas, and **OBJECTS** to the Doc. 1670 Order, above described in this case (the "2004 Order"). The basis of SGP proceeding at *this* juncture by way of an **objection** is that the Order says that it is issued pursuant to Federal Rule of Bankruptcy Procedure 2004. Rule 2004(c) on its face states that to compel compliance with a Rule 2004 Order, service under Fed. R. Bankr. P. 9016 is required. Federal Rule of Bankruptcy Procedure 9016 in turn invokes Federal Rule of Civil Procedure 45, the federal subpoena rule. In other words, *to compel compliance with a Rule 2004 order requires the service of a subpoena on the person who is being compelled to appear for examination or produce documents.*[1] Rule 45(d)(2)(B) specifically allows any person who is served with a subpoena (the *required procedure*)

---

[1] Insofar as the Order requires something *other* than appearance or production, Rule 2004 does not provide for any such relief, as will be argued hereinafter. It is logically problematic to suppose that a subpoena is required to compel compliance with what Rule 2004 *does* allow for, but nonetheless if the Order requires something that Rule 2004 does *not* allow for, then no subpoena is required. If some relief that Rule 2004 does not provide for is being ordered, then it must have some other basis besides Rule 2004 to require it to be done. Yet no such alternative authority is cited. Consequently, a subpoena issued pursuant to Rule 45 is necessary to compel SGP to submit to the "examination" which the Questionnaire requires.

1

to, within not later than 14 days of such service, serve an *objection* to the subpoena, in which event the objecting party need not comply with the subpoena pending a court ruling on a motion to compel compliance. Debtor has not yet served any subpoena on SGP. Thus, SGP is objecting not later than 14 days from such (as yet nonexistent) service.[2]   Therefore, it is SGP's reasonable position, relying on Rule 2004, which is stated to be the predicate of the 2004 Order, that it need only at this juncture *serve this Objection* on the Debtor. Whereupon, Debtor may then seek an order requiring compliance with the 2004 Order, at which time SGP may have its "day in court" to set out the bases on which it claims that the 2004 Order is invalid in whole or part. SGP believes that the 2004 Order vastly exceeds the permitted scope of Bankruptcy Rule 2004. Furthermore, the Questionnaire that SGP is directed to answer should be *modified* because it is enormously onerous, unduly burdensome, and intrusive. Consequently, SGP hereby *serves* this Objection on the Debtor, with the grounds of the Objection being as follows:

1.       The Motion for Rule 2004 Examination (Docket No. 1236) raises substantial due process concerns. SGP has not appeared in the Debtor's Chapter 11 case. Nor has it been active in any way. The Motion for Rule 2004 Examination (Docket No. 1236) was not addressed directly to SGP. Nor did the Debtor confer with SGP before filing it. Nothing in the Motion directed SGP or similarly situated law firms to file a response. To put it mildly, the 2004 Order came as a

---

[2] Nonetheless, even assuming that "receipt in the mail" of a Bankruptcy Rule 2004 order could constitute adequate "service" of the Order in lieu of a subpoena so as to start the objection clock running (which is denied), SGP hereby serves this Objection on counsel for Debtor on what it believes is 14 days from such "service." Specifically, the first notice to an SGP attorney that a "package" which contained the Order *from counsel for the Debtor or a representative of Debtor*, **directed specifically to SGP**, was received by SGP, *by mail*, was on **April 8th, 2021**, at **6:57 p.m.** (*i.e.*, after business hours) (such notice being provided to David Greenstone via email from Pam Carr of SGP's bankruptcy department). **The cover letter in the package with the Order was** *undated*, and SGP does not know when it was mailed. *See* Verification Declaration of David Greenstone at the close hereof. Under Rule 6(d), Fed. R. Civ. P., "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail)..., 3 days are added after the period would otherwise expire under Rule 6(a)." Without evidence of when the package was mailed, this Objection is being served on the 14th day after the first day following the close of business receipt on April 8th (i.e., April 9th), that 14th day being this date of April 23rd, 2021. *Regardless*, however, **no subpoena has been served**, so the 14 day deadline period has yet to start, rendering this Objection timely under Rule 45(d)(2)(B), Fed. R. Civ. P. (indirectly incorporated into Rule 2004(c), Fed. R. Bankr. P.).

complete surprise, a bolt from the blue.  SGP recognizes that a Rule 2004 order may issue *ex parte*.

*In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).  However, the target of an *ex parte* order

objects, the movant (here Debtor) as the examiner, bears the burden of proving that good cause

exists for taking the requested discovery.  *Id*.

2.      Since SGP, a nonparty to the bankruptcy proceeding, was not afforded a reasonable

opportunity to state grounds upon which it believed the 2004 Order should not have been entered

against it, SGP should be allowed to state all such grounds at this juncture without any presumption

of the efficacy of the 2004 Order, insofar as it relates to SGP, irrespective of whatever arguments

may have, or not have, been raised by others at any hearing in which the relief was initially

requested.  The right to due process is "party specific."

3.      First, the 2004 Order exceeds the permissible scope of Bankruptcy Rule 2004.  That

Rule authorizes the examination of witnesses and the production of existing documents.

Bankruptcy Rule 2004 does not authorize the service of interrogatories.  Nor may it require the

creation of documents that do not already exist, which the Questionnaire plainly does.  *See* Fed.

R. Bankr P. 2004(a) and (c).  SGP and its clients[3] cannot be compelled under Rule 2004 to do

things that Rule 2004 cannot require.  Only parties to litigation are subject to the requirement to

answer interrogatories.  "Any interrogatories or requests for production of documents served on

non-parties are a nullity.  Discovery of non-parties must be conducted by subpoena pursuant to

Fed. R. Civ. P. 45, not the rules governing discovery of parties."  *Lehman v. Kornblau*, 206 F.R.D.

345, 346 (E.D.N.Y. 2001).  "Rule 45 appears to contemplate that a non-party may be required to

---

[3] "A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Rule 45(d)(3) if he has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 U.S. Dist. LEXIS 56496, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008)." *Edgefield Holdings v. Gilbert*, No. 3:17-mc-74-N-BN, 2018 WL 1138516, 2018 U.S. Dist. LEXIS 34239, *30-31 (N.D. Tex. Mar. 2, 2018).

produce records that already exist and are under the non-party's control, but does not contemplate that a non-party will be forced to create documents that do not exist." *Insituform Techs., Inc. v. Cat Contr., Inc.*, 168 F.R.D. 630, 633 (N.D. Ill. 1996). *Accord*, *Taylor v. Kilmer*, No. 18 CV 7403, 2020 WL 606781, 2020 U.S. Dist. LEXIS 21159, *7-8 (N.D. Ill. Feb. 7, 2020); *Crawford v. BioLife Plasma Servs. LP*, No. 2:10 cv 24, 2011 WL 2183874, 2011 U.S. Dist. LEXIS 60690, *12-13 (N.D. Ind. June 3, 2011). Rule 2004 reads the same way:

> **Compelling <u>attendance and production of documents</u> or electronically stored information**. The <u>attendance</u> of an entity for examination and for the <u>production of documents</u> or electronically stored information, whether the examination is to be conducted within or without the district in which the case is pending, <u>may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial</u>.

Fed. R. Bankr. P. 2004(c) (emphasis added). Consequently, the 2004 Order is unauthorized under Rule 2004 and is a "nullity." *Lehman*, *supra*.

4. Second, Rule 2004 may not be used to obtain discovery in an existing contested matter under Fed. R. Bankr. P. 9014. "Estimation of the aggregate present value of pending and projected future asbestos personal injury and wrongful death claims" is a Bankruptcy Rule 9014 contested matter. *In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 135-36 (D. Del. 2005). At this point, discovery regarding the estimation of claims must proceed under Bankruptcy Rule 9014 and the Federal Rules of Civil Procedure. Discovery under Bankruptcy Rule 2004 was procedurally improper. *In re Braxton*, 516 B.R. 787, 795 (Bankr. E.D.N.C. 2014). *Accord*, *In re Dastejerdi*, No. 01-11725, 2001 WL 116178, *6 (Bankr. E.D. Va. Sept. 21, 2001); *In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. Md. 1996); *Official Comment*, Fed. R. Bankr. P. 2004; 8 Collier on Bankruptcy ¶ 2004.03 at 2004-06 (15th ed.) ("If a contested matter or adversary proceeding is pending, Rule 2004 should not be used, but rather, the various discovery provisions of the Federal Rules of Civil Procedure should apply.") Under the Federal Rules, no interrogatories (which the

Questionnaires, requiring answers under penalty of perjury to *over 500 inquiries*, certainly constitute— and *far* in excess of the 30 questions allowed, even were same permitted), nor the creation of new documents (which the Questionnaires alternatively are) can be required of nonparties, *supra*.

5.      Third, the mechanism required under the 2004 Order is *highly unusual*.  In essence it requires law firms such as SGP to act as involuntary "agents for service of process" and to "oversee" the compliance with the Order by completion of the Questionnaires by "clients" of the law firms who have *not* appeared in the bankruptcy proceeding through said counsel.  The provision for service on an attorney under Rule 5(b)(1), Fed. R. Civ. P. (applied under Fed. R. Bankr. P. 7005), only applies to a "party" represented by said attorney, and the putative "clients" of SGP are not "parties" to this bankruptcy proceeding or any contested matter.  They have not been served with summonses under Rule 4, Fed. R. Civ. P., or Fed. R. Bankr. P. 7004, nor have they "appeared" in the case through said counsel.  Therefore, this type of "service" of the 2004 Order on counsel for non-served and non-appearing nonparties to this case is unauthorized and cannot properly require these "clients" to comply with the Order.  Nor can the Rule 2004 Order require counsel such as SGP to respond for their "clients" in a "supervisory" capacity.  There is no lawful authority for such compulsion, and none is cited in Rule 2004 or the 2004 Order.

6.      Fourth, the 2004 Order is, in substance, a *mandatory preliminary injunction* under Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 65, which can issue "only on *notice* to the adverse *party*." Fed. R. Civ. P. 65(a)(1) (emphasis added).  The Order in this instance fails on *both* counts. It was entered without proper notice to either SGP or the "clients," and was entered against persons who are not parties to the proceeding.  *Cf.* the rule even as to *permanent* injunctions:

> Subsection (2)(A) codifies the longstanding "principle of general application in Anglo-American jurisprudence that **one is not bound by a judgment in personam**

> **in a litigation in which he is not designated as a party or to which he has not
> been made a party by service of process.'"** *Taylor v. Sturgell*, 553 U.S. 880, 884,
> 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32,
> 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940)). Accordingly, Rule 65(d)(2) as a general
> matter **"limits . . . the extent to which an injunction may be enforced against
> nonparties,"** *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary
> Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837,
> 847 (7th Cir. 2010), and enacts the policy "of not having 'order(s) or injunction(s)
> so broad as to make punishable the conduct of persons who act independently and
> whose rights have not been adjudged according to law,'" *Golden State Bottling Co.
> v. N.L.R.B.*, 414 U.S. 168, 180, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973) (quoting
> *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945)).

*BMW of N. Am., LLC v. Issa*, No. 2:19-cv-220, 2020 WL 1325278, 2020 U.S. Dist. LEXIS 49004,

*11-12 (D. Utah Mar. 20, 2020) (emphasis added).  Thus, the 2004 Order violates the constitutional

due process rights of SGP and its "clients" to be notified of a threatened mandatory injunction in

time to be heard in opposition.

      7.     Fifth, the 2004 Order operates to violate the attorney-client privilege and work

product doctrine as relates to communications between SGP and its clients, and also relating to

any determination of the obligations and potential liabilities that SGP would have to assess

(including any assessment of the value of any claims or how that was estimated), in seeking to

respond to and "manage" the responses of the clients to the Order.  *See*:

> Rule 2004 orders do not abrogate the attorney-client privilege, and, if applicable,
> the privilege will protect a party from producing otherwise qualifying documents,
> subject to proper exercise by the client and lack of waiver.

*In re Yahweh Ctr., Inc.*, No. 16-04306-5-JNC, 2017 WL 327473, 2017 Bankr. LEXIS 193, *12-

13 (Bankr. E.D.N.C. Jan. 23, 2017) (Callaway, J.).

      8.     Sixth, the Questionnaire which the 2004 Order requires SGP and/or its clients to

complete is extremely invasive and highly unduly burdensome.  Assuming that SGP is supposed

to assist its clients in responding to the Questionnaires (which it would be obliged to do in

fulfillment of its responsibilities to its clients), this would require at least on the order of 290

manhours (a minimum of 10 hours per Questionnaire per 29 clients) to complete the forms, as a

very conservative estimate.  At a "blended" reasonable hourly rate of counsel and paralegal time

which would be involved of $350.00/hour, this would amount to a minimum of **$101,500.00** worth

of SGP time to comply with the Order.  This does not include additional time on the part of the

clients themselves to help with answering the Questionnaires..  See the verification hereto.  *Cf.*:

> [E]ven if sufficiently related to the debtor or its bankruptcy case, where a
> voluminous document search and production request is required for compliance, a
> balancing analysis of the cost and disruptive effect would be in order, as "Rule 2004
> may not be used as a device to launch into a wholesale investigation of a non-
> debtor's private business affairs." *In re Wilcher*, 56 B.R. at 434; *see also In re
> Whitley*, No. 10-10426C-7G, 2011 Bankr. LEXIS 4793, 2011 WL 6202895, at *2
> (Bankr. M.D.N.C. Dec. 13, 2011). Here, the court will analyze the document
> requests and objections with broad scope and deference paid to the Debtor but with
> the protections for the Respondents offered by the noted exceptions.

*In re Yahweh Ctr.*, 2017 Bankr. LEXIS 193, *5.  *See also Perez v. Boecken*, SA-19-CV-00375,

2019 WL 5080392, 2019 U.S. Dist. LEXIS 176150, *4-5 (W.D. Tex. Oct. 10, 2019), *aff'd*, 2020

WL 96907, 2020 U.S. Dist. LEXIS 2589 (Jan. 8, 2020).  In essence, the 2004 Order seeks to

compel SGP to gather, compile and organize for Debtor information the Debtor might use to

defend against the potential claims of SGP's clients.  The 2004 Order would make SGP into an

involuntary agent for Debtor's discovery efforts, against the interests of its clients.  This is

especially problematic and unfair for clients of SGP whose claims against Debtor are eventually

contested in the tort system.

      9.     Finally, SGP submits that efforts by Debtor to enforce the 2004 Order against SGP

or its clients must proceed in the Northern District of Texas, Dallas Division, the place where the

performance sought to be compelled 2004 Order would take place.  Specifically, SGP's main

office is in Dallas.  The activities that the 2004 Order directs to be performed, whether contacting

clients, reviewing files, completing Questionnaires, or mailing them would all take place in Dallas,

Texas.  None of those activities would take place in North Carolina.  *See*, as supporting such exclusive Texas jurisdiction (except insofar as the Texas court might elect to *transfer* the proceedings under Rule 45(f) in "exceptional circumstances"), *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 704-11 (N.D. Tex. 2017); *Schumacher v. Capital Advance Sols., LLC*, No. 4:18-cv-0436, 2021 WL 391416, 2021 U.S. Dist. LEXIS 21310, *3-4 (S.D. Tex. Feb. 4, 2021); *Smith W. Tex. Props., Ltd. v. Allied Prop. & Cas. Ins. Co.*, No. MO:18-CV-137-DC, 2020 U.S. Dist. LEXIS 204790, *6-7 (W.D. Tex. Aug. 7, 2020); *Philadelphia Indemnity Ins. Co. v. Odessa Family YMCA*, No. MO:19-CV-107-DC, 2020 WL 6484069, 2020 U.S. Dist. LEXIS 209805, *1-3 (W.D. Tex. June 26, 2020); *Windsor v. Olson*, No. 3:16-cv-934-L, 2019 WL 77228, 2019 U.S. Dist. LEXIS 168, *29-30 (N.D. Tex. Jan. 2, 2019).

10.    SGP notes that it is is serving this Objection prior to service of any subpoena to seek enforcement of the 2004 Order.  SGP believes it is not obliged to provide the "discovery" sought in the Order until such time as the *appropriate court* may rule on any potential motion to compel or motion for protective order.  *See* Rule 45(d)(2)(B), Fed. R. Civ. P. (invoked by **Fed. R. Bankr. P. 2004(c) via Fed. R. Bankr. P. 9016**).  Accordingly, SGP respectfully invokes such a right to postpone any compliance with the Order pending such a ruling.  *Cf. MetroPCS v. Thomas*, 327 F.R.D. 600, 608 (N.D. Tex. 2018).

**WHEREFORE**, SGP respectfully objects to the 2004 Order being enforced against it as legally infirm and unduly burdensome, as well as the other grounds set forth above, and respectfully invokes its right under Rule 45 not to comply therewith pending ruling on any motion to compel or motion for protective order by the appropriate Court.

Respectfully submitted,

/s/ Robert A. Simon
Robert A. Simon
Texas State Bar Number 18390000
rsimon@whitakerchalk.com
Direct Dial No. (817) 878-0543

Thomas F. Harkins, Jr.
Texas State Bar Number 09000990
tharkins@whitakerchalk.com
Direct Dial No. (817) 878-0574

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
817-878-0532 (office)
817-878-0501 (fax)

**ATTORNEYS FOR
SIMON GREENSTONE PANATIER, PC**

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 23rd day of April, 2021, I served a copy of this Objection on the following **by email delivery**:

Garland S. Cassada
David M. Schilli
Andrew W.J. Tarr
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
gcassada@robinsonbradshaw.com
dschilli@robinsonbradshaw.com
atarr@robinsonbradshaw.com

Gregory M. Gordon
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas 75201
gmgordon@jonesday.com

Jeffrey B. Ellman
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
jbellman@jonesday.com
bberens@jonesday.com

ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

Glenn C. Thompson
Kenneth B. Dantinne
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
gthompson@lawhssm.com
kdantinne@lawhssm.com

Judy D. Thompson
Linda W. Simpson
JD THOMPSON LAW
Post Office Box 33127
Charlotte, North Carolina 28233
jdt@jdthompsonlaw.com
lws@jdthompsonlaw.com

Natalie D. Ramsey
Davis Lee Wright
ROBINSON & COLE LLP
1000 North Market Street, Suite 1406
Wilmington, Delaware 19801
nramsey@rc.com
dwright@rc.com

COUNSEL FOR THE OFFICIAL COMMITTEE OF ABESTOS
CLAIMANTS OF BESTWALL LLC

/s/ Robert A. Simon
Robert A. Simon

## <u>VERIFICATION DECLARATION</u>

I, David Greenstone, hereby certify under penalty of perjury that I am a partner of SIMON GREENSTONE PANATIER, PC, I have read the foregoing Objection, and all statements of fact therein are within my personal knowledge and are true and correct; most particularly, the following:

The first notice to any attorney at SGP that a "package" which contained the Order and completed client list was received by SGP, by mail, was on April 8th, 2021, at 6:57 p.m. (i.e., after business hours) (such notice being provided to David Greenstone via email from Pam Carr of SGP's bankruptcy department). The cover letter in the package with the Order was undated, and SGP does not know when it was mailed. SGP has not been served with any subpoena from the Debtor or Court.

Assuming that SGP is supposed to assist its clients in responding to the Questionnaires (which it would be obliged to do in fulfillment of its responsibilities to its clients), this would require at least on the order of 290 manhours (a minimum of 10 hours per Questionnaire per 29 clients) to complete the forms, as a very conservative estimate. At a "blended" reasonable hourly rate of counsel and paralegal time which would be involved of $350.00/hour, this would amount to a minimum of $101,500.00 worth of SGP time to comply with the Order. This does not include additional time on the part of the clients themselves to help with answering the Questionnaires.

DATED this 23rd day of April, 2021.

_____
David Greenstone

519123

12

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 |
| Debtor. | |

**ORDER OVERRULING OBJECTION BY SIMON**
**GREENSTONE PANATIER, PC TO PIQ ORDER**

This matter came before the Court on the *Debtor's Motion to Overrule Objection by Simon Greenstone Panatier, PC to PIQ Order* (Dkt. _____) (the "**Motion**"). Based upon a review of the Motion and briefing, and after considering the arguments of counsel at the hearing before the Court on May 19, 2021, the Court hereby FINDS, ORDERS, ADJUDGES, AND DECREES that:

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157.

2. The Motion is GRANTED.

3. The Pending Mesothelioma Claimants (as defined by the Court's *Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury*

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

*Questionnaires by Pending Mesothelioma Claimants and Governing the Confidentiality of Responses* (Dkt. 1670) (the "**PIQ Order**")) represented by Simon Greenstone Panatier, PC ("**Simon Greenstone**")[2] received notice of the Debtor's *Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1236) (the "**PIQ Motion**") that was reasonably calculated, under all the circumstances, to apprise them of the PIQ Motion and afford them an opportunity to present their objections. The Simon Greenstone Claimants are thus bound by the PIQ Order and are required to comply with the requirements and deadlines contained therein.

4.       All objections raised by Simon Greenstone in its "Objection of Simon Greenstone Panatier, PC to Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires By Pending Mesothelioma Claimants, Filed on March 23, 2021 (Doc 1670)" served on the Debtor (and attached to the Motion as Exhibit A) are overruled.

This Order has been signed                           United States Bankruptcy Court
electronically. The judge's
signature and court's seal
appear at the top of the Order.

---

[2] The Pending Mesothelioma Claimants represented by Simon Greenstone are referred to herein as the "**Simon Greenstone Claimants.**"