

FILED & JUDGMENT ENTERED
Steven T. Salata

August 18 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

In re:                                  )
                                        )
**BESTWALL LLC,**[1]                    )    Chapter 11
                                        )    Case No. 17-31795
         Debtor.                        )
                                        )

**ORDER ON DEBTOR'S EMERGENCY MOTION TO ENFORCE**
**PIQ ORDER AND AUTOMATIC STAY AND ORDER TO SHOW CAUSE**

This matter came before the court on the *Debtor's Emergency Motion to Enforce PIQ Order and Automatic Stay* (Dkt. 1833) (the "**Motion**") and the court's *Order Granting Debtor's Emergency Motion to Enforce PIQ Order and Automatic Stay* (Dkt. 1856) (the "**Show Cause Order**," incorporated herein by reference). In the Show Cause Order, the court ordered certain claimants and law firms to appear and show cause why they should not be held in contempt for violating the court's *Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants and Governing the Confidentiality of*

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

*Responses* (Dkt. 1670) (the "**PIQ Order**") and sanctioned for violating the automatic stay and set a briefing schedule and hearing. Based upon a review of the Motion, the *Objection to Debtor's Emergency Motion to Enforce PIQ Order and Automatic Stay* (Dkt. 1845), the *Memorandum of Law in Support of Objection to Debtor's Emergency Motion to Enforce PIQ Order and Automatic Stay* (Dkt. 1861) (the "**Show Cause Response**"), the *Debtor's Reply in Support of Emergency Motion to Enforce PIQ Order and Automatic Stay, and in Support of Contempt Sanction* (Dkt. 1875) (the "**Reply**"), and the *Sur-reply to Debtor's Reply in Support of Emergency Motion to Enforce PIQ Order and Automatic Stay* (Dkt. 1876), and after considering the arguments of counsel at the hearings before the court on June 30 and July 22, 2021, the court hereby FINDS, ORDERS, ADJUDGES, AND DECREES that:

1. This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Adequate notice of the Motion, the June 30, 2021 hearing on the Motion, the Show Cause Order, and the July 22, 2021 hearing was given, and it appears that no other notice need be given.

2. The court has inherent and statutory authority to enforce its own orders. *See In re Midstate Mills, Inc.*, No. 13-50033, 2015 WL 5475295, at *6 (Bankr. W.D.N.C. Sept. 15, 2015)

(noting the court's inherent authority (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009))); *In re Mead*, No. 10-09630-8, 2012 WL 627699, at *5 (Bankr. E.D.N.C. Feb. 24, 2012) (noting inherent authority as well as statutory authority pursuant to 11 U.S.C. § 105).  Courts use civil contempt "to coerce obedience . . . or to compensate the complainant for losses sustained as a result of the contumacy," *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988), when a court "can point to an order . . . which 'set[s] forth in specific detail an unequivocal command' which a party has violated," *id.* (alteration in original) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986)).

    3.    The elements of civil contempt are:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004) (alteration in original) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).  "Intent is largely irrelevant to a finding of civil contempt," so "a finding of contempt may be appropriate even where the acts in violation of

the order were done innocently or inadvertently." *U.S. Commodity Futures Trading Comm'n v. Capitalstreet Fin., LLC*, No. 09cv387, 2010 WL 2131852, at *2 (W.D.N.C. May 25, 2010) (citing *Gen. Motors*, 61 F.3d at 258).

4. The court concludes that the Illinois Claimants[2] (other than Wilda Carden, as personal representative for the Estate of Harry Carden) and Maune, Raichle, Hartley, French & Mudd, LLC ("**Maune Raichle**," and together with the Illinois Claimants other than Ms. Carden, the "**Illinois Parties**") are in contempt of the court's PIQ Order.

5. With respect to the automatic stay, the court cannot conclude that the Illinois Claimants and Illinois Law Firms[3] violated the automatic stay by filing the lawsuit against the Debtor in the Southern District of Illinois (captioned *Blair v. Bestwall LLC*, No. 21-cv-00675) (the "**Illinois Lawsuit**"). It would take a very broad reading of 11 U.S.C. § 362(a) to conclude

---

[2] The Illinois Claimants are Patricia Blair, as personal representative for the Estate of Lee Blair; Violet Butler, as personal representative for the Estate of Ralph Butler; Betty Jean Camilleri, as personal representative for the Estate of Terrence Camilleri; Wilda Carden, as personal representative for the Estate of Harry Carden; Cheryl D. Wooter, as personal representative for the Estate of William Cutler; Sheryl Evans; Kimberly Plant, as special administrator of the Estate of Sheryl Evans; Maria Fons, as personal representative for the Estate of Miguel Fons; John Guzman, as personal representative of the Estate of Joe Guzman; Christopher Nelson, as personal representative for the Estate of Roger Nelson; and Melissa Taylor, as personal representative for the Estate of Donald Taylor.
   The Debtor withdrew the Motion with respect to Terri Martinek (as personal representative of the Estate of William Martinek), William Quigley (as personal representative for the Estate of Marie Quigley), and Judy Bogner (as personal representative for the Estate of Vernon Bogner). The Debtor also withdrew the Motion with respect to Simmons Hanly Conroy and Cooney & Conway.

[3] The Illinois Law Firms are Maune Raichle and The Gori Law Firm.

4

otherwise.  Therefore, there is no basis to sanction the Illinois Claimants and Illinois Law Firms for a violation of the automatic stay.

6.  The Illinois Claimants and Illinois Law Firms were properly served with the Motion and the Show Cause Order consistent with the *Order (I) Authorizing the Debtor to File a List of the Top Law Firms with Asbestos Cases against the Debtor in Lieu of the List of 20 Largest Unsecured Creditors; (II) Approving Certain Notice Procedures for Asbestos Claimants; and (III) Approving the Form and Manner of Notice of Commencement of This Case* (Dkt. 67) (the "**Asbestos Claimant Notice Order**") and the *Order Establishing Certain Notice, Case Management and Administrative Procedures* (Dkt. 65), neither of which have been objected to by the Illinois Claimants and Illinois Law Firms.

7.  The PIQ Order is a valid decree of which the Illinois Claimants and Illinois Law Firms had knowledge.  The Illinois Claimants and Illinois Law Firms were afforded due process, and they are bound by the PIQ Order.  They received notice of the *Debtor's Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* (Dkt. 1236) (the "**PIQ Motion**") consistent with the Asbestos Claimant Notice Order.  In fact, the Illinois Law Firms and all but two of the Illinois Claimants joined in the arguments made by the Official Committee of Asbestos Personal

5

Injury Claimants and the Future Claimants' Representative, and Mr. Raichle of Maune Raichle appeared personally before the court, in opposition to the PIQ Motion.  In addition, the same parties appealed to the district court and sought a stay pending appeal from this court.  Accordingly, it is not objectively reasonable for the Illinois Claimants and Illinois Law Firms to believe they are not bound by the PIQ Order.

    8.   The court had jurisdiction to enter the PIQ Order.  The Illinois Parties frame their concern about the court's decision not to require the issuance of a subpoena as jurisdictional, but that argument raises issues of procedure, not jurisdiction.  While the Illinois Parties may disagree with the conclusions the court reached in the PIQ Order, their disagreements do not invalidate the order.  Until it is reversed on appeal, the validity of the PIQ Order is presumed.

    9.   There is no dispute that the PIQ Order is in the Debtor's favor.  As the court previously suggested and now concludes, the Illinois Parties violated the terms of the PIQ Order by filing the Illinois Lawsuit.  Specifically, they violated the provision that requires any person who seeks relief from the PIQ Order to do so by motion in this court.  PIQ Order ¶ 17.

    10.   The court declines to conclude that The Gori Law Firm is in contempt of the PIQ Order without evidence that it did something more than submit a declaration attached to the complaint in the

6

Illinois Lawsuit.  Similarly, the court concludes that Ms. Carden (as personal representative for the Estate of Harry Carden) is not in contempt of the PIQ Order since she took a dismissal from the Illinois Lawsuit.

11.  The court concludes that the Debtor has been and continues to be harmed by the violation of the PIQ Order.  Counsel for the Illinois Parties is correct that the amount of harm is not yet known, but it is self-evident that the Debtor is incurring fees and expenses in prosecuting the Motion and defending the Illinois Lawsuit.

12.  In short, as the Debtor said in its Reply, the Illinois Parties are willfully flouting the plain terms of the PIQ Order and this court's authority.  Their Show Cause Response rests on the idea that they are the proper expositors of the law.  They have concluded that the court got the PIQ Order wrong and they are entitled to disregard it and challenge it in another jurisdiction. *Cf. Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").  That is the very definition of contempt.

13. The Illinois Parties repeat arguments previously considered and rejected by this court.  Clearly, the Illinois Parties disagree with the conclusions reached by the court, but

their remedy is an appeal to the district court and then the Fourth Circuit, not an end run around this court's jurisdiction through a lawsuit in the Southern District of Illinois.  The appellate courts in this circuit are the proper courts to grant the relief sought by the plaintiffs in the Illinois Lawsuit.

14. While *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), is distinguishable because it dealt with an injunction instead of a discovery dispute, the same principles apply.  In *Celotex*, the Supreme Court concluded that "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."  *Id.* at 313 (alteration in original) (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967)).  "If dissatisfied with the Bankruptcy Court's ultimate decision," the Court continued, "respondents can appeal 'to the district court for the judicial district in which the bankruptcy judge is serving,' and then to the Court of Appeals."  *Id*. (quoting 28 U.S.C. § 158).

15. Instead of challenging the order in the bankruptcy court, the respondents in *Celotex* chose to collaterally attack the bankruptcy court's injunction in federal court in Texas.  *Id.*  The Supreme Court concluded that the collateral attack "seriously undercut[] the orderly process of the law."  *Id.*

8

16. While the court tries to avoid hyperbole, given the Illinois Parties' disregard for this court's order and their decision to attack the PIQ Order in the Southern District of Illinois, this court is now in the same situation that confronted the bankruptcy court in *Celotex*. The court considers the contempt of the Illinois Parties to be a very serious matter. Failure to address their contempt would certainly affect the administration of this case and could affect the administration of bankruptcy cases more generally.

17. The court declines to order a daily fine against the Illinois Parties or to award compensatory damages at this time. Instead, the court will give the Illinois Parties an opportunity to purge their contempt by dismissing the Illinois Lawsuit.

18. The court will continue this matter for a compliance hearing on August 19, 2021 at 9:30 a.m. At that hearing, if the Illinois Parties have failed to purge their contempt, the court will likely impose a daily fine in an amount to be determined. Regardless of whether the Illinois Parties have purged their contempt by August 19, the court will then consider evidence of the fees and expenses incurred by the Debtor in defending the Illinois Lawsuit and prosecuting this contempt proceeding and decide whether to award compensatory damages. According to the Debtor, those fees and expenses total over $245,000 through July 15, and they will most likely increase substantially by August 19.

19. This court retains exclusive jurisdiction over this order and any and all matters arising from or relating to the implementation, interpretation, or enforcement of this order.

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order. | United States Bankruptcy Court |