**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

In re:

BESTWALL LLC,[1]

                    Debtor.

Chapter 11

Case No. 17-31795 (LTB)

**THE OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS' MOTION TO
ESTABLISH A DEADLINE BY WHICH THE DEBTOR MUST DISCLOSE
TORT PLAINTIFFS THAT WILL BE CHALLENGED AT ESTIMATION**

The Official Committee of Asbestos Claimants (the "Committee"), by and through the undersigned counsel, hereby moves (the "Motion") for an order compelling the above-captioned debtor ("Bestwall" or "Debtor") to identify by August 5, 2022 each Tort Plaintiff[2] it alleges committed evidence suppression or otherwise misled it and its predecessors in settlement. In support hereof, the Committee states as follows:

**PRELIMINARY STATEMENT**[3]

Throughout its bankruptcy, the Debtor has maintained careful control over the flow of information to the Committee, hampering the Committee's ability to obtain the information necessary to put on its estimation case and rebut the Debtor's allegations. One of the drums the Debtor has beat most diligently in support of its estimation case and in the related discovery proceedings thus far is its allegation that Tort Plaintiffs fraudulently concealed or otherwise

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.W., Atlanta, Georgia 30303.

[2] As defined herein.

[3] Capitalized terms used in the Preliminary Statement and not otherwise defined shall have the meanings ascribed to them *infra*.

manipulated evidence when settling with Georgia-Pacific prior to the 2017 corporate restructuring ("Old GP"), to the point that Bestwall does not trust its own settlement history.  Despite these inflammatory allegations, the Debtor has only stated it "identifies the [29] cases listed below as particular cases where, based on evidence Bestwall currently possesses, the Evidence Suppression Practice occurred and Bestwall settled the case in reliance on what the evidentiary record would be when the case was presented to a court or jury."[4]  The Debtor has never affirmatively identified the entire universe of Tort Plaintiffs.

This refusal makes it difficult, if not near impossible, for the Committee to properly prepare for estimation and to refute the Debtor's theories.  The Committee currently finds itself in the untenable position of scheduling and taking depositions and facing a rapidly approaching fact discovery deadline, all before it knows which Tort Plaintiffs are alleged to have committed fraud. Until the Debtor has affirmatively identified which Tort Plaintiffs it alleges misled Old GP, the Committee will have no chance to adequately prepare its case.  The Committee is entitled to this simple disclosure in a timely manner to allow it to properly gather discovery and build its case. The Committee requests that the Court impose a deadline of August 5, 2022, by which the Debtor must specifically identify each Tort Plaintiff that it alleges suppressed evidence in connection with a settlement with Old GP, and foreclose the Debtor from admitting evidence on any Tort Plaintiff not identified by August 5, 2022.

## **JURISDICTION**

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  For the purposes of a hearing on this Motion, venue in this Court is proper pursuant to 28 U.S.C.

---

[4] *The Official Committee of Asbestos Claimants' and the Future Claimants' Representative's Motion for Entry of an Order (I) Compelling the Debtor to Produce Complete Claim Files, Including Electronically Stored Information, or, in the Alternative, (II) Issuing an Adverse Inference Against the Debtor* (the "Motion to Compel"), at Ex. G (the "Debtor's Interrogatory Responses") p. 18 (June 10, 2022) [Dkt. No. 2600].

§§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

The legal authorities for the relief requested herein are sections 105 and 502(c) of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 7009 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9 of the Federal Rules of Civil

Procedure (the "Civil Rules").

## FACTUAL BACKGROUND[5]

2.      On June 19, 2019, the Debtor filed its *Motion for Estimation of Current and Future*

*Mesothelioma Claims* (the "Estimation Motion") (June 19, 2019) [Dkt. No. 875], asking the

Bankruptcy Court to order a "legal liability" estimation of the Debtor's pending and future

asbestos-related personal injury claims.  In the Estimation Motion, the Debtor alleged that its

settlement values were affected by evidence suppression or withholding by the personal injury

claimants in the underlying tort system.  *Id*. ¶ 40 (". . . the Debtor here believes its settlements

were infected by the withholding and manipulation of exposure evidence.").[6]

---

[5] An in-depth discussion of the Debtor's corporate restructuring is set forth in the *Motion of the Official Committee of Asbestos Personal Injury Claimants to (I) Dismiss the Debtor's Chapter 11 Case for Cause as a Bad Faith Filing Pursuant to 11 U.S.C. §1112(b), or Alternatively, (II) To Transfer Venue in the Interests of Justice and for the Convenience of the Parties Pursuant to 28 U.S.C. § 1412* [Dkt. No. 495]; background information on joint compound, chrysotile asbestos, and the conduct of Old GP in covering up the manufacture and sale of its dangerous products are set forth more fully in the Committee Brief.  *Informational Brief of the Official Committee of Asbestos Claimants of Bestwall LLC [with Previously Redacted Sections]* (the "Committee Informational Brief") at 10-67 (Sept. 4, 2020) [Dkt. No. 1318].

[6] The Debtor has alleged this since the day it filed the bankruptcy case.  *See Informational Brief of Bestwall LLC* (the "Debtor Informational Brief") at 28–34 (November 2, 2017) [Dkt. No. 12].  The Debtor also subsequently filed its *Motion for Order Pursuant to Bankruptcy Rule 2004 Directing Submission of Personal Injury Questionnaires by Pending Mesothelioma Claimants* ("PIQ Motion") (July 30, 2020) [Dkt. No. 1236] and its *Motion for Bankruptcy Rule 2004 Examination of Bankruptcy Trusts* ("Trust Discovery Motion") (July 30, 2020) [Dkt. No. 1237].  These motions, and the accompanying declaration of Charles E. Bates, Ph.D., asserted that the Debtor and Old GP paid inflated values in their settlements because they lacked adequate information about the plaintiffs—a position that the Debtor has continued to vigorously contend at every opportunity.  Since the start of the case, and in asking for an estimation hearing and the PIQ and trust discovery, the Debtor has squarely placed into question what information Old GP and the Debtor possessed from asbestos claimants, when it obtained that information, and whether it considered that information in settling claims.

3.      On January 19, 2021, the Court entered an order to conduct an estimation based in large part on "[t]he Bates Declaration, introduced by the Debtor, describ[ing] the information Dr. Bates needs for a variety of reasons, including for the Debtor to determine its legal liability, ***to assess whether the Debtor's prepetition settlements represent its liability and can be extrapolated to estimate the Debtor's liability for current and future asbestos claims*** . . . ." *Order Authorizing Estimation of Current and Future Mesothelioma Claims* (the "Estimation Order") at ¶10 (Jan. 19, 2021) [Dkt. No. 1577] (emphasis added).

4.      Old GP spent approximately $2.9 billion over the forty (40) years leading to the Petition Date defending more than 43,000 asbestos-related personal injury lawsuits (each a "Tort Plaintiff").[7]

5.      The Debtor thus far identified twenty-nine (29) Tort Plaintiffs in subpoenas addressed to certain plaintiff law firms.[8]  The Debtor has identified the same Tort Plaintiffs in discovery responses to the Committee.  While the Debtor has not identified the specific Tort Plaintiffs it will take into the estimation hearing, it is clear to the Committee that the Debtor intends to identify certain Tort Plaintiffs in the estimation hearing in a misguided effort to try to reduce its aggregate liability by challenging its own settlements with the very victims of its corporate malfeasance.

6.      The Debtor's expert disclosures also confirm that the Debtor will relitigate decades' worth of prior settlements, stating that it will present evidence about "[t]he extent to which past

---

[7] Debtor Informational Brief, p. 6.

[8] Though it has not yet specifically alleged misconduct by these Tort Plaintiffs or specific circumstances surrounding said misconduct, or definitively stated that it intends to rely on these Tort Plaintiffs at estimation, the Debtor has identified twenty-nine (29) Tort Plaintiffs in both the subpoenas it has served upon various plaintiff firms in connection with its estimation-related discovery and in response to interrogatories.  Debtor's Interrogatory Responses at pp. 18–23.

asbestos plaintiffs against Old GP and Bestwall failed to disclose evidence of exposures to asbestos, and the impact of any such practice on Old GP's and Bestwall's resolutions of asbestos cases." *Declaration of Natalie D. Ramsey, Esq. in Support of the Official Committee of Asbestos Claimants' Motion in Limine Regarding Expert Discovery*, Ex. 1 ("Debtor's Disclosure") at B.113 (Jul. 29, 2021) [Dkt. No. 1926-2].

## **ARGUMENT**

7.     From day one of the bankruptcy case, the Debtor has alleged fraud and misconduct by the Tort Plaintiffs in the underlying tort litigation.   When it requested and received the Estimation Order, the Debtor always intended to revisit its entire litigation history.   The Debtor has continually and consistently reiterated a refrain that the Tort Plaintiffs manipulated information, amounting to fraud against the Debtor and Old GP.  *See e.g.*, Nov. 7, 2017 Hr'g Tr. at 27:20–30:12 (G. Gordon) (Nov. 10, 2017) [Dkt. No. 74]; Sept. 19, 2019 Hr'g Tr. at 36:6–12 (G. Gordon) (Sept. 25, 2019) [Dkt. No. 1013]; Sept. 23, 2020 Hr'g Tr. at 60:7–61:1 (G. Gordon) (Oct. 5, 2020) [Dkt. No. 1419]; Sept. 25, 2020 Hr'g Tr. at 111:6–18 (G. Gordon) (Oct. 5, 2020) [Dkt. No. 1421]; Oct. 22, 2020 Hr'g Tr. at 43:10–13 (G. Cassada) (Oct. 26, 2020) [Dkt. No. 1435]; Jan. 21, 2021 Hr'g Tr. at 168:1–6 (G. Cassada) (Feb. 1, 2021) [Dkt. No.; Jan. 22, 2021 Hr'g Tr. at 404:9–405:13 (G. Gordon) (Feb. 1, 2021) [Dkt. No. 1618]; Mar. 17, 2022 Hr'g Tr. at 138:19–139:3 (R. Schneider) (Mar. 28, 2022) [Dkt. No. 2480].

8.     Despite these inflammatory allegations, the Debtor has failed to clearly identify which Tort Plaintiffs it intends to allege committed misconduct.   According to the Debtor's estimation expert, a 75% overlap exists between the personal injury claimants in the Garlock claims database and the Debtor's claims database.  *Notice of Filing (A) Declaration of Charles E. Bates, PHD and (2) Statement of Facts and Record Citations from the Garlock Chapter 11 Case,*

*Both Related to the Debtor's Motion for Estimation of Current and Future Mesothelioma Claims*, Ex. 1 ("Bates Estimation Declaration") at ¶ 24 (Jun. 15, 2020) [Dkt. No. 1191].  After four and half (4½) years, the Debtor has only identified twenty-nine (29) Tort Plaintiffs who may have engaged in evidence suppression, but it has not yet made any further identification of the Tort Plaintiffs whom it will specifically use in connection with estimation.[9]  *See* Debtor Informational Brief at 28-34; Trust Discovery Motion ¶¶ 23-34.  The Debtor clearly intends to bring more in support of its allegations.[10]

9.    From the files reviewed to date, the Committee disputes the Debtor's characterizations.  Notably, the Debtor has resisted discovery designed to learn what it knew about other exposures or sources of recovery while at the same time contending that it was misled.  With no limits set by the Debtor on which Tort Claimants will be accused of fraud, the Committee faces the herculean and nearly impossible task of gathering evidence and preparing cases related to **all** resolved Tort Claimants for the estimation hearing.[11]

10.    This task is made harder by the Debtor's failure to provide relevant information.  As a start to defending against these allegations, the Committee sought documents regarding all

---

[9] *See* Debtor's Interrogatory Responses at pp. 18–23.

[10] Though it has not alleged specific additional misconduct since identifying 29 Tort Plaintiffs in issued subpoenas and in response to the Committee's interrogatories, the Debtor has expressly reserved it rights to supplement such allegations. Debtor's Interrogatory Responses at p. 17 ("Bestwall will supplement this Interrogatory answer within a reasonable time after it receives such discovery"); *see also* Debtor's Disclosures, B.113.

[11] See *Concise Summary of the Case*, Case No. 21-2263 (3d. Cir July 21, 2021) [Dkt No. 9] (Debtor confirming it was continuing to pursue its appeal to the Third Circuit to obtain discovery from the trusts on all 15,000 resolved mesothelioma claimants); *Debtor's Letter to the Third Circuit Regarding Developments in Underlying Litigation*, Case No. 21-2263 (3d. Cir. May 19, 2022) [Dkt No. 75] ("Bestwall remains entitled to the full scope of discovery authorized by the North Carolina Bankruptcy Court's Rule 2004 Order").

settlements from Georgia-Pacific's history in order to bridge the informational gap.[12]   The Debtor

has already reviewed its settlement history and has had years to prepare for depositions; expert

declarations, reports, and depositions; and the estimation proceeding.   The Committee, however,

has been provided incomplete information by the Debtor to prepare for the same.   *See generally*,

Motion to Compel (discussing incomplete files).

11.    When the Debtor set its course to relitigate resolved mesothelioma claims, the

Committee originally attempted to narrow the scope of discovery and estimation, but reluctantly

accepted the need to counter the Debtor's course with the discovery path they have taken thus far.

To counter the Debtor's assertions, the Committee needs to review the totality of the Debtor's

settlement history in order to know what it knew, when it knew it, and most importantly *how it

applied that information*.[13]

12.    Thus far the Debtor has refused to identify a complete list of the Tort Plaintiffs it

alleges engaged in evidence suppression.   The Committee seeks the identification of the Tort

Plaintiffs to assist them in targeting further discovery efforts and in defending against the Debtor's

assertions.   The Debtor should be required to do so prior to the end of fact discovery so as not to

---

[12] *Official Committee of Asbestos Claimants' and Future Claimants' Representative's First Requests for Production of Documents, Interrogatories, and Requests for Admission Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, and 7036 Directed to the Debtor and Bates White, LLC* at p. 10 (Aug. 12, 2020), attached as **Exhibit A**.

[13] Take the following hypothetical situation: Plaintiff A, represented by law firm Z, files suit against Georgia-Pacific alleging mesothelioma caused by exposure to Old GP's Joint Compound.  During discovery, it is revealed that Plaintiff A once worked on the USS *Amphibole* which Plaintiff A discloses was full of amphibole asbestos.  The parties settle. Later, Plaintiff B, represented by law firm Y, files suit against Georgia-Pacific alleging mesothelioma caused by exposure to Old GP Joint Compound.  During discovery, Plaintiff B states he also worked on the USS *Amphibole*; however, he did not know there was amphibole asbestos present and therefore denied exposure to amphibole asbestos. The parties settle.  If Plaintiff B subsequently learns that amphibole asbestos was present on the USS *Amphibole* and attempts to seek damages related to this, the Debtor would paint this as fraud, despite the fact that not only did Plaintiff B not realize his error when settling his claim, but Georgia-Pacific did in fact have the relevant exposure evidence when offering a settlement.

The Committee needs to be able to propound the appropriate discovery to investigate the circumstances surrounding each Tort Plaintiff's case and to appropriately analyze the Debtor's rendition of the narrative.

stymie the Committee's efforts to put on its case and to allow it to focus its discovery efforts on certain components of the Debtor's case.

13. Such a step would begin to correct the information imbalance that currently exists and afford the Committee the required time to investigate and conduct discovery based on these allegations. The Court should therefore order the Debtor to identify by August 5, 2022 each Tort Plaintiff it alleges committed evidence suppression or otherwise misled Old GP in settlement, and to specifically identify why it so believes, and foreclose the Debtor from putting on evidence of any Tort Plaintiff not identified by this deadline.

## A. Federal Rule Civil Procedure 9(b) Sets the Standard to which the Debtor Should Be Held If It Accuses the Tort Plaintiffs of Fraud

14. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fourth Circuit clearly requires that "fraud-based claims must satisfy Rule 9(b)'s heightened pleading standard." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013)).

15. Civil Rule 9(b), which applies to contested matters such as the estimation proceeding pursuant to Bankruptcy Rules 7009(b) and 9014(c), "seeks to provide a defendant with sufficient and fair notice of a plaintiff's fraud claim in order to enable that defendant to defend him or herself." *In re Abell*, 549 B.R. 631, 647 (Bankr. D. Md. 2016).[14]

---

[14] "The Fourth Circuit has found that to satisfy the Rule 9(b) pleading requirements, the complaint must identify with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.*

While fraudulent concealment is a matter of state law, the general elements are (1) false representation or concealment of a material fact, (2) a duty to disclose all material facts, (3) the representation or omission is reasonably calculated to deceive, (4) it was made with the intent to deceive, (5) it in fact deceived, and (6) such deception harmed the injured party. *Vail v. Vail*, 63 S.E.2d 202, 205–06 (1951); *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)("[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the

16.     During any estimation proceeding, the Debtor will be required to substantiate and prove a claim under Civil Rule 9(b).  To do so, it will be required to allege its factual underpinnings with particularity to substantiate its claims of evidence suppression.  The Committee will need to have the opportunity to test what the Debtor knew at the time it alleges the evidence was suppressed.  The Debtor's inclusion of any plaintiff on the list of Tort Plaintiffs that the Debtor intends to allege suppressed evidence and impacted the Debtor's settlement value is reputationally damaging, and the Committee requires the identification of these claimants to assure that it has the discovery and information necessary to assess and rebut the allegations.

17.     Notwithstanding the Debtor's identification of twenty-nine (29) Tort Plaintiffs, the Debtor nevertheless maintains it is unable or unwilling to concede which Tort Plaintiffs it is truly relying on.[15]  This utter lack of information in no way "provide[s] [the Committee] with sufficient and fair notice of [the Debtor's] fraud claim in order to enable [the Committee] to defend [its members]" as set forth in *Abell*.  In fact, the Debtor's refusal to disclose the Tort Plaintiffs completely inverts the standard, as the Debtor has not only failed to meet the Civil Rule 9(b) requirement to "state with particularity the circumstances constituting fraud[,]" it also has failed to even identify the Tort Plaintiffs it will be alleging engaged in evidence suppression.

---

defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.").

[15] Debtor's Interrogatory Responses at p. 17 ("it is not possible for Bestwall to identify all cases where the Evidence Suppression Practice occurred because it has not yet received the discovery it needs from, without limitation, Trusts and plaintiff law firms.  Bestwall will supplement this Interrogatory answer within a reasonable time after it receives such discovery . . . also because the cases where the Evidence Suppression Practice occurred influenced many other cases where the practice may or may not have occurred (as explained in the Bestwall Evidence Suppression Contentions) . . .").

18.     The Debtor should be required to disclose the identity of these plaintiffs prior to the end of fact discovery to prevent prejudice to the Committee and to properly allow it to put on its case.  As the Court noted at the June 23, 2022 Hearing, it is time to "narrow the scope" by the Court "tak[ing] more action and try[ing] to control"[16] the path to estimation.  The first sensible method of moving toward estimation is to order the Debtor to comply with the obligation to plead fraud with particularity and thus disclose the Tort Plaintiffs that it will be accusing of evidence suppression.

19.     Until such time as the Debtor declares this information, the Committee is left in the dark on how to proceed at estimation.  Until then, it cannot waive rights to potentially exculpatory discovery materials, without breaching its duty to its members.

20.     Once the Debtor identifies the Tort Plaintiffs it intends to use to prove its evidence suppression allegations, the Committee will be in a position to reassess the breadth of its requested rebuttal discovery, issue any further discovery it may need prior to the close of fact discovery, and shore up any holes or address any additional issues it foresees.

**B.     The Court Has Authority Under Bankruptcy Code Sections 105 and 502(c) to Set a Deadline by Which the Debtor Must Disclose the Tort Plaintiffs at Issue**

21.     Bankruptcy Code Section 105 permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  When the Court granted the Estimation Order, it noted that "[a] bankruptcy court has discretion to determine the appropriate method of estimation taking into consideration the particular circumstances of the case before it[.]"  Estimation Order ¶ 5 (citations omitted).

---

[16] June 23, 2022 Courtroom Recording 6/23/2022 5:24:21 PM at 1:27–4:16 (June 24, 2022) [Dkt. No. 2635], https://www.donlinrecano.com/Clients/ViewDocument?dataDir=bw&casen=17-31795&docketn=2635.

22.    This Court has the authority under Bankruptcy Code 105 and 502(c) to issue orders in furtherance of its Estimation Order, including the authority to compel the Debtor to meet its discovery and burden requirements to assist the Court in evaluating the appropriate method of estimation.

## **CONCLUSION**

WHEREFORE, for reasons set forth herein, the Committee respectfully requests that the Court: (i) enter an order in the form annexed hereto requiring the Debtor by August 5, 2022 to identify with particularity each Tort Plaintiff it alleges committed evidence suppression or otherwise misled Old GP in settlement; (ii) prevent the Debtor from relying on Tort Claimants it does not disclose by August 5, 2022; and (iii) grant such other relief as is just and appropriate.

*[Rest of page intentionally blank]*

Dated: Charlotte, North Carolina
July 1, 2022

/s/ Robert A. Cox, Jr.
Glenn C. Thompson (Bar No. 37221)
Robert A. Cox, Jr. (Bar No. 21998)
HAMILTON STEPHENS STEELE +
MARTIN, PLLC
525 North Tyron Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
Email: gthompson@lawhssm.com
         rcox@lawhssm.com

        and

Linda W. Simpson
JD THOMPSON LAW
Post Office Box 33127
Charlotte, North Carolina 28233
Telephone: (828) 489-6578
Email: lws@jdthompsonlaw.com

        and

Natalie D. Ramsey (*admitted pro hac vice*)
Davis Lee Wright (*admitted pro hac vice*)
ROBINSON & COLE LLP
1201 N. Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Email: nramsey@rc.com
         dwright@rc.corn

*Counsel to the Official Committee of Asbestos
Claimants*