**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BESTWALL LLC,[1] | Case No. 17-31795 (LTB) |
| Debtor. | |

## OBJECTION TO DEBTOR'S MOTION CHALLENGING CONFIDENTIALITY OF DEPOSITION OF DR. JAMES DAHLGREN AND RELATED DOCUMENTS

Waters & Kraus LLP ("Waters & Kraus"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the *Debtor's Motion Challenging Confidentiality of Deposition of Dr. James Dahlgren and Related Documents* (the "Confidentiality Motion") [ECF No. 3091] filed by the above-captioned debtor (the "Debtor") on August 31, 2023.  In support of this Objection, Waters & Kraus states as follows:

1.     Waters & Kraus expressly opposes the relief sought in the Confidentiality Motion and requests that it be denied.  There has been no waiver of confidentiality by Waters & Kraus or any third parties, and there is no public interest or purpose for eliminating confidentiality.

2.     The trust claim documents in question—the "Dahlgren Documents" as defined in the Confidentiality Motion—were confidential prior to the entry of the *Agreed Protective Order* (the "Protective Order") [ECF No. 337] and retained their confidential status at all times by virtue of the Trust Distribution Procedures (the "TDPs").The production of those documents to the Debtor under the power of a subpoena by Water & Kraus or others does not, in and of itself, remove the confidential nature  of the documents.

---

[1] The last four digits of the Debtor's taxpayer identification number are 5815.  The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia, 30303.

3.    A review of the TDPs which govern the documents submitted to them clearly define claim forms as confidential materials, and do so on the explicit basis that claims are settlement communications.  See the following representative TDPs for some of the trusts at issue:

- SECOND AMENDED AND RESTATED ARMSTRONG WORLD INDUSTRIES, INC. ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at http://www.armstrongworldasbestostrust.com/wp-content/uploads/2021/03/Conformed-Copy-Third-Amended-and-Restated-TDP-as-of-February-17-2021.pdf (last accessed Sept. 14, 2023) ("All submissions to the PI Trust by a holder of PI Trust Claim or a proof of claim form and materials related thereto shall be treated as made in the course of settlement discussions between the claimant and the PI Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions.")

- BABCOCK & WILCOX COMPANY, ASBESTOS PI SETTLEMENT TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at http://www.bwasbestostrust.com/wp-content/uploads/2015/12/BW.-Amended-TDP.12.2.2015-C0463536x9DB18.pdf (last accessed Sept. 14, 2023)

- CELOTEX CORPORATION AND CAREY CANADA FIFTH AMENDED AND RESTATED ASBESTOS PERSONAL INJURY CLAIMS RESOLUTION PROCEDURES, Section VI Claims Materials, available at http://www.celotextrust.com/wp-content/uploads/2021/06/Conformed-PI-Claims-Resolution-Procedures-May-25-2021-1.pdf ("All materials, records, and information submitted by claimants, including

that provided with regard to medical audits under Section 7.3, are confidential, submitted solely for settlement purposes.") (last accessed Sept. 14, 2023)

- EAGLE-PICHER INDUSTRIES, INC. ASBESTOS INJURY CLAIMS RESOLUTION PROCEDURES, Section 7.1 General Guidelines for Liquidating and Paying Individually Reviewed Claims, Showing Required, available at https://www.cpf-inc.com/assets/1/6/EPI_CRP.pdf ("All evidence submitted to establish a valid Asbestos Personal Injury Claim is made in the context of confidential settlement discussions between the claimant and the PI Trust and is subject to all applicable state and federal regulations and privileges including, but not limited to, those related to health and medical information or settlement discussions. Such evidence is for the sole benefit of the PI Trust and will be evaluated pursuant to EPI Asbestos Claim Procedures.") (last accessed Sept. 14, 2023)

- THE FLINTKOTE COMPANY AND FLINTKOTE MINES LIMITED AMENDED AND RESTATED ASBESTOS PERSONAL INJURY TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at http://www.flintkoteasbestostrust.com/wp-content/uploads/2015/12/Amended-Restated-Flintkote-Trust-Distribution-Procedures-FINAL-12-14-2015.pdf (Statement is substantially similar to the Armstrong World Industries confidentiality provision quote above) (last accessed September 14, 2023)

- H.K. PORTER ASBESTOS TRUST, THIRD PARTY REQUESTS FOR CLAIMANT INFORMATION, available at http://www.hkporterasbestostrust.org/assets/documents/resources/Third-Party-Requests-for-Information.pdf ("Due to the confidential nature of claim submissions, the Trust and its claim processor . . . will provide claimant information to third parties only in response to a valid subpoena issued by a court of

3

competent jurisdiction or a valid written claimant authorization.") (last accessed Sept.
14, 2023)

- MANVILLE PERSONAL INJURY SETTLEMENT TRUST, 2002 TRUST DISTRIBUTION PROCESS, available at https://www.claimsres.com/wp-content/uploads/2016/11/2002-TDP-May-2021-Revision-1.pdf (generally describing information submitted to the Trust as confidential and not being disclosed by the Trust) (last accessed Sept. 14, 2023)

- ARTRA 524(G) ASBESTOS TRUST SECOND AMENDED ASBESTOS TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at http://www.artratrust.com/assets/documents/resources/Second-Amended-Trust-Distribution.pdf (Statement is substantially similar to the Armstrong World Industries confidentiality provision quoted above) (last accessed Sept. 14, 2023)

- SEVENTH AMENDMENT TO AND COMPLETE RESTATEMENT OF THORPE INSULATION COMPANY ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at https://www.tistrust.com/wp-content/uploads/2020/09/TIST-Seventh-Amendment-to-and-Complete-Restatement-of-TDP.pdf (Statement is substantially similar to the Armstrong World Industries confidentiality provision quoted above) (last accessed Sept. 14, 2023)

- UNITED STATES GYPSUM ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at http://www.usgasbestostrust.com/wp-content/uploads/2015/12/USG.-Amended-TDP.12.2.2015-C0463535x9DB18.pdf (Statement is substantially similar to

4

the Armstrong World Industries confidentiality provision quoted above) (last accessed

Sept. 14, 2023)

- AMENDED AND RESTATED ASBESTOS WRG ASBESTOS PI TRUST DISTRIBUTION

    PROCEDURES, § 6.5 Confidentiality of Claimants' Submissions, available at

    http://www.wrgraceasbestostrust.com/wp-content/uploads/2019/12/WRG-Amended-

    and-Restated-Trust-Distribution-Procedures-Revised-September-26-2019-

    C1076870x9DB18.pdf (Statement is substantially similar to the Armstrong World

    Industries confidentiality provision quoted above) (last accessed Sept. 14, 2023).

4.      No provisions of the Protective Order  supersede or alter the confidentiality of

documents already deemed confidential by the TDPs.  The definitions of confidential information

in the Protective Order primarily encompass secret or proprietary business information and private

identification and medical information. See Protective Order, ¶ 8.  The Protective Order does not

purport to address prior settlement communications with asbestos claims handling trusts because

the TDPs already provide for confidentiality of the information contained therein.  The fact that

trust claim forms are discoverable and may be produced subject to a subpoena does not extinguish

the confidential nature of settlement communications and claim materials contained therein and

submitted therewith.  *See Willis v. Buffalo Pumps, Inc.*, No. 12cv744-BTM, 2014 WL 2458247, at

*1 (S.D. Cal. June 2, 2014) (listing cases)

5.      The Confidentiality Motion notes that only one law firm took the extra step of

marking trust claim forms with "confidential" markings subject to the protective order.

Confidentiality Motion, ¶ 20.  This is a reflection that the law firms broadly understood that

materials subject to TDPs are and remain confidential, and do not require further designation as

confidential.

4886-8921-5359, v. 4

6.      Once the Debtor communicated its new interpretation of the Protective Order—requiring independent designation of already-confidential trust materials—Waters & Kraus promptly communicated the independent designation now contested in the Confidentiality Motion. Id.  Even though Waters & Kraus maintains that designation under the Protective Order is not needed or determinative, nevertheless, the designation was made and; therefore, the confidentiality of the Dahlgren Documents was never waived.

7.      To the extent the Debtor asserts that waiver of confidentiality occurred as a result of disclosures by or communications with Dr. Dahlgren or the Official Committee of Asbestos Personal Injury Claimants (the "Committee")—see Confidentiality Motion, at *2, ¶¶ 16–17—neither Dr. Dahlgren nor the Committee were authorized to waive the interests of the claimants for the same reason Waters & Kraus could not: namely, the TDPs control.  Further, Waters & Kraus, on behalf of its clients, the claimants, was not a party to the deposition of Dr. Dahlgren and had no opportunity or authority to force Dr. Dahlgren to assert or preserve confidentiality in the manner suggested.  Similarly, Waters & Kraus was not a party to the communications between the Debtor and the Committee as described in Paragraph 17 of the Confidentiality Motion and had no opportunity or authority to force the Committee to assert or preserve claimants' confidentiality interests.

8.      There is no public interest in the disclosure of these trust forms, or any others based on Dr. Dahlgren's statements.  The Debtor premises its position on Dr. Dahlgren's answers to purely hypothetical deposition questions.  See Confidentiality Motion, ¶¶ 14, 48.  The hypotheticals themselves are: (1) based on contortions of facts, or facts outright contradicted by the August 30, 2022 deposition testimony of Peter Kraus as the Rule 30(b)(6) designee for Waters

4886-8921-5359, v. 4

& Kraus;[2] and (2) rooted in the Debtor's conflation of site-related trust claims (claims for which a claimant might be eligible for a trust distribution under the terms of a trust on the basis of work history) and exposure-related trust claims (claims supported by medical evidence of exposure).

9.      This distinction was fully addressed during the deposition of Peter Kraus, but the Debtor conveniently ignores the relevant facts to attempt to manufacture public interest.  See, e.g., Kraus Dep., 85:6–86:8 (explaining that the Celotex bankruptcy trust claim procedures defined "exposure," for the purpose of a claim as work history in a shipyard, not inhalation exposure to asbestos fibers); 232:5–233:25 (explaining that a claim asserted against the Celotex trust was based only on Navy work history, not evidence of exposure); and  234:7–24 (explaining that work history at schools where products manufactured by an Eagle-Picher subsidiary were used was not direct evidence of asbestos exposure).

10.     Likewise, the submission of ballots or 2019 statements for these three claimants is not proof of "exposure" but only a vote in favor or a plan or an indication from counsel that there is some basis for submitting a claim of possible exposure under the terms of the TDPs for the debtors in those cases, respectively. Statements by counsel, like ballots or 2019 statements, are not evidence.

11.     The Debtor asserts that "Dr. Dahlgren had given advance notice to Waters & Kraus that he intended to write the article."  Confidentiality Motion, ¶ 15.   However, the purported "notice" in question was simply a voicemail from Dr. Dahlgren requesting information about additional cases involving joint compound exposure for a potential article; it is not clear that Dr. Dahlgren even mentioned his intention to write on  the three cases identified in the Confidentiality

---

[2] The transcript will be cited herein as "Kraus Dep., __:__." Portions of the deposition were designated confidential pursuant to the Protective Order, but the citations herein are not to such sections.  The deposition transcript excerpts cited herein are attached as **Exhibit 1** hereto, with redactions applied to protect claimant personal identifications.

Motion. Kraus Dep., 229:23-230:3.  Waters & Kraus had provided Dr. Dahlgren with information

for the three cases in question during his work as an expert in pending tort litigation long before

he began writing the article at issue (between six and ten years earlier).  Kraus Dep., 229:7–231:12.

12.    The Debtor asserts that Waters & Kraus wrongfully withheld trust claim forms from

Dr. Dahlgren, supporting Debtor's assertion that Dr. Dahlgren had incomplete evidence of

exposure for the three cases when he wrote his article.  Confidentiality Motion, ¶ 13–15.  Waters

& Kraus did not withhold discoverable information from its experts in the tort cases or the tort

defendants.

13.    As an initial note, Waters & Kraus would not have provided trust claims to a

litigation expert because, *inter alia*, of the constraints imposed by the TDPs.  While Waters &

Kraus did not provide the trust claim forms to Dr. Dahlgren it did provide the underlying historical

information which formed the basis for the firm to litigate the case and submit the trust claims.

14.    Importantly, Dr. Dahlgren received the complete work histories for the claimants

in the cases at hand, including relevant family work histories, during the scope of his expert

engagements.  See Kraus Dep., 232:5–233:25, 234:7–24.  Any insinuation or accusation that Dr.

Dahlgren lacked the "exposure" information that supported the submission of trust claims is

misplaced.

15.    Because the contents of site-related trust claim documents are not "exposure

evidence," Confidentiality Motion, ¶¶ 43, 45, their disclosure is not necessary to correct an

erroneous scientific or public record. id. at ¶¶ 43–44, 52.  The mere fact that a site-related trust

claim was submitted does not mean that a site-related trust claim was deemed sufficient for

distribution purposes.  For example, in one of the three cases at issue, the claim against the Celotex

trust—where "evidence of exposure" was established by the claimant's work on a ship in a

shipyard alone—was deemed deficient by the trust and went unpaid, because the claimant did not work in a "below-decks" environment.  Kraus Dep. 86:9–87:10.

16.    Yet, the Debtor ignores these material distinctions, relying on its hypothetical questions to Dr. Dahlgren (premised on a misapprehension of trust claim requirements) to support conclusory allegations of false science.  Confidentiality Motion at ¶ 53.

17.    In addition, Dr. Dahlgren made it clear in his article that he was not ruling out other exposures where he plainly stated: "other exposures cannot be excluded in any of the three cases." *Mesothelioma Associated with Use of Drywall Joint Compound: A Case series and Review of Literature*, International Journal of Occupational and Environmental Health (Vol 18 at 338).  It is unclear how the scientific and public record would need correction if the article itself acknowledges the very concerns asserted by the Debtor.

18.    The Debtor also relies on a contorted representation of case law concerning the publication of trust claims based on "significant failures to disclose exposure evidence."  The Debtor cites *Golik v. CBS Corp.*, 472 P.3d 778, 790–92 (Or. Ct. App. 2020) for the proposition that the "failure to disclose Trust claims" affected that defendant's rights sufficiently to award a new trial.  Confidentiality Motion, ¶ 45.  The issue in Golik was not a "failure to disclose Trust claims."  The plaintiff produced trust claim forms with work history affidavits in support thereof during discovery.  *Golik*, 472 P.3d, at 784.  What plaintiff did not produce, which prejudiced the defendant, were additional work history affidavits that had been submitted to the trusts.  *Id.* at 785–76.  The concealment of additional exposures by plaintiff was exacerbated by expert testimony as to alternative sources of exposure that would have been contradicted by those additional affidavits. *See id.*, at 791–92.

19.    The facts of *Kananian v. Lorillard Tobacco Co.*, No. CV 442750, 2007 WL

4913164 (Ohio Ct. Com. Pl. Jan. 17, 2007), bear little relationship to the Debtor's simplistic representation of "misconduct relating to disclosure of Trust claims."  Confidentiality Motion, ¶ 45.  In *Kananian*, counsel concealed evidence of testing of the plaintiff's lung tissue, submitted trust claims with false work histories to bankruptcy trusts, lied to the trial court repeatedly about knowledge of facts, claimed to comply with discovery efforts while urging third parties like the Celotex trust to resist subpoenas, produced incomplete versions of trust claim forms during discovery, among other transgressions.  *Id.*

20.     The facts in those cases are distinguishable from the facts here, nor do the cited cases deal with making trust claims "public" as requested by the Debtor.  The facts of *Golic* are opposite of the facts at bar: the Debtor does not assert that Dr. Dahlgren's opinion was rendered with incomplete work history data; instead, the Debtor asserts that Dr. Dahlgren was not informed of bankruptcy trust claims, which the Debtor presumes are—ignoring the claim requirements of trusts—equivalent to literal medical evidence of asbestos exposure.  The facts of *Kananian* are similarly divorced from the facts at bar: there are no allegations here that any of the claimants' work histories were exaggerated, misstated, or otherwise inaccurate when provided to either Dr. Dahlgren or any bankruptcy trusts—the Debtor's misplaced concerns rest with bankruptcy trust claims themselves, not their supporting documents.  The only commonality between these cases is the mere involvement of bankruptcy trust claims as a topic of discussion, and nothing more.

21.     Finally, the Debtor's "fears" of continued readings of the Dahlgren Article, recited in Paragraph 53 of the Confidentiality Motion, are purely speculative.  The Debtor proffers no argument or evidence that the article in question is relevant to, or likely to be relied on in, any proceedings in this case, estimation or otherwise. Upon information and belief, the Dahlgren article in question has never been cited as an authority in any medical or scientific article.  Kraus Dep.

10

Case 17-31795    Doc 3105    Filed 09/14/23    Entered 09/14/23 17:38:13    Desc Main
Document    Page 11 of 28

236:19–237:5. The Debtor's reference to a report by other scientists relied upon in talcum personal injury cases is irrelevant.  See Confidentiality Motion ¶¶ 49–52.  Eliminating the confidential nature of the Dahlgren Documents serves no purpose to the public nor these proceedings—it would only serve to confuse the record based on  the Debtor's conflated misapprehension of trust claims procedures and ignorance of the distinction between site-based trust claims and trust claims based on expose evidence.

WHEREFORE, Waters & Kraus respectfully requests that the Court enter an order sustaining this Objection and denying the relief requested in the Confidentiality Motion.

Respectfully submitted, this the 14th day of September, 2023.

<div style="margin-left: 40%;">

**WALDREP WALL BABCOCK
& BAILEY PLLC**

*/s/ Thomas W. Waldrep, Jr.*
Thomas W. Waldrep Jr. (NC State Bar No. 11135)
J. Dennis Bailey (NC State Bar No. 12847)
Ciara L. Rogers (NC State Bar No. 42571)
John R. Van Swearingen (NC State Bar No. 53646)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: 336-717-1280
Facsimile: 336-717-1340
Email: notice@waldrepwall.com

*Attorneys for Waters & Kraus LLP*

</div>

11

# EXHIBIT 1

Excerpts from the Rule 30(b)(6) Deposition of Peter Kraus, as designee of Waters & Kraus

Page 1

1              UNITED STATES BANKRUPTCY COURT

               WESTERN DISTRICT OF NORTH CAROLINA

2                    CHARLOTTE DIVISION

3    IN RE:                    ) Chapter 11

                               )

4                              )

     BESTWALL LLC,             ) Case No.: 17-31795 (LTB)

5                              )

              Debtor.          )

6

     -----------------------------------------------------

7

8         ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF

                    WATERS & KRAUS, LLP,

9      through its designated corporate representative,

                    PETER A. KRAUS

                    AUGUST 30, 2022

10   -----------------------------------------------------

11

12         ORAL AND VIDEOTAPED 30(b)(6) DEPOSITION OF

13   WATERS & KRAUS, LLP, through its designated corporate

14   representative, produced as a witness at the instance of

15   the Debtor and duly sworn, was taken in the above-styled

16   and numbered cause on Tuesday, August 30, 2022, from 9:14

17   a.m. to 6:03 p.m., before Kari Behan, CSR, RPR, CRR, in

18   and for the State of Texas, reported by computerized

19   stenotype machine, at the offices of Jones Day, 2727 North

20   Harwood Street, Suite 500, Dallas, Texas, 75201, pursuant

21   to the Federal Rules of Civil Procedure and the provisions

22   stated on the record herein.

23

24

25   Job No. 5297971

30(b)(6) Peter A. Kraus                                                      August 30, 2022
In Re:  Bestwall, Llc



Page 2

1          A P P E A R A N C E S
2
     FOR THE DEBTOR, BESTWALL LLC:
3
        RICHARD C. WORF, ESQ.
4          - and -
        GARLAND S. CASSADA, ESQ. (Via Telephone)
5     ROBINSON, BRADSHAW & HINSON, P.A.
        101 North Tryon Street
6        Suite 1900
        Charlotte, North Carolina 28246
7        (704) 377-2536
        gcassada@robinsonbradshaw.com
8        rworf@robinsonbradshaw.com
9
        PREETHA SURESH RINI, ESQ.
10    ROBINSON, BRADSHAW & HINSON, P.A.
        1450 Raleigh Road
11      Suite 100
        Chapel Hill, North Carolina 27517
12      (919) 328-8800
        prini@robinsonbradshaw.com
13
14
15 FOR THE FUTURE CLAIMANTS' REPRESENTATIVE:
16    ERIN EDWARDS, ESQ.
         - and -
17    NICHOLAS J. ROHRER, ESQ.
      YOUNG CONAWAY STARGATT & TAYLOR, LLP
18    Rodney Square
      1000 North King Street
19    Wilmington, Delaware  19801
      (302) 571-6552
20    eedwards@ycst.com
      nrohrer@ycst.com
21
22
23
24
25

Page 3

1 APPEARANCES (CONTINUED):
2 FOR THE OFFICIAL COMMITTEE OF ASBESTOS PERSONAL INJURY
     CLAIMANTS:
3
     KATHERINE M. FIX, ESQ.
4       - and -
     LAURIE A. KREPTO, ESQ. (Via Telephone)
5   ROBINSON & COLE LLP
     1650 Market Street
6    Suite 3030
     Philadelphia, Pennsylvania 19103
7    (215) 398-0555
     kfix@rc.com
8    lkrepto@rc.com
9
     DAVID LEE WRIGHT, ESQ.
10  ROBINSON & COLE LLP
     1201 N. Market Street
11   Suite 1406
     Wilmington, Delaware 19801
12   (302) 516.1703
     dwright@rc.com
13
14   BENJAMIN M. DANIELS, ESQ. (Via Telephone)
     ROBINSON & COLE LLP
15   280 Trumbull Street
     Hartford, Connecticut 06103
16   (860) 275-8223
     bdaniels@rc.com
17
18   FOR WATERS & KRAUS, LLP:
19   J. DENNIS BAILEY, ESQ.
20   WALDREP WALL BABCOCK & BAILEY PLLC
     370 Knollwood Street
21   Suite 600
     Winston-Salem, North Carolina 27103
22   (336) 714-1222
     dbailey@waldrepwall.com
23
24
25

Page 4

1 APPEARANCES (CONTINUED):
2 FOR WATERS & KRAUS, LLP
3    CIARA L. ROGERS, ESQ.
     WALDREP WALL BABCOCK & BAILEY PLLC
4    3600 Glenwood Avenue
     Suite 210
5    Raleigh, North Carolina 27612
     (984) 480-2005
6    crogers@waldrepwall.com
7
     VINEET BHATIA, ESQ.
8    SUSMAN GODFREY, LLP
     Suite 5100
9    1000 Louisiana
     Houston, Texas 77002
10   (713) 653-7855
     vbhatia@SusmanGodfrey.com
11
12
13 ALSO PRESENT:
14   Joel Mercer, Esq., In-House Counsel
        Bestwall LLC
15
     Leslie MacLean, Esq.
16      Waters & Kraus, LLP
17   Tracie Whetstone
        Waters & Kraus, LLP
18
19
     THE VIDEOGRAPHER:
20
     Joe Willis
21
22
23
24
25

Page 5

1              - - -
                 I N D E X
2              - - -
3 EXAMINATION OF PETER A. KRAUS          PAGE
4
5  BY MR. WORF................................  9
6  CHANGES AND SIGNATURE.................... 277
7  REPORTER'S CERTIFICATION.................. 279
8              * * *
9         E X H I B I T S
10 Exhibit 1  Notice of Deposition of Waters    10
                & Kraus, LLP
11
   Exhibit 2  Subpoena for Production of       12
12              Documents dated January 14th,
                2022
13
   Exhibit 3  Page from waterskraus.com        23
14              Referencing Mesothelioma
15 Exhibit 4  ████████ Lawsuit        45
                Documents
16
   Exhibit 5  ██████ Trust Claims    45
17
   Exhibit 6  Waters & Kraus, LLP, Trust       78
18              Claim Statuses - Selected
                Plaintiffs
19
   Exhibit 7  Summary for ██████        80
20              prepared by Waters & Kraus
21 Exhibit 8  TDP Binder              87
22 Exhibit 9  ██████ Exposure       153
                Disclosure Summary
23
   Exhibit 10  ███████ Lawsuit     155
24              Documents
25

                                        2 (Pages 2 - 5)

**Page 6**

1 EXHIBITS (CONTINUED):
2 Exhibit 11 ▮▮▮ Trust Claims  155
3 Exhibit 12 Summary for ▮▮▮  155
   prepared by Waters & Kraus
4
5 Exhibit 13 ▮▮▮ Exposure  190
   Disclosure Summary
6 Exhibit 14 ▮▮▮ Lawsuit  192
   Documents
7
   Exhibit 15 ▮▮▮ Trust Claims  193
8
   Exhibit 16 Ballots Binder  193
9
   Exhibit 17 2019's Binder  193
10
   Exhibit 18 Summary for ▮▮▮  193
11   prepared by Waters & Kraus
   Exhibit 19 ▮▮▮ Exposure  223
12   Disclosure Summary
13
   Exhibit 20 James Dahlgren and Trevor  225
14   Peckham Review, "Mesothelioma
     associated with use of drywall
15   joint compound: a case series
     and review of literature"
16
   Exhibit 21 ▮▮▮ Lawsuit Documents  238
17
   Exhibit 22 ▮▮▮ Trust Claims  239
18
   Exhibit 23 Summary for ▮▮▮  247
19   prepared by Waters & Kraus
20 Exhibit 24 ▮▮▮ Exposure Disclosure  274
   Summary
21
22
23
24
25

**Page 7**

1         PROCEEDINGS:
2     (Tuesday, August 30, 2022, 9:14 a.m.)
3         THE VIDEOGRAPHER:  Good morning.  We are
4 going on the record at 9:14 a.m. on August the 30th, 2022.
5 Please note microphones are sensitive and may pick up
6 whispering and private conversations.  This is the video
7 record -- recorded deposition of Peter Kraus taken in the
8 matter of Bestwall LLC, filed in the United States
9 Bankruptcy Court for the Western District of North
10 Carolina in Charlotte.  The case docket number is 17-31795
11 (LTB).
12        The location of the deposition is 2727 North
13 Harwood Street, Dallas, Texas.  My name is Joe Willis
14 representing Veritext; I'm the videographer.  The court
15 reporter is Kari Behan from Veritext.
16        I'm not related to any party in this action,
17 nor am I financially interested in the outcome.  If there
18 are any objections to the proceeding, please state them at
19 the time of your appearance.
20        Will counsel and all present please identify
21 yourself and state your affiliation for the record,
22 including those attending remotely.
23        MR. WORF:  Richard Worf from Robinson
24 Bradshaw for Bestwall.
25        MS. RINI:  Preetha Rini from Robinson

**Page 8**

1 Bradshaw for Bestwall.
2         MR. MERCER:  Joel Mercer, In-House Counsel
3 for Bestwall.
4         MS. EDWARDS:  Erin Edwards with Young
5 Conaway Stargatt & Taylor on behalf of The Future
6 Claimants' Representative.
7         MR. ROHRER:  Nicholas Rohrer from Young
8 Conaway Stargatt & Taylor on behalf of The Future
9 Claimants' Representative.
10        MS. FIX:  Katherine Fix from Robinson &
11 Cole, on behalf of the Committee.
12        MR. WRIGHT:  Davis Wright from Robinson &
13 Cole on behalf of the Committee.
14        MS. WHETSTONE:  Tracie Whetstone, Waters &
15 Kraus.
16        MS. MacLEAN:  Leslie MacLean, Waters &
17 Kraus.
18        MS. ROGERS:  Ciara Rogers, Waldrep Wall, on
19 behalf of Waters & Kraus.
20        MR. BHATIA:  Vineet Bhatia, Susman Godfrey,
21 on behalf of Waters & Kraus.
22        MR. BAILEY:  And Dennis Bailey for Waters &
23 Kraus.
24        THE VIDEOGRAPHER:  Will the court reporter
25 please swear in the witness, then we may begin.

**Page 9**

1         Oh, I forgot about those remotely.
2         You want to --
3         MR. WORF:  Anybody on the phone want to make
4 an appearance?
5         MR. CASSADA:  This is Garland Cassada,
6 Robinson Bradshaw.  I represent Bestwall.
7         MR. DANIELS:  This is Benjamin Daniels from
8 Robinson & Cole, and I represent the Committee.
9         MS. KREPTO:  Laurie Krepto, Robinson & Cole,
10 on behalf of the Committee.
11            PETER A. KRAUS,
12 after having been first duly sworn by the above-mentioned
13 Certified Court Reporter, was examined and testified as
14 follows:
15        THE COURT REPORTER:  Thank you.
16            EXAMINATION
17 BY MR. WORF:
18    Q.  Good morning, Mr. Kraus.  Could you state your
19 name for the record?
20    A.  Peter Kraus.
21        MR. WORF:  And, Dennis, did you want to talk
22 about the stipulations?
23        MR. BAILEY:  Yes.  Thank you, Counsel.
24        As we've discussed at the others, we would
25 just like to note at the beginning that this deposition

3 (Pages 6 - 9)

Page 82

1  the -- the firm -- it's at the bottom of this list -- POC
2  referred to trust claims?
3      A.  "POC" stands for proof of claim.
4      Q.  And that, in this instance, denotes the trust
5  claims that Waters & Kraus filed for ▓▓▓▓▓▓?
6      A.  Yes.
7      Q.  And you'll see that those file names have a date
8  in them.  Does that indicate the date that the claim was
9  filed by Waters & Kraus?
10      A.  I don't know the answer to that.  Let me compare
11  it with our summary.
12          Yes, that does appear, comparing it to our
13  summary in Exhibit -- Exhibit 7, to be the dates the
14  claims were submitted.
15      Q.  Got it.
16          And you believe that's the case for the
17  other selected plaintiffs for whom Waters & Kraus produced
18  trust claims?
19      A.  I'll have to compare in each instance, but
20  assuming the date matches our records, yes.
21      Q.  Uh-huh.  If you could turn to the Celotex claim
22  form, which is under Tab 3, Waters & Kraus filed the
23  Celotex Trust claim for ▓▓▓▓▓▓ on November 1st, 2002?
24      A.  Yes.
25      Q.  That was a couple weeks before Waters & Kraus'

Page 83

1  November 15th, 2002, opposition to Union Carbide's motion
2  to compel?
3      A.  I -- I don't remember the date of -- of that
4  motion to compel, but I'll accept your representation that
5  that's correct.
6      Q.  And that was before Dr. Dahlgren wrote his
7  declaration with his opinions in the case later in
8  November 2002, and before his deposition in December of
9  2002?
10      A.  I -- I don't -- we haven't discussed the
11  declaration by Dr. Dahlgren in the case.  I don't know
12  what document you're referencing.
13      Q.  Well, in any event, it was filed before
14  Dr. Dahlgren was deposed in December of 2002?
15      A.  Do you want me to go back and -- and reconfirm
16  the date of the Dr. Dahlgren deposition?  Because I don't
17  have an immediate recollection of it.
18      Q.  Sure.  If you want to.  That's fine.
19      A.  What tab is that in the ▓▓▓▓▓▓ lawsuit binder?
20      Q.  That is Tab --
21      A.  Yes, I see December 11th, 2002, is the date of
22  Mr. Dahlgren's deposition in the case.
23      Q.  And that took place after this Celotex Trust
24  claim was filed?
25      A.  It appears that is correct.

Page 84

1      Q.  Turn to Part 10 of this form, and we've marked it
2  with a green tab, if you want to find that.  It's page 057
3  at the bottom left.
4      A.  I'm there.
5      Q.  This form was signed by Rhonda Cleaves?
6      A.  Yes.
7      Q.  She was an attorney at Waters & Kraus?
8      A.  Yes.
9      Q.  She certified that:  "I have reviewed the
10  information submitted on this claim form and all documents
11  submitted in support of this claim.  To the best of my
12  knowledge, under penalty of perjury, the information
13  submitted is accurate and complete"?
14      A.  That's the language on this form, yes.
15      Q.  And Ms. Cleaves so certified?
16      A.  Apparently, yes.
17      Q.  Were the statements that Ms. Cleaves made in this
18  form true and correct?
19      A.  I'd have to go back and review the entire form to
20  tell you.
21      Q.  Well, let's look at some specific ones.
22          Turn to page 050.  This section is entitled
23  "Occupational Exposure to Celotex or Carey Canada Products
24  or Operations."  It states, "Date Exposure Began:  1942;
25  Date Exposure Ended:  1946."

Page 85

1          Under "Occupation," it says, "First Class
2  Quartermaster.  Description of job duties, as those
3  required by the military."  Then down below, it says,
4  "Describe how and why asbestos products were used at the
5  site."  It says:  "As insulation."
6          Under "Employer," it says, "U.S. Navy."
7  "Site or location of exposure:  Various.  Plant or site
8  name:  Various.  Location at plant or site where exposure
9  occurred:  Various."  Then:  "Describe how injured party
10  was exposed to Celotex or Carey Canada products or
11  operations."  It states:  "Among other things, claimant
12  was around those working with asbestos products and was
13  consistently exposed to asbestos while in the Navy."
14          And then under "Name of Celotex or Carey
15  Canada products or operations to which injured party was
16  exposed," it states, "millboard, cement, pipe covering,
17  block insulation, refractories, castables, insulating
18  cement, gaskets, packing and asbestos cloth."
19          And my question is:  Are the statements in
20  this Part 4 of the Celotex claim form true and correct?
21      A.  As the Celotex Trust defined exposure, yes,
22  that's correct.  So Carey Canada made all of these kinds
23  of products which were typically used in shipyards.
24          As we've discussed, ▓▓▓▓▓▓ served as a
25  quartermaster on a United States Navy ship.  That ship

22 (Pages 82 - 85)

30(b)(6) Page 17 for 28

August 30, 2022

In Re:  Bestwall, Llc

Page 86

1  sailed into shipyards at various times while he was a
2  seaman in the United States Navy.  And at the time, the
3  Celotex bankruptcy trust used any work in a shipyard as a
4  surrogate for exposure, for actually breathing asbestos
5  fibers, as you've defined exposure today.
6      Q.  Well --
7      A.  So, yeah, that's correct, as -- as the trust used
8  the term of art exposure, which was working in a shipyard.
9      Q.  Well, my question is whether the statement that
10  Ms. Cleaves put in this form:  Among other things,
11  claimant was around those working with asbestos products
12  and was consistently exposed to asbestos while in the
13  Navy.
14          Was that statement true and correct?
15      A.  As the trust defined exposure, which was being in
16  a shipyard on a ship, yes.  I mean, there's a lot of
17  asbestos on a United States Navy destroyer between 1942
18  and 1946 when he was a quartermaster.  And the trust did
19  not require producing evidence that would be required in
20  an asbestos tort suit that the plaintiff actually breathed
21  asbestos to satisfy their definition of exposure to make a
22  claim in the trust.
23          So, yes, as the trust defined exposure,
24  which was that you were on a ship in a shipyard, that's
25  correct.

Page 87

1      Q.  Let me mark another exhibit.
2      A.  I would add that the Celotex Trust apparently
3  found that claim to be deficient because he was a
4  quartermaster and he wasn't a below-decks person.
5      Q.  What is your basis for believing they found the
6  claim deficient?
7      A.  Because they didn't pay it.  They notified us
8  that the claim was deficient, that there was inadequate
9  evidence that his job duties would have caused him to be
10  around those products.
11      Q.  The claim is still pending against the Celotex
12  Trust, though, correct?
13      A.  Well, I think that the claim -- I think that's
14  the way the trust operates, they just find a claim
15  deficient, and unless you take some affirmative action to
16  withdraw, it just sits there.
17      Q.  I've handed you Exhibit 8, which --
18          MR. BAILEY:  We don't have it yet.
19          MR. WORF:  Oh.
20          (Tenders document.)
21          MR. BAILEY:  No, you keep that.
22          THE WITNESS:  Oh, this is it.  Okay.
23          (Exhibit 8 was marked for identification.)
24  BY MR. WORF:
25      Q.  And the title of this is "TDP Binder," but I'll

Page 88

1  represent to you that we have collected a number of
2  documents that we've downloaded from the websites of
3  trusts that we may review today.
4          And if you'll look at Tab 1, the title of
5  this document is "Instructions For Filing a Claim with the
6  Celotex Asbestos Settlement Trust."  And if you look at
7  page 5 of this form -- or this document, it says:  How to
8  qualify for payment?  Regardless of the filing options
9  selected by a claimant, to be a valid asbestos personal
10  injury claim, a claimant must provide -- and then, under
11  the second bullet, it says:  Convincing evidence of
12  exposure to a Celotex or Carey Canada asbestos product.
13          Then go to the section below, and it says:
14  Evidence required to establish exposure to Celotex or
15  Carey Canada asbestos products.  And it says:  Convincing
16  evidence of exposure to Celotex or Carey Canada
17  asbestos-containing products must include the following
18  information:  Occupation and description of job duties
19  that led to exposure to Celotex or Carey Canada
20  asbestos-containing products, description of the industry
21  where exposed, and why and how the asbestos-containing
22  product was used in this industry at each specific
23  exposure site, employers or jobsites where exposure
24  occurred, time period employed at each specific jobsite,
25  nature of the injured person's exposure to Celotex or

Page 89

1  Carey Canada asbestos-containing products; e.g., the
2  frequency of exposure, the duration of exposure, whether
3  exposure was from working directly with the product,
4  working in the area where the product was handled, working
5  in the area where the product was present.
6          Then:  If the claimant was first directly
7  exposed to Celotex or Carey Canada asbestos-containing
8  products prior to 1975 in an industry other than
9  shipyards, insulation utilities, or petrochemical, the
10  claim filing must include all available evidence that
11  conclusively demonstrates the presence of Celotex or
12  Carey Canada asbestos-containing products at the site of
13  the claimed exposure at the time the claimant worked at
14  the site.
15          It goes on to talk about:  The evidence to
16  prove that.  And then it says:  If the claimant was first
17  exposed to Celotex or Carey Canada asbestos-containing
18  products after 1975, the claim filing must include
19  demonstrated employment in an occupation involving
20  maintenance, rip-out, renovation, or repair of equipment
21  or facilities where Celotex or Carey Canada
22  asbestos-containing products were used.
23          Now, Mr. Kraus, what I do not see in this
24  description of what claimants must prove to be paid by the
25  Celotex trust, I do not see any definition of the word

23 (Pages 86 - 89)

Page 226

1 discussed this with either Dr. Dahlgren or Mr. Peckham.
2    Q.  We've seen that Dr. Dahlgren was an expert in the
3 ███████ ████████, and ███████ cases.  In how many
4 other cases has he been an expert retained by Waters &
5 Kraus?
6    A.  There are a handful of others.  I couldn't tell
7 you how many.  And -- and it, sort of, depends how you
8 defend -- define expert there.  There were cases where he
9 was a consulting expert; there were cases, like ███████
10 where he was initially listed and provided with a few file
11 materials and then not utilized as a testifying expert;
12 and then there were a handful of cases, like ███████
13 where he was proffered as a testifying expert in the case
14 and offer either deposition or trial testimony, or both as
15 was the case in ███████.  Small number of cases, mostly in
16 -- 15 to 20 years ago.
17    Q.  When was the most recent case when your firm
18 retained Dr. Dahlgren in any capacity?
19    A.  There was one nonasbestos case in the last
20 15 years that a lawyer in my firm retained Dr. Dahlgren as
21 an expert in.
22    Q.  When was the last asbestos case that your firm
23 retained Dr. Dahlgren?
24    A.  My best estimate would be more than 15 years ago.
25    Q.  Now, this article purported to present three

Page 227

1 cases of mesothelioma in which the only known exposure to
2 asbestos was from joint compound?
3    A.  Well, it's entitled "associated with the use of
4 asbestos joint compound."  Does it say the only known
5 exposure was joint compound?  Is that --
6    Q.  Yeah, look at the objectives, where it says "We
7 present three cases of mesothelioma in which the only
8 known exposure to asbestos was from joint compound."
9    A.  Okay.  I see that.
10    Q.  You agree that's what the article purported to
11 present?
12       MR. BAILEY:  Ob- -- object.  The article
13 speaks for itself.
14       But go ahead.
15       THE WITNESS:  I -- I will -- that language
16 is included under the Objectives section of the summary.
17 BY MR. WORF:
18    Q.  We deposed Dr. Dahlgren recently, and although
19 the names of the individuals in this article are not
20 included in the article, he confirmed that Case 1 is
21 ███████; Case 2 is ███████; and Case 3 is
22 ███████.
23       Does the Waters & Kraus firm have any
24 disagreement that those are the three cases discussed in
25 the article?

Page 228

1       MR. BAILEY:  Object to form.
2       But go ahead.
3       THE WITNESS:  I don't know that for certain,
4 but I understand that some of the demographic identifying
5 information that he presents on the case is about the date
6 of birth corresponds with those three individuals.
7 BY MR. WORF:
8    Q.  As well as the exposure to asbestos-containing
9 joint compound, their other occupations, their year of
10 diagnosis, and their age of diagnosis; those match the
11 characteristics of those claimants?
12    A.  I haven't gone back and done that comparison, but
13 I certainly know that the dates of the birth and the
14 exposure correspond, and I'll accept your representation
15 that the others do.  I see "age 32" for case No. 3.
16 That's clearly -- corresponds with ███████
17 age at the time of diagnosis.
18    Q.  Did Waters & Kraus ask Dr. Dahlgren to write this
19 article?
20    A.  No.
21    Q.  Did Waters & Kraus pay Dr. Dahlgren to write this
22 article?
23    A.  No.
24    Q.  Did Waters & Kraus help fund the development of
25 the article in any way?

Page 229

1    A.  Well, we would have paid Dr. Dahlgren for his
2 work as an expert witness in the case at the time that he
3 was retained as a litigation expert, but other than that,
4 no, we had no role in funding the article in any way.  We
5 didn't fund the research, writing or publication of the
6 article in any way.
7    Q.  Did Waters & Kraus communicate with Dr. Dahlgren
8 in any way about this article before it was published?
9    A.  Yes.  There was either a conversation or a
10 voicemail message, a brief conversation or a voicemail
11 message left by Dr. Dahlgren for an attorney at the firm.
12    Q.  What was the content of that message?
13    A.  The message or the conversation -- and the lawyer
14 at the firm who received it cannot recall which it was; he
15 thinks it was likely just a voicemail -- was that
16 Dr. Dahlgren was writing an article about mesothelioma and
17 joint compound exposure, and he was using cases that he
18 had received from the firm as experts -- as an expert for
19 the firm in those cases.  And I think he made a request if
20 we had additional cases in which the only or predominant
21 exposure involved joint compound, he'd be happy to include
22 those in the article as well.
23    Q.  Did Dr. Dahlgren, before he published the
24 article, tell your firm that he was including these three
25 cases and who the cases were?

Page 230

1  A.  Not that I am aware of.  Mr. Armitage's
2 recommenda- -- or recollection is that he did not discuss
3 the names of the cases in the message.
4  Q.  Before the article was published, did Waters &
5 Kraus have any communications with the International
6 Journal of Occupational and Environmental Health or any
7 peer reviewers for that publication?
8  A.  No.
9  Q.  After the article came out, your firm knew that
10 the cases discussed in the article were Waters & Kraus
11 cases?
12  A.  No.
13  Q.  You did not know that?
14  A.  Not until Georgia-Pacific filed their bankruptcy
15 claim and discussed this article in their first-day
16 filings.  I had no idea that these were Waters & Kraus
17 cases.
18  Q.  But you just said that Mr. Armitage got a
19 voicemail or another message where Dr. Dahlgren had told
20 the firm that he was using Waters & Kraus cases for this
21 article?
22  A.  Yes, I think that Mr. Armitage probably knew or
23 suspected that these were Waters & Kraus cases.  I'm
24 talking about myself here.
25  Q.  Okay.  Well, remember my instruction at the start

Page 231

1 of the deposition, when I say "you," I mean the firm.  So
2 let me just ask it again.
3  The firm knew before the article was
4 published that these were Waters & Kraus cases?
5  A.  No.  The firm knew before the article was
6 published that he was publishing an article in which he
7 was going to write about some subset of cases that the
8 firm had sent him in the past in litigation.  And these
9 cases were sent to him -- a couple of them were sent to
10 him approximately ten years before this article, and one
11 was sent to him approximately six years before the
12 article.
13  Q.  And when the article was published, the firm knew
14 that these three cases were Waters & Kraus cases?
15  MR. WRIGHT:  Object to form.
16  THE WITNESS:  Mr. Armitage knew that
17 certainly, and -- and I -- I presume some other members of
18 the firm were aware of that.
19 BY MR. WORF:
20  Q.  After the article was published, did anyone from
21 your firm tell Dr. Dahlgren that ████████ was, in fact,
22 exposed to Celotex and EaglePicher products in the Navy
23 and in his maintenance job?
24  A.  My understanding is that nobody at the firm ever
25 had any conversations of any nature with Dr. Dahlgren

Page 232

1 about this article after it was published.  And certainly,
2 we wouldn't have had the discussion that you described,
3 because that would not have been an accurate recitation of
4 the fact -- of the exposure facts in ████████ case.
5  Q.  It would not have been accurate to tell
6 Dr. Dahlgren that the firm had stated in a claim submitted
7 to the Celotex and EaglePicher trusts that ████████ had
8 been consistently exposed to asbestos in the Navy?
9  MR. BAILEY:  Object to form.
10  But go ahead.
11  MR. WRIGHT:  Object to form.
12  THE WITNESS:  We would not have had that
13 conversation because a claim form in the Celotex Trust
14 that we believed ████████ may qualify for payment in
15 that trust was not evidence, eyewitness evidence, of
16 exposure on which Dr. Dahlgren or any other expert would
17 rely to find that there was an exposure.
18  Dr. Dahlgren received all of the evidence
19 that we had, and -- on which the Celotex Trust claim was
20 based about ████████ Navy work history.  He described
21 it in the deposition that ████████ gave that he
22 received in the course of his expert work.  So he was
23 fully aware of everything we were aware of with respect to
24 the potential for Navy exposure and the basis for the
25 Celotex claim.

Page 233

1 BY MR. WORF:
2  Q.  But the firm never shared the Celotex and
3 EaglePicher Trust claims for ████████ with Dr. Dahlgren
4 to see if Dr. Dahlgren thought that the statements in
5 those claims were material to his work?
6  MR. BAILEY:  Object to form.
7  But go ahead.
8  THE WITNESS:  We would not have shared
9 lawyer work product with an expert as -- as evidence of
10 exposure.  We shared with the expert the actual evidence
11 of exposure.  The claim forms were not evidence of
12 exposure.  The claim forms were a characterization of why
13 the claim may qualify for payment in the Celotex Trust.
14 BY MR. WORF:
15  Q.  Now, I'm talking on - on the level of science
16 now, and this article, which purported to present three
17 cases of mesothelioma in which the only known exposure to
18 asbestos was from joint compound.  The Waters & Kraus firm
19 did not feel that it was important to inform either
20 Dr. Dahlgren or the journal that published this article
21 that these three plaintiffs were very likely not solely
22 exposed to asbestos from joint compound?
23  MR. WRIGHT:  Object to form.
24  MR. BAILEY:  Form, the question asking this
25 witness for a law firm on a scientific level.

59 (Pages 230 - 233)

August 30, 2022

In Re:  Bestwall, Llc

Page 234

1    THE WITNESS:  Very likely not solely
2 exposed.  I -- I can't agree with the characterization
3 that you made, and no, we would not have informed
4 Dr. Dahlgren or the journal of facts that Dr. Dahlgren was
5 aware of, which was ███████Navy work history.
6 BY MR. WORF:
7    Q.  Your firm did not tell Dr. Dahlgren or the
8 journal that published this article that ████████was
9 exposed to Celotex and EaglePicher insulation products
10 through his father's work?
11    MR. BAILEY:  Object to form.
12    THE WITNESS:  There is no direct evidence in
13 the lawsuit that was developed either in the testimony,
14 the interrogatories or -- or our investigation that
15 ████████or his father breathed asbestos dust from a
16 product mined, milled, or manufactured by Philip Carey.
17    Dr. Dahlgren was aware that ████████
18 ██alleged exposure at Pepperdine and in schools and in
19 community colleges where those kinds of products were
20 utilized.  He was not used as an asbestos expert in the
21 case to testify, and we would not have had any further
22 discussions of any sort with Dr. Dahlgren after the case
23 was closed and another expert was utilized as the
24 testifying expert on that case.
25    Q.  So you've expressed the position that statements

Page 235

1 about exposure in trust claim forms don't mean anything in
2 litigation.
3    Are you testifying as well that statements
4 about exposure in trust claim forms don't mean anything
5 when it comes to scientific articles either?
6    MR. BAILEY:  Object.
7    MR. WRIGHT:  Object to form.
8    MR. BAILEY:  Object to form and, again,
9 asking a law firm witness about scientific standards.
10    THE WITNESS:  I -- I don't know what you
11 mean by your question.  Certainly, whatever evidence that
12 we submitted about exposure in support of the claim forms
13 could be relevant scientific- -- scientifically.  But I've
14 never seen, in my 30-plus years of doing asbestos
15 litigation, any scientific medical causation argument
16 based on lawyer claim forms.
17 BY MR. WORF:
18    Q.  But you did not give the opportunity to
19 Dr. Dahlgren to make that determination because the claim
20 forms and bankruptcy submissions for ████████,
21 ██, and ████████were not shared with
22 Dr. Dahlgren at any time?
23    A.  Dr. Dahlgren published this article ten years
24 after he was an expert for us.  He didn't consult us or
25 ask for any materials from us.  And so, no, we didn't

Page 236

1 share any additional materials with Dr. Dahlgren other
2 than what he received at the time he was a litigation
3 expert.  But we never would have shared with him any
4 lawyer characterization of exposure or any lawyer claim
5 forms in asbestos bankruptcy trusts, because what lawyers
6 say, who weren't there, is not evidence of our client's
7 exposure.
8    Q.  Your firm has used this article since it was
9 published in litigation against joint compound defendants,
10 including Georgia-Pacific?
11    MR. BAILEY:  Object to form.
12    THE WITNESS:  What do you mean by "used"?
13 BY MR. WORF:
14    Q.  You've listed it as a trial exhibit in cases?
15    A.  It was probably on a list of medical articles on
16 which we may rely at trial for some of the period of time
17 after it came out.  I couldn't tell you whether it was
18 used in any way beyond being listed.
19    Q.  Your firm has retained experts who have relied on
20 this article in expressing opinions on behalf of your
21 firm's clients?
22    MR. BAILEY:  Object to form.
23    THE WITNESS:  I would have to see whether
24 any other expert that we retained relied on this article
25 for any purpose.  I can't -- I don't have an independent

Page 237

1 recollection of that.  I have checked, and the article has
2 never been cited by any other doctor as -- as authority in
3 any other medical or scientific article.  So it certainly
4 was not any significant part of our evidentiary
5 presentation in any case after it was published.
6    MR. WORF:  We've been going for a while.
7 You want to take a break?
8    THE WITNESS:  I'm fine to keep going.
9 Whatever you'd like to do.
10    MR. WORF:  Let's take a break.  Maybe I
11 could regroup and streamline.
12    THE VIDEOGRAPHER:  We're off the record at
13 4:30.
14    (Brief recess taken.)
15    THE VIDEOGRAPHER:  We are back on the record
16 at 4:51.
17 BY MR. WORF:
18    Q.  Mr. Kraus, I'm going to hand you two more
19 exhibits now.  A little less complicated than ████████
20    THE WITNESS:  Yours.  (Tenders exhibits to
21 counsel.)
22 BY MR. WORF:
23    Q.  I have handed you two exhibits.  One is entitled
24 "████████Lawsuit Documents."  Is it '████████or
25 ████████?

60 (Pages 234 - 237)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing **OBJECTION TO DEBTOR'S MOTION CHALLENGING CONFIDENTIALITY OF DEPOSITION OF DR. JAMES DAHLGREN AND RELATED DOCUMENTS** was filed in accordance with the local rules and served upon all parties registered for electronic service and entitled to receive notice thereof through the CM/ECF system.

This, the 14th day of September, 2023.

**WALDREP WALL BABCOCK
& BAILEY PLLC**

*/s/ Thomas W. Waldrep, Jr.*
Thomas W. Waldrep Jr. (NC State Bar No. 11135)
J. Dennis Bailey (NC State Bar No. 12847)
Ciara L. Rogers (NC State Bar No. 42571)
John R. Van Swearingen (NC State Bar No. 53646)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: 336-717-1280
Facsimile: 336-717-1340
Email: notice@waldrepwall.com

*Attorneys for Waters & Kraus LLP*

**VIA CM/ECF**

Eric B. Abramson on behalf of Claimants of Michael B. Serling, P.C. Listed On Appendix A to the Complaint

Darren Azman on behalf of Honeywell International Inc.

Jason Kyle Beale on behalf of Claimants of Bailey Peavy Bailey Cowen Heckaman PLLC Listed On Appendix A To The Complaint

Gill Beck on behalf of the United States of America

Thomas W. Bevan on behalf of Claimants of Bevan and Associates LPA, Inc. Listed On Appendix A To The Complaint

Jennifer Black on behalf of Claimants of Nemeroff Law Firm, PC Listed On Appendix A To The Complaint

Demi Lorant Bostian on behalf of the Debtor

Elisabeth S. Bradley on behalf of Sander Esserman

Charles W. Branham, III on behalf of Dean Omar & Branham, LLP

John Robert Brickley on behalf of Claimants of Brayton Purcell, LLP Listed On The Appendix A To The Complaint; Claimants of Cooney and Conway Listed On Appendix A To The Complaint; Claimants of Law Offices of Peter G. Angelos, P.C. Listed On Appendix A To The Complaint; Claimants of Motley Rice LLC; Claimants of O'Brien Law Firm, P.C. Listed On Appendix A To The Complaint; Claimants of Simmons Hanly Conroy; Claimants of Weitz & Luxenberg, P.C. Listed On Appendix A To The Complaint

Robert C. Buck on behalf of Claimants of Buck Law Firm Listed On Appendix A To The Complaint

John Robert Buric on behalf of Claimants of Brayton Purcell, LLP Listed On The Appendix A To The Complaint; Claimants of Cooney and Conway Listed On Appendix A To The Complaint; Claimants of Law Offices of Peter G. Angelos, P.C. Listed On Appendix A To The Complaint; Claimants of O'Brien Law Firm, P.C. Listed On Appendix A To The Complaint; Claimants of Weitz & Luxenberg, P.C. Listed On Appendix A To The Complaint; Cooney & Conway; Simmons Hanly Conroy LLC; Weitz and Luxenberg; Claimants of Motley Rice LLC; Claimants of Simmons Hanly Conroy

James David Butler on behalf of Claimants of Certain Law Firms Listed On Appendix A to the Complaint

Katharine C. Byrne on behalf of Cooney & Conway

Miller Freeman Capps on behalf of Sander Esserman

Garland S. Cassada on behalf of the Debtor

John D. Cooney on behalf of Cooney & Conway and Claimants of Cooney and Conway Listed On Appendix A To The Complaint

Stacy C. Cored on behalf of DBMP, LLC

Robert A. Cox, Jr. on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

Hana Crandall on behalf of the Debtor

Kevin R. Crandall on behalf of the Debtor

Heather W. Culp on behalf of Claimants of Bailey Peavy Bailey Cowen Heckaman PLLC Listed On Appendix A To The Complaint; Claimants of Bevan and Associates LPA, Inc. Listed On

4886-8921-5359, v. 4

Appendix A To The Complaint; Claimants of Brayton Purcell, LLP Listed On The Appendix A To The Complaint; Claimants of Buck Law Firm Listed On Appendix A To The Complaint; Claimants of Certain Law Firms Listed On Appendix A to the Complaint; Claimants of Cohen Placitella & Roth P.C. Listed On Appendix A To The Complaint; Claimants of Cooney and Conway Listed On Appendix A To The Complaint; Claimants of Flint Law Firm, LLC Listed On Appendix A To The Complaint; Claimants of Gori Julian & Associates, P.C. Listed On Appendix A To The Complaint; Claimants of Kazan, McClain, Satterley & Greenwood Listed On Appendix A To The Complaint; Claimants of Kazan, McClain, Satterley & Greenwood Listed On Appendix A To The Complaint; Claimants of Keller Fishback & Jackson, LLP Listed On Appendix A To The Complaint; Claimants of Kelley & Ferraro LLP Listed On Appendix A to the Complaint; Claimants of Law Offices of Peter G. Angelos, P.C. Listed On Appendix A To The Complaint; Claimants of Levy Konigsberg, LLP Listed On Appendix A To The Complaint; Claimants of Maune, Raichle, Hartley, French & Mudd, LLC Listed On The Appendix A To The Complaint; Claimants of Michael B. Serling, P.C. Listed On Appendix A to the Complaint; Claimants of Nass Cancelliere Listed On Appendix A To The Complaint; Claimants of Nemeroff Law Firm, PC Listed On Appendix A To The Complaint; Claimants of O'Brien Law Firm, P.C. Listed On Appendix A To The Complaint; Claimants of Rebecca S. Vinocur, P.A. Listed On Appendix A To The Complaint; Claimants of SWMW Law, LLC Listed On Appendix A To The Complaint; Claimants of Savinis Kane & Galluci, LLC and Prim Law Firm, PLLC Listed On Appendix A To The Complaint; Claimants of Shepard Law, P.C. Listed On Appendix A To The Complaint; Claimants of The Deaton Law Firm Listed On Appendix A To The Complaint; Claimants of The Ferraro Law Firm, P.A. Listed On Appendix A To The Complaint; Claimants of The Lanier Law Firm, PC Listed On Appendix A To The Complaint; Claimants of Thornton Law Firm, LLP Listed On Appendix A To The Complaint; Claimants of Waters & Kraus, LLP Listed On Appendix A To The Complaint; Claimants of Weitz & Luxenberg, P.C. Listed On Appendix A To The Complaint; and Claimants of Wilentz, Goldman & Spitzer, P.A. Listed On Appendix A To The Complaint; Constantine Venizelos

Benjamin M. Daniels on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

Timothy A. Davidson, II on behalf of Liquidity Solutions, Inc.

Harry Lee Davis, Jr. on behalf of Honeywell International Inc.

John R. Deaton on behalf of Claimants of The Deaton Law Firm Listed On Appendix A To The Complaint

Jennifer L. Del Medico on behalf of the Debtor

Thomas J. Donlon on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

Erin D. Edwards on behalf of Sander Esserman

Jeffrey Brian Ellman on behalf of the Debtor

Brad B. Erens on behalf of the Debtor

B. Chad Ewing on behalf of Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility

Debra L. Felder on behalf of Joseph W. Grier, III

James L. Ferraro, Sr. on behalf of Claimants of The Ferraro Law Firm, P.A. Listed On Appendix A To The Complaint

Mark Andrew Fink on behalf of the Official Committee of Asbestos Claimants of Bestwall, LLC

Katherine M. Fix on behalf of the Official Committee of Asbestos Claimants of Bestwall, LLC

Earl M. Forte on behalf of the Official Committee of Asbestos Claimants of Bestwall, LLC

David C. Frederick on behalf of the Official Committee of Asbestos Claimants of Bestwall, LLC

Kenneth J. Fryncko on behalf of Claimants of Savinis Kane & Galluci, LLC and Prim Law Firm, PLLC Listed On Appendix A To The Complaint

Elizabet Runyan Geise on behalf of DBMP LLC

Alisha Goel on behalf of the Debtor

Mark P. Goodman on behalf of Georgia-Pacific LLC

Gregory M. Gordon on behalf of the Debtor

Beth Gori on behalf of Claimants of Gori Julian & Associates, P.C. Listed On Appendix A To The Complaint

William Marc Graham on behalf of Dean Omar & Branham, LLP

Sean T. Greecher on behalf of Sander Esserman

Joseph W. Grier, III on behalf of Joseph W. Grier, III

Kevin Gross on behalf of the Debtor

Jonathan P. Guy on behalf of Joseph W. Grier, III

Timothy M. Haggerty on behalf of Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility

Barbara Harding on behalf of the Debtor

4886-8921-5359, v. 4

Raymond Paul Harris, Jr. on behalf of the Debtor

Edwin J. Harron on behalf of Sander Esserman

James L. Higgins on behalf of Sander Esserman

John David Hurst on behalf of Claimants of Motley Rice LLC

David A. Jagolinzer on behalf of Claimants of The Ferraro Law Firm, P.A. Listed On Appendix
A To The Complaint

James M. Jones on behalf of the Debtor

Jeffrey A. Kaplan on behalf of the Debtor

Steven Kazan on behalf of Claimants of Kazan, McClain, Satterley & Greenwood Listed On
Appendix A To The Complaint

Daniel Keller on behalf of Claimants of Keller Fishback & Jackson, LLP Listed On Appendix A
To The Complaint

Peter D. Kieselbach on behalf of U.S. Bank National Association, as Trustee

Megan A. Kirk on behalf of the Debtor

Livia M. Kiser on behalf of the Debtor

Maura Kolb on behalf of Claimants of The Lanier Law Firm, PC Listed On Appendix A To The
Complaint

Jonathan C. Krisko on behalf of the Debtor

William L. Kuzmin on behalf of Claimants of Cohen Placitella & Roth P.C. Listed On Appendix
A To The Complaint

M. Natasha Labovitz on behalf of Georgia-Pacific LLC

Andrea Landry on behalf of Claimants of Thornton Law Firm, LLP Listed On Appendix A To The
Complaint

Bryn Gallagher Letsch on behalf of Clients of Brayton Purcell LLP

Paul J. Loughman on behalf of Sander Esserman

Jeff A. McCurdy on behalf of Foster & Sear

Chris McKean on behalf of Claimants of Maune, Raichle, Hartley, French & Mudd, LLC Listed On The Appendix A To The Complaint

John R. Miller, Jr. on behalf of Georgia-Pacific LLC and the Debtor

Timothy P. Misner on behalf of the Debtor

T. Preston Moore, II on behalf of the Debtor

Edward M. Nass on behalf of Claimants of Nass Cancelliere Listed On Appendix A To The Complaint

Richard I. Nemeroff on behalf of Certain Clients of Nemeroff Law Firm, PC

Ashley Oldfield on behalf of Georgia-Pacific LLC

Diedre Woulfe Pacheco on behalf of Claimants of Wilentz, Goldman & Spitzer, P.A. Listed On Appendix A To The Complaint

Michael S. Palmieri on behalf of Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility

Felton Parrish on behalf of Young Conaway Stargatt & Taylor, LLP; Sander Esserman; and Ankura Consulting Group, LLC

James L. Patton, Jr. on behalf of Sander Esserman

Ariel J. Pinsky on behalf of the Debtor

Jill M. Price on behalf of Claimants of Flint Law Firm, LLC Listed On Appendix A To The Complaint

Natalie D. Ramsey on behalf of Simmons Hanly Conroy LLC and The Official Committee of Asbestos Claimants of Bestwall, LLC

Audrey Raphael on behalf of Claimants of Levy Konigsberg, LLP Listed On Appendix A To The Complaint

Ryan Reimers on behalf of U.S. Bank National Association, as Trustee

Preetha Suresh Rini on behalf of the Debtor

Valerie E. Ross on behalf of DBMP, LLC

4886-8921-5359, v. 4

Jason C. Rubinstein on behalf of Manville Personal Injury Settlement Trust and Delaware Claims Processing Facility

Jonathan Ruckdeschel on behalf of Clients of the Ruckdeschel Law Firm, LLC and Wilon Buckingham and Angelika Weiss

Amanda Rush on behalf of the Debtor

Cary Ira Schachter on behalf of the Debtor

David M. Schilli on behalf of the Debtor

Richard A. Schneider on behalf of the Debtor

Michael Shepard on behalf of Claimants of Shepard Law, P.C. Listed On Appendix A To The Complaint

Robert Eugene Shuttlesworth on behalf of Shrader

Charles S. Siegel on behalf of Claimants of Waters & Kraus, LLP Listed On Appendix A To The Complaint

Linda Wright Simpson on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

John Madison Spencer on behalf of Ankura Consulting Group, LLC and Young Conaway Stargatt & Taylor, LLP

Garrett Steadman on behalf of the Debtor

John Louis Steffan, IV on behalf of Certain Clients of Maune Raichle Hartley French & Mudd, LLC

Andrew W.J. Tarr on behalf of the Debtor

John F. Theil on behalf of Claimants of SWMW Law, LLC Listed On Appendix A To The Complaint

Erin A. Therrian on behalf of the Debtor

Clayton L. Thompson on behalf of Claimants of Maune, Raichle, Hartley, French & Mudd, LLC Listed On The Appendix A To The complaint

Glenn C. Thompson on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

4886-8921-5359, v. 4

Christopher J. Thoron on behalf of Claimants of O'Brien Law Firm, P.C. Listed On Appendix A To The Complaint

Matthew L. Tomsic on behalf of Georgia-Pacific LLC

Rachael M. Trummel on behalf of the Debtor

Meghan Van Vynckt on behalf of DBMP, LLC

Constantine Venizelos on behalf of Claimants of Kelley & Ferraro LLP Listed On Appendix A to the Complaint

Rebecca S. Vinocur on behalf of Claimants of Rebecca S. Vinocur, P.A. Listed On Appendix A To The Complaint

Armand J. Volta, Jr. on behalf of Claimants of Law Offices of Peter G. Angelos, P.C. Listed On Appendix A To The Complaint

Perry Weitz on behalf of Claimants of Weitz & Luxenberg, P.C. Listed On Appendix A To The Complaint

John C. Woodman on behalf of Claimants of Buck Law Firm Listed On Appendix A To the Complaint

Richard C. Worf on behalf of the Debtor

Anna Cotton Wright on behalf of Joseph W. Grier, III

Davis Lee Wright on behalf of The Official Committee of Asbestos Claimants of Bestwall, LLC

M. Bennett Wright on behalf of the Debtor

Travis G. Buchanan on behalf of Sander Esserman

4886-8921-5359, v. 4