**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re<br><br>BESTWALL LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 17-31795 (LTB) |

**DEBTOR'S OBJECTION TO**
**WILSON BUCKINGHAM AND ANGELIKA WEISS' MOTION FOR**
**RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

Bestwall LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor" or "Bestwall"), objects to the *Motion for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Dkt. 3242] (the "Motion") filed by Wilson Buckingham and Angelika Weiss (together, the "Movants").

**PRELIMINARY STATEMENT**

The Movants request that the Court lift the automatic stay to allow them to liquidate their state law claims against the Debtor in Maryland state court as if no bankruptcy case exists. They make this request (a) despite having recently failed in their efforts to dismiss this chapter 11 case to pursue their litigation,[2] (b) in the wake of a nearly identical failed request for relief from the automatic stay by other claimants (a lift stay proceeding in which Movants directly participated),[3] and (c) without asserting any unique circumstances to demonstrate cause for the

---

[1]    The last four digits of the Debtor's taxpayer identification number are 5815. The Debtor's address is 133 Peachtree Street, N.E., Atlanta, Georgia 30303.

[2]    *See* July 28, 2023 Hr'g Tr., 6:9-14:14 (denying *Mot. to Dismiss of Claimants Wilson Buckingham and Angelika Weiss* [Dkt. 2882] (the "Dismissal Motion") and *Official Committee of Asbestos Claimants' Mot. to Dismiss for Lack of Subject Matter Jurisdiction* [Dkt. 2925]).

[3]    *See Order Denying Richard and Joann Dale's Mot. for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Dkt. 3218]; Oct. 19, 2023 Hr'g Tr., 69:5-71:13 (oral ruling denying *Richard and Joann Dale's Mot. for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Dkt. 3127] (the "Dale Motion")).

NAI-1538981770

requested relief. The Motion—like the recently denied Dale Motion—focuses on attacking both the prepetition restructuring that created the Debtor and the Debtor's chapter 11 case based on arguments already rejected by this Court multiple times and that are irrelevant to the lift stay analysis.

In seeking relief from the stay, the Movants claim they are "taking the action explicitly suggested to them by the Fourth Circuit." Mot. at 2. (*quoting Bestwall LLC v. Official Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 183 (4th Cir. 2023)). But this Court already rejected that notion, agreeing with the Debtor "that the Fourth Circuit's opinion confirms the importance of centralizing all of the pending claims in the bankruptcy court . . . " Oct. 19, 2023 Hr'g Tr., 70:17-20. Contrary to the Movants' assertions that lifting the stay will not harm the Debtor or interfere with this case, the Court has found that "allowing the ongoing litigation of asbestos claims against the debtor in state court could cause irreparable harm to the debtor, which could defeat the purpose of this bankruptcy case and ***could be akin to the dismissal of the case***." *Id.* at 71:1-4 (emphasis added). The Court should once again reject what is yet another effort to achieve an effective dismissal of this case—here by parties whose actual Dismissal Motion was recently denied.

The Debtor needs the protection of the automatic stay to preserve its ability to permanently, fully, and equitably resolve current and future asbestos claims through the establishment of a section 524(g) trust. Neither the *Robbins* factors, used by courts in the Fourth Circuit to assess whether cause exists to lift the automatic stay, nor the *Curtis* factors, used in other jurisdictions, weigh in favor of granting the Motion, especially where the Movants have failed to

---

The Movants filed a statement in support of the lift stay request (*see* Dkt. 3144) (the "Statement in Support of Dale Motion"), and argued at the hearing on the Dale Motion. Oct. 19, 2023 Hr'g Tr., 33:1-25, 64:14-23.

demonstrate any unique facts or circumstances that would distinguish their case from the tens of thousands of other cases that are pending or might be asserted against the Debtor. Despite the Movants' assertions to the contrary, (a) bankruptcy court expertise is necessary to address estimation and global resolution of the current and future asbestos claims against the Debtor; (b) lifting the automatic stay would undermine, not promote, judicial economy; and (c) the Debtor's estate would not be adequately protected if the automatic stay were lifted. The Motion should be denied for the same reasons the Dale Motion was denied.

## ARGUMENT

**I.  NO UNIQUE FACTS OR CIRCUMSTANCES JUSTIFY LIFTING THE AUTOMATIC STAY AS TO THE MOVANTS.**

1. As previously found by the Court,[4] the Fourth Circuit's statement that, when "appropriate," claimants can bring motions "for relief based on the specific facts of a particular claim"[5] is of no benefit to the Movants where they, like the movants in the Dale Motion,[6] fail to assert any new or unique facts or circumstances that justify treating them differently from the thousands of other asbestos-related claimants whose claims also are stayed. *Bestwall*, 71 F.4th at 183.

---

[4] Oct. 19, 2023 Hr'g Tr., 70:20-71:1 ("while the Fourth Circuit did say that rather than waiting for plan confirmation, and I quote, 'Claimants can bring individual actions for relief based on the specific facts of a particular claim,' the Dales have not pled any facts specific or unique to them to cause this Court to find that there's cause to grant their motion for relief from stay").

[5] The Debtor denies the Movants' allegation that "Old Georgia-Pacific negligently and unnecessarily exposed Mr. Buckingham to deadly asbestos dust on a regular basis and for many years," Mot. at 4. *See, Informational Br. of Bestwall LLC* [Dkt. 12] and *Debtor's Resp. to Informational Br. of the Official Committee of Asbestos Claimants of Bestwall LLC* [Dkt. 1034]. Nonetheless, this allegation is irrelevant to the issues presented by the Motion.

[6] *See Debtor's Obj. to Richard and Joann Dale's Mot. for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [Dkt. 3140] (the "Debtor's Dale Objection"), at 3-4; *see also In re W.R. Grace & Co.*, 2007 WL 1129170, at *3 (Bankr. D. Del. Apr. 13, 2007) ("There is no indication that the state court claims are in any way unique, or that, if proven, Debtors' liability to the State, if any, will be distinguishable from liability for any of the other hundreds of thousands of asbestos claims asserted against Debtors. The State of Montana is in no different position than any other creditor claiming an injury by the Debtor entities based on asbestos.").

2. None of the Motion's alleged grounds for uniqueness—that (a) the Debtor "is a non-distressed billionaire;" (b) "Mr. Buckingham was diagnosed with mesothelioma after the Debtor filed for bankruptcy relief;" or (c) the controlling law for Mr. Buckingham's claims may be disputed, Mot. at 7-8—withstand scrutiny. Instead of demonstrating the uniqueness of the Movants' "particular claim," any one of thousands of claimants could assert these very same grounds. Indeed, the claimants in the Dale Motion had similarly been diagnosed after the filing of the chapter 11 case and argued in support of lifting the stay that the Debtor had the ability to pay asbestos claims in full given its alleged unlimited funding. *Compare* Dale Mot. at 1-2 ("[Claimant] was diagnosed . . . in September 2022"), 7 ("The Debtor has unlimited funding from New Georgia-Pacific") *with* Mot. at 7 ("Mr. Buckingham was diagnosed in February 2020"), 5 ("Bestwall and New Georgia-Pacific's massive wealth – available to Bestwall via the unlimited funding agreement").

3. The Court properly denied relief under those circumstances, recognizing that the facts presented were not unique, finding that the Debtor would be irreparably harmed by the relief, and emphasizing that when there is "a mass tort asbestos case with an excess of 60,000 claimants . . . the Court is obliged to consider the motion in that context." Oct. 19, 2023 Hr'g Tr., 69:24-70:11, 71:1-4. Here, the Movants have offered no unique grounds to distinguish the Court's ruling on the Dale Motion or to justify disregarding the context of this case.

4. Granting the Motion would establish a precedent for potentially thousands of other similarly situated claimants to seek the same relief in a piecemeal fashion, sabotaging the Debtor's prospects for reorganization. *See* Oct. 19, 2023 Hr'g Tr., 70:1-8 ("while it may be . . . speculative to assume that granting the Dales' motion for relief from stay would result in a wave of similar motions, I believe that that's a fair and reasonable assumption, . . . and if I grant this

motion I think I would be hard pressed to deny future motions for relief from stay in this case"); *In re Aldrich Pump LLC*, No. 20-30608 (JCW) (Bankr. W.D.N.C.) Mar. 30, 2023 Hr'g Tr., 67:8-12 (in denying motion to lift the automatic stay, Judge Whitley stating that if he were to "grant relief from stay to one creditor to liquidate the claim, all of the claimants will – not all – but a substantial number of the claimants, enough to wreck the bankruptcy case, will seek like measure and that effectively precipitates a *de facto* dismissal of the case"). Other courts likewise have rejected motions to lift the automatic stay when they risk opening the floodgates for other similar claimants.[7] In fact, the Movants' request for this relief so soon after the denial of the Dale Motion demonstrates that copycat motions are a risk, and one that could grow exponentially if one such motion is granted. The Court should reject the Motion as it did the Dale Motion.

II. **THE MOVANTS' OTHER ARGUMENTS PREVIOUSLY HAVE BEEN REJECTED AND ARE IRRELEVANT TO THE LIFT STAY ANALYSIS.**

5. Having failed to demonstrate any unique circumstances, the Motion merely repeats the Movants' narrative about the alleged illegitimacy and bad faith of this chapter 11 case and premature and irrelevant arguments about jury trial rights and claim recovery under a plan of reorganization. Mot. at 1-12. These arguments, many of which have been previously presented to and rejected by this Court, are misguided and irrelevant to the analysis for adjudicating a motion to lift the automatic stay. The Movants themselves made many of these same arguments in their Statement in Support of the Dale Motion, as well as in their denied Dismissal Motion.

6. ***First***, in asserting that Bestwall filed its chapter 11 case in bad faith with no legitimate purpose, Mot. at 5-10, the Movants ignore this Court's previous findings that

---

[7] *See, e.g.*, *In re Motors Liquidation Co.*, 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates to claimants with similar allegations is "the very state of affairs the automatic stay was enacted to prevent"); *In re SunEdison, Inc.*, 557 B.R. 303, 308 (Bankr. S.D.N.Y. 2016) ("Granting stay relief to Vivint may encourage other claimants to file their own stay relief motions.").

"[a]ttempting to resolve asbestos claims through 11 U.S.C. § 524(g) is a ***valid reorganizational purpose***, and filing for Chapter 11, especially in the context of an asbestos or mass tort case, need not be due to insolvency . . . . The volume of current asbestos claims that Bestwall faced as of the Petition Date, coupled with the projected number of claims to be filed through 2050 and beyond, is ***sufficient financial distress*** for Bestwall to seek resolution under section 524(g) of the Bankruptcy Code." *In re Bestwall LLC*, 605 B.R. 43, 49 (Bankr. W.D.N.C. 2019) (emphasis added). Also disregarded is the Court's most recent oral ruling denying the Dismissal Motion filed by the same Movants, in which the Court stated that it would decline to reconsider arguments regarding the Debtor's alleged lack of financial distress and bad faith in filing the case. July 28, 2023 Hr'g Tr., 13:13-14:14.[8] The Court should reject the Movants' back-door attempt—

---

[8] The Movants cite a long list of cases allegedly supporting their argument that lack of good faith can constitute cause to lift the automatic stay, but those cases are distinguishable and irrelevant here. *See* Mot. at 6-7, 6 n.6. Only a few of these cases addressed bad faith in the context of the automatic stay, and none of the cases involved a mass tort debtor with tens of thousands of actions pending against it as of the filing of the bankruptcy case. In fact, most of the cases focused on dismissal or fee award issues and involved single-asset debtors seeking to avoid foreclosures or other two-party disputes. *See, e.g.*, *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) (reversing and remanding bankruptcy court order lifting the automatic stay to allow secured creditor to foreclose on real-estate property); *In re Thirtieth Place, Inc.*, 30 B.R. 503 (Bankr. App. 9th Cir. 1983) (dismissing bankruptcy case filed by debtor to delay foreclosure); *In re Talladega Steaks, Inc.*, 50 B.R. 42 (Bankr. N.D. Ala. 1985) (dismissing bankruptcy case involving dispute between shareholders and management of the debtor); *In re Kinney*, 51 B.R. 840 (Bankr. C.D. Cal. 1985) (imposing sanctions on attorney due to multiple repeat filings in cases that were dismissed for bad faith); *In re Silver*, 46 B.R. 772 (D. Colo. 1985) (reviewing award of attorney's fees as a result of a bad faith filing); *In re Volpe*, 53 B.R. 46 (Bankr. M.D. Fla. 1985) (dismissing bankruptcy case filed primarily to stop pending foreclosure sale); *In re Martin*, 51 B.R. 490 (Bankr. M.D. Fla. 1985) (dismissing bankruptcy case involving two-party dispute); *In re Setzer*, 47 B.R. 340 (Bankr. E.D.N.Y. 1985) (dismissing bankruptcy case filed as a litigation tactic to circumvent a district court order and where debtor faced only a handful of lawsuits); *In re Port Richey Serv. Co.*, 44 B.R. 634 (Bankr. M.D. Fla. 1984) (dismissing bankruptcy case involving two-party dispute); *In re Winn*, 43 B.R. 25 (Bankr. M.D. Fla. 1984) (dismissing bankruptcy case essentially involving two-party dispute); *Basin Elec. Power Co-op v. Midwest Processing Co.*, 47 B.R. 903, (D.N.D. 1984), *aff'd*, 769 F.2d 483 (8th Cir. 1985) (dismissing involuntary bankruptcy case involving two-party dispute); *In re Scott*, 42 B.R. 35 (Bankr. D. Ore. 1984) (granting motion to lift stay to allow foreclosure of real estate property); *Furness v. Lilienfield*, 35 B.R. 1006 (D. Md. 1983) (dismissing bankruptcy case filed to delay a single trial in the district court); *In re Corp. Deja Vu*, 34 B.R. 845 (Bankr. D.Md. 1983) (granting motion to lift stay to allow foreclosure of real-estate project); *In re 299 Jack-Hemp Assocs.,* 20 B.R. 412 (Bankr. S.D.N.Y. 1982) (dismissing bankruptcy case filed to stop foreclosure); *In re Lotus Invs., Inc.*, 16 B.R. 592 (Bankr. S.D. Fla. 1981) (granting motion to lift stay to allow foreclosure of real-estate project); *Matter of Winshall Settlor's Tr.*, 758 F.2d 1136 (6th Cir. 1985) (dismissing bankruptcy case); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984) (dismissing bankruptcy case and annulling automatic stay in case filed on the eve of foreclosure).

-6-

through the filing of a motion to lift the automatic stay—to relitigate these issues and achieve what could amount to an effective dismissal of the case.

7. **Second**, the Movants' arguments that Mr. Buckingham has an absolute right to liquidate his individual claims before a jury and that aggregate estimation is irrelevant are incorrect. Mot. at 1-2, 11-12. The use of estimation in mass tort cases is well-established as proper, and that issue previously was litigated and decided in this case. *See A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1012-13 (4th Cir. 1986) ("[E]ven though the tort claimants may be entitled to their jury trials, the bankruptcy court is not relieved of its duty in a Chapter 11 proceeding to estimate those contingent claims. . . . The authorities which have considered this question in connection with a complicated products liability situation such as this are all unanimous. ***The estimations of the potential and pending claims by the bankruptcy courts should precede any trials of the claims.*** This was specifically held in the asbestos cases.") (emphasis added); *see also Order Authorizing Estimation of Current and Future Mesothelioma Claims* [Dkt. 1577] (the "Estimation Order"), ¶ 7 ("[E]stimation of the Bestwall Asbestos Claims is appropriate in this chapter 11 case for purposes of negotiation and confirmation of a plan of reorganization, and such estimation would not be for purposes of determining the distribution to claimants on account of those claims and would not implicate claimants' due process rights").

8. Since entry of the Estimation Order on January 19, 2021, the parties have been working towards estimation and currently are in the midst of estimation-related discovery. Lifting the stay and allowing the Movants' claims to proceed to liquidation, outside of the Court-authorized estimation process, would (a) be wholly inconsistent with the ultimate goal of estimation—establishing an aggregate value for the asbestos-related claims asserted against the Debtor and avoiding the liquidation of individual asbestos claims; and (b) potentially trigger a

wave of similar requests that would, at a minimum, distract the parties from the estimation proceeding. The Movants' conclusory assertions to the contrary are unavailing.

9. ***Finally***, the Movants' arguments regarding claimant recoveries under a proposed plan of reorganization, Mot. at 3, 10-11, are plan confirmation issues—not reasons to lift the automatic stay. The Movants' objections to this chapter 11 case and what they perceive to be the Debtor's approach to a plan are irrelevant at this juncture, especially since the Movants will have the opportunity to assess and object to the Debtor's proposed plan at the appropriate time.

### III.  THE *ROBBINS* FACTORS ALL WEIGH AGAINST GRANTING THE MOTION.

10. The automatic stay embodied in section 362 of the Bankruptcy Code has been described as "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l. Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (citation omitted). The bankruptcy court however, in certain appropriate circumstances, may lift the stay "for cause." Section 362(d)(1) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) ***for cause*** . . . .

11 U.S.C. § 362(d)(1) (emphasis added). "Cause" is a flexible concept, and a bankruptcy court is granted discretion to determine when relief is appropriate on a case-by-case basis. *See In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

11. In the Fourth Circuit, courts use the factors laid out in *Robbins* to determine whether there is cause to lift the stay. Oct. 19, 2023 Hr'g Tr., 69:11-13; *see also In re Lee*, 461 Fed. App'x. 227, 231 (4th Cir. 2012) (identifying the *Robbins* factors as the appropriate factors for a

lift stay analysis).  Consideration of each of the *Robbins* factors in the context of this case supports denial of the Motion, notwithstanding the Movants' allegations of bad faith.[9]

### A. Whether the Issues in the Pending Litigation Involve Only State Law and, Thus, the Expertise of the Bankruptcy Court Is Unnecessary.

12. The Movants argue that their claims "involve only state law claims" and that, as a result, bankruptcy expertise is not needed.  Mot. at 13-14.  But, by virtue of the Debtor's chapter 11 case and the Estimation Order, the expertise of this Court is necessary.  The Court is in the midst of overseeing an estimation proceeding for the asbestos-related claims against the Debtor and is uniquely equipped to address the myriad of issues involved in estimating the thousands of claims for purposes of negotiating, formulating, and confirming a chapter 11 plan.  Such estimation is not a proceeding that can occur in state court or any forum other than a bankruptcy court, and "should precede any trials of the claims."  *Piccinin*, 788 F.2d at 1012.  In addition, Congress enacted section 524(g) of the Bankruptcy Code because it contemplated having the bankruptcy court, not individual state courts, address and facilitate the comprehensive resolution of asbestos claims.  *See* H. Rep. 103-835, 2d Sess., 40-41 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3348-49.

13. The Debtor's chapter 11 case is the only proceeding in which the Debtor can achieve a global and equitable resolution of its current and future asbestos-related claims.  Lifting the stay undermines the bankruptcy court's ability pursuant to section 524(g) to effect such a result.  *See* Oct. 19, 2023 Hr'g Tr., 71:1-4 ("allowing the ongoing litigation of asbestos claims

---

[9] Contrary to the Movants' statement that "Bestwall's bad faith was not explicitly before the Court" in the Dale Motion, Mot. at 13, the Dale Motion raised the same arguments:  Bestwall's ability to pay claims in full, Dale Mot. at 7-8, the asserted deprivation of claimants' right to a jury trial, *id.* at 11-12, 22-24, and the alleged manipulation of the Bankruptcy Code and weaponization of the automatic stay by Bestwall and its affiliates, *id.* at 13-14.  These issues also were raised by the Movants in their Statement in Support of Dale Motion.

against the debtor in state court could cause irreparable harm to the debtor, which could defeat the purpose of this bankruptcy case and could be akin to the dismissal of the case"); *Bestwall LLC v. Those Parties Listed on Appendix A to Complaint (In re Bestwall LLC)*, 606 B.R. 243, 255 (Bankr. W.D.N.C. 2019) (the "PI Order") ("The Debtor filed its Chapter 11 case to obtain a global and fair determination of all current and future Bestwall Asbestos Claims. . . . It would defeat the purpose of the Chapter 11 case if those claims effectively continue to be prosecuted in the tort system notwithstanding the pendency of the Debtor's bankruptcy case").[10]

        **B.**        **Whether Modifying the Stay Will Promote Judicial Economy and Whether There Would Be Greater Interference with the Bankruptcy Case if the Stay Were Not Lifted Because Matters Would Have to Be Litigated in Bankruptcy Court.**

14.    The Movants assert that relief would be in the interest of judicial economy because "the Maryland state court has already resolved all other similar claims brought by the Movants," the liquidation of the Movants' claims would assist them in analyzing any proposed plan, and the Debtor and its affiliates cannot weaponize the automatic stay. Mot. at 14-15.

15.    To start, the automatic stay is not a weapon of the Debtor or its affiliates, as suggested by the Movants, Mot. at 15, but rather is a statutory protection critical to achieving the objective of this case—a global resolution and payment of all valid current and future claimants on a fair and equitable basis through the establishment of a section 524(g) trust. "[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d

---

[10] The Movants' statement that the Fourth Circuit "upholding the preliminary injunction as to non-debtor affiliates is not the same as the stay protecting the Debtor," Mot. at 13, ignores this Court's statement that it believed it "should deny the [Dale] motion for the same reasons [it] determined [it] should grant the motion for a preliminary injunction" and finding that the Debtor would be irreparably harmed absent an injunction. *See* Oct. 19, 2023 Hr'g Tr., 70:12-17, 71:1-4.

Cir. 1990). This Court and the District Court, with the Fourth Circuit affirming, have recognized the importance of centralizing claims against the Debtor and its affiliates. *See* Oct. 19, 2023 Hr'g Tr., 70:17-20 (agreeing with the Debtor "that the Fourth Circuit's opinion confirms the importance of centralizing all pending claims in the bankruptcy court"); *Future Claimants Representatives v. Bestwall LLC (In re Bestwall LLC)*, 2022 WL 68763 at *8 (W.D.N.C. Jan. 6, 2022) ("The Court agrees with the Bankruptcy Court that the Debtor would be irreparably harmed if the injunction was not granted and litigation against the Non-Debtor Parties continued in numerous courts across the country, with potentially lasting consequences on the Debtor's ability to defend itself, its potential liability, and its efforts to effectively reorganize."); *Bestwall*, 71 F.4th at 179 ("And the possible effect on the Bestwall bankruptcy estate of litigating thousands of identical claims in state court is sufficient to confer 'related to' jurisdiction.").

16. Further, allowing the Movants' claims to be liquidated in state court will not change the estimation task before this Court or 'aid' the thousands of other claimants in plan evaluation. The Court still will need to estimate on an aggregate basis the thousands of claims pending against the Debtor and those that are expected to be filed in the future. *See Decl. of Tyler L. Woolson in Supp. First Day Pleadings* [Dkt. 2] ¶ 25 (as of September 30, 2017, approximately 64,000 asbestos claims were pending against Bestwall in nearly every state and certain territories of the United States, including 22,000 in active litigation). As set forth above, there is simply no basis to distinguish the Movants' claims from the thousands of other pending asbestos claims against the Debtor.

17. And permitting the Movants to initiate state court litigation against the Debtor under these circumstances undoubtedly would lead to a spate of similar requests in this case, all of which would need to be litigated and addressed by the parties and this Court. *See LTL*

*Mgmt. LLC*, No. 21-30589 (JCW) (Bankr. W.D.N.C.) Nov. 10, 2021 Hr'g Tr., 155:8-22 (Judge Whitley: "The problem we have here is 38,000 plus claims, plus all those that are going to come to, to light. If I start with one, I'm going to have to go to dozens, if not hundreds, if not thousands . . . . I don't think I can start making exceptions or this will all unravel and we'll be back at where we were before.").

18. The most efficient and economic resolution of not just the Movants' claims, but the thousands of similarly situated current and future asbestos claims against the Debtor, is through the bankruptcy process and the creation of a trust that can timely and equitably pay claims.[11] This Court and the Fourth Circuit previously have recognized the benefits to all claimants from bankruptcy and the creation of a section 524(g) trust in this case.[12]

19. If the Motion, which demonstrates no unique circumstances or any cause for relief, is granted, similar motions are certain to follow, judicial economy would not be promoted, and claims would not be resolved globally in a single forum. The Debtor's ability to treat all claimants equitably through a section 524(g) trust would become impossible. *See* Oct. 19, 2023 Hr'g Tr., 70:1-8 (stating that it is a fair and reasonable assumption that granting a

---

[11] The purpose of the estimation proceeding is to permit formulation and confirmation of a plan of reorganization with trust procedures that obviate the need to litigate all of the tens of thousands of claims against the Debtor. Under such a plan, the Movants and all other claimants will have the opportunity to accept payment from the eventual trust in lieu of litigating and to pursue the alternative dispute resolution mechanisms common in trust procedures. It is far from certain that any personal injury claims will have to be litigated if a plan of reorganization is confirmed—indeed, it is extremely rare for litigation to be initiated against asbestos trusts, despite claimants' rights to pursue such litigation against the trust under most trusts' procedures.

[12] *See* PI Order at 257 ("Additionally, a section 524(g) trust will provide all claimants—including future claimants who have yet to institute litigation—with an efficient means through which to equitably resolve their claims. . . . And the process and timing to effectuate a section 524(g) trust are, to a large extent, within the control of the parties in this case."); *Bestwall*, 71 F.4th at 183 ("These bankruptcy procedures promote the equitable, streamlined, and timely resolution of claims in one central place compared to the state tort system, which can and has caused delays in getting payment for legitimate claimants."); *Piccinin*, 788 F.2d at 1013 ("If the bankruptcy court could arrive at a fair estimation of the value of all the claims and submit a fair plan of reorganization based on such estimation, with some mechanism for dispute resolution and acceptable to all interested parties, great benefit to all the claimants could be achieved and the excessive expense of innumerable trials, stretching over an interminable time, could be avoided.").

NAI-1538981770

claimant relief from stay likely would lead to a wave of similar motions and that Court would be hard pressed to deny future motions on similar grounds); *Aldrich Pump*, Mar. 30, 2023 Hr'g Tr., 67:8-12 (finding that granting claimant's motion to lift the stay likely would lead to similar motions from other claimants and "effectively precipitate[] a *de facto* dismissal of the case."). This Motion—filed only two weeks after an order was entered **denying** the Dale Motion—is further proof that an order granting such a motion risks opening the floodgates.

      **C.**      **Whether the Estate Can Be Protected Properly by a Requirement That Creditors Seek Enforcement of Any Judgment Through the Bankruptcy Court.**

      20.      The Movants argue that there will be no harm to the bankruptcy estate as they "seek only to liquidate" their claims and agree "that that amount will not be paid" until this Court allows it. Mot. at 16. Even without payment, allowing the Movants' claims to proceed to liquidation would harm the estate. The financial burden of defending against the Movants' claims in the tort system, in addition to the cost of litigation related to follow-on lift stay requests, would be immense.[13] And this additional litigation, in the form of lift stay motions and tort litigation, would divert the parties' attention from the estimation process and from negotiation and formulation of a plan, leading to considerable delay.[14]

      21.      As the Court found in staying litigation in the PI Order, "[t]hese [litigation] activities consumed many of the same personnel prior to the Chapter 11 case and, if resumed,

---

[13]    This burden also would entail time, effort, and costs to Bestwall in retaining tort system defense counsel—who would have to investigate each case, digest the activity that has occurred in the case with respect to the co-defendants, and evaluate the need for and substance of any additional discovery to be undertaken on Bestwall's behalf—and working with that counsel on the defense of each claim, including discovery, retention of experts, and trial preparation that must occur in each case.

[14]    *See Piccinin*, 788 F.2d at 1012 (holding that purpose of chapter 11 "to ascertain whether a fair reorganization of the debtor can be achieved" "may well be completely thwarted if the energies of the debtor's executives and officers are initially diverted by, and the resources of the debtor are dissipated in the expenses of litigating, the trial of thousands of personal injury suits in courts throughout the land spread over an interminable period of time.").

would consume them again and, therefore, impair the ability of the Debtor to address tasks necessary to pursue a plan of reorganization pursuant to section 524(g) of the Bankruptcy Code." PI Order at 249; *see also* PI Order at 255 ("[T]he Debtor will be irreparably harmed unless the requested injunction is continued.").

22. The circumstances here are no different than when the Court denied the Dale Motion. *See* Dale Mot. at 15 (arguing that the Debtor's estate is sufficiently protected if the stay were to be lifted because the movants "seek only to liquidate" their claims and "agree [that] amount will not be paid to them until this Court allows it."); Oct. 19, 2023 Hr'g Tr., 70:12-17 (Court's statement that it believed it "should deny the [Dale] motion for the same reasons [it] determined [it] should grant the motion for a preliminary injunction"). The Movants' requested relief thus does not adequately protect the Debtor.

### D. The *Curtis* Factors Are Not Binding and Do Not Support Lifting the Stay.

23. Emphasizing the "more nuanced examination of 'cause'" under the factors set forth in *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), but without actually analyzing any of those factors, the Movants assert that "the greater balance of hurt is unquestionably born by Movants" because "the Debtor will not be impacted" if the stay is lifted. Mot. at 16-17.

24. This bare assertion, however, ignores that (a) the Movants' claims are indistinguishable from the myriad other asbestos claims against the Debtor; (b) lifting the stay would result in the Movants receiving preferential treatment as compared to other claimants, lead to disparate recoveries on similar claims, and impede the Debtor's ability to make progress toward the establishment of a trust for the benefit of claimants; (c) the Movants already have achieved recoveries on their claims as a result of settlements with "several asbestos trusts and defendants," Mot. at 4; (d) the establishment of an asbestos trust would result in a far more timely and efficient

-14-

process that ultimately would reduce delay and eliminate uncertainty and unjustified disparate results, thereby ensuring prompt, consistent, and equitable treatment for current and future asbestos claimants, *see Decl. of Jorge Gallardo-Garcia, PhD* [Dkt. 988], Ex. F, ¶ 8 (stating that approximately 75% of the unresolved asbestos-claims against the Debtor had been pending for ten or more years as of the petition date and more than 55% of the unresolved asbestos-claims against the Debtor were 15 or more years old as of the petition date); and (e) delay on its own is insufficient to justify relief from the automatic stay. *See DBMP LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000 (In re DBMP LLC)*, 2021 WL 3552350 at *34 (Bankr. W.D.N.C. Aug. 11, 2021) ("While courts seek to minimize the time consumed by these case events, there is no avoiding such 'harm,' if there is to be a bankruptcy case, at all. If delay alone were enough to provide 'cause,' the stay would be terminated in every case.").[15]

## CONCLUSION

For these reasons and the same reasons the Court denied the Dale Motion, the Debtor respectfully requests that the Court deny the Motion and grant the Debtor such other and further relief as the Court may deem proper.

---

[15] For the reasons set forth in the Debtor's Dale Objection, the rest of the *Curtis* factors similarly weigh in favor of denying the Motion.

NAI-1538981770

| | |
|---|---|
| Dated:  January 11, 2024<br>　　　　Charlotte, North Carolina | Respectfully submitted,<br><br> /s/   *Garland S. Cassada*　　　　　　　<br>Garland S. Cassada (NC Bar No. 12352)<br>Richard C. Worf, Jr. (NC Bar No. 37143)<br>ROBINSON, BRADSHAW & HINSON, P.A.<br>101 North Tryon Street, Suite 1900<br>Charlotte, North Carolina  28246<br>Telephone:  (704) 377-2536<br>Facsimile:  (704) 378-4000<br>E-mail:	gcassada@robinsonbradshaw.com<br>　　　　rworf@robinsonbradshaw.com<br><br>Gregory M. Gordon (TX Bar No. 08435300)<br>JONES DAY<br>2727 North Harwood Street, Suite 500<br>Dallas, Texas  75201<br>Telephone:  (214) 220-3939<br>Facsimile:  (214) 969-5100<br>E-mail:	gmgordon@jonesday.com<br>(Admitted *pro hac vice*)<br><br>Jeffrey B. Ellman (GA Bar No. 141828)<br>JONES DAY<br>1221 Peachtree Street, N.E., Suite 400<br>Atlanta, Georgia  30361<br>Telephone:  (404) 581-3939<br>Facsimile:  (404) 581-8330<br>E-mail:	jbellman@jonesday.com<br>(Admitted *pro hac vice*)<br><br>ATTORNEYS FOR DEBTOR AND<br>DEBTOR IN POSSESSION |

NAI-1538981770