**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>BESTWALL LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No. 17-31795 (LTB) |

## SECOND AMENDED PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS AND THE FUTURE CLAIMANTS' REPRESENTATIVE

Glenn C. Thompson (Bar No. 37221)
HAMILTON STEPHENS STEELE
+ MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
gthompson@lawhssm.com

Judy D. Thompson
Linda W. Simpson
JD THOMPSON LAW
Post Office Box 33127
Charlotte, North Carolina 28233
Telephone: (828) 749-1865
jdt@jdthompsonlaw.com
lws@jdthompsonlaw.com

Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Laurie A. Krepto (DE Bar No. 4109)
ROBINSON & COLE LLP
1201 N. Market Street, Suite 1406
Wilmington, Delaware 19801
Telephone: (302) 516-1700
Facsimile: (302) 516-1699
nramsey@rc.com
dwright@rc.com
lkrepto@rc.com

*Co-Counsel to the Official Committee of Asbestos Claimants*

Edwin J. Harron
Sharon M. Zieg
YOUNG CONAWAY STARGATT &
TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
eharron@ycst.com
szieg@ycst.com

Felton E. Parrish
YOUNG CONAWAY STARGATT &
TAYLOR LLP
227 West Trade Street, Suite 1910
Charlotte, North Carolina 28202
fparrish@ycst.com

*Counsel for the Future Claimants' Representative*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 1

SUMMARY OF PLAN .................................................................................. 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND
COMPUTATION OF TIME ........................................................................... 3

    A.    Defined Terms ............................................................................... 3

    B.    Rules of Interpretation and Computation of Time ............................. 16

ARTICLE II CLASSES OF CLAIMS AND INTERESTS .................................. 16

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ............................ 17

    A.    Unclassified Claims ...................................................................... 17

    B.    Classified Claims ......................................................................... 19

ARTICLE IV ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION
BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS ............... 21

    A.    Classes Entitled to Vote ................................................................ 21

    B.    Class Acceptance Requirement ....................................................... 22

    C.    Solicitation of Votes ..................................................................... 22

    D.    Setoff ......................................................................................... 22

ARTICLE V MEANS FOR IMPLEMENTATION OF THE § 524(g) ALTERNATIVE ......... 22

    A.    Funding Under the Funding Agreement; Establishment of Claims Reserve ....... 22

    B.    Assignment of Funding Agreement .................................................. 23

    C.    Continued Corporate Existence and Vesting of Assets in Reorganized
Bestwall ..................................................................................... 23

    D.    Restructuring Transactions ............................................................. 23

    E.    Reinstatement of Equity in Reorganized Bestwall .............................. 24

    F.    Reorganized Bestwall Governance; Managers and Officers; Employment-
Related Agreements and Compensation Programs; Corporate Action ......... 24

    G.    Obtaining Cash for Plan Distributions ............................................. 25

    H.    Creation of Asbestos PI Trust ........................................................ 25

    I.    Appointment of Asbestos PI Trustee(s) ............................................ 25

    J.    Transfers of Property to and Assumption of Certain Liabilities by the
Asbestos PI Trust ........................................................................ 25

    K.    Indemnification by the Asbestos PI Trust ......................................... 27

    L.    Assignment of Rights of Action ..................................................... 28

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| M. | Release of Encumbrances | 29 |
| N. | Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes | 29 |
| O. | Compliance with QSF Regulations | 30 |

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE UNIMPAIRMENT ALTERNATIVE .... 30

| | | |
|---|---|---|
| A. | Means of Implementation | 30 |
| B. | No Discharge of Claims or Termination of Interests | 30 |
| C. | Revesting of Assets in the Debtor | 30 |
| D. | Assumption of the Funding Agreement. | 30 |
| E. | Litigation Trust. | 31 |
| F. | Protection Against Liability of the Litigation Trustee. | 33 |

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .... 33

| | | |
|---|---|---|
| A. | The § 524(g) Alternative | 33 |
| B. | The Unimpairment Alternative | 36 |

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS .... 37

| | | |
|---|---|---|
| A. | Distributions for Claims Allowed as of the Effective Date | 37 |
| B. | Method of Distributions to Holders of Claims | 37 |
| C. | Compensation and Reimbursement for Services Related to Distributions | 37 |
| D. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 37 |
| E. | Distribution Record Date | 38 |
| F. | Means of Cash Payments | 38 |
| G. | Timing and Calculation of Amounts to Be Distributed | 39 |
| H. | Setoffs | 40 |
| I. | Allocation of Payments | 40 |
| J. | Distributions under the Unimpairment Alternative | 40 |

ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED CLAIMS .... 41

| | | |
|---|---|---|
| A. | Prosecution of Objections to Claims | 41 |
| B. | Treatment of Disputed Claims | 41 |
| C. | Distributions on Account of Disputed Claims Once Allowed | 41 |

ii

## TABLE OF CONTENTS
### (continued)

**Page**

    D.    Claims Procedures in the Unimpairment Alternative ........................................... 42

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ............................................................. 42

    A.    Conditions to Confirmation ................................................................. 42

    B.    Conditions to the Effective Date........................................................ 46

    C.    Waiver of Conditions to Confirmation or the Effective Date............................ 47

    D.    Effect of Nonoccurrence of Conditions to the Effective Date............................ 47

ARTICLE XI DISCHARGE, INJUNCTION, EXCULPATION CLAUSE, AND
SUBORDINATION RIGHTS UNDER THE § 524(g) ALTERNATIVE .................... 48

    A.    Discharge of Claims........................................................................ 48

    B.    Injunctions.................................................................................... 48

    C.    Asbestos Channeling Injunction ......................................................... 49

    D.    Exculpation Clause ......................................................................... 51

    E.    Subordination Rights ....................................................................... 51

ARTICLE XII RETENTION OF JURISDICTION ................................................ 52

ARTICLE XIII MISCELLANEOUS PROVISIONS ............................................... 53

    A.    Dissolution of the Asbestos PI Committee and Future Claimants'
Representative.............................................................................. 53

    B.    Limitation of Liability....................................................................... 54

    C.    Modification of the Plan and Exhibits .................................................. 55

    D.    Successors and Assigns.................................................................... 55

    E.    Severability ................................................................................... 55

    F.    Service of Certain Plan Exhibits ......................................................... 55

    G.    Effective Date Actions Simultaneous .................................................. 55

    H.    Service of Documents ..................................................................... 55

## TABLE OF EXHIBITS TO PLAN AND PLAN SUPPLEMENT[1]

EXHIBITS TO PLAN:

Exhibit A          List of Asbestos-Containing Products

Exhibit B          Asbestos PI Trust Agreement

Exhibit C          Asbestos PI Trust Distribution Procedures

Exhibit D          Description of Certain Restructuring Transactions

Exhibit E          Schedule of Executory Contracts and Unexpired Leases to Be Rejected

---

[1] To the extent not attached to and Filed with the Plan, except as otherwise specified in the Plan, Plan Exhibits shall be Filed and made available for review on the web site of Donlin Recano & Company, Inc. ("Donlin"), the Debtor's claims and noticing agent, at www.donlinrecano.com/bestwall no later than 10 days before the deadline to object to confirmation of the Plan.  The Asbestos PI Committee and Future Claimants' Representative also will serve such Exhibits on the then current Bankruptcy Rule 2002 service list no later than 10 days before the deadline to object to confirmation of the Plan.  The Asbestos PI Committee and Future Claimants' Representative reserve the right to modify, amend, supplement, restate or withdraw any of the Exhibits after they are Filed.  The Asbestos PI Committee and Future Claimants' Representative shall File and shall make available on Donlin's web site all modified, amended, supplemented or restated Exhibits as promptly as possible.

iv

## INTRODUCTION

The Official Committee of Asbestos Claimants and the Future Claimants' Representative propose the following plan of reorganization for the resolution of the outstanding Claims and Demands and Equity Interests in the Debtor.  The Asbestos PI Committee and Future Claimants' Representative are Proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The formulation and submission of the Plan are without prejudice to the right of the Asbestos PI Committee and/or Future Claimants' Representative to (a) amend the Plan in any respect or (b) withdraw the Plan and file any other form of plan of reorganization for any reason, including to the extent the Asbestos PI Committee or Future Claimants' Representative determines that amendment of the Plan or withdrawal of the Plan is required to comply with such party's fiduciary duties under applicable law.  Reference is made to the disclosure statement of the Asbestos PI Committee and Future Claimants' Representative for the Plan for a discussion of the history, business, results of operations, historical financial information, projections and properties of the Debtor, and for a summary and analysis of the Plan.  There also are other agreements and documents, which are or will be Filed with the Bankruptcy Court, that are referenced in the Plan or the disclosure statement of the Asbestos PI Committee and Future Claimants' Representative and that will be available for review.

## SUMMARY OF PLAN

This Plan contemplates two alternative paths contingent upon (a) asbestos claimants voting to accept the Plan, (b) GP Holdings voting to accept the Plan, and (c) Georgia-Pacific's agreement on assumption and assignment of the Funding Agreement to the Asbestos PI Trust.  The two possible scenarios are generally referred to as the § 524(g) Alternative and the Unimpairment Alternative.

The § 524(g) Alternative

In the event that (a) asbestos claimants vote to accept the Plan, (b) GP Holdings votes to accept the Plan, and (c) Georgia-Pacific agrees to the assumption and assignment of the Funding Agreement to the Asbestos PI Trust upon the conditions set forth in this Plan, the Plan Proponents will file a notice indicating that they are selecting the § 524(g) Alternative and, as such, pursuant to the Plan, (i) Allowed Claims in Classes 1 through 3 and 5 are unimpaired and shall be Reinstated or paid in full in Cash on the Effective Date; (ii) Asbestos PI Claims and Settled Asbestos Claims in Class 4 are impaired and are channeled to the Asbestos PI Trust; and Class 6 Interests (Equity Interests) are impaired.

For purposes of implementing the § 524(g) Alternative, the following transactions will be consummated: (a) prior to or on the Effective Date, the equity interests of GP Holdings in the Debtor will be reinstated as equity interests in Reorganized Bestwall; (b) on the Effective Date, the Funding Agreement will be assumed by the Debtor, and the Debtor's rights and benefits thereunder will be assigned to the Asbestos PI Trust; (c) on the Effective Date, the Bestwall QSF will release $1.0 billion to the Asbestos PI Trust for the Trust Claims Fund; (d) the Ambassador Claim and all other Causes of Action, if any, will be transferred to the Asbestos PI Trust on the Effective Date; and (e) the Mount Holly Tax Parcels will be transferred to the Asbestos PI Trust on the Effective Date.

On the Effective Date, the Trustee(s) of the Asbestos PI Trust will create the Trust Expense Fund and the Trust Claims Fund.  The Trust Expense Fund will be used to pay all Asbestos PI Trust Expenses of the Asbestos PI Trust in accordance with the terms and conditions of the Funding Agreement and the Asbestos PI Trust Agreement.  The Trust Claims Fund will be used to pay Asbestos PI Claims and Settled Asbestos Claims Liquidated by the Asbestos PI Trust pursuant to the provisions of the Funding Agreement and the Asbestos PI Trust Distribution Procedures.

1

The Trust Expense Fund will be funded, in part, with any amounts recovered by the Asbestos PI Trust by virtue of the Ambassador Claim and all Causes of Action, if any, and any distributions of distributable income made to the Asbestos PI Trust from time to time on account of the Trust's ownership of the Mount Holly Tax Parcels. In addition, on the Effective Date, Georgia-Pacific will wire transfer to the Trust in immediately available funds an amount equal to the Initial Trust Expense Funding. In the event that payment of Asbestos PI Trust Expenses depletes the Trust Expense Fund below $35 million at any time, and from time to time, Georgia-Pacific will have a continuing obligation under the Funding Agreement to remit to the Asbestos PI Trust Cash sufficient to replenish the Trust Expense Fund such that the balance of the fund is equal to or greater than $35 million.

On the Effective Date, Asbestos PI Claims and Settled Asbestos Claims will be channeled to the Asbestos PI Trust and Liquidated in accordance with the Asbestos PI Trust Distribution Procedures to be adopted upon the Effective Date. The Asbestos PI Trust Distribution Procedures will provide for an Expedited Review Process (as defined in the Asbestos PI Trust Distribution Procedures) through which holders of Asbestos PI Claims who satisfy the designated Medical/Exposure Criteria (as defined in the Asbestos PI Trust Distribution Procedures) will be entitled to receive a Scheduled Value (as defined in the Asbestos PI Trust Distribution Procedures) for different categories of Asbestos PI Claims. There will also be an Individual Review Process (as defined in the Asbestos PI Trust Distribution Procedures). Settled Asbestos Claims may opt to receive either (i) the Liquidated value of their claim pursuant to the terms of their respective settlements; or (ii) treatment under the Expedited Review Process or Individual Review Process (as defined in the Asbestos PI Trust Distribution Procedures).

As soon as reasonably practicable following the end of each calendar month, the Asbestos PI Trust will deliver to Georgia-Pacific a Demand for Payment for such calendar month. Within 30 calendar days after receipt of each Demand for Payment, Georgia-Pacific will (i) deliver to the Asbestos PI Trust a statement identifying which of the Asbestos PI Claims and Settled Asbestos Claims included in the Demand for Payment are subject to a Georgia-Pacific objection and which are not and (ii) transfer Cash to the Trust Claims Fund in the amount by which the Liquidated value of the Asbestos PI Claims and Settled Asbestos Claims in the Demand for Payment to which Georgia-Pacific does not object would exceed the then-current balance of the Trust Claims Fund.

Within ten (10) days following the expiration of the applicable Assessment Period (as defined in the Asbestos PI Trust Distribution Procedures), the Asbestos PI Trust shall either notify the claimant that (1) the claim has been approved for payment in which case the Asbestos PI Trust will issue payment as soon as reasonably practicable; or (2) the claimant may (a) exit to the tort system for resolution of his or her Asbestos PI Claim or Settled Asbestos Claim as set forth in the TDP or, alternatively, (b) agree, subject to Georgia-Pacific also agreeing, to submit his or her Asbestos PI Claim or Settled Asbestos Claim to binding arbitration for resolution. If a claimant elects binding arbitration, the Asbestos PI Trust shall notify Georgia-Pacific of the claimant's election, and Georgia-Pacific shall have ten (10) days to consent to binding arbitration. If Georgia-Pacific consents, the Asbestos PI Claim or Settled Asbestos Claim will be finally determined through binding arbitration. If Georgia-Pacific does not consent to binding arbitration, by a writing delivered to the Asbestos PI Trust by overnight mail, signature required, or by electronic delivery, receipt of which is confirmed by the Asbestos PI Trust, within the 10-day period, the claimant may immediately, and without further action, exit to the tort system to resolve his or her Asbestos PI Claim or Settled Asbestos Claim as set forth in the TDP. If and when any such claimant obtains a judgment, award, settlement, or other resolution with respect to such claimant's Asbestos PI Claim or Settled Asbestos Claim, the claimant shall submit evidence of the liquidated Asbestos PI Claim or Settled Asbestos Claim to the Asbestos PI Trust to be included in the next Demand for Payment.

Georgia-Pacific's failure to assert a Georgia-Pacific objection or timely submit payment to the Asbestos PI Trust as required for any Asbestos PI Claim or Settled Asbestos Claim included on a Demand for Payment shall constitute a breach of Georgia-Pacific's obligations under the Plan. As set forth in the Plan, following such breach the Asbestos PI Trust may commence suit against Georgia-Pacific for such relief as it deems appropriate, which may include but is not limited to breach of the Funding Agreement or seeking specific performance of same. In such event, Georgia-Pacific shall (a) immediately escrow the full amount of any such unpaid Demand for Payment in an interest-bearing account; and (b) shall be responsible for reasonable attorney fees and costs associated with pursuing relief on behalf of the Asbestos PI Trust and claimants, interest compounded daily based on the greater of the prevailing federal judgment rate or an annual rate of 15%, punitive damages and other extraordinary relief as appropriate. In the discretion of the Asbestos PI Trust, the Asbestos PI Trust may assign to any affected claimant the right of such claimant to pursue recovery from Georgia-Pacific directly with respect to a breach related to the Claimant's Asbestos PI Claim or Settled Asbestos Claim. In such event, the claimant may elect to sue Georgia-Pacific with respect to his or her Conditionally Settled Claim or may reject such settlement and sue Georgia-Pacific in the tort system for resolution of his or her Asbestos PI Claim or Settled Asbestos Claim.

<u>The Unimpairment Alternative</u>

In the event that (a) asbestos claimants do not vote to accept the Plan, (b) GP Holdings does not vote to accept the Plan, or (c) Georgia-Pacific does not agree to the assumption and assignment of the Funding Agreement to the Asbestos PI Trust, then pursuant to the Plan, no § 524(g) trust will be created, and no channeling injunction will be issued. All Classes will be unimpaired, and the rights and obligations of all holders of Claims and Interests will remain unaltered. On the Effective Date, a litigation trust will be created to pursue any Causes of Action for the benefit of holders of claims and interests, with any recoveries to be distributed in accordance with the priority scheme of the Bankruptcy Code.

**ARTICLE I**

**DEFINED TERMS, RULES OF
INTERPRETATION AND COMPUTATION OF TIME**

**A.     Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.      "Administrative Claim"** means a Claim for costs and expenses of administration allowed under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a), 331 or 503 of the Bankruptcy Code, including Fee Claims; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

**2.      "Administrative Claims Bar Date"** means the deadline to file an Administrative Expense Request which shall be the date that is sixty (60) days after the Effective Date. If the date that is 60 days after the Effective Date does not fall on a Business Day, the Administrative Claims Bar Date will be the first Business Day immediately following such date.

3

**3.** "**Affiliate**" means, with respect to any specified Entity: (a) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified Entity; or (b) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified Entity.  As used in clause (b) of the prior sentence, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified Entity (whether through the ownership of equity, by contract or otherwise).

**4.** "**Allowed Claim**" means:

    a.    a Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) that (i) has been listed by the Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

    b.    a Timely Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) that is not a Disputed Claim;

    c.    a Timely Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) that is liquidated and allowed: (i) in any Stipulation of Amount and Nature of Claim executed by the Debtor or Reorganized Bestwall and the Claim holder; (ii) in any contract, instrument or other agreement entered into in connection with the Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan; or

    d.    a Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) listed by the Debtor on its Schedules as other than disputed, contingent or unliquidated or a Timely Claim that the Debtor or Reorganized Bestwall determines prior to the Claims Objection Bar Date (i) will not be subject to an objection or to an amendment to the Schedules and (ii) will be satisfied in accordance with the terms of the Plan on or after the Effective Date.

**5.** "**Allowed ... Claim**" means an Allowed Claim of the particular Class or category specified.

**6.** "**Ambassador Claim**" means the claims for insurance coverage against Ambassador Insurance Company presently in liquidation proceedings pending in the Superior Court of Vermont, Washington Unit, Case No. S-444-1-83-WNCU.

**7.** "**Amended and Restated Operating Agreement**" means the Amended and Restated Operating Agreement of Reorganized Bestwall to be approved and adopted by GP Holdings on the Effective Date in such form as the Debtor, Asbestos PI Committee and Future Claimants' Representative may determine.

**8.** "**Articles of Organization**" means the Articles of Organization Including Articles of Conversion filed with the Secretary of State for the State of North Carolina on July 31, 2017, which articles of organization are to be amended and restated upon the Effective Date.

**9.** "**Asbestos Channeling Injunction**" means an order or orders of the Bankruptcy Court or the District Court or the Bankruptcy Court and the District Court acting jointly and, if the order is entered solely by the Bankruptcy Court, affirmed by the District Court (which in each case may be the Confirmation Order), in accordance with, and pursuant to, section 524(g) of the Bankruptcy Code, permanently and forever staying, restraining and enjoining any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos PI Claim or any Settled Asbestos Claim, all of which shall be channeled

to the Asbestos PI Trust for resolution as set forth in the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures as set forth in Article V of this Plan.

10.    "**Asbestos PI Claim**" means a Bestwall Claim relating to death, bodily injury, sickness, disease, emotional distress, fear of cancer, medical monitoring or other personal injuries (whether physical, emotional or otherwise), whether the disease or condition upon which the Bestwall Claim is based had manifested, become evident or been diagnosed before, on, or after the Confirmation Date, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, the presence of or exposure to asbestos in asbestos-containing products or things that have been designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed or in any other way made available, or present at any premises owned, leased, occupied or operated, by the Debtor, Old GP, or Old Bestwall including (a) any and all Asbestos PI Indirect Claims and (b) any and all Bestwall Claims under agreements entered into prior to the Petition Date in settlement of Asbestos PI Claims. A non-exclusive list of asbestos and asbestos-containing products is set forth in Exhibit A. For the purpose of this definition, Asbestos PI Claims shall not include any claim by any present or former employee of Old GP or any Affiliate of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer. For the avoidance of doubt, Asbestos PI Claims shall include any claim that seeks to impose liability upon a Protected Party for an Asbestos PI Claim based upon such doctrines as piercing the corporate veil, agency, alter ego, fraudulent conveyance, conspiracy, concert of action, or successor liability.

11.    "**Asbestos PI Committee**" means the Official Committee of Asbestos Claimants appointed by the Bankruptcy Court in the Reorganization Case [Docket Nos. 97, 348 and 690] pursuant to section 1102 of the Bankruptcy Code and any duly appointed successors, as the same may be reconstituted from time to time.  The members as of the date of the Plan are: (a) Paul Tice, c/o Vanessa Oslund, Esq., Bergman Draper Oslund; (b) Elizabeth Ann Harding, Special Administrator of Steven Lanphear, Deceased, c/o Beth A. Gori, Esq., Gori Julian & Associates, PC; (c) Steven J. Watts, c/o Marcus Raichle, Esq., Maune Raichle Hartley French & Mudd, LLC; (d) Rick Benson, c/o Chris Thoron, Esq., O'Brien Law Firm, PC; (e) Nikol Chuidian, Special Administrator of Cresante Perreras, Deceased, c/o Steven Kazan, Esq., Kazan, McClain, Satterley & Greenwood, PLC; (f) Barbara McAlpine, Independent Administrator of the Estate of Martin Edward McAlpine, c/o Maura Kolb, Esq., The Lanier Law Firm; (g) Emma Pearl Dixon, c/o Carol Hastings, Esq., Law Offices of Peter G. Angelos, P.C.; (h) Rick Bengston, c/o Michael Shepard, Esq., Shepard Law; (i) Margaret U. Trumbull, c/o Justine Delaney, Esq., Weitz & Luxenberg, P.C.; and (j) Patricia Deetz, Special Administrator of Dave Deetz, Deceased, c/o Robert J. Cooney, Jr., Esq., Cooney & Conway.

12.    "**Asbestos PI Indirect Claim**" means any and all Bestwall Claims for contribution, reimbursement, subrogation or indemnification, or any other indirect or derivative recovery, on account of or with respect to any Asbestos PI Claim, including any such Claims for damages from the rejection of an Executory Contract or Unexpired Lease. Notwithstanding the foregoing, a Protected Party Indemnification Claim shall not be treated as an Asbestos PI Indirect Claim or an Asbestos PI Claim.

13.    "**Asbestos PI Trust Advisory Committee**" means the advisory committee established pursuant to the terms of this Plan and the Asbestos PI Trust Agreement.  The initial members shall be identified in the Asbestos PI Trust Agreement, Plan Supplement or Confirmation Order.

14.    "**Asbestos PI Trust**" means the trust that is to be established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos PI Trust

Agreement, which trust will satisfy the requirements of section 524(g) of the Bankruptcy Code and section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder (as such many be modified or supplemented from time to time).

15.     "**Asbestos PI Trust Agreement**" means that certain Asbestos PI Trust Agreement, executed by the Debtor and the Asbestos PI Trustee, substantially in the form of Exhibit B hereto.

16.     "**Asbestos PI Trust Assets**" means, collectively, (a) the Mount Holly Tax Parcels; (b) all rights and benefits as Payee under the Funding Agreement; (c) the Initial Trust Expense Funding; (d) all Causes of Action commenced by the Asbestos PI Committee during the course of the Reorganization Case and assigned to the Asbestos PI Trust; (e) all other assets, rights and benefits assigned, transferred or conveyed to the Asbestos PI Trust from time to time, including all assets, rights and benefits assigned, transferred or conveyed to the Asbestos PI Trust in connection with this Plan; and (f) all proceeds of any of the foregoing.

17.     "**Asbestos PI Trust Distribution Procedures**" means the Asbestos PI Trust Distribution Procedures, to be implemented by the Asbestos PI Trust pursuant to the terms and conditions of the Plan and the Asbestos PI Trust Agreement, governing the resolution of Asbestos PI Claims, substantially in the form of <u>Exhibit C</u> hereto.

18.     "**Asbestos PI Trust Documents**" means, collectively: (a) the Asbestos PI Trust Agreement; (b) the Asbestos PI Trust Distribution Procedures; and (c) the other agreements, instruments and documents governing the establishment and administration of the Asbestos PI Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

19.     "**Asbestos PI Trust Expenses**" means any of the liabilities, costs or expenses incurred by the Asbestos PI Trust (excluding liabilities to holders of Asbestos PI Claims, Settled Asbestos Claims, and any Protected Party Indemnification Claim) in carrying out the terms of the Asbestos PI Trust Documents and/or enforcing its rights and managing the Asbestos PI Trust Assets under this Plan, which expenses, along with any post-Effective Date costs of administration, will be paid from the Trust Expense Fund.

20.     "**Asbestos PI Trustee(s)**" means the person(s) appointed to serve as trustee(s) of the Asbestos PI Trust to administer the trust and Asbestos PI Claims and Settled Asbestos Claims pursuant to the terms of the Asbestos PI Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Asbestos PI Trust Agreement, in a Plan Supplement, or in the Confirmation Order.

21.     "**Ballot**" means the ballot(s) approved by the Bankruptcy Court in the Reorganization Case to be distributed to holders of impaired Claims for purposes of voting on the acceptance or rejection of this Plan.

22.     "**Bankruptcy Administrator**" means the United States Bankruptcy Administrator for the Western District of North Carolina.

23.     "**Bankruptcy Code**" means title 11 of the United States Code, as in effect on the Petition Date or thereafter amended with retroactive applicability to the Reorganization Case.

24.     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division, which has jurisdiction over the Reorganization Case.

25.    "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended with retroactive applicability to the Reorganization Case.

26.    "**Bar Date**" means the applicable bar date by which a proof of Claim or a request for payment of an Administrative Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including (a) the Confirmation Order and (b) the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim Other Than With Respect to Asbestos PI Claims and (II) Approving Form and Manner of Notice Thereof* [Docket No. 661]

27.    "**Bestwall Claims**" means any and all claims, commitments, obligations, suits, judgments, damages (whether compensatory, exemplary, punitive or otherwise), Demands, debts, causes of action and liabilities of any kind or nature, of or against the Debtor, whether liquidated or unliquidated, fixed or contingent, direct or indirect, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise, including under piercing the corporate veil, alter ego, successor liability, fraudulent conveyance, conspiracy, enterprise liability, market share, joint venture, loss of consortium, medical monitoring, personal injury tort, wrongful death, survivorship or any legal or equitable theory.  For the avoidance of doubt, (a) Bestwall Claims include the asbestos liabilities of Old GP assigned to the Debtor by Old GP pursuant to the Prepetition Corporate Restructuring, and (b) Bestwall Claims do not include the following liabilities that were not assigned to Bestwall as part of the Prepetition Corporate Restructuring: (i) any liabilities of the GP Subsidiaries including, without limitation, any liabilities arising out of, based upon or resulting from, directly or indirectly, in whole or in part, the presence of or exposure to asbestos in asbestos-containing products or things that have been designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed or in any other way made available, or present at any premises owned, leased, occupied or operated, by any of the GP Subsidiaries or (ii) any liability of Old GP or Georgia-Pacific arising out of, with respect to by reason of, or related to ownership of the GP Subsidiaries.

28.    "**Bestwall QSF**" means the Qualified Settlement Fund: (a) established under section 468B of the Internal Revenue Code by Bestwall and Georgia-Pacific; (b) approved by the Bankruptcy Court pursuant to the *Order Authorizing the Debtor to Establish a Qualified Settlement Fund for Payment of Asbestos Claims* [Docket No. 1398] and governed by the Trust Agreement attached as Annex 1 thereto; and (c) funded with $1 billion obtained from Georgia-Pacific by a draw on the Funding Agreement.

29.    "**BRRC**" means Blue Rapids Railway Company, LLC, a North Carolina limited liability company and a wholly owned subsidiary of PlasterCo.

30.    "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), the day after Thanksgiving and any date on which the Bankruptcy Court is closed by law or order.

31.    "**Cash**" means legal tender of the United States of America.

32.    "**Cause of Action**" means, collectively and individually, (i) preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 544, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code and other similar state law claims and causes of action and (ii) the Ambassador Claim.

**33.**    "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

**34.**    "**Claims and Balloting Agent**" means Donlin, Recano and Company, Inc., the claims and balloting agent appointed in the Reorganization Case [D.I. 64].

**35.**    "**Claims Objection Bar Date**" means, for all Claims (other than Asbestos PI Claims and Settled Asbestos Claims) the latest of: (a) 120 days after the Effective Date; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules or an order of the Bankruptcy Court (including an order extending the Claims Objection Bar Date on motion of the Debtor or Reorganized Bestwall).

**36.**    "**Claims Reserve**" means a reserve established by the Debtor in an amount equal to [TBD] for purposes of paying all Administrative Claims, Priority Tax Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 5 Claims that are Allowed after the Effective Date, which reserve shall be funded with the balance of the Funding Account (as such balance exists as of the Effective Date) *plus* a payment by Georgia-Pacific to the Debtor on the Effective Date, pursuant to Georgia-Pacific's obligations under the Funding Agreement, in an amount equal to the difference of (a) [      ] *less* (b) the balance of the Funding Account (as such balance exists as of the Effective Date).

**37.**    "**Class**" means a class of Claims or Interests, as described in <u>Article II</u> of this Plan, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**38.**    "**Conditionally Settled Claim**" means an Asbestos PI Claim that has received a Conditional Offer (as defined in the Asbestos PI Trust Distribution Procedures) from the Asbestos PI Trust and returned an executed Conditional Release (as defined in the Asbestos PI Trust Distribution Procedures) to the Asbestos PI Trust.

**39.**    "**Confirmation**" means the entry of the Confirmation Order on the docket of the District Court.

**40.**    "**Confirmation Date**" means the date on which the District Court enters the Confirmation Order on its docket (including any order of the Bankruptcy Court and the District Court acting jointly).

**41.**    "**Confirmation Hearing**" means, collectively, the hearing or hearings held by the Bankruptcy Court or the District Court on Confirmation of this Plan, as such hearing or hearings may be continued from time to time.

**42.**    "**Confirmation Order**" means the order of the District Court; the Bankruptcy Court and the District Court acting jointly; or, if an order is entered by the Bankruptcy Court, the order of the District Court affirming the Bankruptcy Court's order, that confirms the Plan pursuant to section 1129 of the Bankruptcy Code.

**43.**    "**Cure Amount Claim**" means a Claim based upon the Debtor's default pursuant to an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under section 365 of the Bankruptcy Code.

**44.**    "**Debtor**" means Bestwall LLC, a North Carolina limited liability company, as the Debtor in the Reorganization Case.

45.    "**Deficiency Claim**" means a General Unsecured Claim for an amount equal to the difference of (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

46.    "**Demand**" means a "demand," as defined in section 524(g)(5) of the Bankruptcy Code, against the Debtor or a Protected Party.

47.    "**Demand for Payment**" means, in each instance, a written demand from the Asbestos PI Trust to Georgia-Pacific each calendar month identifying the Asbestos PI Claims that became Conditionally Settled Claims during the prior month which notice shall include a list of Conditionally Settled Claims, with the valuation the Asbestos PI Trust has assigned, and the claimant has agreed to accept, to resolve the Asbestos PI Claimant.

48.    "**Disallowed**" means, when used with respect to a Claim against the Debtor (other than an Asbestos PI Claim or a Settled Asbestos Claim), a Claim that: (a) is disallowed in whole or in part (but solely to the extent of such disallowance) by Final Order; or (b) has been withdrawn, in whole or in part, by the holder thereof.

49.    "**Disbursing Agent**" means Georgia-Pacific or its designee, in its capacity as a disbursing agent pursuant to Article VIII, Section B of this Plan, but shall not include any disbursing agent for or with respect to the Asbestos PI Trust.

50.    "**Disclosure Statement**" means the written disclosure statement that relates to this Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court on [_____] as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

51.    "**Disputed Claim**" means (other than with respect to an Asbestos PI Claim or a Settled Asbestos Claim):

　　　　a.    if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on the Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on the Debtor's Schedules; or

　　　　b.    for any Timely Claim, a Claim for which an objection, complaint or request for estimation has been Filed by the Debtor, Reorganized Bestwall or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

52.    "**Distribution**" means one or more payments or distributions under the Plan of Cash, notes, interests or other property, as applicable, to the holders of Allowed Claims (other than Asbestos PI Claims, Settled Asbestos Claims or the Asbestos PI Trust).

53.    "**Distribution Record Date**" means the Confirmation Date.

54.    "**District Court**" means the United States District Court for the Western District of North Carolina, Charlotte Division, which has jurisdiction over the Reorganization Case.

**55.**     "**Effective Date**" means the earliest possible date, as determined by the Plan Proponents, that is a Business Day on or after the date on which all conditions to the effectiveness of the Plan in Article IX, Section B of this Plan have been met or waived pursuant to Article IX, Section C of this Plan.

**56.**     "**Encumbrance**" means, with respect to any asset, any mortgage, lien, pledge, charge, security interest, assignment or encumbrance of any kind or nature in respect of such asset (including any conditional sale or other title retention agreement, any security agreement and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

**57.**     "**Entity**" means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization or government or any political subdivision thereof or other person or entity.

**58.**     "**Equity Interest**" means any equity interest in the Debtor, whether such interests are characterized as shares, units, membership interests, percentage interests or any other unit of measurement, whether or not issued.

**59.**     "**Estate**" means the estate created for the Debtor in the Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**60.**     "**Exculpated Parties**" means the Debtor, Asbestos PI Committee and the Future Claimants' Representative and with respect to each of the foregoing, their current or former members, Professionals, employees, officers, agents, attorneys, accountants, financial advisors, representatives or other professionals, solely in their capacity as such.

**61.**     "**Executory Contract and Unexpired Lease**" and "**Executory Contract or Unexpired Lease**" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code and the Confirmation Order.

**62.**     "**Exhibit**" means any exhibit to this Plan.

**63.**     "**Fee Claim**" means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Reorganization Case.

**64.**     "**Fee Order**" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals [Docket No. 132], entered by the Bankruptcy Court on December 7, 2017.

**65.**     "**File**," "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court, the District Court or their authorized designees in the Reorganization Case.

**66.**     "**Final Fee Application**" means an application for final allowance of a Professional's aggregate Fee Claim as described in Article III of this Plan.

**67.**     "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Reorganization Case or the docket of any other court of competent jurisdiction, and has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or seek *certiorari* or move for a new trial, re-argument or rehearing has expired, and no appeal or petition for *certiorari* or other proceedings for a new trial, re-argument or

rehearing has been timely taken; or (b) any appeal that has been taken or any petition for *certiorari* that has been filed timely has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought or the new trial, re-argument or rehearing shall have been denied.

68.    "**Funding Account**" means the account of the Debtor identified on Schedule 2 of the Funding Agreement, into which the proceeds of all payments made under the Funding Agreement are deposited.

69.    "**Funding Agreement**" means that certain Second Amended and Restated Funding Agreement dated as of November 1, 2017 but effective as of July 31, 2017 by and between Georgia-Pacific LLC and Bestwall LLC, as may be amended from time to time.  Any amendment of the Funding Agreement following Confirmation shall be subject to the consent of the Asbestos PI Trust.

70.    "**Future Claimants' Representative**" means Sander L. Esserman, the legal representative for persons who might subsequently assert asbestos-related Demands, who was appointed pursuant to an order of the Bankruptcy Court dated February 23, 2018 [Docket No. 278].

71.    "**Future Demand Holder**" means a holder of a Demand, whether now known or hereafter discovered.

72.    "**Georgia-Pacific**" means Georgia-Pacific LLC, a Delaware limited liability company and non-debtor Affiliate of the Debtor.

73.    "**Georgia-Pacific Default**" means any failure by Georgia-Pacific to timely and completely fulfil its obligations under the Funding Agreement, the Plan or the Asbestos PI Trust Distribution Procedures, which shall continue for a period of thirty (30) days after Notice of Default by the Asbestos PI Trust.

74.    "**General Unsecured Claim**" means a Deficiency Claim and any Claim that is not a Cure Amount Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Secured Claim, Asbestos PI Claim, Settled Asbestos Claim, or Intercompany Claim.

75.    "**GP Holdings**" means Georgia-Pacific Holdings, LLC, a Delaware limited liability company.

76.    "**GP Subsidiaries**" means the subsidiaries of Old GP (together with their direct and indirect subsidiaries) that were assigned to Georgia-Pacific by Old GP as part of the Prepetition Corporate Restructuring.

77.    "**Impaired**" means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

78.    "**Initial Trust Expense Funding**" means the Cash payment of $35 million to be made by Georgia-Pacific to the Asbestos PI Trust on the Effective Date for purposes of funding the Trust Expense Fund in accordance with the Funding Agreement, the Asbestos PI Trust Agreement and this Plan.

79.    "**Intercompany Claim**" means any Claim by Georgia-Pacific, PlasterCo, any direct or indirect subsidiary of these Entities or any other Affiliate of the Debtor.

80.   "**Interest**" means the rights of any holder of the equity of the Debtor and the rights of any Entity to purchase or demand the issuance of any equity of the Debtor, including: (a) redemption, conversion, exchange, voting, participation and distribution rights; (b) liquidation preferences; and (c) any option and warrant rights.

81.   "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

82.   "**IRS**" means the Internal Revenue Service of the United States of America.

83.   "**Liquidate**" means to determine a payable value for an Asbestos PI Claim in accordance with the Asbestos PI Trust Agreement and Asbestos PI Trust Distribution Procedures, but not to pay such a claim.

84.   "**Litigation Trust**" means the trust created as of the Effective Date in accordance with the terms of the Litigation Trust Agreement and the provisions of this Plan.

85.   "**Litigation Trust Agreement**" means the agreement setting forth the terms and conditions that shall govern the Litigation Trust, which agreement shall be substantially in the form included in the Plan Supplement and consistent with the terms of this Plan.

86.   "**Litigation Trust Assets**" means the Debtor's Causes of Actions, including but not limited to the Ambassador Claim.

87.   "**Litigation Trustee**" means a person or entity appointed on the Effective Date to administer the Litigation Trust.  The Asbestos PI Committee and the Future Claimants' Representative shall select the Litigation Trustee, subject to approval by the Bankruptcy Court in the Confirmation Order.

88.   "**Mount Holly Tax Parcels**" means Tax Parcel Nos. 176571-176575 located at 100 Buckeye Drive, Mount Holly, North Carolina 28120 owned by the Debtor.

89.   "**Notice of Default**" means, in connection with a Georgia-Pacific Default, written notice of default in Georgia-Pacific's timely and complete performance of all of its obligations under the Funding Agreement, the Plan and the Trust Distribution Procedures, which notice shall be delivered by overnight mail to Georgia-Pacific, 133 Peachtree Street, N.E., Atlanta, Georgia 30303, by the Asbestos PI Trust.

90.   "**Old Bestwall**" means the former Bestwall Gypsum Co., a Maryland corporation, which was acquired by and merged into Old GP in 1965.

91.   "**Old GP**" means the former Georgia-Pacific LLC (f/k/a Georgia-Pacific Corporation), the predecessor to the Debtor and Georgia-Pacific.

92.   "**Ordinary Course Professionals Order**" means the Order Authorizing the Retention and Compensation of Professionals Utilized by the Debtor in the Ordinary Course of Business [Docket No. 134], entered by the Bankruptcy Court on December 7, 2017.

93.   "**Parties**" means, collectively, the Debtor, Georgia-Pacific, the Asbestos PI Committee and the Future Claimants' Representative.

94.   "**Petition Date**" means November 2, 2017, the date on which the Reorganization Case was commenced.

95.  "**Plan**" means, collectively, this plan of reorganization for the Debtor and all Exhibits attached hereto or referenced herein, as the same may be amended, modified or supplemented from time to time.

96.  "**Plan Documents**" means, collectively, (a) the Disclosure Statement, (b) any document contained in the Plan Supplement, (c) all of the exhibits and schedules attached to the Plan, the Disclosure Statement and/or the Plan Supplement, (d) the Asbestos PI Trust Documents, and (e) any other document necessary to implement the Plan.

97.  "**Plan Proponents**" means the Asbestos PI Committee and the Future Claimants' Representative.

98.  "**Plan Supplement**" means the supplemental appendix to this Plan.

99.  "**PlasterCo**" means GP Industrial Plasters LLC, a North Carolina limited liability company and direct wholly-owned subsidiary of the Debtor.

100.  "**PlasterCo Canada**" means Industrial Plasters Canada ULC, a Canadian company and direct wholly-owned subsidiary of PlasterCo.

101.  "**Prepetition Corporate Restructuring**" means the internal corporate restructuring Old GP completed on July 31, 2017.

102.  "**Post-petition Interest**" means (a) with respect to General Unsecured Claims or Priority Claims, post-petition interest at the federal judgment rate in effect on the Petition Date; (b) with respect to Priority Tax Claims, interest consistent with section 511 of the Bankruptcy Code; and (c) with respect to Secured Claims, post-petition interest at the applicable contract rate or, if none, at the federal judgment rate in effect on the Petition Date.

103.  "**Priority Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

104.  "**Priority Tax Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

105.  "**Professional**" means any professional employed in the Reorganization Case pursuant to sections 327, 328 and/or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Reorganization Case pursuant to section 503(b)(4) of the Bankruptcy Code.

106.  "**Proof of Claim**" means any proof of claim Filed with the Bankruptcy Court or the Claims and Balloting Agent pursuant to Bankruptcy Code section 501 and Rules 3001 or 3002 of the Bankruptcy Rules that asserts a claim against the Debtor.

107.  "**Protected Party**" means any of the following parties with respect to the Asbestos PI Claims and the Settled Asbestos Claims:

a.  the Debtor;

b.  Reorganized Bestwall; and

c.        PlasterCo, BRRC and PlasterCanada.

**108.** "**Protected Party Indemnification Claims**" mean any and all claims, including claims for related fees and costs, of a Protected Party against the Asbestos PI Trust under the indemnification provided for in Article V, Section K of this Plan.

**109.** "**Reinstated**" or "**Reinstatement**" means the treatment of a Claim or Interest, at Reorganized Bestwall's sole discretion, in accordance with one of the following:

a.        The legal, equitable and contractual rights to which such Claim or Interest entitles the holder will be unaltered; or

b.        Notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:

**1.        any such default that occurred before the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, will be cured;**

**2.        the maturity of such Claim or Interest as such maturity existed before such default will be reinstated;**

**3.        the holder of such Claim or Interest will be compensated for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and**

**4.        the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest will not otherwise be altered.**

**110.** "**Reorganization Case**" means the bankruptcy case of the Debtor under Chapter 11 of the Bankruptcy Code, pending before the Bankruptcy Court and captioned as *In re Bestwall LLC*, Case No. 17-31795 (LB).

**111.** "**Reorganized Bestwall**" means the Debtor on and after the Effective Date.

**112.** "**Restructuring Transactions**" means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations, dissolutions or other transactions that the Asbestos PI Committee and the Future Claimants' Representative determine to be necessary or appropriate to implement the Plan, effect a corporate restructuring of the Debtor's business or otherwise to simplify corporate structure and intercompany arrangements, including any Restructuring Transactions set forth on Exhibit D to this Plan.

**113.** "**Revested Assets**" means all rights, title and interest in the Debtor's assets as of the day prior to the Effective Date (other than Causes of Action and the Mount Holly Tax Parcels, which shall be transferred to the Litigation Trust), including, without limitation: (a) all claims belonging to any of the Debtor immediately before the Effective Date (other than the Causes of Action); (b) all Cash on hand on the Effective Date; and (c) the Debtor's equity interests or other ownership interests in non-Debtor Affiliates.

**114.** "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor [Docket Nos. 155, 156], as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, restated, modified or supplemented.

115. "**Secondment Agreements**" means, collectively, the secondment agreements approved pursuant to the Order Authorizing the Debtor to Perform Under Certain Intercompany Agreements With Non-Debtor Affiliates [Docket No. 133] and the Order: (A) Approving Amendment to Secondment Agreement With Non-Debtor Affiliate, as of February 1, 2018; and (B) Granting Related Relief [Docket No. 279].

116. "**Secured Claim**" means a Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) that is (a) secured by a lien on property in which the Estate has an interest or (b) subject to setoff under section 553 of the Bankruptcy Code, in each case, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

117. "**Settled Asbestos Claim**" means any Asbestos PI Claim that is subject to documentation resolving any asbestos-related liability or purported asbestos-related liability of the Debtor for an agreed amount which amount remained unpaid as of the Petition Date.

118. "**Stipulation of Amount and Nature of Claim**" means a stipulation or other agreement between the Debtor or Reorganized Bestwall and a holder of a Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) or Interest establishing the allowed amount or nature of such Claim or Interest that is (a) entered into in accordance with any Claim settlement procedures established in this Reorganization Case, (b) permitted or contemplated by this Plan or (c) approved by order of the Bankruptcy Court (including the Confirmation Order).

119. "**Subsidiary**" means, with respect to any Entity, another Entity of which the first Entity is the direct or indirect owner of (i) securities entitling the first Entity to exercise a majority of the voting power with respect to the election of board of directors, managers, managing trustees, or similar governing Entities for the other Entity or (ii) securities representing a majority of the equity interests of the other Entity.

120. "**Tax**" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, withholding or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Entity.

121. "**Timely Claim**" means a Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) for which a proof of Claim or request for payment of an Administrative Claim was Filed by the applicable Bar Date or is otherwise determined to be timely Filed by a Final Order of the Bankruptcy Court.

122. "**Trust Claims Fund**" means the fund established under the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures for purposes of funding the payment of Liquidated Asbestos PI Claims and Settled Asbestos Claim by the Asbestos PI Trust.

123. "**Trust Expense Fund**" means the fund established under the Asbestos PI Trust Agreement for purposes of funding Asbestos PI Trust Expenses, which fund shall be comprised of the Initial Trust Expense Funding, any and all proceeds, distributions, revenues and other monies derived

from or arising out of the Asbestos PI Trust Assets, and any and all Additional Trust Expense Funding received by the Trust, from time to time, in accordance with the Funding Agreement, the Asbestos PI Trust Agreement and this Plan.

**124.** "**Unimpaired**" means a Claim or Equity Interest, or a Class of Claims or Equity Interests, as appropriate, that is not Impaired under the Plan.

**B.     Rules of Interpretation and Computation of Time**

**1.     Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or the Confirmation Order; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors or assigns; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) the words "includes" or "including" are not limiting; (h) the uncapitalized terms "claim" and "demand" have the meanings given to them in sections 101(5) and 524(g)(5) of the Bankruptcy Code, respectively; (i) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) subject to the provisions of any contract, certificate of incorporation, by-laws or similar constituent document, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (k) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**2.     Computation of Time**Error! Bookmark not defined.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSES OF CLAIMS AND INTERESTS

Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in Classes as follows:

| **Class** | **Claims or Interests** |
|---|---|
| Class 1 | Priority Claims |
| Class 2 | Secured Claims |

| **Class** | **Claims or Interests** |
| --- | --- |
| Class 3 | General Unsecured Claims |
| Class 4 | (a)  Asbestos PI Claims |
|  | (b)  Settled Asbestos Claims |
| Class 5 | Intercompany Claims |
| Class 6 | Equity Interests |

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Article III of this Plan, have not been classified and thus are excluded from the foregoing Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

Any Class that does not have at least one holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan, pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**A.    Unclassified Claims**

**1.      Payment of Administrative Claims**

**a.      Administrative Claims in General**

Except as specified in this Article III, and subject to the Bar Date provisions herein, unless otherwise agreed by the holder of an Administrative Claim and the Debtor or Reorganized Bestwall, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either (i) as soon as practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by Reorganized Bestwall and the holder of the Administrative Claim. Administrative Claims that represent liabilities incurred by the Debtor in the ordinary course of its business during the Reorganization Case shall, to the extent not paid on or before the Effective Date, be paid by Reorganized Bestwall in the ordinary course of its business and in accordance with any terms and conditions of any agreements related thereto.

**b.      Statutory Fees**

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court or the District Court, as applicable, shall be paid in Cash equal to the amount of such Administrative Claims.  All fees payable

pursuant to 28 U.S.C. § 1930 shall be paid by the Debtor in accordance therewith until the closing of the Reorganization Case pursuant to section 350(a) of the Bankruptcy Code.

### c.    Ordinary Course Liabilities

Allowed Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business (including any Intercompany Claims that are Administrative Claims, Administrative Claims of governmental units for Taxes and Administrative Claims arising from those contracts and leases of the kind described in <u>Article VII</u> of this Plan) shall be satisfied by Reorganized Bestwall pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims or further approval of the Bankruptcy Court. For the avoidance of doubt, such holders of Administrative Claims shall not be required to comply with the requirements set forth in <u>Article III</u> of this Plan.

### d.    Bar Dates for Administrative Claims

#### i.    Administrative Claims Other Than Professional Fee Claims

Unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than sixty (60) days after the Effective Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor, Reorganized Bestwall or its property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by one-hundred and twenty (120) days after the Effective Date.

#### ii.    Professional Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File a Final Fee Application and serve it on Reorganized Bestwall and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court no later than 90 days after the Effective Date; <u>provided</u>, <u>however</u>, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order (except as otherwise provided in that order). A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application. Objections to any Final Fee Application must be Filed and served on Reorganized Bestwall and the requesting party by the later of (1) 80 days after the Effective Date or (2) 30 days after the Filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims. Any pending Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application. Allowed Fee Claims will be paid in full in Cash in an amount equal to the unpaid portion of the Allowed Fee Claim (i) on the Effective Date or (ii) upon such other terms as may be agreed upon by the holder of such Fee Claim. Any fees and expenses incurred by Reorganized Bestwall subsequent to the Confirmation Date for services rendered by any Professional may be paid by Reorganized Bestwall without notice to parties-in-interest or application to the Bankruptcy Court. Unpaid fees and expenses

awarded to any professional retained by the Asbestos PI Committee or Future Claimants' Representative pursuant to any Final Fee Application and any fees and expenses incurred by any professional retained by the Asbestos PI Committee or Future Claimants' Representative for post-Effective Date services permitted by Article XIII shall be paid either (i) in the case of the § 524(g) Alternative, from the Trust Expense Fund or (ii) in the case of the Unimpairment Alternative, by the Debtor.

**2.      Payment of Priority Tax Claims**

**a.      Priority Tax Claims in General**

Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the Debtor or Reorganized Bestwall, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the allowed amount of the Priority Tax Claim plus Post-petition Interest, if any, on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

**b.      Other Provisions Concerning Treatment of Priority Tax Claims**

Notwithstanding the provisions of <u>Article III</u>, <u>Section B</u> of this Plan, any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a Class 3 Claim, and the holder (other than as the holder of a Class 3 Claim) may not assess or attempt to collect such penalty from Reorganized Bestwall or its property.

**B.      Classified Claims**

**1.      The § 524(g) Alternative**

In the event that (a) Class 4 Claims (Asbestos PI Claims and Settled Asbestos Claims) vote to accept the Plan, (b) Class 6 Interests (Equity Interests) vote to accept the Plan, and (c) Georgia-Pacific agrees to the assumption and assignment of the Funding Agreement to the Asbestos PI Trust on the conditions set forth in the Plan, then the treatment of classified Claims shall be as follows:

**a.      Class 1 Claims (Priority Claims) are unimpaired.**

On the Effective Date, each holder of an Allowed Class 1 Claim shall receive Cash in an amount equal to such Allowed Claim plus Post-petition Interest thereon, if any, unless the holder of such Claim agrees to less favorable treatment. The Plan Proponents believe the amount of Class 1 Claims is negligible.

**b.      Class 2 Claims (Secured Claims) are unimpaired.**

On the Effective Date, unless otherwise agreed by the holder of an Allowed Class 2 Claim and the Debtor or Reorganized Bestwall, each holder of an Allowed Class 2 Claim, at the option of the Debtor or Reorganized Bestwall, shall be either (a) paid in full in Cash, plus Post-petition Interest thereon; or (b) be Reinstated.  Any Allowed Deficiency Claim of a holder of an Allowed Secured Claim shall be entitled to treatment as an Allowed Class 3 Claim.  The Plan Proponents do not believe there are any Class 2 Claims.

**c.** **Class 3 Claims (General Unsecured Claims) are unimpaired.**

On the Effective Date, each holder of an Allowed Class 3 Claim shall receive Cash in an amount equal to such Allowed Claim plus Post-petition Interest thereon, if any, unless the holder of such Claim agrees to less favorable treatment. The Plan Proponents believe the amount of Class 3 Claims is negligible.

**d.** **Class 4 Claims (Asbestos PI Claims and Settled Asbestos Claims) are impaired.**

i. On the Effective Date, all Asbestos PI Claims and Settled Asbestos Claims shall be channeled to the Asbestos PI Trust, which shall be funded pursuant to <u>Article V</u> of this Plan.

ii. All Asbestos PI Claims shall be resolved pursuant to the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures and to the extent such claims meet the criteria set forth therein, paid pursuant to the Asbestos PI Trust Documents.

iv. All Settled Asbestos Claims shall be resolved pursuant to the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures and each holder of a Settled Asbestos Claim may opt to receive either (i) the liquidated value of such Settled Asbestos Claim as reflected in, and subject to the terms and conditions of, the applicable settlement agreement or other governing documentation; or (ii) treatment under the Expedited Review Process (as defined in the Asbestos PI Trust Distribution Procedures) or the Individual Review Process (as defined in the Asbestos PI Trust Distribution Procedures).

v. Pursuant to section 524(g) of the Bankruptcy Code, this Plan and the Confirmation Order shall stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos PI Claim or Settled Asbestos Claim, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, including staying, restraining and enjoining any Entity from any of the following with respect to any Asbestos PI Claim or Settled Asbestos Claim:

1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding) in any forum against any Protected Party or any property or interests in property of any Protected Party;

2. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

3. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party; and

4.      setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party with respect to any Asbestos PI Claim or Settled Asbestos Claim.

For the avoidance of doubt, Georgia-Pacific and its Affiliates, other than PlasterCo, BRRC and PlasterCanada, are not entitled to any of the protections granted to the Protected Parties.

**e.      Class 5 Claims (Intercompany Claims) are unimpaired.**

On the Effective Date, each Allowed Class 5 Claim shall be either Reinstated, subject to the Restructuring Transactions, or paid in full.

**f.      Class 6 Interests (Equity Interests) are impaired.**

Class 6 consists of all Equity Interests in the Debtor. All Equity Interests in the Debtor will become Equity Interests in Reorganized Bestwall, with the same equity ownership such Equity Interests held in the Debtor, subject to a Georgia-Pacific Default.

**2.      The Unimpairment Alternative**

In the event that (a) Class 4 Claims (Asbestos PI Claims and Settled Asbestos Claims) do not vote to accept the Plan, (b) Class 6 Interests (Equity Interests) do not vote to accept the Plan, or (c) Georgia-Pacific does not agree to the assumption and assignment of the Funding Agreement to the Asbestos PI Trust on the conditions set forth in this Plan, then all Claims in Classes 1 through 6 shall be unimpaired, and the rights and obligations of the holders of such claims shall be Unimpaired and Reinstated. On the Effective Date, the Litigation Trust will be created to pursue any Causes of Action for the benefit of holders of Claims and Interests, with any recoveries to be distributed in accordance with the priority scheme of the Bankruptcy Code.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION
BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS**

**A.      Classes Entitled to Vote**

Except as set forth below, each holder of an Allowed Claim, and each holder of a Claim that has been temporarily allowed for voting purposes in each Impaired Class, including each holder of a Settled Asbestos Claim or an Asbestos PI Claim, shall be entitled to vote separately to accept or reject the Plan; provided, however, (a) any holder of a Claim in an Impaired Class that will receive no distribution under this Plan shall be deemed to reject the Plan and shall not be entitled to vote to accept or reject the Plan, and (b) any holder of a Claim in an Unimpaired Class of Claims shall be deemed to accept the Plan and shall not be entitled to vote to accept or reject the Plan.

**B.      Class Acceptance Requirement**

**1.      The § 524(g) Alternative**

Acceptance of the Plan by any Impaired Class, other than Class 4 (Asbestos PI Claims and Settled Asbestos Claims) shall be determined in accordance with section 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order. Acceptance of the Plan by Class 4 (Asbestos PI Claims and Settled Asbestos Claims) shall be determined in accordance with sections 524(g) and 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order.

Acceptance by Unimpaired Classes. Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), and Class 5 (Intercompany Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**2.      The Unimpairment Alternative**

Classes 1 through 6 are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**C.      Solicitation of Votes**

Solicitation of votes of holders of Claims in each of Class 1, Class 2, Class 3, and Class 5 is not required.

**D.      Setoff**

The Plan Proponents and/or Reorganized Bestwall (or the Asbestos PI Trust to the extent it pertains to an Asbestos PI Claim or Settled Asbestos Claim) may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim, Asbestos PI Claim, or Settled Asbestos Claim, as applicable, (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtor, Reorganized Bestwall, the Entity on whose behalf such claim is being paid, or the Asbestos PI Trust, to the extent it pertains to an Asbestos PI Claim or Settled Asbestos Claim, may hold against the holder of such Claim; provided, however, that the failure to effectuate such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE § 524(g) ALTERNATIVE

In the event that the Plan Proponents select the § 524(g) Alternative, the terms of Article V of the Plan shall be implemented and not those of Article VI.

**A.      Funding Under the Funding Agreement; Establishment of Claims Reserve**

On the Effective Date, Georgia-Pacific shall remit to the Debtor (a) an amount sufficient for the Debtor to pay all Allowed Administrative Claims, Allowed Priority Tax Claims, and all Allowed Claims in Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), and Class 5 (Intercompany Claims), and (b) an amount sufficient for the Debtor to fund the Claims Reserve, net of the balance of the Funding Account (as such balance exists as of the Effective Date). All Allowed Claims in Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 5

(Intercompany Claims) and all Administrative Claims and Priority Tax Claims that are Allowed as of the Effective Date shall be paid in full in Cash as provided in Article VIII of this Plan, unless the holders of such Claims agree to a different treatment.  All Administrative Claims, Priority Tax Claims, and all Allowed Claims in Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), and Class 5 (Intercompany Claims) that are Allowed after the Effective Date shall be paid from the Claims Reserve, in full in Cash, within the time required under Article III of this Plan, unless the holders of such Claims agree to a different treatment.  In the event a balance exists in the Claims Reserve after all Administrative Claims and Priority Tax Claims have been paid in full, such balance shall be transferred to the Asbestos PI Trust's Trust Expense Fund.

**B.     Assignment of Funding Agreement**

On the Effective Date, the Funding Agreement and all the Debtor's rights and benefits as payee thereunder shall be assumed by the Debtor and assigned to the Asbestos PI Trust.  All Asbestos PI Claims and Settled Asbestos Claims shall be channeled to the Asbestos PI Trust and paid in accordance with the Asbestos PI Trust Distribution Procedures.

**C.     Continued Corporate Existence and Vesting of Assets in Reorganized Bestwall**

Reorganized Bestwall shall continue to exist after the Effective Date as a separate legal Entity, with all the powers of such legal Entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.  Except as otherwise provided herein (and subject to the Restructuring Transactions provisions set forth herein), as of the Effective Date, all property of the Estate of the Debtor, and any property acquired by the Debtor or Reorganized Bestwall under the Plan that has not been transferred under the Restructuring Transactions shall vest in Reorganized Bestwall, free and clear of all Claims, Encumbrances and Interests.  For the avoidance of doubt, the Mount Holly Tax Parcels will be transferred to the Asbestos PI Trust and will not vest in Reorganized Bestwall.  On and after the Effective Date, Reorganized Bestwall may operate its business and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, Reorganized Bestwall may pay the charges that it incurs on or after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including fees and expenses relating to the preparation of Professionals' Final Fee Applications) without application to the Bankruptcy Court. All such Claims shall be paid with the funds deposited in the Claims Reserve.

**D.     Restructuring Transactions**

On or prior to the Effective Date, the Debtor shall take such actions as the Asbestos PI Committee and the Future Claimants' Representative determine to be necessary or appropriate to effectuate, implement and consummate the Plan and the Restructuring Transactions set forth on Exhibit D to this Plan; provided, however, that no Restructuring Transactions shall be implemented prior to the Effective Date except as expressly provided on Exhibit D to this Plan.  The actions to effectuate, implement and consummate the Restructuring Transactions may include: (a) the execution and delivery of appropriate agreements or other documents that carry out the provisions of the Plan and that satisfy the applicable requirements of applicable state law; and (b) the filing of appropriate instruments pursuant to applicable state law.

**E.      Reinstatement of Equity in Reorganized Bestwall**

The equity interests of GP Holdings in the Debtor will be reinstated as equity interests in Reorganized Bestwall, subject to a Georgia-Pacific Default. In the event of a Georgia-Pacific Default, 100% of the issued and outstanding equity interests in Reorganized Bestwall will immediately and without further action vest in the Asbestos PI Trust.

**F.      Reorganized Bestwall Governance; Managers and Officers; Employment-Related Agreements and Compensation Programs; Corporate Action**

**1.      Articles of Organization and Amended and Restated Operating Agreement of Reorganized Bestwall**

As of the Effective Date, the Articles of Organization and the Amended and Restated Operating Agreement of Reorganized Bestwall will be in such form as the Debtor, Asbestos PI Committee and Future Claimants' Representative may determine. The Articles of Organization and Amended and Restated Operating Agreement of Reorganized Bestwall shall, inter alia, prohibit the issuance of nonvoting equity securities by Reorganized Bestwall to the extent required by section 1123(a) of the Bankruptcy Code. After the Effective Date, Reorganized Bestwall shall be permitted to supplement, modify, amend or restate its Articles of Organization or Amended and Restated Operating Agreement at any time permitted under the terms and conditions thereof and as allowed under applicable state law.

**2.      Managers and Officers of Reorganized Bestwall**

Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial manager(s) and officers of Reorganized Bestwall shall be identified in the Plan Supplement. Each such manager and officer shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the Articles of Organization and Amended and Restated Operating Agreement of Reorganized Bestwall (as the same may be amended, from time to time, after the Effective Date) and applicable state law.

**3.      Employee Arrangements of Reorganized Bestwall**

As of the Effective Date, all existing employment, indemnification and other arrangements the Debtor has with its active and retired managers and officers, as well as the Secondment Agreements, shall be assumed.

**4.      Corporate Action**

All matters provided for under this Plan involving the corporate structure of the Debtor or Reorganized Bestwall, or any corporate action to be taken by, or required of the Debtor or Reorganized Bestwall, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action or vote by the member(s) or manager(s) of such entities.

**5.      Authority of the Debtor**

Effective on the Confirmation Date, the Debtor shall take or cause to be taken, prior to the Effective Date, all actions necessary or appropriate to achieve the Effective Date and enable Reorganized Bestwall

to implement effectively the provisions of the Plan, the Confirmation Order, the Restructuring Transactions and the Asbestos PI Trust Agreement.

### G.    Obtaining Cash for Plan Distributions

Except as otherwise provided herein with respect to the funding of the Asbestos PI Trust and the funding of the Claims Reserve, all Cash payments to be made pursuant to the Plan shall be funded by Georgia-Pacific in accordance with the Funding Agreement.

### H.    Creation of Asbestos PI Trust

As of the Effective Date, the Asbestos PI Trust Agreement shall be executed by the Debtor and the Asbestos PI Trustee(s), and the Asbestos PI Trust shall be created.  The Asbestos PI Trust is intended to be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code.  The purpose of the Asbestos PI Trust shall be to, among other things: (1) resolve all asserted Asbestos PI Claims and Settled Asbestos Claims in accordance with the Plan, the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures and the Confirmation Order; (2) preserve, hold, collect, manage, maximize and liquidate the assets of the Asbestos PI Trust for use in resolving Asbestos PI Claims and Settled Asbestos Claims; (3) pay all Asbestos PI Trust Expenses as provided in the Asbestos PI Trust Agreement, and (4) qualify at all times as a qualified settlement fund under applicable law.

### I.    Appointment of Asbestos PI Trustee(s)

On the Confirmation Date, and effective as of the Effective Date, in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, the individual(s) selected jointly by the Asbestos PI Committee and the Future Claimants' Representative shall be appointed to serve as the Asbestos PI Trustee(s) for the Asbestos PI Trust. The identity of such Asbestos PI Trustee(s) shall be set forth in the Asbestos PI Trust Agreement, Plan Supplement or the Confirmation Order.

### J.    Transfers of Property to and Assumption of Certain Liabilities by the Asbestos PI Trust

#### 1.    Transfer of Books and Records to the Asbestos PI Trust

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtor or Reorganized Bestwall shall transfer and assign, or cause to be transferred and assigned, to the Asbestos PI Trust copies of books and records necessary for the defense of Asbestos PI Claims. Pursuant to the Plan and the Confirmation Order, to the extent the Debtor or Reorganized Bestwall, as applicable, provides any privileged books and records, such transfer shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records.  If the preservation of privilege pertaining to such books and records is challenged or disapproved by the Bankruptcy Court or the District Court and if the Asbestos PI Trust determines that it needs access to such information, Reorganized Bestwall, will retain the books and records and enter into arrangements to permit the Asbestos PI Trust to have access to such books and records, to the extent such access does not result in the destruction or waiver of any applicable privileges, which may be addressed in a separate agreement of the parties.  Further, pursuant to the Plan and the Confirmation Order, neither the Debtor nor Reorganized Bestwall shall be liable for violating any confidentiality or privacy protections as a result of transferring the books and records to the Asbestos PI Trust, and the Asbestos PI Trust, upon receipt of the books and records, shall take appropriate steps to comply with any such applicable protections.

25

### 2.      Funding of the Asbestos PI Trust

On the Effective Date, the Trustee(s) of the Asbestos PI Trust will create the Trust Expense Fund and the Trust Claims Fund.  The Trust Expense Fund shall be used to pay all Asbestos PI Trust Expenses of the Asbestos PI Trust in accordance with the terms and conditions of the Funding Agreement and the Asbestos PI Trust Agreement.  The Trust Claims Fund will be used to pay Asbestos PI Claims and Settled Asbestos Claims Liquidated by the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Trust Distribution Procedures.

### a.      Funding of the Trust Expense Fund

On the Effective Date, Georgia-Pacific shall transfer by wire to the Trust in immediately available funds an amount equal to the Initial Trust Expense Funding for purposes of funding the Trust Expense Fund.  The Trust Expense Fund shall be further funded by any monies derived from the operation, sale, or management of the Asbestos PI Trust Assets.  Thereafter, in the event the Trust Expense Fund has a balance in an amount less than $35 million, the Trust shall provide Georgia-Pacific with a written funding demand, and Georgia-Pacific will have a continuing obligation under the Funding Agreement to remit to the Asbestos PI Trust, within three Business Days after its receipt of such written funding demand, an amount sufficient such that the balance of the Trust Expenses Fund is equal to or greater than [     ].  Each funding request shall be accompanied by a statement identifying any amounts received by the Asbestos PI Trust during the period since any prior funding demand made by the Asbestos PI Trust.

### b.      Funding of the Trust Claims Fund

On the Effective Date, the Bestwall QSF will release $1.0 billion to the Asbestos PI Trust for the Trust Claims Fund.

As soon as reasonably practicable following the end of each calendar month, the Asbestos PI Trust will deliver to Georgia-Pacific a Demand for Payment for such calendar month.  Within 30 calendar days after receipt of each Demand for Payment, Georgia-Pacific will (i) deliver to the Asbestos PI Trust a statement identifying which of the Asbestos PI Claims and Settled Asbestos Claims included in the Demand for Payment are subject to a Georgia-Pacific objection and which are not and (ii) transfer Cash to the Trust Claims Fund in the amount by which the Liquidated value of the Asbestos PI Claims and Settled Asbestos Claims in the Demand for Payment to which Georgia-Pacific does not object would exceed the then-current balance of the Trust Claims Fund.  As soon as reasonably practicable thereafter, the Asbestos PI Trust will (1) pay all Asbestos PI Claims and Settled Asbestos Claims to which Georgia-Pacific does not object, and for which funding was available or received, as applicable, an amount equal to the Liquidated value of such claims, and (2) provide notice to those claimants whose Asbestos PI Claims or Settled Asbestos Claim were objected to by Georgia-Pacific that the claimant may elect to exit to the tort system as provided in the Asbestos PI Trust Distribution Procedures to pursue such claimant's Asbestos PI Claim or Settled Asbestos Claim against Georgia-Pacific and any Affiliate of Georgia-Pacific. If and when any such claimant obtains a judgment, award, settlement, or other resolution with respect to such claimant's Asbestos PI Claim or Settled Asbestos Claim, the claimant shall submit evidence of the liquidated Asbestos PI Claim or Settled Asbestos Claim to the Asbestos PI Trust to be included in the next Demand for Payment.

In order to promote resolution of Asbestos PI Claims through the Asbestos PI Trust mechanism (in lieu of claimants pursuing claims directly against Georgia-Pacific and its Affiliates in the first instance), the statute of limitations applicable to each Asbestos PI Claim shall be tolled during the period commencing on the date such Asbestos PI Claim is submitted to the Asbestos PI Trust by submission of

a proof of claim form that includes the claimant's name, address, social security number and asbestos-related disease and the date on which such claimant receives notice that Georgia-Pacific has objected to the payment of such Asbestos PI Claim.

### c.      Operation of the Trust

Asbestos PI Claims and Settled Asbestos Claims will be channeled to the Asbestos PI Trust and Liquidated in accordance with the Asbestos PI Trust Distribution Procedures to be adopted upon the Effective Date. The Asbestos PI Trust Distribution Procedures will provide for an Expedited Review Process (as defined in the Asbestos PI Trust Distribution Procedures) through which holders of Asbestos PI Claims who satisfy the designated Medical/Exposure Criteria (as defined in the Asbestos PI Trust Distribution Procedures) will be entitled to receive a Scheduled Value (as defined in the Asbestos PI Trust Distribution Procedures) for different categories of Asbestos PI Claims. There will also be an Individual Review Process (as defined in the Asbestos PI Trust Distribution Procedures). Settled Asbestos Claims may opt to receive either (i) the Liquidated value of their claim pursuant to the terms of their respective settlements; or (ii) treatment under the Expedited Review Process (as defined in the Asbestos PI Trust Distribution Procedures) or the Individual Review Process (as defined in the Asbestos PI Trust Distribution Procedures).

### d.      Georgia-Pacific Default

In the event that Georgia-Pacific fails to fund the Trust Expense Fund or fails to provide funding for the Asbestos PI Trust to satisfy its indemnification obligations under Article V, Section K below, as required under this Plan and the Asbestos PI Trust Agreement, the Asbestos PI Trust shall commence suit against Georgia-Pacific for such relief as it deems appropriate in the Bankruptcy Court, which may include but is not limited to breach of the Funding Agreement or specific performance. In such event, Georgia-Pacific shall (a) immediately escrow the full amount of any such unpaid demand in an interest-bearing account; and (b) shall be responsible for reasonable attorney fees and costs associated with pursuing relief on behalf of the Asbestos PI Trust and claimants, interest compounded daily based on the greater of the prevailing federal judgment rate or an annual rate of 15%, punitive damages and other extraordinary relief as appropriate. In the discretion of the Asbestos PI Trust, the Asbestos PI Trust may assign to any affected claimant the right of such claimant to pursue recovery on the breach. In such event, the claimant may elect to sue Georgia-Pacific on his or her Conditionally Settled Claim or may reject such settlement and sue Georgia-Pacific in the tort system for resolution of his or her Asbestos PI Claim. Nothing herein gives a claimant the right to pursue any action against the Asbestos PI Trust in the event of a default by Georgia-Pacific. The Bankruptcy Court shall retain jurisdiction over the implementation of this Plan and the Funding Agreement.

### K.      Indemnification by the Asbestos PI Trust

The Asbestos PI Trust shall protect, defend, indemnify and hold harmless each Protected Party from and against any Asbestos PI Claim. Notwithstanding the foregoing, no Affiliate of the Debtor may assert any claim against the Asbestos PI Trust for contribution, reimbursement, subrogation or indemnification on account of or with respect to (i) any Asbestos PI Claim or Asbestos PI Indirect Claim paid by Old GP, the Debtor or any of their respective Affiliates prior to the Petition Date or (ii) any Settled Asbestos Claim; or (iii) the funding of the Asbestos PI Trust by the Debtor.

L.      **Assignment of Rights of Action**

1.      **Assignment of Rights of Action by the Debtor and Reorganized Bestwall to the Asbestos PI Trust**

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, prior to the Effective Date, the Debtor shall authorize the Asbestos PI Committee to commence any Causes of Action, which Causes of Action shall then be assigned to the Asbestos PI Trust on the Effective Date. For avoidance of doubt, costs and expenses incurred by the Asbestos PI Trust for purposes of mediating, arbitrating, litigating, settling, negotiating or otherwise pursuing the Causes of Action shall constitute Asbestos PI Trust Expenses for which Georgia-Pacific shall be obligated to provide funding in accordance with the Funding Agreement.

2.      **Releases**

a.      **General Releases of the Debtor and Reorganized Bestwall**

Except as otherwise expressly set forth in the Plan, as of the Effective Date, the Debtor and Reorganized Bestwall shall be released from all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date. Notwithstanding the prior sentence, if Georgia-Pacific fails to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust opts to assign its enforcement rights to an affected claimant to pursue recovery in the tort system, any release provided to the Debtor and Reorganized Bestwall pursuant to this subsection is hereby waived, nullified, or lifted with respect to the affected claimant, but only to the extent necessary to Liquidate and recover against Georgia-Pacific.

b.      **Releases by the Debtor and Reorganized Bestwall**

Without limiting any other provision of this Plan, as of the Effective Date, the Debtor and Reorganized Bestwall, on behalf of themselves and the Estate and their respective successors and assigns, and any and all Entities who may purport to claim by, through, for or because of them, shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against holders of Asbestos PI Claims or Settled Asbestos Claims who received payments in respect of their claims from the Debtor or any Affiliate or predecessor of the Debtor (including Old GP) prior to the Petition Date, and their professionals (but only with respect to their representation of or work for such holders in connection with such payments), including, without limitation, Causes of Action, in each case arising out of, based upon or resulting from payments to holders of Asbestos PI Claims from the Debtor or any Affiliate or predecessor of the Debtor (including Old GP) prior to the Petition Date on account of such claims.

c.      **General Releases by Holders of Claims or Interests**

Without limiting any other provision of the Plan or the Bankruptcy Code, as of the Effective Date, in consideration for, among other things, the obligations of the Debtor, Reorganized Bestwall, and Georgia-Pacific under the Plan, each holder of a Claim or Interest that votes in favor of the Plan or is deemed to accept the Plan shall be deemed to forever release, waive and discharge all claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, against any of the Protected Parties arising out of, based upon or resulting from, directly or indirectly, in whole or in part, any act, omission, transaction or other occurrence taking place on or prior to the Effective Date and in any way relating to the Debtor, the Prepetition Corporate Restructuring, the Reorganization Case or this Plan (which release shall be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code). Notwithstanding the prior sentence, if Georgia-Pacific fails to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust opts to assign its enforcement rights to an affected claimant to pursue recovery in the tort system, any release provided to any Protected Party pursuant to this subsection is hereby waived, nullified, or lifted with respect to the affected claimant, but only to the extent necessary to Liquidate and recover against Georgia-Pacific.

d.      **Injunction Related to Releases**

As further provided in Article XI of this Plan, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action and liabilities released pursuant to this Plan. Notwithstanding the prior sentence, if Georgia-Pacific fails to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust opts to assign its enforcement rights to an affected claimant to pursue recovery in the tort system, any release provided to the Debtor, Reorganized Bestwall, or any Protected Party pursuant to this plan is hereby waived, nullified, or lifted with respect to the affected claimant, but only to the extent necessary to Liquidate and recover against Georgia-Pacific, and the affected claimant may proceed without the hinderance of any injunction.

**M.      Release of Encumbrances**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article III of this Plan, all Encumbrances against the property of the Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such Encumbrances, including any rights to any collateral thereunder, shall revert to Reorganized Bestwall and its successors and assigns.

**N.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

Each officer of the Debtor and Reorganized Bestwall shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements and documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including the Restructuring Transactions provisions of Article V, Section D. The secretary or any assistant secretary of the Debtor or Reorganized Bestwall shall be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax

29

or similar Tax: (1) the creation of any Encumbrances; (2) the making or assignment of any lease or sublease; (3) the execution and implementation of the Asbestos PI Trust Agreement, including the creation of the Asbestos PI Trust and any transfers to or by the Asbestos PI Trust; (4) any Restructuring Transaction; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

## O.    Compliance with QSF Regulations

The Debtor and Reorganized Bestwall shall take all actions required of them as "transferor," and the Asbestos PI Trustee shall take all actions required of them as "administrator," pursuant to Treasury Regulations promulgated under section 468B of the Internal Revenue Code. Pursuant to such Treasury Regulations, the Asbestos PI Trustee as "administrator" shall be responsible for all tax reporting and withholding requirements in respect of distributions made from the Asbestos PI Trust.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE UNIMPAIRMENT ALTERNATIVE

In the event that the Plan Proponents select the Unimpairment Alternative, the terms of Article VI of the Plan shall be implemented and not those of Article V.

## A.    Means of Implementation

The Debtor's obligations under the Plan will be funded by (i) the Debtor's existing cash on hand, (ii) revenue and other value derived from the Debtor's operating assets; (iii) any financing arrangements entered into prior to or subsequent to the Effective Date and (iv) the Funding Agreement.

## B.    No Discharge of Claims or Termination of Interests

Confirmation of the Plan will not discharge the Debtor from any Claims or terminate any Interests.

## C.    Revesting of Assets in the Debtor.

On the Effective Date, all Revested Assets shall be revested in the Debtor in accordance with the terms of the Plan, excluding the Causes of Actions to be transferred to the Litigation Trust pursuant to the terms of the Plan. To the extent required to implement the vesting of the Revested Assets in the Debtor as provided for herein, all persons including Governmental Authorities shall cooperate with the Debtor, the Estate, and the Litigation Trustee to implement the transfer of the Revested Assets from the Estate to the Debtor. Nothing in the Plan will alter, modify or override any provisions in, or actions taken pursuant to, any of the Orders entered by the Bankruptcy Court authorizing the Debtor to use cash collateral.

## D.    Assumption of the Funding Agreement.

On the Effective Date, the Funding Agreement and all the Debtor's rights and benefits as payee thereunder shall be assumed by the Debtor.

E.      **Litigation Trust.**

    1.      **Creation of the Litigation Trust.**

On or before the Effective Date, the Litigation Trust shall be formed pursuant to the Litigation Trust Agreement and the filing of a certificate of trust with the Delaware Secretary of State.

    2.      **Vesting of Causes of Action in the Litigation Trust.**

On the Effective Date, all Causes of Action, including but not limited to, the Ambassador Claim, shall be vested in the Litigation Trust free and clear of Liens, Claims, encumbrances, charges, interests of Holders of Claims and Equity Interests and other interests.  To the extent required to implement the vesting of the Causes of Action in the Litigation Trust as provided for herein, all persons including Governmental Authorities shall cooperate with the Debtor, the Estate, and the Litigation Trustee to implement the transfer of the Causes of Action from the Debtor to the Litigation Trust.

    3.      **No Issuance of Litigation Trust Beneficial Interests.**

Because the Litigation Trust is being established for the benefit of all Holders of Claims and Interests, no beneficial interests shall be issued to any specific Holder and distributions shall be made to Holders of Claims and Interests of record in these cases once they are Allowed pursuant to the terms of the Plan.

    4.      **Authorization of the Litigation Trustee.**

The Litigation Trustee shall administer the Litigation Trust, and shall have the powers and duties set forth in the Litigation Trust Agreement.  From and after the Effective Date, the Litigation Trustee shall be authorized to, and shall, take all actions required to implement the Litigation Trust Agreement and the Plan.  The Litigation Trustee shall, at any time and from time to time, have authority to retain, on behalf of the Litigation Trust, any counsel, financial advisors, claims agent, auditors, or other professionals it deems appropriate.  The Litigation Trust may select any such professionals in its sole discretion, and without regard to their prior employment in any capacity in the Chapter 11 Cases on behalf of the Debtor, the Estate, the Asbestos PI Committee, or the Future Claimants' Representative.

    5.      **Representative of the Estate with Respect to Causes of Action.**

The Litigation Trustee shall be, and hereby is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code with respect to the Causes of Action and as such shall be vested with the sole authority and power (subject to the Litigation Trust Agreement) to: (a) administer, hold, and liquidate the Causes of Action; and (b) administer, investigate, prosecute, settle, and abandon all Causes of Action in the name of, and for the benefit of, the Estate, subject to the limitations set forth in the Plan.  The Litigation Trustee shall have the right to prosecute the Causes of Action as the authorized representative of the Debtor and the Estate.  As the representative of the Estate, the Litigation Trustee shall succeed to all of the rights and powers of the Debtor and the Estate with respect to the Causes of Action, and the Litigation Trustee shall be substituted for and shall replace the named plaintiff as the party in interest in all Causes of Action pending as of the Effective Date.  No current or former shareholder of the Debtor shall have the right to prosecute any Causes of Action.  As of the Effective Date, subject to the Litigation Trust Agreement, the Litigation Trustee shall be authorized to exercise and perform the rights, powers, and duties held by the Debtor's Estate with respect to the Causes of Action, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code

31

to provide for settlement, adjustment, retention, and enforcement of claims and interests of the Estate, without the consent or approval of any third party, and without any further Order of the Bankruptcy Court, except as otherwise provided in the Plan or the Confirmation Order. SUBJECT TO THE LITIGATION TRUST AGREEMENT, THE LITIGATION TRUSTEE WILL DECIDE WHETHER TO PURSUE EACH CAUSE OF ACTION BASED UPON ITS MERITS, THE COST TO PROSECUTE THE CLAIM AND THE RESOURCES AVAILABLE. SUBJECT TO THE LITIGATION TRUST AGREEMENT, THE LITIGATION TRUSTEE MAY RETAIN COUNSEL ON A CONTINGENCY FEE BASIS OR SEEK FINANCING FOR THE COST TO PROSECUTE SOME OR ALL OF THE CAUSES OF ACTION, ABANDON OR DECIDE NOT TO PURSUE SOME OR ALL CAUSES OF ACTION.

### 6. Proceeds of the Causes of Action.

Amounts recovered by the Causes of Action shall be used first to pay the expenses of the Litigation Trust incurred in pursuing the Causes of Action and any surplus shall be distributed to the beneficiaries of the Litigation Trust on account of such holders' Allowed Claims and Interests as provided for in the Plan. If holders of Allowed Claims and Interests are paid in full under the terms of the Plan, and there remain amounts recovered by the Litigation Trustee for Distribution, then the remaining funds shall be turned over to the Debtor for Distribution in the same manner as Revested Assets.

### 7. Federal Income Tax Treatment of the Litigation Trust.

The Litigation Trust will be established, in accordance with Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, to liquidate the Causes of Action. The Litigation Trust shall be formed solely for such purpose and shall have no objective to engage in or continue the conduct of a trade or business. The Litigation Trust is intended to qualify as a liquidating trust that is a grantor trust and therefore not a separate taxable entity for federal income tax purposes. The Holders of Claims and Interests shall be treated for federal income tax purposes as the grantors and deemed owners of the Litigation Trust and the Litigation Trustee and such Holders shall report consistently therewith.

### 8. Funding of Post-Effective Date Expenses.

All Post-Effective Date Expenses of the Litigation Trustee and Litigation Trust shall initially be expenses of the Debtor, and the Debtor shall arrange for the advancement of such expenses to the Litigation Trustee. The expenses so advanced shall then be repaid to the Debtor before Distributions to holders of Claims and Interests are made from the Litigation Trust.

### 9. Dissolution.

Unless a favorable ruling letter is obtained from the IRS providing that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes, the Litigation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to such fifth (5th) anniversary, determines that an extension for a fixed period of not more than (3) years (including any prior extensions) is necessary for the purposes for which the Litigation Trust was formed. Upon the filing of a motion for extension of the date of dissolution of the Litigation Trust, such date automatically shall be deemed extended until entry by the Bankruptcy Court of an Order resolving such motion or until the motion is withdrawn.

**10.     Securities Law Matters.**

To the extent the Litigation Trust Beneficial Interests in the Litigation Trust are deemed to be "securities," the issuance of such Litigation Trust Beneficial Interests under the Plan is exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act of 1933, as amended, and any applicable state and local laws mandating the registration of securities.

**F.     Protection Against Liability of the Litigation Trustee.**

Neither the Litigation Trustee, nor any of its members or designees, nor any of its duly designated agents or representatives, nor its employees, shall be liable for the act or omission of any other member, designee, agent, or representative of such entity, nor shall any member be liable for any act or omission to be taken or not taken, other than acts resulting from such person's willful misconduct or gross negligence. Absent willful misconduct, intentional misconduct, gross negligence or fraud in connection therewith, no party in interest shall have a cause of action against the Litigation Trustee, or its directors, officers, employees, agents, consultants, trustees or professionals.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     The § 524(g) Alternative**

In the event that the Plan Proponents select the § 524(g) Alternative, then the treatment of Executory Contracts and Unexpired Leases shall be as follows:

**1.     Executory Contracts and Unexpired Leases to Be Assumed**

**a.     Assumption of Funding Agreement**

The Debtor shall assume the Funding Agreement and assign all rights and benefits thereunder to the Asbestos PI Trust on the Effective Date. Pursuant to the Funding Agreement, Georgia-Pacific shall be required to provide to the Debtor, Reorganized Bestwall, or the Asbestos PI Trust, as applicable, Cash in an amount sufficient to (a) pay all the Asbestos PI Trust Expenses, (b) fund the Claims Reserve, and (c) pay Administrative Claims, Priority Tax Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 5 Claims, and to satisfy the Asbestos PI Trust's obligations under the Asbestos PI Trust Agreement and Asbestos PI Trust Distribution Procedures.

**b.     Assumption Generally**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, including the Restructuring Transactions provisions of Article V, Section D, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, Reorganized Bestwall shall assume each of the Debtor's Executory Contracts and Unexpired Leases other than those listed on Exhibit E to this Plan; provided, however, that the Debtor in consultation with the Plan Proponents reserves the right, at any time prior to the Effective Date, to amend Exhibit E to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its assumption pursuant hereto; or (b) add any Executory Contract or Unexpired Lease to Exhibit E, thus providing for its rejection pursuant to Article VII, Section A.3 of this Plan. The Debtor shall provide notice of any amendments to Exhibit E to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Reorganization Case. Nothing herein shall constitute an

admission by the Plan Proponents, Debtor or Reorganized Bestwall that any contract or lease, other than the Funding Agreement, is an Executory Contract or Unexpired Lease or that the Debtor or Reorganized Bestwall has any liability thereunder.  For the avoidance of doubt, the Funding Agreement is an executory contract.

### c.    Assumptions of Executory Contracts and Unexpired Leases; Assignments

Each Executory Contract or Unexpired Lease assumed under this Article VII shall include any modifications, amendments, supplements or restatements to such contract or lease.  Each assumed Executory Contract or Unexpired Lease shall be a contract or lease of Reorganized Bestwall unless an assignee is identified in accordance with the procedures in this Article VII.

### d.    Approval of Assumptions and Assignments and Related Procedures

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VII pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  The procedures for assumption or assumption and assignment of an Executory Contract or Unexpired Lease are as follows:

i.      After the entry of the Confirmation Order, the Plan Proponents shall direct the Debtor to serve upon each party to an Executory Contract or Unexpired Lease being assumed pursuant to the Plan notice of: (i) the contract or lease being assumed or assumed and assigned and, if applicable, any assignee; (ii) the Cure Amount Claim, if any, that the Plan Proponents in consultation with the Debtor believes it would be obligated to pay in connection with such assumption; and (iii) the procedures for such party to object to the assumption or assumption and assignment of the applicable contract or lease or the amount of the proposed Cure Amount Claim (as described below).

ii.     Any Entity wishing to object to (i) the proposed assumption or assumption and assignment of an Executory Contract or Unexpired Lease under the Plan or (ii) the proposed amount of the related Cure Amount Claim must File and serve on counsel to the Asbestos PI Committee, the Future Claimants' Representative, and the Debtor or Reorganized Bestwall a written objection setting forth the basis for the objection within 20 days of service of the notice described herein.

iii.    If no objection to the proposed assumption or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease: (i) the proposed assumption or assumption and assignment of the Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court; and (ii) the Cure Amount Claim identified by the Plan Proponents in the notice shall be fixed and shall be paid in accordance with the Plan on or after the Effective Date, without further action of the Bankruptcy Court, to the appropriate contract or lease party identified on the notice.

iv.     If an objection to the proposed assumption, assumption and assignment or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Debtor or Reorganized Bestwall, as applicable, in consultation with the Asbestos PI Committee and Future Claimants'

Representative, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

v.      If an objection to the proposed assumption, assumption and assignment or Cure Amount Claim is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection: (i) the Asbestos PI Committee, the Future Claimants' Representative, the Debtor or Reorganized Bestwall may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time; or (ii) the Plan Proponents may designate the Contract or Unexpired Lease underlying such objection for rejection pursuant to Article VII and amend Exhibit E accordingly.

## 2.      Payments Related to the Assumption of Executory Contracts and Unexpired Leases

To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Plan Proponents in consultation with the Debtor or Reorganized Bestwall assuming such contract or lease or the assignee of the Debtor or Reorganized Bestwall, if any: (1) by payment of the Cure Amount Claim in Cash on the Effective Date or as promptly as reasonably practicable after the Cure Amount Claim is allowed or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease.  Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Amount Claim shall be allowed for a penalty rate or other form of default rate of interest.  If there is a dispute regarding: (1) the amount of any Cure Amount Claim; (2) the ability of Reorganized Bestwall or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

## 3.      Executory Contracts and Unexpired Leases to Be Rejected and Rejection Procedures

On the Effective Date, each Executory Contract and Unexpired Lease listed on Exhibit E shall be rejected pursuant to section 365 of the Bankruptcy Code.  Each contract and lease listed on Exhibit E shall be rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  Listing a contract or lease on Exhibit E shall not constitute an admission by the Plan Proponents that such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or Reorganized Bestwall has any liability thereunder.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  The procedures for rejection of an Executory Contract or Unexpired Lease are as follows:

i.      After the entry of the Confirmation Order, the Plan Proponents shall serve upon each party to an Executory Contract or Unexpired Lease being rejected pursuant to the Plan notice of such proposed rejection. For the avoidance of doubt, additional notices may be served upon any amendment to Exhibit E.

ii.      Any Entity wishing to object to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan must File and serve on counsel to the Plan Proponents and the Debtor or Reorganized Bestwall, as applicable, a written objection

35

setting forth the basis for the objection within 20 days of service of the notice described herein.

        iii.     If no objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the proposed rejection of the applicable Executory Contract or Unexpired Lease shall be approved in accordance with the Plan and the Confirmation Order, effective as of the Effective Date, without further action of the Bankruptcy Court.

        iv.     If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease, the Plan Proponents in consultation with the Debtor or Reorganized Bestwall, as applicable, and the objecting party may resolve such objection by stipulation, without further action of the Bankruptcy Court.

        v.     If an objection to the proposed rejection is properly Filed and served prior to the objection deadline with respect to an Executory Contract or Unexpired Lease and the parties are unable to resolve such objection, the Plan Proponents in consultation with the Debtor or Reorganized Bestwall, as applicable, may File a reply to such objection no later than 30 days after the Filing and service of such objection and ask the Bankruptcy Court to schedule a hearing on the particular objection and the related reply at an appropriate time.

**4.     Obligations to Indemnify Directors, Managers, Officers and Employees**

The obligations of the Debtor or Reorganized Bestwall to indemnify any individual serving as one of its managers, directors, officers or employees prior to or following the Petition Date by reason of such individual's prior or future service in such capacity or as a manager, director, officer or employee of the Debtor or other Entity, to the extent provided in the applicable articles of formation, operating agreement or other Entity governance documentation, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed and treated as executory contracts that are assumed by the Debtor or Reorganized Bestwall pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.

**5.     Contracts and Leases Entered Into After the Petition Date**

Notwithstanding any other provision of this Plan, and subject to the Restructuring Transactions provisions of <u>Article V</u>, <u>Section D</u>, contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, shall be performed by the Debtor or Reorganized Bestwall in accordance with the terms and conditions of such contracts and leases in the ordinary course of its business. Accordingly, such contracts and leases and other obligations (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

**B.     The Unimpairment Alternative**

In the event that the Plan Proponents select the Unimpairment Alternative, then all Executory Contracts and Unexpired Leases that have not been rejected or subject to a pending rejection motion prior to Confirmation shall be assumed with the rights and obligations of parties thereto remaining unaltered.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.   Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in this Plan (including with respect to Asbestos PI Claims and Settled Asbestos Claim), Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (1) 60 days after the Effective Date or (2) such later date when the applicable conditions of Article VII (regarding cure payments for Executory Contracts and Unexpired Leases being assumed), Article VIII, Section D (regarding undeliverable Distributions) or Article VIII, Section G (regarding compliance with Tax requirements) are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to this Article VIII. Any Claim that is disallowed by order of the Bankruptcy Court (or the District Court) prior to the Effective Date shall be deemed expunged (to the extent not already expunged) as of the Effective Date without the necessity for further Bankruptcy Court approval and the holder of any such Claim shall not be entitled to any Distribution under the Plan.

### B.   Method of Distributions to Holders of Claims

The Disbursing Agent shall make all Distributions of Cash and other instruments or documents required under the Plan, other than Distributions to be made to holders of Asbestos PI Claims and Settled Asbestos Claims to be Liquidated pursuant to the Asbestos PI Trust Distribution Procedures. Each Disbursing Agent shall serve without bond, and any Disbursing Agent may employ or contract with other Entities to assist in or make the Distributions required by the Plan. All distributions to be made on account of Asbestos PI Claims and Settled Asbestos Claims shall be made in accordance with the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures. The Plan Proponents expect that Georgia-Pacific shall be the Disbursing Agent under the Plan.

### C.   Compensation and Reimbursement for Services Related to Distributions

The Disbursing Agent providing services related to Distributions pursuant to the Plan shall not receive any compensation for such services and shall not receive reimbursement of out-of-pocket expenses incurred in connection with such services.

### D.   Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1.   Delivery of Distributions

Except for Asbestos PI Claims and Settled Asbestos Claims, Distributions to holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to the Disbursing Agent after the date of Filing of any related proof of Claim; or (c) at the addresses reflected in the Debtor's Schedules if no proof of Claim has been Filed and the Disbursing Agent has not received a written notice of a change of address.

### 2.    Undeliverable Distributions Held by Disbursing Agent

#### a.    Holding and Investment of Undeliverable Distributions

If any Distribution to a holder of an Allowed Claim is returned to the Disbursing Agent or designee as undeliverable, no further Distributions shall be made to such holder unless and until the applicable party is notified by written certification of such holder's then-current address. Undeliverable Distributions shall remain in the possession of the Disbursing Agent pursuant to this Article VIII until such time as a Distribution becomes deliverable. Undeliverable Cash shall be held in segregated bank accounts in the name of the applicable party for the benefit of the potential claimants of such funds.

#### b.    After Distributions Become Deliverable

With respect to all undeliverable Distributions that later become deliverable to holders of Allowed Claims (other than Asbestos PI Claims and Settled Asbestos Claims), the Disbursing Agent shall make such Distributions as soon as reasonably practicable.

#### c.    Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undeliverable Distribution to be made by the Disbursing Agent within one year after the later of (i) the Effective Date or (ii) the last date on which a Distribution was attempted to be made to such holder, shall have its claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such claim against Reorganized Bestwall or its property. Unclaimed Distributions shall become property of the Asbestos PI Trust, free of any restrictions thereon, including the right of any state or other government to escheat such property, and any such Distributions held by Disbursing Agent shall be turned over to the Asbestos PI Trust. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

### E.    Distribution Record Date

#### 1.    No Recognition of Transfers after the Distribution Record Date

The Disbursing Agent shall have no obligation to recognize the transfer of, or the sale of any participation in, any Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make Distributions only to those holders of Allowed Claims that are holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.

#### 2.    Treatment of Certain Transfers

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

### F.    Means of Cash Payments

Except as otherwise specified herein, Cash payments made pursuant to the Plan to holders of Claims shall be in U.S. currency by checks drawn on a domestic bank selected by the Plan Proponents or, at the option of the Plan Proponents, by wire transfer from a domestic bank; provided, however, that Cash

payments to foreign holders of Allowed Claims may be made, at the option of the Plan Proponents, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**G.    Timing and Calculation of Amounts to Be Distributed**

**1.    Timing of Distributions Under the Plan**

Except with respect to the Initial Trust Expense Funding, which shall be made on the Effective Date, any Distribution to be made pursuant to the Plan shall be deemed to have been timely made if made within 60 days after the time therefor specified in the Plan. Except as otherwise provided in the Plan, no interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

**2.    Allowed Claims**

On the Effective Date, each holder of an Allowed Claim (other than an Asbestos PI Claim or Settled Asbestos Claim) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class. With respect to any Claims (including Disputed Claims) that become Allowed Claims after the Effective Date, Distributions shall be made to holders of such Claims, in the full amount that the Plan provides for Allowed Claims in the applicable Class, as soon as reasonably practicable after they become Allowed Claims.

**3.    Compliance with Tax Requirements**

**a.    Withholding and Reporting**

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision of the Plan to the contrary, the Disbursing Agent shall be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including applying a portion of any Cash Distribution to be made under the Plan to pay applicable Tax withholding, requiring Claim holders to submit appropriate certifications or establishing other mechanisms the Disbursing Agent believes are reasonable and appropriate. To the extent that any Claim holder fails to submit appropriate certifications required by the Disbursing Agent or to comply with any other mechanism established by the Disbursing Agent to comply with Tax withholding requirements, such Claim holder's Distribution may, in such Disbursing Agent's reasonable discretion, be deemed undeliverable and subject to Article VIII, Section D.

**b.    Backup Withholding**

Without limiting the generality of the foregoing, in accordance with the Internal Revenue Code's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to Distributions made pursuant to the Plan, unless the holder (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides, at the applicable Plan Proponent or designee's request, a completed IRS Form W-9 (or substitute therefor) on which the holder includes a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Among other things, to receive any Post-petition Interest, if requested by the Disbursing Agent, a holder of an Allowed Claim shall be required to

establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.   Non-U.S. Allowed Claim holders may be required by the Disbursing Agent to provide a completed IRS Form W-8BEN or W-8BEN-E, as applicable (or other applicable Form W-8 or successor form), to establish an exemption from or a treaty-reduced rate of withholding on interest distributed pursuant to the Plan.   Unless the Disbursing Agent, in its discretion, determines otherwise, no Distributions on account of Post-petition Interest shall be made to a holder of an Allowed Claim until such time as the holder of such Claim establishes exemption from withholding or provides the applicable IRS Form.

### c.      Obligations of Distribution Recipients

Notwithstanding any other provision of the Plan, each Entity receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed on it by any governmental unit on account of such Distribution, including income, withholding and other Tax obligations.

### d.      Compliance with Domestic Relations Orders

In connection with the Plan, the Disbursing Agent may allocate and make Distributions in compliance with applicable wage garnishment, alimony, child support and similar domestic relations orders.

## H.      Setoffs

The Plan Proponents (or the Asbestos PI Trust to the extent it pertains to an Asbestos PI Claim) may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim, or Asbestos PI Claim (before any Distribution is made on account of such claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtor, Reorganized Bestwall, the Entity on whose behalf such claim is being paid, or the Asbestos PI Trust, to the extent it pertains to an Asbestos PI Claim, may hold against the holder of such Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

## I.      Allocation of Payments

Amounts paid to holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess being allocated to accrued but unpaid interest on such Claims.

## J.      Distributions under the Unimpairment Alternative

If the Plan Proponents select the § 524(g) Alternative, the provisions of Article VIII A through I will be implemented.   If the Plan Proponents select the Unimpairment Alternative, distributions to Unimpaired Classes 1 through 5 shall be made in the ordinary course of business as and when Allowed, and the Equity Interests of Class 6 shall be deemed Reinstated as of the Effective Date.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**A.    Prosecution of Objections to Claims**

**1.    Objections to Claims**

Objections to Claims (other than Asbestos PI Claims) must be Filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if Filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Reorganization Case.  If an objection has not been Filed to a proof of Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or Schedules relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

**2.    Authority to Prosecute Objections**

After the Effective Date, Reorganized Bestwall in consultation with the Plan Proponents, shall have the sole authority to File (if applicable), settle, compromise, withdraw or litigate to judgment objections to all Claims (other than Asbestos PI Claims), including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court.  After the Effective Date, Reorganized Bestwall in consultation with the Plan Proponents may settle, compromise or otherwise resolve any Disputed Claim or any objection or controversy relating to any Claim without approval of the Bankruptcy Court.

**3.    Authority to Amend Schedules**

The Debtor or Reorganized Bestwall shall have the authority to amend the Schedules with respect to any Claim and to make Distributions based on such amended Schedules without approval of the Bankruptcy Court.  If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor or Reorganized Bestwall shall provide the holder of such Claim with notice of such amendment and such holder shall have 20 days to File an objection to such amendment with the Bankruptcy Court.  If no such objection is Filed, the Debtor or Reorganized Bestwall may proceed with Distributions based on such amended Schedules without approval of the Bankruptcy Court.

**B.    Treatment of Disputed Claims**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**C.    Distributions on Account of Disputed Claims Once Allowed**

The Disbursing Agent or its designee shall make all Distributions on account of any Disputed Claim that has become an Allowed Claim consistent with the terms of the Plan. For the avoidance of doubt, such Distributions shall be made pursuant to the provisions of the Plan governing the applicable Class.

**D.      Claims Procedures in the Unimpairment Alternative**

In the event that the Plan Proponents select the Unimpairment Alternative, all Claims shall be administered and disputed in the ordinary course of business and consistent with the Debtor's prepetition course of conduct.

**ARTICLE X**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

**A.      Conditions to Confirmation**

The following shall be conditions to Confirmation unless such conditions shall have been duly waived pursuant to <u>Article X</u>, <u>Section C</u>:

1.      The Confirmation Order shall have been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is entered separately by the Bankruptcy Court, shall have been fully affirmed by the District Court), and shall be reasonably acceptable in form and substance to the Plan Proponents and shall approve the Asbestos Channeling Injunction in form and substance acceptable to the Plan Proponents.

2      All Exhibits to the Plan shall be in form and substance acceptable to the Plan Proponents.

3.      For the § 524(g) Alternative to be selected by the Plan Proponents, the following conditions must be satisfied, and a notice must be filed at least [TBD] prior to confirmation:

a.      The Holders of Class 6 Interests shall have voted to accept the Plan.

b.      Georgia-Pacific shall have consented to assumption and assignment of the Funding Agreement on the terms and conditions set forth in the Plan and shall have executed security agreements satisfactory to the Plan Proponents to provide assurance that the Funding Agreement will be honored and can be enforced after the Effective Date.

4.      In the event that the § 524(g) Alternative is selected by the Plan Proponents, the Bankruptcy Court and the District Court acting jointly, or the Bankruptcy Court or the District Court acting separately shall have made the following findings, each of which shall be contained in the Confirmation Order and each of which, if the Confirmation Order is entered separately by the Bankruptcy Court, shall be fully affirmed by the District Court::

a.      The Asbestos Channeling Injunction is to be implemented in connection with the Plan and the Asbestos PI Trust.

b.      The Asbestos PI Trust, as of the Effective Date, shall assume all liability and responsibility, financial and otherwise, for all Asbestos PI Claims and Settled Asbestos Claims, except as otherwise expressly provided in this Plan or the Asbestos PI Trust Agreement.

c.     As of the Petition Date, the Debtor had been named as a defendant in personal injury or wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

d.     The Asbestos PI Trust will be funded via payments made by Georgia-Pacific pursuant to the terms of the Funding Agreement, by proceeds derived from the Causes of Action assigned to the Asbestos PI Trust, and by distributions derived from the operations of Reorganized Bestwall.

e.     The Asbestos PI Trust shall own the Mount Holly Tax Parcels.

f.     The Asbestos PI Trust shall use its rights to proceeds under the Funding Agreement to pay Asbestos PI Claims, including Demands.

g.     It is expected that the Asbestos PI Trust through the Asbestos PI Trust Distribution Procedures, the Trust Claims Fund, and the Funding Agreement shall be able to pay all Asbestos PI Claims the full liquidated value of their claims.

h.     Subject to the limitations expressly set forth herein, all transfers of assets of the Debtor contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets.

i.     Any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes and any other stamp or similar tax.

j.     The settlements, transactions and agreements to be effected pursuant to the Plan, including, without limitation, the Asbestos PI Trust Agreement, and the Asbestos PI Trust Distribution Procedures are approved in all respects.

k.     The transfers of property to the Asbestos PI Trust (A) are and will be legal, valid, and effective transfers of property; (B) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (C) do not and will not subject the Asbestos PI Trustee(s) to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

l.     The Asbestos PI Trust will have all rights to receive distributions on account of its ownership of the Mount Holly Tax Parcels.

m.     The Plan complies with section 524(g) of the Bankruptcy Code in all respects.

n.     As to future Demands:

i.     The Debtor is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Channeling Injunction.

43

ii.      The actual amounts, numbers and timing of such future Demands cannot be determined.

iii.      Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

o.      The terms of the Asbestos Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan.

p.      The Plan establishes in Class 4 (Asbestos PI Claims and Settled Asbestos Claims) a separate class of the claimants whose Claims are to be addressed by the Asbestos PI Trust.

q.      Class 4 (Asbestos PI Claims and Settled Asbestos Claims) has voted, by at least two-thirds in amount and 75% in number of those voting, in favor of the Plan.

r.      Pursuant to court orders or otherwise, the Asbestos PI Trust shall operate through mechanisms, such as structured, periodic or supplemental payments, distributions, matrices or periodic review of estimates of the numbers and values of Asbestos PI Claims, that provide reasonable assurance that the Asbestos PI Trust shall value, and be in a financial position to pay, Asbestos PI Claims, including Demands, in substantially the same manner.

s.      Each Protected Party is identifiable from the terms of the Asbestos Channeling Injunction by name or as part of an identifiable group, and each Protected Party is or may be alleged to be directly or indirectly liable for the conduct of, Claims against or Demands on the Debtor.

t.      The Future Claimants' Representative was appointed as part of the proceedings leading to issuance of the Asbestos Channeling Injunction for the purpose of protecting the rights of all persons, whether known or unknown, that might subsequently assert, directly or indirectly, against the Debtor an Asbestos PI Claim that is a Demand addressed by the Asbestos Channeling Injunction and transferred to the Asbestos PI Trust.

u.      Identifying each Protected Party (by name or as part of an identifiable group, as applicable) in the Asbestos Channeling Injunction is fair and equitable with respect to individuals that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos PI Trust by or on behalf of any such Protected Party.

v.      The Plan and the Asbestos PI Trust Documents comply with section 524(g) of the Bankruptcy Code in all respects, and the Asbestos PI Trust Documents are fully consistent with the Plan.

w.      The Plan, including the Asbestos PI Injunction, and its Exhibits are a fair, equitable and reasonable resolution of the liability of the Debtor for the Asbestos PI Claims.

44

x.    The Future Claimants' Representative has adequately and completely fulfilled his duties, responsibilities and obligations as the representative for, and to protect the rights of, all persons, whether known or unknown, that might subsequently assert, directly or indirectly, against the Debtor an Asbestos PI Claim that is a Demand addressed by the Asbestos Channeling Injunction and transferred to the Asbestos PI Trust in accordance with section 524(g) of the Bankruptcy Code.

y.    Adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, has been given to (i) all known creditors and holders of Interests; (ii) parties that requested notice in accordance with Bankruptcy Rule 2002 (including the Asbestos PI Committee and the Future Claimants' Representative); (iii) all parties to Unexpired Leases and Executory Contracts with the Debtor; (iv) all taxing authorities listed on the Debtor's Schedules or in the Debtor's Claims database; (v) the Department of the Treasury by service upon the District Director of the IRS; (vi) state attorneys general and state departments of revenue for states in which the Debtor has conducted business; and (vii) the Securities and Exchange Commission, (A) in accordance with the solicitation procedures governing such service and (B) in substantial compliance with Bankruptcy Rules 2002(b), 3017 and 3020(b). Such transmittal and service were adequate and sufficient to bind, among other parties, each holder of an Asbestos PI Claim and each party represented by the Future Claimants' Representative, and no other or further notice is or shall be required. Each holder of an Asbestos PI Claim and each party represented by the Asbestos PI Committee or the Future Claimants' Representative has been afforded due process based on the notice referenced herein, the appointment of the Future Claimants' Representative, and the Plan's compliance with section 524(g) of the Bankruptcy Code.

z.    The Bankruptcy Court and the District Court, as required, shall have entered the Asbestos Channeling Injunction, which may be included in the Confirmation Order and which shall be in form and substance acceptable to the Plan Proponents.

aa.    In order to promote resolution of Asbestos PI Claims through the Asbestos PI Trust mechanism (in lieu of claimants pursuing claims directly against Georgia-Pacific and its Affiliates in the first instance), the statute of limitations applicable to each Asbestos PI Claim shall be tolled during the period commencing on the date such Asbestos PI Claim is submitted to the Asbestos PI Trust by submission of a proof of claim form that includes the claimant's name, address, social security number and asbestos-related disease and for thirty (30) days after the date on which such claimant receives notice that Georgia-Pacific has objected to the payment of such Asbestos PI Claim.

bb.    Georgia-Pacific's failure to assert a Georgia-Pacific Objection (as defined in the Asbestos PI Trust Distribution Procedures) or timely submit payment to the Asbestos PI Trust as required for any Asbestos PI Claim included on a Demand for Payment as set forth in the Asbestos PI Trust Distribution Procedures (including failure to timely submit payment as required for an Asbestos PI Claim resolved pursuant to an Arbitration Resolution (as defined in the Asbestos PI Trust Distribution Procedures) or as a Liquidated Tort System Claim (as defined in the Asbestos PI Trust Distribution Procedures)) and the Plan, shall constitute a breach of Georgia-Pacific's obligations under the Plan and the Funding Agreement. Following such breach, the Asbestos PI Trust may commence suit against Georgia-Pacific for such relief as it deems appropriate, which may include but is not limited to breach of the Funding Agreement or specific performance.  In such event,

45

Georgia-Pacific shall (a) immediately escrow the full amount of any such unpaid Demand for Payment in an interest-bearing account; and (b) shall be responsible for reasonable attorney fees and costs associated with pursuing relief on behalf of the Asbestos PI Trust and claimants, interest compounded daily based on the greater of the prevailing federal judgment rate or an annual rate of 15%, punitive damages and other extraordinary relief as appropriate. In the discretion of the Asbestos PI Trust, the Asbestos PI Trust may assign to any affected claimant the right of such claimant to pursue recovery from Georgia-Pacific directly with respect to a breach related to the Claimant's Asbestos PI Claim. In such event, the claimant may elect to sue Georgia-Pacific on his or her Conditionally Settled Claim, or may reject such settlement and sue Georgia-Pacific in the tort system as set forth in the Asbestos PI Trust Distribution Procedures for resolution of his or her Asbestos PI Claim. Nothing in this Plan, the Confirmation Order, the Asbestos PI Trust Agreement or the Asbestos PI Trust Distribution Procedures gives a claimant the right to pursue any action against the Asbestos PI Trust in the event of a default by Georgia-Pacific.

## B.     Conditions to the Effective Date

The Effective Date shall not occur, and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to the terms of the Plan:

### 1.     In the event that the § 524(g) Alternative is to be implemented:

a.     The District Court or the Bankruptcy Court and the District Court acting jointly shall have entered an order (contemplated to be part of the Confirmation Order) in form and substance reasonably acceptable to the Plan Proponents approving and authorizing the Debtor and Reorganized Bestwall to take all actions necessary or appropriate to effectuate, implement and consummate the Plan and the Restructuring Transactions, including the execution, delivery and performance of contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Restructuring Transactions (including the Asbestos PI Trust Documents) and approving the Asbestos Channeling Injunction in form and substance acceptable to the Plan Proponents.

b.     The Confirmation Order has been entered by the Bankruptcy Court and the District Court acting jointly, or by the Bankruptcy Court or the District Court acting separately (and, if the Confirmation Order is separately entered by the Bankruptcy Court, has been fully affirmed by the District Court) and shall have become a Final Order.

c.     The Confirmation Order and the Asbestos Channeling Injunction shall be in full force and effect, and no order is in effect staying or enjoining the implementation or enforcement of the Plan, the Confirmation Order or the Asbestos Channeling Injunction.

d.     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

e.     The Asbestos PI Trustee shall have been selected and shall have executed and delivered the Asbestos PI Trust Agreement.

f.     Each of the documents and agreements contemplated by the provisions of and Exhibits to the Plan to be executed and delivered as of the Effective Date shall have been fully

executed and delivered in form and substance acceptable to the Plan Proponents and shall be fully enforceable in accordance with their terms.

g.      Georgia-Pacific shall have Funded the Claims Reserve and the Trust Expense Fund and shall have otherwise made such other payments and disbursements as are required under this Plan.

h.      The Effective Date shall occur as of 12:01 a.m., prevailing Eastern Time on the date that the Plan Proponents files a notice with the Bankruptcy Court stating that the Effective Date has occurred because each of the conditions to the Effective Date has been satisfied or waived in accordance with the Plan.

**2.      In the event that the Unimpairment Alternative is to be implemented:**

a.      The Confirmation Order has been entered by the Bankruptcy Court and shall have become a Final Order.

b.      No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

c.      The Litigation Trustee shall have been selected and shall have executed and delivered the Litigation Trust Agreement.

d.      Each of the documents and agreements contemplated by the provisions of and Exhibits to the Plan to be executed and delivered as of the Effective Date shall have been fully executed and delivered in form and substance acceptable to the Plan Proponents and shall be fully enforceable in accordance with their terms.

e.      The Effective Date shall occur as of 12:01 a.m., prevailing Eastern Time on the date that the Plan Proponents files a notice with the Bankruptcy Court stating that the Effective Date has occurred because each of the conditions to the Effective Date has been satisfied or waived in accordance with the Plan.

**C.      Waiver of Conditions to Confirmation or the Effective Date**

The conditions to Confirmation and to the Effective Date set forth herein, to the extent legally waivable, may be waived in whole or part in writing by the Plan Proponents. Confirmation and the Effective Date will occur irrespective of whether any claims allowance process or related litigation has been completed.

**D.      Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with this Article X, then upon motion by the Plan Proponents made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to the Plan, (1) the Plan shall be null and void in all respects, including with respect to the discharge of Claims; and (2) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest

47

in, the Debtor or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

## ARTICLE XI

### DISCHARGE, INJUNCTION, EXCULPATION CLAUSE, AND SUBORDINATION RIGHTS UNDER THE § 524(g) ALTERNATIVE

**A.   Discharge of Claims**

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, including any Asbestos PI Claims or Settled Asbestos Claims (other than Demands) and including any interest accrued on Claims from the Petition Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation, as of the Effective Date, shall discharge the Debtor from all Claims or other liabilities that arose on or before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (c) the holder of a Claim based on such debt has accepted the Plan.

In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of a discharge of all Claims, including any Asbestos PI Claims or Settled Claims (other than Demands), and other debts and liabilities against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim, debt or liability.

Notwithstanding any provision of the Plan to the contrary, Confirmation shall not discharge the Debtor from any debt of a kind specified in 11 U.S.C. § 1141(d)(6), if any.

For the avoidance of doubt, in the event that the Plan Proponents select the Unimpairment Alternative, Confirmation of the Plan will not discharge the Debtor from any Claims or terminate any Interests.

**B.   Injunctions**

**1.   General Injunctions**

**a.   No Actions on Account of Discharged Claims**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged pursuant to the terms of the Plan shall be permanently enjoined from taking any of the following actions on account of any such discharged Claim, debt or liability: (i) commencing or continuing in any manner any action or other proceeding against the Debtor or Reorganized Bestwall, or any of their respective property, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or Reorganized Bestwall, or any of their respective property, other than as permitted pursuant to (i) above; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or Reorganized Bestwall, or any of

48

their property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or Reorganized Bestwall; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Notwithstanding the prior sentence, Georgia-Pacific's failure to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust's subsequent assignment of its enforcement rights to an affected claimant to pursue recovery in the tort system, shall invalidate any injunction provided by this subsection, but only to the extent necessary to Liquidate and recover against Georgia-Pacific.

### b.      No Actions on Account of Released Claims

As of the Effective Date, and except as specifically set forth herein regarding the conditional nature of such releases, all Entities that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following actions against any Released Party or other Entity obtaining a release pursuant Article V of this Plan, or any of their property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, causes of action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Released Party or other Entity obtaining a release pursuant Article V of this Plan; and (v) commencing or continuing any action, in any, manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Notwithstanding the prior sentence, Georgia-Pacific's failure to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust's subsequent assignment of its enforcement rights to an affected claimant to pursue recovery in the tort system, shall invalidate any injunction provided by this subsection, but only to the extent necessary to Liquidate and recover against Georgia-Pacific.

### c.      Recipients of Distribution Deemed to Consent

By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim receiving Distributions pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Article XI.

## C.      Asbestos Channeling Injunction

### 1.      Terms of Section 524(g) of the Bankruptcy Code.

Pursuant to section 524(g) of the Bankruptcy Code, and except as specifically set forth herein regarding the conditional nature of such releases, the Plan and the Confirmation Order shall permanently and forever stay, restrain and enjoin any Entity from taking any actions against any Protected Party for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Asbestos PI Claim, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the Asbestos PI Trust Agreement and the related Asbestos PI Trust Distribution Procedures, including permanently and forever staying, restraining and enjoining any Entity from any of the following with respect to any Asbestos PI Claim:

a.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral, administrative or other proceeding)

in any forum against any Protected Party or any property or interests in property of any Protected Party;

  b. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against any Protected Party or any property or interests in property of any Protected Party;

  c. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

  d. setting off, seeking reimbursement of, contribution from or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

  e. proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust Documents, except in compliance therewith.

**2. Georgia-Pacific's Failure to Fund.**

For the avoidance of doubt, Georgia-Pacific's failure to fund the Trust Expense Fund as required by Article V, Section J.2., and the Asbestos PI Trust's subsequent assignment of its enforcement rights to an affected claimant to pursue recovery in the tort system, shall invalidate any injunction provided by this subsection to the Debtor, Reorganized Bestwall, or any Protected Party, but only to the extent necessary to Liquidate and recover against Georgia-Pacific.

**3. Reservation of Rights.**

Notwithstanding anything to the contrary in the Plan, this Asbestos Channeling Injunction shall not impair:

  a. the rights of holders of Asbestos PI Claims to assert such Asbestos PI Claims solely against the Asbestos PI Trust or otherwise in accordance with the Trust Distribution Procedures;

  b. the rights of holders of Asbestos PI Claims to assert such claims against anyone other than a Protected Party;

  c. the rights of Persons to assert any Claim, debt, obligation or liability for payment of Asbestos PI Trust Expenses solely against the Asbestos PI Trust or otherwise in accordance with the Trust Distribution Procedures; or

  d. the Asbestos PI Trust from enforcing its rights explicitly provided to it under the Plan and the Asbestos PI Trust Documents.

**4. Modifications.**

There shall be no modification, dissolution, or termination of the Asbestos Channeling Injunction, which shall be a permanent injunction.

### 5. Non-Limitation Channeling Injunction

Except as expressly set forth herein, nothing in the Plan or the Asbestos PI Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Asbestos Channeling Injunction issued in connection with the Plan or the Asbestos PI Trust's assumption of all liability with respect to Asbestos PI Claims.

### 6. Bankruptcy Rule 3016 Compliance

The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

### 7. Protected Parties

Any Protected Party may enforce the Asbestos Channeling Injunction as a defense to any Claim brought against such Protected Party that is enjoined under the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

For the avoidance of doubt, in the event that the Plan Proponents select the Unimpairment Alternative, holders of Asbestos PI Claims or Demands shall retain any and all rights to assert such Asbestos PI Claims or Demands against any Protected Party.

### D. Exculpation Clause

Under either the § 524(g) Alternative or the Unimpairment Alternative, the Exculpated Parties and with respect to each of the foregoing, their current or former members, Professionals, employees, officers, agents, attorneys, accountants, financial advisors, representatives or other professionals, solely in their capacity as such, shall have or incur any liability to any Person or Entity for any act or omission in connection with, relating to, or arising out of the Reorganization Case, the negotiation of the Plan, the Disclosure Statement, the releases and injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be distributed under the Plan, or the management or operation of the Debtor (except for any liability that results primarily from such Person's or Entity's gross negligence, bad faith or willful misconduct). In all respects, each and all of such Persons, firms and Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Reorganization Case, the Plan, and the administration of each of them.

### E. Subordination Rights

The classification and manner of satisfying Claims and Interests under the Plan does not take into consideration subordination rights, and nothing in the Plan or the Confirmation Order shall affect any subordination rights that a holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code or otherwise.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such exclusive or other jurisdiction over the Reorganization Case after the Effective Date as is legally permissible, including jurisdiction to:

1.      interpret, enforce and administer the Asbestos PI Trust Agreement and any other Asbestos PI Trust Documents;

2.      interpret, enforce and administer the Litigation Trust Agreement and any other related documents;

3.      hear and determine any proceeding that involves the validity, applicability, construction, enforceability or modification of the Asbestos Channeling Injunction or the application of section 524(g) of the Bankruptcy Code to the Asbestos Channeling Injunction;

4.      hear and determine all objections to the termination of the Asbestos PI Trust;

5.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (other than Asbestos PI Claims) or Interest, including the resolution of any request for payment of any Administrative Claim or the resolution of any objections to the allowance, priority or classification of Claims (other than Asbestos PI Claims) or Interests;

6.      hear and determine any issues, disputes or controversies related to the Bestwall QSF (and the trust agreement related thereto) and otherwise act as the supervisory court for the Bestwall QSF until it is terminated;

7.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date (including Fee Claims);

8.      resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor or Reorganized Bestwall may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

9.      ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

10.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any application, involving the Debtor that may be pending on the Effective Date or brought thereafter;

11.     adjudicate any Causes of Action that are retained by Reorganized Bestwall or Asbestos PI Trust hereunder;

12.     enter such orders as may be necessary or appropriate to effectuate, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements and documents entered into or delivered in connection with the Plan or the Confirmation Order;

13.     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

14.     modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code;

15.     issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the effectuation, implementation, consummation or enforcement of the Plan or the Confirmation Order or other orders of the Bankruptcy Court;

16.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

17.     determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order;

18.     determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

19.     determine any causes of action arising out of any post-Effective Date breaches of the Funding Agreement; and

20.     enter a final decree closing the Reorganization Case.

Notwithstanding anything to the contrary in this Article XII, the allowance of Asbestos PI Claims and the forum in which such allowance will be determined shall be governed by and in accordance with the Asbestos PI Trust Distribution Procedures.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

## A.      Dissolution of the Asbestos PI Committee and Future Claimants' Representative

On the later of (i) the Effective Date or (ii) the date on which the Confirmation Order becomes a Final Order, (A) the Asbestos PI Committee shall be dissolved, and the members of such committee shall be released and discharged from all duties and obligations arising from or related to the Reorganization Case, and (B) the Future Claimants' Representative shall be deemed released and discharged from all

duties and obligations from or related to the Reorganization Case; provided, however, that if the Confirmation Order is not a Final Order on or prior to the Effective Date, then the sole obligation and responsibility of the Asbestos PI Committee and the Future Claimants' Representative shall be to take such actions as are reasonably necessary to respond to any appeal, request for reconsideration, or other similar request for review of the Confirmation Order.  The Professionals and the members thereof retained by the Asbestos PI Committee or by the Future Claimants' Representative shall not be entitled to assert any Fee Claim for any services rendered or expenses incurred after the Effective Date, except for (i) services rendered and expenses incurred in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date pursuant to Article III and (ii) services rendered and expenses incurred in connection with any appeal, request for reconsideration, or other similar request for review of the Confirmation Order.

Upon dissolution of the Asbestos PI Committee, the Asbestos PI Trust Advisory Committee shall succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Asbestos PI Committee, and shall enjoy the work product protections that were applicable or available to the Asbestos PI Committee before its dissolution.

## B.    Limitation of Liability

### 1.    Liability for Actions in Connection with the Reorganization Case

The Debtor, Reorganized Bestwall, the Asbestos PI Committee, and the Future Claimants' Representative and their respective managers, directors, officers, employees, Affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, shall neither have nor incur any liability to any Entity for any act taken or omitted to be taken in connection with, related to or arising out of the Reorganization Case or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction proposed in connection with the Reorganization Case or any contract, instrument, release or other agreement or document entered into or delivered, or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions of this Article XIII, Section B(1) shall have no effect on: (a) the liability of any Entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

### 2.    Rights of Action in Connection with the Reorganization Case

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest and none of their respective managers, directors, officers, employees, Affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives or agents shall have any right of action against the Debtor, Reorganized Bestwall, the Asbestos PI Committee, and the Future Claimants' Representative, or any of their respective managers, directors, officers, employees, Affiliates, subsidiaries, predecessors, successors, members, attorneys, accountants, underwriters, investment bankers, financial advisors, appraisers, representatives and agents, acting in such capacity, for any act or omission in connection with, relating to or arising out of the Reorganization Case or the consideration, formulation, preparation, dissemination, Confirmation, effectuation, implementation or consummation of the Plan or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection

54

therewith, except for: (a) the liability of any Entity that otherwise would result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan; or (b) the liability of any Entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

**C.      Modification of the Plan and Exhibits**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend or modify the Plan and the Exhibits to the Plan at any time before its substantial consummation.

**D.      Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**E.      Severability**

After the Effective Date, any provision of the Plan, any Exhibit hereto, any instrument, agreement or other document executed in connection with the Plan, or the Confirmation Order, that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Exhibits, any instruments, agreements, or other documents executed in connection with the Plan, or the Confirmation Order or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**F.      Service of Certain Plan Exhibits**

Certain Exhibits are not being Filed or served with copies of the Plan.  Except as otherwise provided herein, the Plan Proponents shall File such Exhibits no later than 10 days before the deadline to object to Confirmation.  Once Filed, the Plan Proponents shall make available for review the relevant Exhibits on the website at www.donlinrecano.com/bestwall.

**G.      Effective Date Actions Simultaneous**

Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

**H.      Service of Documents**

Any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to the Asbestos PI Committee, the Future Claimants' Representative, the Debtor or Reorganized Bestwall, Georgia-Pacific, or the Bankruptcy Administrator must be sent by electronic mail to the following:

55

1.      **The Asbestos PI Committee**

Natalie D. Ramsey
ROBINSON + COLE LLP
1201 North Market, Suite 1406
Wilmington, Delaware 19801
Email:  nramsey@rc.com

        -and-

Glenn C. Thompson
Hamilton Stephens Steele + Martin, PLLC
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202
Email:  gthompson@lawhssm.com

2.      **Future Claimants' Representative**

Sander L. Esserman
STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
2323 Bryan Street
Suite 2200
Dallas, Texas 75201-2689
Email:  esserman@sbep-law.com

        -and-

Edwin J. Harron
Sharon M. Zieg
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Email:  eharron@ycst.com
        szieg@ycst.com

        -and-

Felton E. Parrish
YOUNG CONAWAY STARGATT & TAYLOR LLP
227 West Trade Street, Suite 1910
Charlotte, North Carolina 28202
fparrish@ycst.com

3.      **The Debtor and Reorganized Bestwall**

Gregory M. Gordon
Amanda S. Rush
JONES DAY
2727 North Harwood Street
Suite 500
Dallas, Texas 75201
Email:  gmgordon@jonesday.com
        asrush@jonesday.com

        -and-

Jeffrey B. Ellman
Brad B. Erens
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Email:  jbellman@jonesday.com
        bberens@jonesday.com

        -and-

Garland S. Cassada
Richard C. Worf, Jr.
David M. Schilli
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
E-mail: gcassada@robinsonbradshaw.com
        rworf@robinsonbradshaw.com
        dschilli@robinsonbradshaw.com

4.      **Georgia-Pacific**

Mark P. Goodman
M. Natasha Labovitz
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, New York 10022
Email:  mpgoodman@debevoise.com
        nlabovitz@debevoise.com

        -and-

Georgia-Pacific LLC
133 Peachtree Street, NE
Atlanta, Georgia 30303
Attention: General Counsel

**5.       The Bankruptcy Administrator**

Shelley K. Abel
Office of the United States Bankruptcy Administrator
402 West Trade Street
Suite 200
Charlotte, North Carolina 28202
Email: Shelley_Abel@ncwba.uscourts.gov

Respectfully submitted,

OFFICIAL COMMITTEE OF
ASBESTOS CLAIMANTS

By: ___*DRAFT*_____
       Steven Kazan, Chair

Co-counsel for the Asbestos PI Committee:

Natalie D. Ramsey
Davis Wright, Esquire
Laurie Krepto, Esquire
ROBINSON + COLE LLP
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Email: nramsey@rc.com
dwright@rc.com
lkrepto@rc.com

-and-

Glenn C. Thompson
HAMILTON STEPHENS STEELE + MARTIN, PLLC
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Email: gthompson@lawhssm.com

Judy D. Thompson
Linda W. Simpson
JD THOMPSON LAW
Post Office Box 33127
Charlotte, North Carolina 28233
Telephone: (828) 749-1865
jdt@jdthompsonlaw.com
lws@jdthompsonaw.com

Counsel for the Future Claimants' Representative:

Edwin J. Harron
Sharon M. Zieg
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
eharron@ycst.com
szieg@ycst.com

-and-

Felton E. Parrish
YOUNG CONAWAY STARGATT & TAYLOR LLP
227 West Trade Street, Suite 1910
Charlotte, North Carolina 28202
fparrish@ycst.com

**EXHIBIT A TO THE PLAN**

**LIST OF ASBESTOS-CONTAINING PRODUCTS**

(TO COME)

**EXHIBIT D TO THE PLAN**

**DESCRIPTION OF CERTAIN RESTRUCTURING TRANSACTIONS**

(TO COME)

**EXHIBIT E TO THE PLAN**

**SCHEDULE OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE REJECTED**

(TO COME)